## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527-JJF |
| | ) | |
| TILLOTSON CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ANSELL PROTECTIVE PRODUCTS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-93-JJF |
| | ) | |
| TILLOTSON CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## DEFENDANT TILLOTSON CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STAY PROCEEDINGS PENDING THE OUTCOME OF THE INTERNATIONAL TRADE COMMISSION'S INVESTIGATION

Richard L. Horwitz (#2246)
Kenneth L. Dorsney (#3726)
POTTER ANDERSON & CORROON LLP
Of-Counsel:                                      Hercules Plaza, 6th Floor
                                                 1313 N. Market Street
Anthony B. Askew                                 P. O. Box 951
Steve M. Schaetzel                               Wilmington, DE  19899
Katrina M. Quicker                               (302) 984-6000
Jason M. Pass                                    rhorwitz@potteranderson.com
King & Spalding LLP                              kdorsney@potteranderson.com
1180 Peachtree Street, NE
Atlanta, Georgia 30309                           *Attorneys for Defendant*
(404) 572-4600                                   *Tillotson Corporation*

Dated:  July 12, 2007
806872 / 30675

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

I.     INTRODUCTION ........................................................................................1

II.    NATURE AND STAGE OF PROCEEDINGS ..............................................1

III.   SUMMARY OF ARGUMENT .....................................................................3

IV.    STATEMENT OF FACTS ............................................................................4

       A.    The ITC Investigation and The Ansell Entities. .......................................4

       B.    Ansell HC's Representations In Delaware And The First-Filed
             Georgia Suit. ..........................................................................................5

             1.    Ansell HC's Manufacturer Representations in Delaware. ...........5

             2.    Ansell HC's Manufacturer Representations In The First-
                   Filed Georgia Suit. ....................................................................6

       C.    Discovery In This Case. ...........................................................................7

V.     ARGUMENT ...............................................................................................8

       A.    Legal Standard Regarding The Court's Power To Stay. ...........................8

       B.    A Balance Of The Equities Favors A Stay of This Action. ......................8

             1.    The ITC Investigation Involves The True Manufacturers Of
                   The Nitrile Gloves At Issue. .......................................................8

             2.    Staying The Instant Action Will Greatly Simplify The
                   Issues Between The Parties and Before The Court........................11

             3.    Staying This Proceeding Will Not Unduly Prejudice or
                   Present A Clear Tactical Disadvantage To Ansell........................13

             4.    Discovery In This Case, Which Is Far From Complete, Is
                   Soon To Be Surpassed By Discovery At The ITC. .....................13

             5.    There Is No Trial Date Set For This Action...............................14

       C.    Granting A Stay Is Also Consistent With Congress' Intent. ...................14

VI.    CONCLUSION ...........................................................................................16

# TABLE OF AUTHORITIES

CASES

*Alloc, Inc. v. Unilin Décor N.V.,*
    C.A. No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003)....................................12

*Ansell Protective Products, Inc. v. Tillotson Corporation,*
    C.A. No. 07-93-JJF, Ansell PP D.I. 1 ................................................................................2

*BBC Int'l Ltd. v. Lumino Designs, Inc.,*
    441 F. Supp. 2d 438 (E.D.N.Y. 2006) ................................................................................9

*Clintec Nutrition Co. v. Abbott Lab.,*
    No. 94 C 3152, 1995 WL 228988 (N.D. Ill. April 14, 1995) .................................................13

*Dentsply Intern., Inc. v. Kerr Mfg. Co.,*
    734 F. Supp. 656 (D. Del. 1990)........................................................................................8

*Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.,*
    No. 5:05CV156, 2005 WL 1126750 (N.D. Ohio April 29, 2005).....................................11-12

*Genentech, Inc. v. Eli Lilly & Co.,*
    998 F.2d 931 (Fed. Cir. 1993)...........................................................................................9

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.,*
    C.A. No. 04-1337-KAJ, C.A. No. 04-1338-KAJ, C.A. No. 04-1536-KAJ,
    2005 WL 2465898 (D. Del. May 18, 2005)................................................................8, 10, 13

*Iljin USA v. NTN Corp.,*
    No. 06-10145, 2006 WL 568351 (E.D. Mich. March 7, 2006) ................................................11

*In re Princo Corp.,*
    478 F.3d 1345 (Fed. Cir. 2007)........................................................................................15

*Kahn v. General Motors Corp.,*
    889 F.2d 1078 (Fed. Cir. 1989)..........................................................................................9

*Kash 'N Gold, Ltd. v. ATSPI,*
    690 F. Supp 1160 (E.D.N.Y. 1988) .....................................................................................9

*Katz v. Lear Siegler, Inc.,*
    909 F.2d 1459 (Fed. Cir. 1990)..........................................................................................9

*PIC, Inc. v. The Prescon Corp.,*
    77 F.R.D. 678 (D. Del. 1977) ............................................................................................8

*Rhode Gear U.S.A. v. Frank's Spoke N. Wheel, Inc.*,
  225 U.S.P.Q. 1256 (D. Mass. Feb. 14, 1985) ........................................................11

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.*,
  90 F.3d 1558 (Fed. Cir. 1996)............................................................................13

*Tillotson Corporation* v. *Shijiazhaung Hongray Plastic Products, Ltd.*,
  C.A. No. 4:05-CV-0118-RLV, 2007 WL 1247121 (N.D. Ga. April 30, 2007).............. Passim

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
  766 F. Supp. 212 (D. Del. 1991)............................................................................8

## STATUTES, RULES & REGULATIONS

28 U.S.C. § 1659............................................................................... 4, 9, 14-15

## I.    INTRODUCTION

The International Trade Commission ("ITC") has just initiated a comprehensive investigation of certain nitrile gloves that are alleged to infringe Tillotson Corporation's ("Tillotson") U.S. Reissue Patent No. 35,616 (the "616 Patent").    Respondents to the ITC Complaint include many nitrile glove manufacturers.  Although Ansell Healthcare Products LLC ("Ansell HC") has represented to this Court that it is a manufacturer, it is not.    Instead, the Malaysian manufacturers of the *Micro-Touch* gloves-in-suit, for instance, are involved in the ITC proceeding.

Trial in the ITC proceeding is set to begin on February 25, 2008—four days before expert discovery is scheduled to commence in this case under the current schedule.    At that trial, the Administrative Law Judge ("ALJ") will address the same issues of infringement and validity presented in this case.  The ITC proceeding will refine and significantly narrow issues between parties in this case.  For these and the reasons set forth below, Tillotson respectfully requests that this Court stay the present action pending the outcome of the ITC proceeding.    Similarly, Tillotson respectfully requests that this Court stay the Ansell Protective Products, Inc. ("Ansell PP") case, which was filed in February of this year.

## II.    NATURE AND STAGE OF PROCEEDINGS

On August 25, 2006, Ansell HC filed this declaratory judgment action regarding Tillotson's U.S. Reissue Patent No. 35,616 (the "'616 Patent") contending, *inter alia,* that its *Micro-Touch* gloves did not infringe.  D.I. 1.  Tillotson answered and counterclaimed for patent infringement, and Tillotson simultaneously moved to transfer this action to the Northern District of Georgia in favor of Tillotson's first-filed Georgia suit involving the same '616 Patent and the same Ansell HC *Micro-Touch* glove.  D.I.'s 8, 10-13, 17-18.  Ansell HC successfully opposed that motion, relying in large part on the "customer suit" exception to the first-to-file rule.

D.I. 15-16, 19; Oral Order of February 2, 2007. The parties are now in the early stages of discovery—no depositions have been taken.

On February 20, 2007, a second Ansell entity, Ansell PP, filed a second declaratory judgment action regarding Tillotson's '616 Patent. *See Ansell Protective Products, Inc. v. Tillotson Corporation*, C.A. No. 07-93-JJF, Ansell PP D.I. 1. The Court has before it the parties' request for a scheduling order in that case. Tillotson has asked the Court to consolidate the Ansell PP case with the Ansell HC case and defer certain dates by 60 days to accommodate additional discovery. Ansell PP D.I. 12; *see also* Ansell HC D.I. 73. Ansell PP objects to consolidation to the extent any dates in the Ansell HC action would be deferred. *See* D.I. 13.

On May 30, 2007, Tillotson filed a Section 337 Complaint in the ITC requesting an investigation as to certain nitrile gloves. *See* Tillotson's ITC Complaint, Exhibit 1, hereto. Thereafter, on June 28, 2007, the ITC initiated that investigation after unanimous approval from members of the Commission. *See* D.I. 80, at Exhibit E; ITC Action Jacket Approval Record, Exhibit 2, hereto. Various Ansell entities are involved, including Ansell HC's parent company, Ansell Ltd. D.I. 80, at Exhibit E. Tillotson is in the process of seeking to amend its ITC Complaint to include Ansell HC and Ansell PP as respondents.

Also on May 30, 2007, Tillotson filed a second action in Georgia alleging patent infringement against multiple manufacturers and distributors (the "Recent Georgia Suit"). *See* D.I. 79, pp. 4-5. Thereafter, on June 18, 2007, Ansell HC filed a motion to enjoin Tillotson from proceeding against the Ansell entities named in the Recent Georgia Suit. D.I. 75-78. Tillotson opposed that motion on several grounds, including that Ansell HC is not a manufacturer of the nitrile glove at issue as it has represented. *See generally* D.I. 79. On July 9, 2007, Tillotson and

Ansell HC reached an agreement regarding the Ansell entities named in the Georgia suit.[1]  *See* July 10 Ltr from Schaetzel to Kenworthy, Exhibit 3, hereto.  On July 10, Tillotson filed a voluntary dismissal in the Northern District of Georgia dismissing its claims as to all Ansell entities. The next day, Ansell HC withdrew its motion to enjoin. *See* D.I. 88.

With the dismissal of the Ansell entities from the Georgia Suit, the only litigation involving Ansell HC, Ansell PP, and Tillotson is in Delaware and at the ITC.  Tillotson has raised the possibility of staying the Ansell HC and Ansell PP actions in view of the ITC investigation. Ansell HC and Ansell PP have rejected such a stay. *See* July 12 Correspondence between Horwitz and Kenworthy, Exhibit 4, hereto.  Tillotson thus filed the instant motion to stay.

## III.   SUMMARY OF ARGUMENT

Several factors are pertinent when considering a motion to stay, including whether the stay will simplify issues at trial, whether the stay will unduly prejudice or disadvantage the non-moving party, whether discovery is completed, and whether a trial date has been set.  In the context of patent litigation, consideration may also be given to whether the case sought to be stayed is a customer-based suit or a suit involving the true manufacturer of the accused goods. Here, because the ITC will address the same issues of validity and infringement of the '616 Patent, that proceeding will greatly simplify issues for trial in this case.  Discovery is not complete in the instant case and a trial date has not been set.  In contrast, the ITC trial will be underway before expert discovery here is set to begin.  Importantly, all issues before the ITC will be addressed with the true manufacturers of the gloves, not merely a supplier.

---

[1] Tillotson agreed that it would dismiss its claims against the Ansell entities in the Recent Georgia Suit if Ansell HC would agree to not file any motions in the Recent Georgia Suit and to not initiate any declaratory judgment proceeding (in Delaware or elsewhere) regarding the patent at issue. *See* Exhibit 3.

3

Yet further, staying a District Court action in favor of a ITC proceeding comports with the underlying policy of 28 U.S.C. § 1659, which precludes separate proceedings on the same issues at the same time.

## IV.    STATEMENT OF FACTS

### A.    The ITC Investigation and The Ansell Entities.

Based on Tillotson's estimates, more than 22 billion nitrile gloves have been imported into the United States over the past four years. Of those 22 billion, Tillotson estimates that at least 800 million such gloves were imported by or through Ansell Ltd. and/or its related entities. *See* D.I. 79 at pp. 6-7 (discussing the volume of gloves imported into the United States by certain Ansell entities). Ansell Ltd. is the parent of Plaintiffs Ansell HC and Ansell PP.

Tillotson's ITC Complaint seeks a general exclusion order of non-licensed gloves that infringe the '616 Patent. *See* Exhibit 1, p. 2. That Complaint names or implicates many Ansell entities, including: Ansell HC, Ansell PP, Ansell (AMBI) Sdn. Bhd. ("Ansell AMBI"); Ansell (Thailand) Ltd. ("Ansell Thailand"); Ansell Lanka (Pvt.), Ltd. ("Ansell Lanka"); Ansell Medical Sdn. Bhd. ("Ansell Medical"); Ansell N.P. Sdn. Bhd. ("Ansell NP"); Ansell Shah Alam Sdn. Bhd. ("Ansell SA"); J.K. Ansell, Ltd. ("JK Ansell"); Ansell Canada Inc. ("Ansell Canada"); and Ansell Services, Inc. ("Ansell Services"). *See* Exhibit 1, pp. 8-11; 60-61.

Not all Ansell entities are manufacturers. For example, Ansell HC claimed to be a manufacturer, but it is not. Further, Ansell entities do not necessarily obtain nitrile gloves only from an Ansell manufacturer. For example, with regard to the *Micro-Touch* glove, Ansell HC obtains that glove from two Malaysian manufacturers: Perusahaan Getah Asas Sdn. Bhd. ("Perusahaan Getah") and Seal Polymer Industries Bhd. ("Seal Polymer"). *See* D.I. 80, at Exhibit G (in which Ansell HC identifies Perusahaan Getah and Seal Polymer as the manufactures of its *Micro-Touch* gloves). The ITC proceeding is comprehensive in that it

addresses all such parties. *See generally* Exhibit 1. Moreover, Tillotson is in the process of seeking to amend its ITC Complaint to include Alliance Rubber Products Sdn. Bhd. ("Alliance Rubber"), another Malaysian glove manufacturer that provides nitrile gloves to Ansell PP and other distributors. *See* D.I. 79, n. 2 (discussing Alliance Rubber). Further, Tillotson is in the process of seeking to amend its ITC complaint to specifically name Ansell HC and Ansell PP as respondents.

On July 6, 2007, the ALJ responsible for the ITC proceeding issued, *inter alia*, an order setting various target dates for the ITC proceedings (the "Target Date Order"). *See* Notice of Ground Rules and Target Date and Order Setting Date For Submission of Discovery Statements, Exhibit 5, hereto. Under the Target Date Order, trial is set for February 25, 2008. *Id.* p. 2. The ITC is scheduled to make its final decision—and conclude its investigation—by September 8, 2008. *Id.* at p. 1.

Discovery in the ITC investigation has already commenced. Tillotson has served 30 of the Respondents—including Ansell Ltd.—with interrogatories and requests for production. *E.g.*, Tillotson's 1st. Set of Rogs. to Respondent Ansell Ltd., Exhibit 6, hereto. Tillotson has received discovery requests from at least one respondent, Top Glove Corporation Bhd.

**B.    Ansell HC's Representations In Delaware And The First-Filed Georgia Suit.**

**1.    Ansell HC's Manufacturer Representations in Delaware.**

In opposing Tillotson's motion to transfer, Ansell HC represented that—as a nitrile glove manufacturer—it was exempt from the first-to-file rule under the "customer suit" exception. *See, e.g.,* D.I. 15 at p. 9. In answering Tillotson's motion, for example, Ansell HC stated that it had "been *manufacturing* and selling the *Micro-Touch* nitrile gloves . . . since 2000" and that "[i]n circumstances such as presented here, where 'the first-filed suit . . . is brought by the patent

owner against a customer . . . , and the second-filed suit is for a declaratory judgment brought by the (allegedly) infringing manufacturer . . . , then the [first-to-file] priority rule is usually not followed.'" *Id.* at p. 1, 9 (emphasis added). At times, Ansell HC described itself as both a manufacturer and supplier by use of the designation "manufacturer/supplier." *Id.* at p. 1.

Ansell HC has now admitted, however, that it is *not* a manufacturer of any glove involved in this case (*Micro-Touch* or otherwise). *See* D.I. 83, at Exhibit T (Ansell HC's Res. To Tillotson's Req. For Admiss). In fact, Ansell HC is simply an importer of *Micro-Touch* nitrile gloves made by two Malaysian companies: Perusahaan Getah and Seal Polymer. *Id.*[2]

### 2. Ansell HC's Manufacturer Representations In The First-Filed Georgia Suit.

Shortly after this Court denied Tillotson's motion to transfer, the defendants in the first-filed Georgia suit moved to stay that suit pending resolution of the instant Ansell HC litigation. *See* D.I. 84, at Exhibit W. The defendants' primary argument was that—as the manufacturer of the gloves at issue—Ansell HC was in a "position superior" to the Georgia defendants (the "customers") to litigate the issues of validity and infringement. *Id.* at p. 15. Ansell HC joined the Georgia Defendants' motion to stay, and again advanced the "customer suit" exception argument to the first-to-file rule. *See* D.I. 84, at Exhibit X. This time, however, Ansell HC described itself as only a "supplier," and not a "manufacturer" or "manufacturer/supplier." *Id.*

Tillotson opposed the defendants' motion to stay the first-filed Georgia suit and pointed out that Ansell HC is not a manufacturer. *See* D.I. 85, at Exhibit Y. Ansell HC countered

---

[2]    Ansell is also not the only importer of nitrile gloves from those manufacturers. By way of example, Perusahann Getah distributes to a number of companies, including Omni International, Normandin Pacific, Econ Disposables, and West Chester Holdings Co. as well as Ansell. *See* D.I. 84, at Exhibit U. Similarly, Seal Polymer distributes to several entities including Cardinal Healthcare, The Safety Zone, Cypress, and Mexpo—among others—as well as Ansell HC. *See* D.I. 84, at Exhibit V.

that—as the supplier—it still had a greater interest than the Georgia customers. *See generally* D.I. 85, at Exhibit Z. The Georgia Court disagreed and denied the motion to stay on April 30, 2007. *See generally Tillotson Corporation* v. *Shijiazhaung Hongray Plastic Products, Ltd.*, C.A. No. 4:05-CV-0118-RLV, 2007 WL 1247121 (N.D. Ga. April 30, 2007).

On July 3, 2007, the defendants in the first-filed Georgia case moved the Court to stay the proceedings pending resolution of the ITC investigation. *See* Georgia Defendants' Mot. to Stay, Exhibit 7, hereto. As part of that motion, the Georgia defendants acknowledged that the "ITC proceeding involves issues identical to those in [their district court] action." *Id.* at ¶5. The Georgia Court has just granted this unopposed motion to stay. *See* July 6, 2007 Order Granting Stay, Exhibit 8, hereto. Similarly, the Georgia Court has just granted a motion to stay in another '616 Patent infringement case—*Tillotson v. Top Glove Sdn. Bhd. et al.*, 4:05-cv-232. *See* July 11, 2007 Order Granting Stay (Top Glove), Exhibit 9, hereto.

## C.    Discovery In This Case.

The parties are in the early stages of fact discovery in this case, with each party having exchanged discovery requests and an initial production of documents. Under the parties' current Scheduling Order, depositions may commence in August. *See* D.I. 50. Neither party, however, has noticed any depositions. Although Tillotson has sought substantial discovery from Ansell HC, Ansell HC has refused to provide discovery on several topics central to this case. To date, for example, Ansell HC has not produced any test data regarding the subject nitrile gloves, despite requiring the same from Tillotson. *See* D.I.'s 37-38 (regarding Ansell HC's motion to compel Tillotson to produce test data). Ansell HC has also failed to provide basic formulation information regarding these gloves. Discovery in the instant case is far from complete.

## V.    ARGUMENT

### A.    Legal Standard Regarding The Court's Power To Stay.

"The power to stay proceedings 'is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, C.A. No. 04-1337-KAJ, C.A. No. 04-1338-KAJ, C.A. No. 04-1536-KAJ, 2005 WL 2465898, *2 (D. Del. May 18, 2005) (quoting *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 738 (3d Cir. 1983)); *cf. Dentsply Intern., Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (requiring the moving party to show clear hardship or inequity). Whether to grant a stay is "addressed to the sound discretion of the court." *PIC, Inc. v. The Prescon Corp.*, 77 F.R.D. 678, 681 (D. Del. 1977). But as with any discretionary power, "the Court must balance the equities presented by the particular set of facts." *Honeywell Int'l Inc.*, 2005 WL 2465898 at *2. When balancing these equities, the Court should consider whether the stay will simplify issues at trial, whether the stay will unduly prejudice or disadvantage the non-moving party, whether discovery is completed, and whether a trial date has been set. *See Honeywell Int'l Inc.*, 2005 WL 2465898 at *2 (relying on *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F. Supp. 212, 217 (D. Del. 1991)). In the context of patent litigation, consideration should also be given to whether the case sought to be stayed is a customer-based suit or a suit involving the true manufacturer of the accused goods. *See id.* at *4; *Tillotson Corp.*, 2007 WL 1247121, at *1-2.

### B.    A Balance Of The Equities Favors A Stay of This Action.

#### 1.    The ITC Investigation Involves The True Manufacturers Of The Nitrile Gloves At Issue.

Although the general rule is that a first-filed lawsuit receives priority over subsequently filed actions, an exception to this rule exists when the first action may be fairly characterized as a

"customer-suit." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993); *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989); *see also Tillotson Corp. v. Shijiazhaung Hongray Plastic Products, Ltd.*, Civil Action No. 4:05-CV-0118-RLV, 2007 WL 1247121, at *1-2 (N.D. Ga. April 30, 2007) (discussing the first-to-file rule and the "customer suit" exception). In such an action, "the first suit is filed against a customer who is simply a reseller of the accused goods, while the second suit is a declaratory action brought by the *manufacturer* of the accused goods." *Kahn*, 889 F.2d at 1081 (emphasis added). The reasoning behind the customer-suit exception is based "on the *manufacturer's* presumed greater interest in defending its actions against charges of patent infringement." *Kahn*, 889 F.2d at 1081; *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (emphasis added); *Tillotson Corp.*, 2007 WL 1247121, at *1-3. Although the ITC Action is a later-filed suit, it is the true "manufacturer's suit"[3] and the instant case is fairly characterized as a "customer suit." Thus, the ITC investigation should take precedence.

Contrary to its representations to this Court and to Tillotson, Ansell HC does not manufacture *any* of the nitrile gloves at issue. *See* D.I. 83, at Exhibit T. Instead, Ansell is merely one of many importers or "customers" of the subject gloves it distributes. *See generally* D.I. 79. Thus, when originally proffering its "customer suit" exception argument in the first-filed Georgia suit, Ansell had no greater interest in litigation or choice of forum than the parties in that first-filed suit. *See Kash 'N Gold, Ltd. v. ATSPI*, 690 F. Supp 1160, 1164 (E.D.N.Y. 1988) (no such greater interest inference where party was an importer, not manufacturer); *BBC Int'l Ltd. v. Lumino Designs, Inc.*, 441 F. Supp. 2d 438, 443 (E.D.N.Y. 2006) (party was an

---

[3] The Georgia Suit is also a true manufacturer's suit, but none of the defendants in that litigation have been served. If they were served, each of these defendants would be entitled to an automatic stay under 35 U.S.C. §1659. Also, as noted above, Tillotson has agreed to voluntarily dismiss without prejudice all of the Ansell entities from that suit.

importer and reseller, not a manufacturer of the allegedly infringing goods). Indeed, as the Court

in Georgia has stated with respect to Ansell HC's alleged manufacturer and/or supplier status:

> In this case, Ansell [HC] is admittedly *not the manufacturer of the*
> *allegedly infringing gloves* bought by the defendants. The question then is
> whether Ansell [HC]'s interests are as great as a manufacturer in relation
> to the defendants' interest. This court concludes that they are not.

*Tillotson Corp.*, 2007 WL 1247121, at *3 (emphasis added). Ansell HC should not now be

permitted to leverage its improperly claimed manufacturer status to preclude a stay of the instant

action.

By virtue of the ITC investigation, the true manufacturers of the nitrile gloves at issue

will now have an opportunity to protect their "presumed greater interest" at the ITC. *Kahn*, 889

F.2d at 1081; *Honeywell Int'l Inc.*, 2005 WL 2465898, at *2 (proceeding with a manufacturer

first "is not a complication to be resisted."). At the ITC, manufacturers such as Perusahaan

Getah[4] and Seal Polymer that provide gloves to Ansell HC will directly address the issues of

infringement and validity with Tillotson. *See,* Exhibit 1, pp. 17-19, 69; 25-27, 77-78. In all

likelihood, the nitrile glove that Ansell HC calls its *Micro-Touch* gloves is the same generic

glove that Perusahaan Getah or Seal Polymer supplies to *all* of their customers—those customers

then package those generic gloves into customer-specific packages. The superior footing and

greater interest, however, reside with the true manufacturers—Perusahaan Getah and Seal

Polymer—not Ansell HC.

Ansell HC can be expected to again argue that its status as a "supplier" gives it

manufacturer-type status. This argument fails. As the Georgia Court has noted, "the cases cited

by Ansell, and other cases, make clear that the label of 'supplier' is not automatically

---

[4] Perusahaan Getah is a subsidiary of Kossan Rubber Industries Bhd, a respondent in the ITC
investigation. *See* Exhibit 1, at 17-20, 69-71. Seal Polymer is a named respondent. *Id.* at 25-27,
77-78.

interchangeable with that of 'manufacturer.'" *Tillotson Corporation*, 2007 WL 1247121, at *2. Rather, the important consideration is whether Ansell HC's interest is as great as a manufacturer's. As the Georgia Court concluded, it is not. *Id.* at *3. Ansell HC is simply one of many suppliers, all of whose interests are second to that of the manufacturers present in the ITC proceeding. As the Georgia Court stated in distinguishing *Rhode Gear U.S.A. v. Frank's Spoke N. Wheel, Inc.*—a case relied on by Ansell HC—"Ansell is not the sole supplier of the glove at issue in its case. Rather, [unlike the sole supplier in *Rhode Gear*] it is one of many suppliers of the allegedly infringing glove in the United States." *Id.* at 3; *Rhode Gear U.S.A. v. Frank's Spoke N. Wheel, Inc.*, 225 U.S.P.Q. 1256 (D. Mass. Feb. 14, 1985).

### 2.    Staying The Instant Action Will Greatly Simplify The Issues Between The Parties and Before The Court.

Courts have recognized that an ITC proceeding can significantly narrow and define the issues in a parallel district court action. *E.g. Iljin USA v. NTN Corp.*, No. 06-10145, 2006 WL 568351, at * 2 (E.D. Mich. March 7, 2006); *Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*, No. 5:05CV156, 2005 WL 1126750, at *3-4 (N.D. Ohio April 29, 2005). During an ITC investigation, for instance, "the ITC will make rulings concerning claim construction, invalidity and relevant prior art" resulting in fewer issues for the Court to resolve. *Flexsys Americas, LP*, 2005 WL 1126750, at *3. By narrowing and defining the issues, judicial resources are substantially conserved. *Id.* (noting "that a temporary stay will result in tremendous savings of judicial time and resources"); *Iljin USA*, 2006 WL 568351, at *4 ("Indisputably, it would conserve judicial resources to allow the ITC investigation to at least narrow the issues before this case proceeds, with the added benefit of potentially avoiding conflicting decisions.").

In *Flexsys Americas, LP*, for example, the court granted defendant's motion for a stay with regard to a patent that was not even directly part of the ITC's investigation. *Flexsys*

*Americas, LP*, 2005 WL 1126750, at *2, 4. In doing so, the Court noted that, if it allowed the case to continue, it "would essentially be relitigated" with overlapping discovery, re-depositions of witnesses, and a duplication of many hearings and conferences.[5] *Id.* at 4. The Court further stated that a temporary stay would "result in a tremendous savings of judicial time and resources." *Id.* at *4.

Here, because the ITC action and the instant action involve the same '616 Patent and the same gloves manufactured for Ansell HC and Ansell PP, the issues before the ITC will be identical to those presented in this case. Indeed, the ITC will address substantive issues regarding claim construction, validity of the '616 Patent, and Ansell HC's and Ansell PP's infringement of that patent—all issues presented in this case. Because the ITC trial is set to commence in February 2008 (and conclude by at least March 2008), all of these issues will be addressed well before the corresponding dates in this case. In fact, trial at the ITC should be completed before expert discovery in this case is completed.

The same issues and factual situation involved in this litigation are currently before the ITC. To simultaneously litigate the same issues of infringement and validity on both fronts would essentially double the effort for both parties. Such a scenario would also unnecessarily waste judicial resources.

---

[5] The *Flexsys* Court based its decision on *Alloc, Inc. v. Unilin Décor N.V.*, C.A. No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003), which involved a motion to stay a patent infringement action pending the outcome of a reexamination proceeding of a related patent. The court granted the defendant's request for stay, citing the need for efficiency. In doing so, the Court noted that "it is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation." *Id.* at *2. The court goes further to say that, "such a refinement of the issues will benefit both parties by reducing litigation costs" and "this approach will also best conserve the court's scare resources." *Id.*

### 3.   Staying This Proceeding Will Not Unduly Prejudice or Present A Clear Tactical Disadvantage To Ansell.

One factor to be considered is any prejudice to the non-moving party, and more specifically, whether a stay would present a clear tactical disadvantage to the non-moving party. *Honeywell Int'l Inc.*, 2005 WL 2465898 at *2. As one court has noted, "[i]n deciding a motion to stay, the Court must weigh the competing interests: i.e., the possible damage of granting a stay versus the hardship or inequity of forcing a case onward . . . ." *Clintec Nutrition Co. v. Abbott Lab.*, No. 94 C 3152, 1995 WL 228988, *1 (N.D. Ill. April 14, 1995) (citing *Teradyne, Inc. v. Hewlett-Packard Co.*, No. 91-C-0344, 1993 U.S. Dist. LEXIS 14601 (N.D. Cal. Jan. 7, 1993)).

There is no prejudice to Ansell HC and Ansell PP resulting from the proposed stay. In fact, the only prejudice is to Tillotson to the extent it must wait for a trial on its remedies. But because the ITC proceeding will narrow and define the substantive issues between the parties, Tillotson is willing to incur a delay, if any, regarding its available damages or injunctive relief. Depending on the outcome of the ITC proceeding, the parties and the Court will be in a better position to focus the scope of any such injunction if an injunction is warranted. Similarly, because decisions of the ITC are not binding on this Court, delaying a decision on Ansell HC's request for an injunction presents no tactical disadvantage to Ansell HC. *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996).

### 4.   Discovery In This Case, Which Is Far From Complete, Is Soon To Be Surpassed By Discovery At The ITC.

All discovery in the ITC proceeding will be completed before the trial date of February 25, 2008. *See* Exhibit 5, at p. 2. In contrast, discovery in this case will not conclude until at least late May/early June 2008. *See* D.I. 50. And unlike the present case, discovery at the ITC will involve the true manufacturers of the gloves at issue. Given the presence of these manufacturers—and the rapid pace of discovery in the ITC proceeding—discovery at the ITC is

13

expected to be much more comprehensive, including as to Ansell HC's *Micro-Touch* and other nitrile gloves. In any event, the discovery that has occurred in this case will be available to the parties at the ITC.

To date, the only discovery that has occurred in this case—and the Ansell PP case—involves the exchange of interrogatories, requests for production of documents, and requests for admissions. And even though fact depositions may commence on August 1, 2007, neither party has noticed depositions. At present, Ansell HC has generally failed to provide information on any gloves other then its *Micro-Touch* gloves. Ansell HC has also failed to provide basic manufacturer-type formulation information regarding its gloves. Since Ansell HC is not a nitrile glove manufacturer, Tillotson must presume that Ansell HC does not actually possess such formulation information. Tillotson expects to raise these discovery issues in a forthcoming motion to compel. If this Court deems that the instant motion to stay is not warranted, Tillotson may be forced to seek additional time to complete necessary fact discovery.

### 5.    There Is No Trial Date Set For This Action.

As noted above, the trial before the ITC commences in February 2008. Trial date in the present action is not set yet, but at the earliest would likely occur sometime after the parties' claim construction hearing in late July 2008.

### C.    Granting A Stay Is Also Consistent With Congress' Intent.

In the context of an ITC investigation, Congress—through its enactment of 28 U.S.C. §1659—has recognized the benefits of staying a related district court action pending the resolution of the Commission's investigation. Specifically, § 1659 provides that:

> In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the commission, the

> district court shall stay, until the determination of the Commission
> becomes final, proceedings in the civil action with respect to any claim
> that involves the same issues involved in the proceeding before the
> Commission.

28 U.S.C. § 1659.  Although § 1659 applies to a party that is also *a respondent* in the proceeding

before the ITC, the very purpose of § 1659 "is to prevent separate proceedings on the same

issues occurring at the same time."  *In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007)

(discussing the legislative history of § 1659).  As the Federal Circuit recently explained:

> Frequently this will mean that 'a district court hearing an infringement
> case [will] stay its proceedings . . . with respect to any claim that involves
> the same issues as those pending before the Commission,' but the statute's
> purpose—of avoiding litigation in two forums at once—is not limited to
> proceedings that are before the Commission itself but more broadly
> extends to proceedings before a court of appeals on review.

*Id.* (relying on legislative history).  Based on this reasoning, the Federal Circuit determined that a

stay under § 1659 should remain in effect until all ITC proceedings are exhausted, including

appeals. *Id.*

Here, Tillotson is not seeking a stay of this action until all proceedings before the

commission are exhausted.  Rather, Tillotson is seeking a stay until the ITC renders its final

decision, which is targeted to occur on September 8, 2008.  In this case, it is unlikely that trial

will have even begun by that date.

Tillotson seeks "to prevent separate proceedings on the same issues occurring at the same

time." *Id.*  For example, depositions in this case may commence on August 1 and will likely run

through this fall (absent any change to the current scheduling order).  Depositions in the ITC

proceeding will also occur this fall in order to meet the current February 25 trial deadline.  If this

case is not stayed, the parties will be deposing each others' witnesses in *both* the ITC

investigation *and* this case.  Such a duplication of effort is unnecessary.  Even though Tillotson is

the Complainant before the ITC—as opposed to a respondent—a stay is nonetheless appropriate to prevent separate proceedings on the same issues.

## VI.    CONCLUSION

For the foregoing reasons, it is in the best interest of judicial economy, justice, and all parties that the present action be stayed pending the outcome of the ITC action.

POTTER ANDERSON & CORROON LLP

Of-Counsel:

By:  /s/ Richard L. Horwitz
    Richard L. Horwitz (#2246)

Anthony B. Askew
Steve M. Schaetzel
Katrina M. Quicker
Jason M. Pass
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
(404) 572-4600

Kenneth L. Dorsney (#3726)
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE  19899
(302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

Dated:  July 12, 2007
806690 / 30675

*Attorneys for Defendant*
*Tillotson Corporation*

16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### <u>CERTIFICATE OF SERVICE</u>

I, Richard L. Horwitz, hereby certify that on July 12, 2007, the attached document was

hand delivered to the following persons and was electronically filed with the Clerk of the Court

using CM/ECF which will send notification to the registered attorney(s) of record that the

document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on July 12, 2007, I have Electronically Mailed the documents to the

following:

Thomas B. Kenworthy
David W. Martson Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
tkenworthy@morganlewis.com
dmarston@morganlewis.com

> /s/ Richard L. Horwitz
> Richard L. Horwitz
> Kenneth L. Dorsney
> Potter Anderson & Corroon LLP
> Hercules Plaza – Sixth Floor
> 1313 North Market Street
> P.O. Box 951
> Wilmington, DE 19899-0951
> (302) 984-6000
> rhorwitz@potteranderson.com
> kdorsney@potteranderson.com

753118 / 30675

# EXHIBIT 1

# KING & SPALDING

King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC  20006-4706
Phone: 202/737-0500
Fax:  202/626-3737
www.kslaw.com

Gilbert B. Kaplan
Direct Dial: 202-661-7981
gkaplan@kslaw.com

May 30, 2007

## REQUEST FOR CONFIDENTIAL TREATMENT

**VIA HAND DELIVERY**

The Honorable Marilyn R. Abbott
Secretary
U.S. International Trade Commission
500 E Street, S.W., Room 112
Washington, D.C. 20436

**PUBLIC VERSION**
Confidential business information has been
deleted from pages 1-2 of Exhibit 7 and
Appendix A.

2007 MAY 30  PM 3: 38

OFC OF THE SECRETARY
US INTL TRADE COMM
RECEIVED

        Re:    **Inv. No. 337-TA-___, In the Matter of Certain Nitrile Gloves**

Dear Secretary Abbott:

        In accordance with the requirements of 19 C.F.R. § 201.6 concerning Confidential
Business Information, Tillotson Corporation *doing business as* Best Manufacturing Corporation
("Tillotson"), hereby requests confidential treatment of the bracketed business information
contained in Confidential Exhibit 7 and Confidential Appendix A.

        The information for which confidential treatment is sought is proprietary commercial and
technical information, specifically:

    1.  Data reflecting Tillotson's expenditures in plant, equipment, labor, capital, and
        research and development in connection with its domestic industry; and

    2.  Tillotson's standard license agreement

        The business information described herein qualifies as confidential business information
because substantially identical information is not available to the public and its disclosure would
likely impair the Commission's ability to obtain information necessary to perform its statutory
functions as well as cause substantial harm to the competitive position of the submitter.  19
C.F.R. §§ 201.6(a), (b)(3)(ii), (b)(3)(iii).

The Honorable Marilyn R. Abbott
May 30, 2007
Page 2

      I certify that information substantially identical to the information for which we are requesting confidential treatment is not reasonably available to the public.  19 C.F.R. § 201.6(b)(3)(iii).

      Thank you for your attention to this matter.  Please contact undersigned if there are any questions pertaining to this submission.

                Respectfully submitted,

                Gilbert B. Kaplan
                Jeffery M. Telep
                Taryn L. Koball
                Counsel for Tillotson Corporation

Subscribed and sworn to before me on this 30th day of May, 2007.

Notary Public
My Commission Expires September 30, 2010
City of Washington,
District of Columbia

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| CERTAIN NITRILE GLOVES | ) |
| | ) |
| | ) |

Investigation No.
337-TA-____

## VERIFIED COMPLAINT UNDER SECTION 337
## OF THE TARIFF ACT OF 1930, AS AMENDED

**Complainant:**

Tillotson Corporation
*doing business as*
Best Manufacturing Company
579 Edison Street
Menlo, GA 30731
Telephone: (706) 862-2302

**Counsel for Complainant**

Gilbert B. Kaplan, Esq.
Jeffrey M. Telep, Esq.
Taryn L. Koball, Esq.
  *Member of Virginia Bar only, practice
  directly supervised as required by D.C. Bar
King & Spalding LLP
1700 Pennsylvania Ave, NW
Suite 200
Washington, DC 20006-4706
Telephone: (202) 737-0500
Fax: (202) 626-3737

Anthony B. Askew, Esq.
Katrina M. Quicker, Esq.
Jason M. Pass, Esq.
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Fax: (404) 572-5100

**Proposed Respondents:**

Top Glove Corporation Bhd., Lot 4969, Jalan
Teratai, Batu 6, Off Jalan Meru, 41050 Klang,
Selangor D.E., Malaysia;

Ansell Ltd., 3/678 Victoria Street, Richmond,
Victoria 3121 Australia;

Beijing Huateng Rubber Plastic, Ciqu
Industrial Zone, Tongzhou District, Beijing,
China 101111;

Glovco (M) Sdn. Bhd., Lot 760, Jalan Haji
Sirat, Off Jalan Meru Klang, 42100, Selangor
D.E., Malaysia;

Hartalega Holdings Bhd., Lot 9, Jalan Kuang
Bulan, Taman Kepong Industrial Estate, 52100
Kuala Lumpur, Malaysia;

Ideal Healthcare Group Co. Ltd., Bldg. 18, No.
1, South Section of Huacheng (W) Road,
Ningbo, China 31500;

JDA (Tianjin) Plastic Rubber Co. Ltd., No. 17
Hai Bin No. 7 Rd, Tianjin Port Free Trade
Zone, Tianjin, 300456, China;

Kossan Rubber Industries Bhd., Lot 16632,
Batu 5 1/4, Jalan Meru, 41050 Klang, Selangor
D.E., Malaysia;

Laglove (M) Sdn. Bhd., Lot 478, Jalan
Simpang Balak, Off B, 43000 Kajang
Selangor, Malaysia;

PT Medisafe Technologies, JL. Batang Kuis,
GG Tambak Rejo/PSR IX, Desa Buntu
Bedimbar, Tanjung Morawa, Medan, Sumatera
Utar, Indonesia;

PT Shamrock Manufacturing Corporation,
Jalan Pemuda No. 11, Medan- 20151 North
Sumatra, Indonesia;

Riverstone Resources Sdn. Bhd., Lot 21909,
No. 5, Lorong Helang Hindik, Kepong Baru
Industrial Estate, 52100 Kuala Lumpur,
Malaysia;

Seal Polymer Industries Bhd., Lot 72706, Jalan
Lahat, Kawasan Perindustrian Buki Merah,
31500 Lahat, Perak, Malaysia;

Smart Glove Holdings Sdn. Bhd., Lot 6487,
Batu 5 3/4, Sementajln Kapar, 42100 Klang,
Selangor D.E., Malaysia;

Supermax Corporation Bhd., Lot 38, Putra
Industrial Park, Bukit Rahman Putra, 47000
Sungai Buloh, Selangor D.E., Malaysia;

Yee Lee Corporation Bhd., Lot 85 Jalan
Portland, Tasek Industrial Estates, 31400 Ipoh
Perak Darul Ridzuan, Malaysia;

YTY Holdings Sdn. Bhd., Lot 2935B, Kg Batu
9 Kebun Baru, Jalan Masjid, 42500 Telok
Panglima Garang, Kuala Langat, Selangor
D.E., Malaysia;

Adenna, Inc., 12216 McCann Drive, Santa Fe
Springs, CA 90670;

Basic Medical Industries Inc.; 12390 East End
Ave., Chino, CA 91710;

Cypress Medical Products, LLC ("Cypress"),

1202 South Rt. 31, McHenry, IL 60050 (agent, Richard M. Horwood, 180 N. Lasalle St, Suite 3700, Chicago IL 60601;

Darby Group Companies, Inc., 300 Jericho Quadrangle, Jericho, NY, 11753;

Dash Medical Gloves, Inc., 1018 South 54th St., Franklin, WI 53132 (agent, Robert J Sullivan, at 1018 South 54th St., Franklin, WI 53132);

Delta Medical Systems, Inc. d/b/a The Delta Group, 6865 Shiloh Road East, Suite 400, Alpharetta, GA 30202;

Dentexx/First Medica Infection Control Assoc., 3704C Boren Dr., Greensboro, NC 27407;

Dynarex Corp., 10 Glenshaw St., Orangeburg, NY 10962;

Liberty Glove and Safety Co., 433 Cheryl Lane City of Industry, CA 91789 (agent for service, Sonia Heh, at 21880 Buckskin Dr., Walnut, CA 91789);

Magla Products LLC, 59 South St., PO Box 1934, Morristown, NJ 07960;

Protective Industrial Products, Inc., Northeastern Industrial Park, Bldg 4, PO Box 19, Guilderland Center, NY 12085 (agent for service Germaine Curtin, at 10715 Indian Village Dr., Alpharetta, GA 30022);

QRP, Inc. d/b/a QRP Gloves, Inc., P.O. Box 28802, Tucson, AZ 85726 (registered agent, Daniel J. Quigley, 2730 E. Broadway #160, Tucson, AZ 85716);

Tronex International, Inc., One Tronex Centre, 3 Luger Rd., Denville, NJ 07834; and

West Chester Holdings, Inc., 100 Corridor Park Drive, Monrowe, Ohio, 45050

## TABLE OF CONTENTS

TABLE OF EXHIBITS ....................................................................... v

I.    INTRODUCTION ....................................................................... 1

II.   PARTIES ..................................................................................... 2

      A.    Complainant Tillotson Corporation ....................................... 2

      B.    Proposed Respondents ....................................................... 3

            Top Glove Corporation Bhd. ............................................. 4

            Ansell Ltd. .................................................................... 8

            Beijing Huateng Rubber Plastic ........................................ 12

            Glovco (M) Sdn. Bhd. ..................................................... 12

            Hartalega Holdings Bhd. ................................................. 13

            Ideal Healthcare Group Co. Ltd. ....................................... 14

            JDA (Tianjin) Plastic Rubber Co. Ltd. ................................ 15

            Kossan Rubber Industries Bhd. ......................................... 17

            Laglove (M) Sdn. Bhd. .................................................... 20

            PT Medisafe Technologies ................................................ 21

            PT Shamrock Manufacturing Corporation ............................. 22

            Riverstone Resources Sdn. Bhd. ........................................ 25

            Seal Polymer Industries Bhd. ........................................... 26

            Smart Glove Holdings Sdn. Bhd. ....................................... 28

            Supermax Corporation Bhd. ............................................. 31

            Yee Lee Corporation Bhd. ................................................ 34

            YTY Holdings Sdn. Bhd. .................................................. 37

i

Adenna, Inc. ................................................................... 39

Basic Medical Industries, Inc. ......................................... 40

Cypress Medical Products, LLC ....................................... 40

Darby Group Companies, Inc. .......................................... 41

Dash Medical Gloves, Inc. ............................................... 42

Delta Medical Systems, Inc. ............................................ 43

Dentexx/ First Medica Infection Control Association ................. 44

Dynarex Corporation ...................................................... 44

Liberty Glove and Safety Co. ........................................... 45

Magla Products, LLC ...................................................... 46

Protective Industrial Products, Inc. .................................... 46

QRP, Inc. ..................................................................... 47

Tronex International, Inc. ................................................. 47

West Chester Holdings, Inc. ............................................. 48

III.    TECHNOLOGY AND PRODUCTS AT ISSUE ................................. 48

IV.    PATENTS AT ISSUE AND NON-TECHNICAL DESCRIPTION OF THE
PATENTS ................................................................... 50

A.    Identification of the '616 Patent ......................................... 51

B.    Non-Technical Description of the '616 Patent .......................... 51

C.    Foreign Counterparts ...................................................... 52

D.    Licenses ................................................................... 52

V.    UNLAWFUL AND UNFAIR ACTS OF PROPOSED RESPONDENT -
PATENT INFRINGEMENT ...................................................... 52

VI.    INSTANCES OF UNFAIR IMPORTATION AND SALE ................... 53

Top Glove Corporation Bhd. ............................................. 53

Ansell Ltd. ........................................................….......... 60

Beijing Huateng Rubber Plastic ...................................... 61

Glovco (M) Sdn. Bhd. ................................................... 61

Hartalega Holdings Bhd. ............................................... 64

Ideal Healthcare Group Co. Ltd. .................................... 64

JDA (Tianjin) Plastic Rubber Co. Ltd. ............................ 66

Kossan Rubber Industries Bhd. ...................................... 68

Laglove (M) Sdn. Bhd. .................................................. 72

PT Medisafe Technologies .............................................. 73

PT Shamrock Manufacturing Corporation ........................ 74

Riverstone Resources Sdn. Bhd. .......................................75

Seal Polymer Industries Bhd. ......................................... 77

Smart Glove Holdings Sdn. Bhd. .................................... 78

Supermax Corporation Bhd. ........................................... 79

Yee Lee Corporation Bhd. ............................................. 81

YTY Holdings Sdn. Bhd. ............................................... 83

Adenna, Inc. ............................................................... 85

Basic Medical Industries, Inc. ........................................ 86

Cypress Medical Products, LLC ...................................... 86

Darby Group Companies, Inc. ........................................ 87

Dash Medical Gloves, Inc. ............................................. 89

Delta Medical Systems, Inc. ........................................... 89

Dentexx/ First Medica Infection Control Association ................. 89

Dynarex Corporation ........................................................ 91

Liberty Glove and Safety Co. ............................................91

Magla Products, LLC ....................................................... 92

Protective Industrial Products, Inc. ...................................... 93

QRP, Inc. .......................................................................93

Tronex International, Inc. ...............................................94

West Chester Holdings, Inc. ............................................. 95

VII.    HTS...........................................................................…... 96

VIII.   RELATED LITIGATION ............................................................96

IX      DOMESTIC INDUSTRY............................................................101

X.      GENERAL EXCLUSION ORDER .................................................103

XI.     RELIEF ...............................................................................105

## EXHIBIT LIST

| Exhibit 1: | Public | Copy of U.S. Patent No. Re. 35,616 |
| Exhibit 2: | Public | Copy of Assignment of the U.S. Patent No. Re. 35,616 to Tillotson |
| Exhibit 3: | Public | Claims Chart Showing Use of U.S. Patent No. Re. 35,616 by Tillotson |
| Exhibit 4: | Public | Claims Chart Showing Infringement of Claims 1, 17, 18, and 19 of the '616 Patent by Respondents' Nitrile Gloves |
| Exhibit 5: | Public | Licensees of Tillotson's Nitrile Gloves |
| Exhibit 6: | Public | Declaration of Donald Groce |
| Exhibit 7: | Confidential | Declaration in Support of Domestic Industry |

## APPENDICES AND PHYSICAL SAMPLES

| App. A: | Confidential | License Agreements |
| App. B: | Public | Certified Copy of Prosecution History for U.S. Patent No. Re. 35,616 |
| App. C: | Public | Each reference document mentioned in the prosecution history of the application leading to the issuance of U.S. Patent Nos. Re. 35,616 |

## I.     INTRODUCTION

1.     Complainant Tillotson Corporation, d/b/a/ Best Manufacturing Company, ("Tillotson") files this complaint pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), and respectfully requests that the U.S. International Trade Commission ("ITC") commence an investigation into the unlawful importation into the United States, the sale for importation within the United States, and/or the sale within the United States after importation of certain nitrile gloves that utilize, without Tillotson's authorization, the invention claimed in Tillotson's valid United States patent.

2.     The proposed respondents are manufacturers, exporters, importers, distributors for importation and/or distributors after importation into the United States of nitrile gloves, (collectively "Respondents").

3.     Upon information and belief, Respondents manufacture, import into the United States, use within the United States, offer for sale within the United States, and/or sell after importation certain nitrile gloves that utilize, without Tillotson's authorization, the invention described and claimed in Tillotson's valid United States patent.

4.     Through the manufacture, importation, use, and/or sale of the accused nitrile gloves of the types described herein, respondents have infringed and are infringing United States Patent No. Re. 35,616 ("the '616 patent"), entitled "Elastomeric Covering Material and Hand Glove Made Therewith," owned by Tillotson.

5.     Respondents' activities regarding importation into the United States, offering for sale within the United States, using within the United States, or selling within the United States after importation of certain nitrile gloves manufactured abroad and utilizing the invention

described and claimed in the '616 patent are unlawful and constitute infringement of the valid and enforceable '616 patent in violation of Section 337.

6.      Tillotson's United States manufacturing and licensing operations qualify as an industry in the United States relating to articles protected by the '616 patent, within the meaning of 19 U.S.C. § 1337(a)(2).

7.      Tillotson seeks as permanent relief a general exclusion order excluding from entry into the United States all nitrile gloves that are imported into the United States, sold for importation within the United States, and/or sold within the United States after importation that utilize, without Tillotson's authorization, the invention claimed in one or more of the claims of the '616 patent.  In the alternative, Tillotson seeks as permanent relief a limited exclusion order barring from entry into the United States all Respondents' nitrile gloves that utilize, without Tillotson's authorization, the invention claimed in one or more of the claims of the '616 patent. Tillotson also seeks a cease and desist order pursuant to 19 U.S.C. § 1337(f) prohibiting each Respondent and their related companies from engaging in the importation, use, offering for sale, the sale after importation of, or otherwise transferring within the United States, nitrile gloves made in accordance with the invention claimed in the '616 patent.

## II.      THE PARTIES

### A.      Complainant

8.      Complainant, Tillotson, is a privately held company with its corporate headquarters in Lexington, Massachusetts, and its manufacturing headquarters in Menlo, Georgia.  For over fifty years, Tillotson has been an innovative leader in developing, manufacturing, and supplying hand protection to industrial, medical, and surgical professionals worldwide.

9.    Tillotson manufactures hand gloves according to the technology described and claimed in the '616 patent. The Tillotson hand gloves are made from a nitrile butadiene rubber formulation in accordance with the '616 patent. Those gloves are substantially impermeable to water, have a relatively high tensile strength, have thickness and elastic properties that permit them to be stretched to fit closely about the hand, conform to the shape of a hand when stretched to fit about the hand, and then relax after being stretched to fit closely about the hand so that the pressure exerted on the hand by the gloves is substantially reduced.

10.    Tillotson sells its patented nitrile gloves directly to customers and to distributors who in turn sell to customers such as health care providers, including dentists, physicians, nurses, and assistants; and health care institutions such as hospitals and medical clinics. Tillotson also sells its nitrile gloves to industrial customers such as security personnel, including law enforcement agency personnel, and others; communicable disease center personnel; precision component manufacturing personnel and other industrial personnel for which there is a risk of contamination of the manufactured component or a risk of exposure to conditions that require hand protection; and to customers who are concerned about an allergic reaction of workers or patients resulting from exposure to natural rubber hand gloves.

11.    Tillotson generates significant revenue from sales of products manufactured in accordance with the '616 patent. Tillotson's long-term financial success depends, in large part, on its ability to establish, maintain, and protect its proprietary technology through enforcement of its patent rights.

### B.    Proposed Respondents

12.    Upon information and belief, proposed respondents are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the

'616 patent ("nitrile gloves"). Certain wholly-owned or majority-owned subsidiaries or affiliates of proposed respondents may also be involved in the manufacture, importation, sale for importation, offer for sale, sale and/or use after importation within the United States of nitrile gloves as described and claimed in the '616 patent. Tillotson may request that one or more of these entities be added as additional respondents to this investigation. The investigation may also reveal potential respondents who were previously unknown, whose gloves samples were unavailable to Tillotson for testing, or whose significance was hidden through the use of freight forwarding agents, confidential bills of lading, or otherwise. Tillotson may request that these entities be added as additional respondents.

13.    With regard to the Respondents, Tillotson alleges the following upon information and belief:

### TOP GLOVE CORPORATION BHD.

14.    Respondent Top Glove Corp. Bhd. is located at Lot 4969, Jalan Teratai, Batu 6, Off Jalan Meru, 41050 Klang, Selangor D.E., Malaysia. Respondent Top Glove Corp. Bhd. is the parent corporation of the following subsidiaries: Top Glove Sdn. Bhd., TG Medical Sdn. Bhd., Great Glove Sdn. Bhd., Medi-Flex Limited d/b/a Flexitech Sdn. Bhd., TG Medical (USA) Inc., and Great Glove (USA) Inc. Through its subsidiaries, Top Glove Corp. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

15.    Top Glove Sdn. Bhd. is a wholly-owned subsidiary of Respondent Top Glove Corp. Bhd. Top Glove Sdn. Bhd. is located at Lot 4968, Jalan Teratai, Batu 6, Off Jalan Meru, 41050 Klang, Selangor D.E., Malaysia. Top Glove Sdn. Bhd is engaged in the manufacture,

importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

16.    Top Glove Sdn. Bhd. has obtained from the United States Food and Drug Administration ("FDA") clearance to market its nitrile gloves within the United States via two 510(k)[1] premarket notifications: K983816 (titled "Nitrile Latex Powdered Examination Glove") and K983825 (titled "Nitrile Latex Powder Free Examination Glove").  Previously, Top Glove Sdn. Bhd.'s U.S. agent for service for the FDA was David Lim, Managing Director of TG Medical (USA) Inc.  Top Glove Sdn. Bhd.'s present U.S. agent for service for the FDA is Quee Choo Chadwick, President, Great Glove (USA) Inc.

17.    TG Medical Sdn. Bhd. is a wholly-owned subsidiary of Respondent Top Glove Corp. Bhd. TG Medical Sdn. Bhd. is located at Lot 5091, Jalan Teratai, Batu 5, Off Jalan Meru, 41050 Klang, Selangor D. E., Malaysia.  TG Medical Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

18.    TG Medical Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via three 510(k) premarket notifications: K992841 (titled "TG

---

[1]    The FDA considers medical nitrile gloves Class I medical devices.  As such, the FDA must "clear" a new or modified medical nitrile glove before such a glove may be legally marketed in the United States. *See generally* Guidance for Industry and FDA—Medical Glove Guidance Manual, *available at* http://www.fda.gov/cdrh/dsma/135.html#_Toc458914416.    New or modified medical nitrile gloves are cleared to market through the filing of a 510(k) Pre-Market Notification submission with the FDA.   The 510(k) Pre-Market Notification submission identifies characteristics of the new or modified medical device as compared to a medical device—with a similar use—that is already legally marketed in the United States. If the FDA determines that the new or modified device is "substantially equivalent" to a device already legally marketed in the United States, it will "clear" the new or modified device for marketing. *See id.*

Medical Powdered Nitrile Blue Examination Gloves"), K992360 (titled "TG Medical Powdered Nitrile Examination Gloves"), and K990668 (titled "Powder Free Blue Nitrile Glove"). Previously, TG Medical Sdn. Bhd.'s U.S. agent for service for the FDA was Dorothy Ressel of TG Medical (USA) Inc. Presently, TG Medical Sdn. Bhd.'s U.S. agent for service for the FDA is Quee Choo Chadwick, President, Great Glove (USA) Inc.

19.    Great Glove Sdn. Bhd. is a wholly-owned subsidiary of Respondent Top Glove Corp. Bhd. Great Glove Sdn. Bhd. is located at the same address as TG Medical Sdn. Bhd.: Lot 5091, Jalan Teratai, Batu 5, Off Jalan Meru, 41050 Klang, Selangor D. E., Malaysia. Great Glove Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

20.    Great Glove Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via two 510(k) premarket notifications: K052955 (titled "Nitrile Blue Powdered Examination Gloves") and K052956 (titled "Nitrile Blue Powder Free Examination Glove"). Presently, Great Glove Sdn. Bhd.'s U.S. agent for service for the FDA is Quee Choo Chadwick, President, Great Glove (USA) Inc.

21.    Medi-Flex Limited is a subsidiary of Respondent Top Glove Corp. Bhd. Medi-Flex Limited has manufacturing facilities operating under the name of Flexitech Sdn. Bhd., located at Lot 5071, Jalan Teratai, Batu 5 1/2, Off Jalan Meru, 41050 Klang, Selangor D. E., Malaysia and Lot 124 & 126, Jin Lapan, Kompleks Olak Lempit, 42700, Banting, Selangor D. E., Malaysia. Medi-Flex Limited is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

6

22.     Under its Flexitech Sdn. Bhd. tradename, Medi-Flex Limited has obtained from the FDA clearance to market its nitrile gloves within the United States via three 510(k) premarket notifications: K994416 (titled "Polymer Coated Powder Free Nitrile Examination Glove"), K990495 (titled "Powder Free Nitrile Examination Gloves"), and K990499 (titled "Prepowdered Nitrile Examination Gloves").

23.     Bright Element Sdn. Bhd. is a subsidiary of Respondent Top Glove Corp. Bhd. Subsidiary Bright Element Sdn. Bhd. is located at No. 5, Jalan USJ 3B/2, Subang Jaya, 47610 Selangor D. E., Malaysia. Subsidiary Bright Element Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

24.     Subsidiary Bright Element Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via two 510(k) premarket notifications: K063777 (titled "Able Nitrile Blue Powder Free Examination Glove") and K061074 (titled "Able Nitrile Blue Powdered Examination Glove").

25.     TG Medical (USA) Inc. is a wholly-owned subsidiary of Respondent Top Glove Corp. Bhd. TG Medical (USA) Inc. is located at 165 North Aspan Ave., Azusa, CA 91702. TG Medical (USA) Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

26.     TG Medical (USA) Inc. has obtained from the United States Patent and Trademark Office two trademark registrations: Registration No. 2560869 for "TOP GLOVE" when used for medical examination gloves and Registration No. 3009721 for "GREAT GLOVE" when used for medical examination gloves.

27.     Great Glove (USA) Inc. is a wholly-owned subsidiary of Respondent Top Glove Corp. Bhd. Great Glove (USA) Inc. is located at 1026 S. Marengo Ave, Number 5, Alhambra, CA 91803. Great Glove (USA) is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

**ANSELL LTD.**

28.     Respondent Ansell Ltd. is located at 3/678 Victoria Street, Richmond, Victoria 3121 Australia. Respondent Ansell Ltd. is the parent corporation of the following subsidiaries: Ansell (AMBI) Sdn. Bhd.; Ansell (Thailand) Ltd.; Ansell Lanka (Pvt.), Ltd.; Ansell Medical Sd.n. Bhd.; Ansell N.P. Sdn. Bhd.; Ansell Shah Alam Sdn. Bhd.; J.K. Ansell, Ltd.; Ansell Canada Inc.; Ansell Protective Products, Inc.; Ansell Healthcare Products, LLC; and Ansell Services, Inc. Through its subsidiaries, Ansell Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

29.     Subsidiary Ansell (AMBI) Sdn. Bhd. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell (AMBI) Sdn. Bhd. is located at Lot 8A Kulim Industrial Estate, 09000 Kulim, Kedah Darul Aman, Malaysia. Ansell (AMBI) Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

30.     Subsidiary Ansell (Thailand) Ltd. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell (Thailand) Ltd. is located at 110 Moo 4, Chalongkrung Road, Bankok, Thailand 10520. Ansell (Thailand) Ltd. is engaged in the manufacture, importation, sale for

importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

31.    Subsidiary Ansell Lanka (Pvt.), Ltd. is a wholly-owned subsidiary of Respondent Ansell Ltd.  Ansell Lanka (Pvt.), Ltd. is located at Biyagama Export Processing Zone, Biyagama, Sri Lanka.  Ansell Lanka (Pvt.), Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

32.    Subsidiary Ansell Medical Sdn. Bhd. is a wholly-owned subsidiary of Respondent Ansell Ltd.  Ansell Medical Sdn. Bhd. is located at Lot 80, Air Keroh Industrial Estate, Malaka, Malaysia 75450.  Ansell Medical Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

33.    Subsidiary Ansell N.P. Sdn. Bhd. is a wholly-owned subsidiary of Respondent Ansell Ltd.  Ansell N.P. Sdn. Bhd. is located at the same address as Subsidiary Ansell Medical Sdn. Bhd.: Lot 80, Air Keroh Industrial Estate, Malaka, Malaysia 75450.  Ansell N.P. Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

34.    Subsidiary Ansell Shah Alam Sdn. Bhd. is a wholly-owned subsidiary of Respondent Ansell Ltd.  Ansell Shah Alam Sdn. Bhd. is located at Lot 16, Persiaran Perusahaan, Section 23, Shah Alam, Selangor D.E., Malaysia 40000.  Ansell Shah Alam Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation,

sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

35.    Subsidiary J.K. Ansell Ltd. is a wholly-owned subsidiary of Respondent Ansell Ltd. J.K. Ansell Ltd. is located at Plot No. G-35&36, Midc Industrial Area, Walug, Aurangabad, Maharastra, India 431 136. J.K. Ansell Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

36.    Subsidiary Ansell Canada Inc. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell Canada Inc. is located 105 Rue Lauder Street, Cowansville, Quebec J2K 2K8 Canada. Ansell Canada Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

37.    Subsidiary Ansell Protective Products, Inc. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell Protective Products, Inc. is located 200 Schulz Drive, Red Bank, New Jersey 07701. Ansell Protective Products, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

38.    Subsidiary Ansell Healthcare Products, LLC is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell Healthcare Products, LLC is located at the same address as Subsidiary Ansell Protective Products, Inc.: 200 Schulz Drive, Red Bank, New Jersey 07701. Ansell Healthcare Products, LLC is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

39.    Subsidiary Ansell Healthcare Products, LLC. has obtained from the FDA clearance to market its nitrile gloves within the United States via five 510(k) premarket notifications: K042817 (titled "Micro-Touch Smooth Nitrile Powder-Free Blue Examination Gloves (Chemotherapy Use)"); K011593 (titled "Micro-Touch Nitrile Powder Free Synthetic Medical Examination Gloves");  K992768 (titled "Nitra-Touch Sterile Powder-Free Nitrile Medical Exam Gloves"); K982131 (titled "Nitra-Touch Powder-Free Nitrile Medical Examination Gloves"); and K965095 (titled "Nitra-Touch Powder-Free Nitrile Medical Examination Gloves").[2]

40.    Subsidiary Ansell Services, Inc. is a wholly-owned subsidiary of Respondent Ansell Ltd.  Ansell Services, Inc. is located at the same address as Subsidiary Ansell Protective Products, Inc. and Subsidiary Ansell Healthcare Products, LLC: 200 Schulz Drive, Red Bank, New Jersey 07701.  Ansell Services, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

41.    Respondent Ansell Ltd. and its subsidiaries have obtained from the United States Patent and Trademark Office approximately three-hundred fourteen (314) trademark applications/registrations which include, *inter alia*: Registration No. 2099153 for "TOUCH N TUFF" when used for protective gloves, Registration No. 2058103 for "TNT" when used for protective gloves, Registration No. 0761390 for "MICRO-TOUCH" when used for disposable gloves, and Registration No. 1886589 for "NITRA-TOUCH" when used for industrial gloves.

---

[2]    Three of these registrations are in the name of former Ansell Ltd. subsidiaries that were subsequently acquired by Ansell Healthcare Products, LLC and Ansell Protective Products, Inc.

## BEIJING HUATENG RUBBER PLASTIC

42.    Respondent Beijing Huateng Rubber Plastic ("Beijing Huateng") is located at Ciqu Industrial Zone, Tongzhou District, Beijing, China 101111.  Respondent Beijing Huateng is affiliated with, *inter alia,* Beijing Chemical Industry Group Rubber & Plastic Products Factory; Beijing Reagent Latex Products Co., Ltd.; Beijing Latex Factory; and Beijing Rubber & Plastics Products Factory.  All of these affiliates are located at the same address as Beijing Huateng. Beijing Huateng and these affiliates are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

## GLOVCO (M) SDN. BHD.

43.    Respondent Glovco (M) Sdn. Bhd. ("Glovco") is located at Lot 760, Jalan Haji Sirat, Off Jalan Meru Klang, 42100, Selangor D.E., Malaysia.  Respondent Glovco is affiliated with Glovco Holding Sdn. Bhd. located at the same address as Glovco.  Glovco has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

44.    Glovco has obtained from the FDA clearance to market its nitrile gloves within the United States via three 510(k) premarket notifications: K042898 (titled "Panthera N Powder Free Black Nitrile Gloves"), K021730 (titled "Glovco Brand Powder-Free Nitrile Examination Gloves"), and K021308 (titled "Glovco Powder-Free Nitrile Examination Gloves").

45.    Glovco has obtained from the United States Patent and Trademark Office one trademark registration: Registration No. 2570340 for "GLOVCO" when used for medical, surgical, and dental gloves.

## HARTALEGA HOLDINGS BHD.

46.     Respondent Hartalega Holdings Bhd. is located at Lot 9, Jalan Kuang Bulan, Taman Kepong Industrial Estate, 52100 Kuala Lumpur, Malaysia.   Respondent Hartalega Holdings Bhd. is the parent corporation of the following subsidiaries: Hartalega Sdn. Bhd. and Pharmatex USA, Inc. Through its subsidiaries, Hartalega Holdings Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

47.     Hartalega Sdn. Bhd. is a wholly-owned subsidiary of Respondent Hartalega Holdings Bhd. Hartalega Sdn. Bhd. is located at the same address as its parent company: Lot 9, Jalan Kuang Bulan, Taman Kepong Industrial Estate, 52100 Kuala Lumpur, Malaysia. Hartalega Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

48.     Hartalega Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via eleven 510(k) premarket notifications: K062950 (titled "Powder Free Sterile Nitrile Surgical Gloves (Blue)");  K063046 (titled "Nitrile Powder Free Examination Gloves (Green)"); K052583 (titled "Blue Powder Free Nitrile Examination Gloves"); K051777 (titled "Nitrile Powder Free Examination Gloves (Blue)"); K051778 (titled "Nitrile Powdered Examination Gloves (Blue)"); K050214 (titled "Nitrile Powder Free Examination Gloves (White)"); K050215 (titled "Nitrile Powdered Examination Gloves (White)"); K041391 (titled "Freeform Blue Powder-Free Nitrile Examination Gloves"); KO22671 (titled "Freeform Blue PowderFree Nitrile Examination Gloves"); K990283 (titled

"Blue PowderFree Nitrile Examination Gloves"); and K963804 (titled "Patient Examination Gloves: Nitrile Examination").

49.    Hartalega Sdn. Bhd. has also registered with the American Dental Association ("ADA") in order to market[3] the following nitrile gloves with the ADA's Seal of Acceptance: Elastik Powder Free Nitrile Examination Gloves and Elastic Powdered Nitrile Examination Gloves.

50.    Pharmatex USA, Inc. is a wholly-owned subsidiary of Respondent Hartalega Holdings Bhd.  Pharmatex USA, Inc. is located at 77530 Enfield Lane Bldg.1, Suite 203, Palm Desert, CA 92211, with an agent for service, Gregory Pak, at the same address.  Pharmatex USA, Inc. is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

51.    Pharmatex USA, Inc. has applied for a trademark registration with the United States Patent and Trademark Office for "PHARMATEX" Serial No. 78874867 when used for synthetic disposable gloves for medical and dental use.

## IDEAL HEALTHCARE GROUP CO. LTD.

52.    Respondent Ideal Healthcare Group Co. Ltd. is located at Bldg. 18, No. 1, South Section of Huacheng (W) Road, Ningbo, China 31500.  Respondent Ideal Healthcare Group Co. Ltd. is affiliated with Ideal Medical Industries, Co. Ltd. and Yujiang Ideal Medical Industries

---

[3]  The American Dental Association allows certain manufacturers and distributors to market their products with the ADA's Seal of Acceptance.  The ADA Seal of Acceptance may not be used on or in connection with a product until after it has been granted the Seal of Acceptance by the Council on Scientific Affairs and only after a license agreement has been signed by the manufacturer or distributor of the accepted product.  Any manufacturer or distributor may submit its products to the Council to be evaluated and considered for the Seal of Acceptance.

Co., Ltd. Ideal Healthcare Group Co. Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

53.    Affiliate Ideal Medical Industries Co., Ltd. is located at Block 18, Baiyunshanzhuang, 1 # Huancheng W. Road, South End, Ningbo, China 315000. This appears to be the same address as Respondent Ideal Healthcare Group Co., Ltd. Ideal Medical Industries Co., Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

54.    Affiliate Yujiang Ideal Medical Industries Co., Ltd. is located at Economic & Tech Development, Zone G-4, Ningbo, Zhejiang Prov., China 315803. Ideal Medical Industries Co., Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

## JDA (TIANJIN) PLASTIC RUBBER CO. LTD.

55.    Respondent JDA (Tianjin) Plastic Rubber Co., Ltd. ("JDA") is located at No. 17 Hai Bin No. 7 Rd, Tianjin Port Free Trade Zone, Tianjin, 300456, China. Respondent JDA is affiliated with, *inter alia,* Durasafe, Inc.; Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc.; United Delta, Inc.; and JDA International, Inc. JDA and its affiliates are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

56.     Respondent JDA has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K030529 (titled "Legend (Brand) Nitrile Powder-Free Patient Examination Gloves"). Respondent JDA's U.S. agent for service for the FDA is Norpak, Inc., 202 Fashion Lane, Suite 115, Tustin, CA 92780.

57.     Durasafe, Inc. is an affiliate of Respondent JDA. Durasafe has two addresses: one in China and one in California. Affiliate Durasafe, Inc.'s Chinese address is the same as Respondent JDA's address: No. 17 Hai Bin No. 7 Rd, Tianjin Port Free Trade Zone, Tianjin, 300456, China. Affiliate Durasafe, Inc.'s California address is 18400 San Jose Avenue, City of Industry, CA 91748. Affiliate Durasafe, Inc. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

58.     Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. is an affiliate of Respondent JDA. Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. is located at the same address as JDA Affiliate Durasafe, Inc.: 18400 San Jose Avenue, City of Industry, CA 91748. Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

59.     Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. has obtained from the United States Patent and Trademark Office two (2) trademark registrations: Registration No. 2503665 for "SANITEX" when used for disposable gloves and Registration No. 2017832 for "LIFE GUARD" when used for disposable gloves.

60.     United Delta, Inc. is an affiliate of Respondent JDA.  United Delta, Inc. is located at 301 Brea Canyon Road, Walnut, CA 91789.  Through its subsidiary—JDA International, Inc.— United Delta, Inc. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

61.     JDA International, Inc. is a subsidiary of United Delta, Inc. and an affiliate of Respondent JDA.  JDA International, Inc. is located at the same address as its parent company: 301 Brea Canyon Road, Walnut, CA 91789.  JDA International, Inc. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

62.     JDA International, Inc. has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K993247 (titled "Nitrile Powder Free Patient Examination Gloves").

## KOSSAN RUBBER INDUSTRIES BHD.

63.     Respondent Kossan Rubber Industries Bhd. is located at Lot 16632, Batu 5 1/4, Jalan Meru, 41050 Klang, Selangor D.E., Malaysia.  Respondent Kossan Rubber Industries Bhd. is the parent corporation of the following subsidiaries: Kossan Latex Industries (M) Sdn. Bhd.; Perusahaan Getah Asas Sdn. Bhd.; Wear Safe (M) Sdn. Bhd., and Normandin Pacific Holdings Corp.  The principal shareholder of Kossan Rubber Industries Bhd. is Kossan Holdings (M) Sdn. Bhd.  Through its subsidiaries, Respondent Kossan Rubber Industries Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use

after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

64.    Kossan Latex Industries (M) Sdn. Bhd. is a wholly-owned subsidiary of Respondent Kossan Rubber Industries Bhd. Kossan Latex Industries (M) Sdn. Bhd. is located at the same address as its parent company: Lot 16632, Batu 5 1/4, Jalan Meru, 41050 Klang, Selangor D.E., Malaysia. Kossan Latex Industries (M) Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

65.    Subsidiary Kossan Latex Industries (M) Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via five 510(k) premarket notifications: K062764 (titled "Powder-Free Nitrile Examination Glove, White (Non-Colored) and Blue Colored, Tested for Use with Chemotherapy Drugs"); K060771 (titled "Powder-Free Nitrile Examination Glove, White (Non-Colored) and Blue Colored"); K024025 (titled "Powder-Free Nitrile Patient Examination Glove, Violet Color"); K992496 (titled "Powder-Free Nitrile Examination Glove, Blue or White (Non-Colored)"); and K992497 (titled "Powdered Nitrile Examination Glove, Blue or White (Non-Colored)").

66.    Subsidiary Perusahaan Getah Asas Sdn. Bhd. is a wholly-owned subsidiary of Respondent Kossan Rubber Industries Bhd. Perusahaan Getah Asas Sdn. Bhd. is located at Lot 754, Jalan Haji Sirat, Off Jalan Kapur, 42100 Klang, Selangor D.E., Malaysia. Perusahaan Getah Asas Sdn. Bhd is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

67.    Subsidiary Perusahaan Getah Asas Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via eleven 510(k) premarket notifications: K042805 (titled "Powder Free Nitrile Patient Examination Gloves, Blue Colored Non-Sterile"); K032374 (titled "Powder-Free Nitrile Patient Chemotherapy Examination Gloves, Blue or Green or Violet or White (Non-Colored)"); K031591 (titled "Powder-Free Nitrile Patient Examination Glove, White (Non-Colored), Blue and Green Color"); K030335 (titled "On-Line Powder-Free Nitrile Examination Glove, Violet Color"); K024184 (titled "Powder-Free Coated Nitrile Examination Glove, Blue Color"); K010719 (titled "Powder-Free Nitrile Patient Examination Glove, Purple Color"); K991511 (titled "Powdered Nitrile Examination Glove, White (Non-Colored)"); K984605 (titled "Powder-Free Nitrile Patient Examination Glove, White (Non-Colored)"); K984356 (titled "Nitrile Patient Examination Glove, Blue or Green"); K983729 (titled "Powder-Free Nitrile Patient Examination Glove"); and K982440 (titled "Nitrile Patient Examination Glove").

68.    Subsidiary Perusahaan Getah Asas Sdn. Bhd. has obtained from the United States Patent and Trademark Office two trademark registrations: Registration No. 2446804 for "NITRISOFT" when used for gloves for medical use and Registration No. 2502435 for "PURESHIELD" when used for gloves for medical use.

69.    Subsidiary Wear Safe (M) Sdn. Bhd. is a wholly-owned subsidiary of Respondent Kossan Rubber Industries Bhd.    Wear Safe (M) Sdn. Bhd. is located at Lot 1, Leboh Hishamuddin Satu, North Klang Straits Ind. Area, 42000 Klang, Selangor D.E., Malaysia. Wear Safe (M) Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

70.    Subsidiary Wear Safe (M) Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via three 510(k) premarket notifications: K062778 (titled "Sterile Powder-Free Nitrile Patient Examination Gloves, Blue Non-Sterile Powder-Free Nitrile Patient Examination Glove"); K992675 (titled "Patient Nitrile Examination Gloves (Powdered)"); and K992678 (titled "Patient Nitrile Examination Gloves Powder Free").

71.    Subsidiary Normandin Pacific Holdings Corp. d/b/a Pacifica is a majority-owned subsidiary of Respondent Kossan Rubber Industries Bhd.  Normandin Pacific Holdings Corp. d/b/a Pacifica is located at Post Office Box 2709, Torrance, CA 90509-2709, and has a distribution center at 16963 S. Central Avenue, Carson, CA 90746.  Normandin Pacific Holdings Corp. d/b/a Pacifica is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

72.    Subsidiary Kossan Gloves, Inc. d/b/a Sintex is a subsidiary of Respondent Kossan Rubber Industries Bhd.  Kossan Gloves, Inc. d/b/a Sintex is located at 16810 Baker Springs #219, Houston, TX 77084.  Kossan Gloves, Inc. d/b/a Sintex is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

## LAGLOVE (M) SDN. BHD.

73.    Respondent Laglove M Sdn. Bhd. ("Laglove") is located at Lot 478, Jalan Simpang Balak, Off B, 43000 Kajang Selangor, Malaysia.  Laglove is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

74.    Respondent Laglove has obtained from the FDA clearance to market its nitrile gloves within the United States via nine 510(k) premarket notifications: K042618 (titled "Laglove Brand Double Polymer Coated Nitrile Examination Gloves"); K010860 (titled "Laglove Brand Colored Powdered Free Nitrile Examination Gloves (Green/Purple)"); K010861 (titled "Laglove Brand Colored Powdered Nitrile Examination Gloves"); K991949 (titled "Laglove Brand Nitrile Surgical Glove-Sterile (Powdered)"); K991950 (titled "Laglove Brand Nitrile Surgical Glove-Sterile (Powder-Free)"); K990883 (titled "Laglove Brand Blue Colored Nitrile Examination Glove Powdered"); K990882 (titled "Laglove Brand Colored Nitrile Examination Gloves"); K990415 (titled "Laglove Brand Nitrile Examination Gloves (Lightly Powdered)"); and K990420 (titled "Laglove Brand Nitrile Examination Glove (Powder Free)"). Respondent Laglove's U.S. agent for service for the FDA is Respondent Digitcare Corp., 2999 Overland Avenue, Suite 209, Los Angeles, CA 90064.

## PT MEDISAFE TECHNOLOGIES

75.    Respondent PT Medisafe Technologies is located at JL. Batang Kuis, GG Tambak Rejo/PSR IX, Desa Buntu Bedimbar, Tanjung Morawa, Medan, Sumatera Utar, Indonesia. Respondent PT Medisafe Technologies is affiliated with Medisafe Technologies (USA) and Indorama Group Companies.    Respondent PT Medisafe Technologies is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

76.    Affiliate Medisafe Technologies (USA) is located at 155 Harbor Way, Ann Arbor, MI 48103. Affiliate Medisafe Technologies (USA) is engaged in the importation, sale for

importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

77.     Affiliate Indorama Group Companies is located at Graha Irama, 17th Floor, JL. HR Rasuna Said Blok X-1 Kav 1-2, Jakarta, 12950 Indonesia.   Affiliate Indorama Group Companies is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

## PT SHAMROCK MANUFACTURING CORPORATION

78.     Respondent PT Shamrock Manufacturing Corporation is located at Jalan Pemuda No. 11, Medan- 20151 North Sumatra, Indonesia.   Respondent PT Shamrock Manufacturing Corporation is the parent corporation of the following subsidiaries: PT Haloni Jane; PT Maja Agung Latexindo; Shamrock Manufacturing Company, Inc.; Shamrock Marketing Company, Inc.; Globe Shamrock, Inc.; and Glove Source, Inc.   Respondent PT Shamrock Manufacturing Corporation and its subsidiaries are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

79.     Respondent PT Shamrock Manufacturing Corporation has obtained from the FDA clearance to market its nitrile gloves within the United States via two 510(k) premarket notifications: K052382 (titled "Powder Free Nitrile Examination Gloves, Blue") and K030386 (titled "Powder Free Synthetic Nitrile Neoprene Examination Gloves Green Color).  Respondent PT Shamrock Manufacturing Corporation's U.S. agent for service for the FDA is Respondent PT Shamrock Manufacturing Corporation's subsidiary Shamrock Marketing Company, Inc.

80.    Subsidiary PT Haloni Jane is a wholly-owned subsidiary of Respondent PT Shamrock Manufacturing Corporation. PT Haloni Jane is located at JL. Raya Serang KM 13.8 Cikupa Tangerang, Indonesia. Subsidiary PT Haloni Jane is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Subsidiary PT Haloni Jane's U.S. agent for service for the FDA is Respondent PT Shamrock Manufacturing Corporation's subsidiary Shamrock Manufacturing Company, Inc.

81.    Subsidiary PT Maja Agung Latexindo is a wholly-owned subsidiary of Respondent PT Shamrock Manufacturing Corporation. PT Maja Agung Latexindo is located at JL. Utama No. 98 Pujimulyo, Sunggal 20352 Deli Serdang Sumatera Utara, Indonesia. Subsidiary PT Maja Agung Latexindo is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Subsidiary PT Maja Agung Latexindo's U.S. agent for service for the FDA is Respondent PT Shamrock Manufacturing Corporation's subsidiary Shamrock Manufacturing Company, Inc.

82.    Subsidiary Shamrock Manufacturing Company, Inc. is a wholly-owned subsidiary of Respondent PT Shamrock Manufacturing Corporation. Shamrock Manufacturing Company, Inc. is located at 5445 Daniels Street, Chino, CA 91710. Shamrock Manufacturing Company, Inc. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

83.     Subsidiary Shamrock Manufacturing Company, Inc. has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K012786 (titled "Powder Free Nitrile Neoprene Examination Gloves (Purple)").

84.     Subsidiary Shamrock Manufacturing Company, Inc. has obtained from the United States Patent and Trademark Office two trademark registrations: Registration No. 2355756 for "SHAMROCK" when used for disposable latex gloves and Registration No. 2962047 for "POLYSILK" when used for latex, vinyl, and nitrile gloves.

85.     Subsidiary Shamrock Marketing Company, Inc. is a wholly-owned subsidiary of Respondent PT Shamrock Manufacturing Corporation.  Shamrock Marketing Company, Inc. is located at the same address as Shamrock Manufacturing Company, Inc.: 5445 Daniels Street, Chino, CA 91710.  Shamrock Marketing Company, Inc. is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

86.     Subsidiary Globe Shamrock, Inc. is a wholly-owned subsidiary of Respondent PT Shamrock Manufacturing Corporation.  Globe Shamrock, Inc. is located at 4930 Campbell Road, Houston, TX 77041.  Globe Shamrock, Inc. is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

87.     Subsidiary Globe Shamrock, Inc. has obtained from the United States Patent and Trademark Office one trademark registration: Registration No. 2879107 for "PROTOS" when used for latex sterile surgical and examination gloves.

88.     Subsidiary Glove Source, Inc. is a wholly-owned subsidiary of Respondent PT Shamrock Manufacturing Corporation.  Glove Source, Inc. is located at 889 South Azusa Ave.,

City of Industry, CA 91748. Glove Source, Inc. is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

## RIVERSTONE RESOURCES SDN. BHD.

89.    Respondent Riverstone Resources Sdn. Bhd. is located at Lot 21909, No. 5, Lorong Helang Hindik, Kepong Baru Industrial Estate, 52100 Kuala Lumpur, Malaysia. Respondent Riverstone Resources Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

90.    Respondent Riverstone Resources Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via four 510(k) premarket notifications: K003233 (titled "RS Nitrilstat Medical Examination Gloves, Powdered (Non-Sterile) Blue"); K003232 (titled "RS Nitrilstat Medical Examination Gloves, Powder Free (Non-Sterile)"); K992558 (titled "Nitrile Patient Examination Gloves, Powdered, Non-Sterile"); and K990963 (titled "RS Nitrilstat Medical Examination Gloves, Powder Free (Non-Sterile)").

## SEAL POLYMER INDUSTRIES BHD.

91.    Respondent Seal Polymer Industries Bhd. is located at Lot 72706, Jalan Lahat, Kawasan Perindustrian Buki Merah, 31500 Lahat, Perak, Malaysia. Approximately 24% of Respondent Seal Polymer Industries Bhd.'s ownership is held by Respondent Supermax Corporation Bhd. Respondent Seal Polymer Industries Bhd. is the parent corporation of subsidiary Seal Polymer Industries Sdn. Bhd. Through its subsidiary, Respondent Seal Polymer Industries Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale

after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

92.    Subsidiary Seal Polymer Industries Sdn. Bhd. is a wholly-owned subsidiary of Respondent Seal Polymer Industries Bhd.  Seal Polymer Industries Sdn. Bhd. is located at the same address as its parent company: Lot 72706, Jalan Lahat, Kawasan Perindustrian Buki Merah, 31500 Lahat, Perak, Malaysia.  Subsidiary Seal Polymer Industries Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

93.    Subsidiary Seal Polymer Industries Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via six 510(k) premarket notifications: K042238 (titled "Cashmere Polymer Coated Powder Free Nitrile Examination Gloves (Blue, White, Violet, Pink, Green)"); K042101 (titled "Cashmere Powder Free Nitrile Examination Gloves"); K032077 (titled "Cashmere Non-Sterile, Powder Free Nitrile Examination Gloves (Violet)"); K020868 (titled "Cashmere Non-Sterile, Powder Free Nitrile Examination Gloves (White)");  K993133 (titled "Cashmere Non-Sterile, Powdered Nitrile Examination Gloves (Blue)"); and K993134 (titled "Cashmere Non-Sterile, Powder Free Nitrile Examination Gloves (Blue)").  Subsidiary Seal Polymer Industries Sdn. Bhd.'s U.S. agent for service for the FDA is Respondent Supermax Corporation Bhd.'s subsidiary Supermax, Inc. d/b/a Aurelia Gloves.

94.    Subsidiary Seal Polymer Industries Sdn. Bhd. has also registered with the ADA in order to market the following nitrile gloves with the ADA's Seal of Acceptance: Polyshield Powder Free Nitrile Exam Gloves, Diamond Shield Powder Free Nitrile Exam Gloves, Tru

Shield Powder Free Nitrile Exam Gloves, Tru Care Powder Free Nitrile Exam Gloves, Cashmere Powder Free Poly-Coated Nitrile Examination Gloves, Tru Care Powder Free Poly-Coated Nitrile Exam Gloves, and Tru Shield Powder Free Poly-Coated Nitrile Exam Gloves.

### SMART GLOVE HOLDINGS SDN. BHD.

95.    Respondent Smart Glove Holdings Sdn. Bhd. is located at Lot 6487, Batu 5 3/4, Sementajln Kapar, 42100 Klang, Selangor D.E., Malaysia.  Respondent Smart Glove Holdings Sdn. Bhd. is the parent corporation of the following subsidiaries: Smart Glove Corporation Sdn. Bhd. and PT Smart Glove Indonesia.  Respondent Smart Glove Holdings Sdn. Bhd. is also affiliated with the following entities: Besglove Medicare Sdn. Bhd.; Sri Johani Sdn. Bhd.; and GX Corporation Sdn. Bhd.  Through its subsidiaries and affiliates, Respondent Smart Glove Holdings Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

96.    Subsidiary Smart Glove Corporation Sdn. Bhd. is a wholly-owned subsidiary of Respondent Smart Glove Holdings Sdn. Bhd.  Smart Glove Corporation Sdn. Bhd. is located at the same address as its parent company: Lot 6487, Batu 5 3/4, Sementajln Kapar, 42100 Klang, Selangor D.E., Malaysia.  Subsidiary Smart Glove Corporation Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

97.    Subsidiary Smart Glove Corporation Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via thirteen 510(k) premarket notifications: K063627 (titled "Powder Free Nitrile Examination Gloves Tested For Use With

Chemotherapy (Blue)"); K061724 (titled "Powder Free Nitrile Examination Glove, Grape Scented, Blue and White Color"); K060726 (titled "Powder Free Nitrile Examination Glove, Coated with Cucumber with Glycerin, Blue Color"); K060724 (titled "Powder Free Nitrile Examination Glove, Black and Gray Color");  K050122 (titled "Powder Free Nitrile Examination Glove (Blue)"); K050598 (titled "Powder Free Nitrile Examination Gloves Tested For Use With Chemotherapy Drugs (Blue)"); K033683 (titled "Smart-Feel Powder Free Nitrile Examination Gloves Pink Color"); K022818 (titled "Multiple, Blue Powder Free Nitrile Examination Gloves with Peppermint Flavor"); K021013 (titled "Smart Glove Sterile Nitrile Examination Gloves Powder Free");  K012853 (titled "Smart Glove Sterile Nitrile Examination Gloves"); K012479 (titled "Sterile Nitrile Surgical Gloves (Powdered)");  K981349 (titled "Smart-Feel Powder Free Nitrile Examination Gloves (Natural, Blue, and Green Colored)"); and K974907 (titled "Nitrile Pre-Powdered Examination Gloves (Blue, Green, and Natural Colors)").

98.    Subsidiary Smart Glove Corporation Sdn. Bhd. has also registered with the ADA in order to market the following nitrile gloves with the ADA's Seal of Acceptance: Smart Glove Powder Free Nitrile Exam Glove (Blue, White).

99.    Subsidiary PT Smart Glove Indonesia is a wholly-owned subsidiary of Respondent Smart Glove Holdings Sdn. Bhd.  PT Smart Glove Indonesia is located at JL, Raya Medan-Lubuk Pakam Km 19, Tanjong Morawa B, Tanjong Morawa, Deli Serdang, Sumatera Utara, Indonesia.  Subsidiary PT Smart Glove Indonesia is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

100.    Subsidiary PT Smart Glove Indonesia has obtained from the FDA clearance to market its nitrile gloves within the United States via five 510(k) premarket notifications:

K041848 (titled "Polymer Coated Powder Free Nitrile Examination Gloves, Green and White Color"); K040791 (titled "Polymer Coated, Powder Free, Nitrile Examination Gloves, Blue Color"); K030284 (titled "Powder Free Nitrile Examination Gloves (White, Blue, Purple)"); K030406 (titled "Nitrile Powder Free Examination Gloves With Peppermint Flavor"); and K022814 (titled "Multiple Nitrile Examination Gloves, Powdered with Purple, Blue, White Colors").

101.    Affiliate Besglove Medicare Sdn. Bhd. is an affiliate of Respondent Smart Glove Holdings Sdn. Bhd. Besglove Medicare Sdn. Bhd. is located at Lot 6 Block 6 Bangi Industrial Estate, Jalan P/2A, 43000 Bandar Baru Bangi, Selangor D.E., Malaysia. Besglove Medicare Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

102.    Affiliate Besglove Medicare Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via nine 510(k) premarket notifications: K981877 (titled "Nitrile Powder-Free Examination Gloves"); K981878 (titled "Powder-Free Nitrile Examination Gloves (Polymer Coated)"); K981879 (titled "Powdered Nitrile Examination Gloves"); K981673 (titled "Powder-Free Green Nitrile Examination Gloves"); K981674 (titled "Powdered Green Nitrile Examination Gloves"); K981675 (titled "Powder-Free Green Nitrile Examination Gloves (Polymer Coated)"); K980275 (titled "Powder-Free Blue Nitrile Examination Gloves (Polymer Coated)"); K980280 (titled "Powdered Nitrile Examination Gloves (Blue Colour)"); and K980285 (titled "Powder-Free Blue Nitrile Examination Gloves").

103.    Affiliate Sri Johani Sdn. Bhd. is an affiliate of Respondent Smart Glove Holdings Sdn. Bhd.   Sri Johani Sdn. Bhd. is located at Lot PT 7178 Balakong New Village, Seri Kembangang, 43300 Selangor D.E., Malaysia.   Sri Johani Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

104.    Affiliate Sri Johani Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via nine 510(k) premarket notifications: K981039 (titled "Powder-Free Green Nitrile Examination Gloves (Polymer Coated)"); K974886 (titled "Powdered Green Nitrile Examination Gloves"); K974887 (titled "Powder-Free Green Nitrile Examination Gloves"); K974183 (titled "Polymer Nitrile Examination Gloves (Blue Colour)"); K974185 (titled "Polymer Nitrile Examination Gloves"); K973903 (titled "Powder-Free Nitrile Examination Gloves (Blue Colour)"); K974182 (titled "Powdered Nitrile Examination Gloves (Blue Colour)"); K973058 (titled "Patient Nitrile Examination Gloves (Powder-Free)"); and K973059 (titled "Patient Nitrile Examination Gloves (Lightly-Powdered)").

105.    Affiliate GX Corporation Sdn. Bhd. is an affiliate of Respondent Smart Glove Holdings Sdn. Bhd.   GX Corporation Sdn. Bhd. is located at Lot 6487, Batu 5 3/4, Sementa, Jalan Kapar, Klang, 42100 Selangor D.E., Malaysia.   GX Corporation Sdn. Bhd. appears to be located at the same address as Respondent Smart Glove Holdings Sdn. Bhd.'s subsidiary Smart Glove Corporation Sdn. Bhd.   GX Corporation Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

106.    Affiliate GX Corporation Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via two 510(k) premarket notifications: K070097 (titled "Powder-Free Nitrile Examination Gloves, Peppermint Scented, Blue Color") and K070096 (titled "Powder Free Nitrile Examination Gloves, Blue, White, Pink, Black and Gray Color").

## SUPERMAX CORPORATION BHD.

107.    Respondent Supermax Corporation Bhd. is located at Lot 38, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia.    Respondent Supermax Corporation Bhd. is the parent corporation of the following subsidiaries: Supermax Latex Products Sdn. Bhd., Supermax Sdn. Bhd., Supermax Glove Industries Sdn. Bhd., Supermax Glove Manufacturing Sdn. Bhd., APL Industries Bhd., Asia Pacific Latex Sdn. Bhd., APL Products Sdn. Bhd., and Supermax, Inc. d/b/a Aurelia Gloves.[4]   Through its subsidiaries, Supermax Corporation Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

108.    Subsidiary Supermax Latex Products Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd.  Supermax Latex Products Sdn. Bhd. is located at the same address as its parent company: Lot 38, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia.  Supermax Latex Products Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use

---

[4]   Respondent Supermax Corporation Bhd. is also affiliated with Respondent Seal Polymer Industries Bhd. and Respondent YTY Holdings Sdn. Bhd.'s subsidiary YTY Industry (Manjung) Sdn. Bhd., discussed *supra* and *infra*, respectively.

after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

109.    Subsidiary Supermax Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd.  Supermax Sdn. Bhd. is located at Lot 42, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia.  Supermax Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

110.    Subsidiary Supermax Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via three 510(k) premarket notifications: K013774 (titled "Chlorinated Powder Free Nitrile Medical Examination Gloves with Aloe Vera"); K993258 (titled "Supergloves, Powder Free Nitrile Examination Gloves"); and K980966 (titled "Supergloves Powdered Nitrile Examination Gloves").

111.    Subsidiary Supermax Glove Industries Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd.  Supermax Glove Industries Sdn. Bhd. is located at the same address as the other Supermax Malaysian subsidiaries: Lot 42, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia.  Supermax Glove Industries Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

112.    Subsidiary Supermax Glove Manufacturing Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd.  Supermax Glove Manufacturing Sdn. Bhd. is located at the same address as the other Supermax Malaysian subsidiaries: Lot 42, Putra

Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia. Supermax Glove Manufacturing Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

113.    Subsidiary Supermax Glove Manufacturing Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K024083 (titled "Green Powder Free Nitrile Medical Examination Gloves with Peppermint Flavor").

114.    Subsidiary APL Industries Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd.  APL Industries Bhd. is located at the same address as its parent company: Lot 38, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia.  Through its subsidiaries, APL Industries Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

115.    Subsidiary Asia Pacific Latex Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd.'s subsidiary APL Industries Bhd.  Subsidiary Asia Pacific Latex Sdn. Bhd.  is located at Lot 12, Medan Tasek, Tesak Industrial Estate, 31400 Ipoh Perak Darul Ridzuan, Malaysia.  Through its subsidiaries, Asia Pacific Latex Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

116.    Subsidiary Asia Pacific Latex Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K982274 (titled "Nitrile Patient Examination Glove Powder Free").

117.    Subsidiary APL Products Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd.'s subsidiary APL Industries Bhd.'s subsidiary Asia Pacific Latex Sdn. Bhd.  Subsidiary APL Products Sdn. Bhd. is located at Lot 8961 and 8964, Batu 19, Jalan Beruas, 31400 Ayer Tawar, Perak, Malaysia.  APL Products Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

118.    Subsidiary Supermax, Inc. d/b/a Aurelia Gloves is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd.  Subsidiary Supermax, Inc. d/b/a Aurelia Gloves is located at 2225 White Oak Circle, Aurora IL 60504.  Supermax, Inc. d/b/a Aurelia Gloves is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

## YEE LEE CORPORATION BHD.

119.    Respondent Yee Lee Corporation Bhd. is located at Lot 85 Jalan Portland, Tasek Industrial Estates, 31400 Ipoh Perak Darul Ridzuan, Malaysia.  Respondent Yee Lee Corporation Bhd. is the parent corporation of the following subsidiaries: Yee Lee Holdings Sdn. Bhd.; Cranberry (M) Sdn. Bhd.; Cranberry USA, Inc.; Multisafe Sdn. Bhd.; Malaytex Products Sdn. Bhd.; and Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.  Through its subsidiaries, Yee Lee Corporation Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale

after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

120.   Subsidiary Yee Lee Holdings Sdn. Bhd. is a wholly-owned subsidiary of Respondent Yee Lee Corporation Bhd.  Yee Lee Holdings Sdn. Bhd. is located at the same address as its parent company: Lot 85 Jalan Portland, Tasek Industrial Estates, 31400 Ipoh Perak Darul Ridzuan, Malaysia.   Yee Lee Holdings Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

121.   Subsidiary Cranberry (M) Sdn. Bhd. is a wholly-owned subsidiary of Respondent Yee Lee Corporation Bhd.  Cranberry (M) Sdn. Bhd. is located at the same address as its parent company: Lot 85 Jalan Portland, Tasek Industrial Estates, 31400 Ipoh Perak Darul Ridzuan, Malaysia.   Cranberry (M) Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

122.   Subsidiary Cranberry (M) Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K983334 (titled "Nitrile Powder Free Examination Gloves").  Subsidiary Cranberry (M) Sdn. Bhd.'s U.S. agent for service for the FDA is Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.

123.   In the United States, subsidiary Cranberry (M) Sdn. Bhd. does business as Cranberry USA Inc., which is located at 140 Dodd Court, American Canyon, CA 94503. Cranberry (M) Sdn. Bhd. d/b/a Cranberry USA Inc. is engaged in the importation, offer for sale

after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

124.    Subsidiary Mulitsafe Sdn. Bhd. is a wholly-owned subsidiary of Respondent Yee Lee Corporation Bhd.'s subsidiary Cranberry (M) Sdn. Bhd.  Subsidiary Multisafe Sdn. Bhd. is located at Lot 764, Bidor Industrial Estate, 35500, Bidor, Perak Darul Ridzu, Malaysia. Subsidiary Mulitsafe Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

125.    Subsidiary Mulitsafe Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via two 510(k) premarket notifications: K001497 (titled "Mulitsafe Powdered Nitrile, Non-Sterile (Blue)") and K001619 (titled "Mulitsafe Powder-Free Nitrile, Non-Sterile Blue").

126.    Subsidiary Malaytex Products, Sdn. Bhd. is a wholly-owned subsidiary of Respondent Yee Lee Corporation Bhd.  Malaytex Products, Sdn. Bhd. is located at Lots 67/8 Lorong Senawang 4/1, Senowang Industrial Area, Serem Ban, N. Sembilan, Malaysia 70450. Malyatex Products, Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

127.    Subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. is a wholly-owned subsidiary of Respondent Yee Lee Corporation Bhd.  Subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. is located at 140 Dodd Court, American Canyon, CA 94503.  Subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. is engaged in the importation, offer for sale after

importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

128.    Subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. has obtained from the United States Patent and Trademark Office three trademark registrations: Registration No. 1618614 for "CRANBERRY" when used for non-sterile disposable examination gloves, Registration No. 1902593 for "REDWOOD" when used for non-sterile disposable latex gloves, and Registration No. 1615579 for "MALAYTEX" when used for non-sterile disposable examination gloves.

## YTY HOLDINGS SDN. BHD.

129.    Respondent YTY Holdings Sdn. Bhd. is located at Lot 2935B, Kg Batu 9 Kebun Baru, Jalan Masjid, 42500 Telok Panglima Garang, Kuala Langat, Selangor D.E., Malaysia. Respondent YTY Holdings Sdn. Bhd. is the parent corporation of the following subsidiaries: YTY Industry Sdn. Bhd. and YTY Industry (Manjung) Sdn. Bhd. Respondent YTY Holdings is also affiliated with Indorama Group Companies and Green Prospect Sdn. Bhd. Through its subsidiaries and affiliates, Respondent YTY Holdings Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

130.    Subsidiary YTY Industry Sdn. Bhd. is a wholly-owned subsidiary of Respondent YTY Holdings Sdn. Bhd. YTY Industry Sdn. Bhd. is located at the same address as its parent company:    Lot 2935B, Kg Batu 9 Kebun Baru, Jalan Masjid, 42500 Telok Panglima Garang, Kuala Langat, Selangor D.E., Malaysia. Subsidiary YTY Industry Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use

after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

131.    Subsidiary YTY Industry Sdn. Bhd. has obtained from the United States Patent and Trademark Office one trademark registration: Registration No. 2931419 for "PU-RITY" when used for latex medical gloves.

132.    Subsidiary YTY Industry (Manjung) Sdn. Bhd. is a subsidiary of Respondent YTY Holdings Sdn. Bhd. Subsidiary YTY Industry (Manjung) Sdn. Bhd. is also partly owned by Respondent Supermax Corporation Bhd. Subsidiary YTY Industry (Manjung) Sdn. Bhd. is located at Lot 1422-1424, Batu 10 Lekir, 32020 Sitiawan, Perak Darul Ridzuan, Malaysia. Subsidiary YTY Industry (Manjung) Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

133.    Subsidiary YTY Industry (Manjung) Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via two 510(k) premarket notifications: K061553 (titled "Non-Sterile, Powder-Free Black Nitrile Examination Gloves") and K052502 (titled "Non-Sterile, Powder-Free Nitrile Blue & White Color, Examination Gloves").

134.    Affiliate Indorama Group Companies is located at Graha Irama, 17th Floor, JL. HR Rasuna Said Blok X-1 Kav 1-2, Jakarta, 12950 Indonesia. Affiliate Indorama Group Companies is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

135.     Affiliate Green Prospect Sdn Bhd. is located at Lot 14803 Kawasan Perinustrian, Kampung Acheh, 32000 Sitiawan, Lumut Perak, Malaysia.  Affiliate Green Prospect Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

136.     Affiliate Green Prospect Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K031580 (titled "Non-Sterile, Powder-Free, Blue Color Nitrile Examination Gloves").

### ADENNA, INC.

137.     Respondent Adenna, Inc. is located at 12216 McCann Drive, Santa Fe Springs, CA 90670.  Respondent Adenna, Inc. is affiliated with Nitritex, Ltd.  Adenna, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

138.     Affiliate Nitritex, Ltd. is located at the same address as Respondent Adenna, Inc.: 12216 McCann Drive, Santa Fe Springs, CA 90670.  Nitritex, Ltd. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

139.     Respondent Adenna, Inc. has obtained from the United States Patent and Trademark Office approximately seventeen (17) trademark applications/registrations which include, *inter alia*: Registration No. 3066856 for "HANDY GUARD" when used for nitrile gloves and Registration No. 2974604 for "PRECISION" when used for disposable gloves.

140.    Respondent Adenna, Inc. has also registered with the ADA in order to market the following nitrile gloves with the ADA's Seal of Acceptance: Adenna Non-Sterile Nitrile Powder Free Exam Gloves.

### BASIC MEDICAL INDUSTRIES INC.

141.    Respondent Basic Medical Industries Inc. is located at 12390 East End Ave., Chino, CA 91710.  Basic Medical Industries Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

### CYPRESS MEDICAL PRODUCTS LLC

142.    Respondent Cypress Medical Products LLC ("Cypress") is located at 1202 South Rt. 31, McHenry, IL 60050, and has an agent, Richard M. Horwood, at 180 N. Lasalle St, Suite 3700, Chicago IL 60601.  Cypress is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

143.    Respondent Cypress has obtained from the United States Patent and Trademark Office approximately twenty-nine (29) trademark applications/registrations which include, *inter alia*: Registration No. 2523495 for "MC3" when used for disposable medical gloves, Registration No. 2429170 for "NEXT GENERATION GLOVES" when used for disposable medical gloves, Registration No. 2523418 for "TRILON" when used for disposable medical gloves, and Registration No. 2474832 for "SYNTRILE" when used for disposable medical gloves.

## DARBY GROUP COMPANIES, INC.

144.    Respondent Darby Group Companies, Inc. is located at 300 Jericho Quadrangle, Jericho, NY, 11753.  Respondent Darby Group Companies, Inc. was the parent corporation of subsidiaries Island Dental Co., Inc. and Darby Dental Supply Co., Inc.  Respondent Darby Group Companies, Inc. and its subsidiaries are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

145.    Respondent Darby Group Companies, Inc. has obtained from the United States Patent and Trademark Office approximately forty (40) trademark applications/registrations, twenty-nine (29) of which have been abandoned or cancelled.  The remaining live registrations include, *inter alia*: Registration No. 3144989 for "DARBY DENTAL SUPPLY CO." when used for surgical gloves; Registration No. 3144988 for "DL DARBY DENTAL LAB SUPPLY CO." when used for mail order services featuring dental supplies; Registration No. 3132637 for "DL DARBY MEDICAL SUPPLY CO." when used for mail order services featuring pharmaceutical products; and Registration No. 1685952 for "PROTEC-TOP" when used for gloves.

146.    Subsidiary Island Dental Co., Inc. was dissolved in December 2006.  While an active corporation, Subsidiary Island Dental Co., Inc. was located at the same address as its parent corporation: 300 Jericho Quadrangle, Jericho, NY, 11753.  Subsidiary Island Dental Co., Inc. was engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

147.    Subsidiary Island Dental Co., Inc. had obtained from the United States Patent and Trademark Office approximately four (4) trademark applications/registrations, one of which has been abandoned.  The other three registrations have all been assigned to a third party and include

Registration No. 3132635 for "I ISLAND DENTAL CO., INC." when used for mail order services featuring dental products; Registration No. 2395734 for "ISLAND DENTAL CO., INC." when used for distributorship services featuring dental products; and Registration No. 2381254 for "ISLAND DENTAL SUPPLY" when used for distributorships in the field of dental products.

148.    Subsidiary Darby Dental Supply Co., Inc. was dissolved in December 2006. While an active corporation, Subsidiary Darby Dental Supply Co., Inc. was located at the same address as its parent corporation: 300 Jericho Quadrangle, Jericho, NY, 11753.  Subsidiary Darby Dental Supply Co., Inc. was engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

149.    Subsidiary Darby Dental Supply Co., Inc. had obtained from the United States Patent and Trademark Office approximately eight (8) trademark applications/registrations, seven (7) of which have been abandoned or cancelled.   The only remaining live registration is Registration No. 2566165 for "DARBY SPENCER MEAD DENTAL COMPANY" when used for telephone order catalog services featuring dental medicine.

### DASH MEDICAL GLOVES, INC.

150.    Respondent Dash Medical Gloves, Inc. is located at 1018 South 54th St., Franklin, WI 53132 and has an agent, Robert J. Sullivan, at 1018 South 54th St., Franklin, WI 53132. Dash Medical Gloves, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

151.    Respondent Dash Medical Gloves, Inc. has obtained from the United States Patent and Trademark Office eight trademark applications/registrations which include, *inter alia*: Registration No. 3122063 for "HALO" when used for gloves, Registration No. 2037290 for "DASH" when used for disposable medical gloves, and Registration No. 2219641 for "VITAL GARD" when used for latex gloves.

## DELTA MEDICAL SYSTEMS, INC. D/B/A THE DELTA GROUP

152.    Respondent Delta Medical Systems, Inc. d/b/a The Delta Group is located at 6865 Shiloh Road East, Suite 400, Alpharetta, GA 30202.  Respondent Delta Medical Systems, Inc. d/b/a The Delta Group is also affiliated with Delta Medical Supply Group, Inc.  Delta Medical Systems, Inc. d/b/a The Delta Group and its affiliate are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

153.    Affiliate Delta Medical Supply Group, Inc. d/b/a The Delta Group is located at 436 West Gay Street, West Chester, PA 19380.  Affiliate Delta Medical Supply, Inc. d/b/a The Delta Group is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

154.    Respondent Delta Medical Systems, Inc. d/b/a The Delta Group has obtained from the United States Patent and Trademark Office approximately thirteen (13) trademark applications/registrations which include, *inter alia*: Registration No. 3021553 for "POLY-PREP" when used for medical gloves; Registration No. 2824774 for "DELTA" when used for medical gloves; and Registration No. 2824773 for "NITREX" when used for medical gloves.

## DENTEXX/FIRST MEDICA INFECTION CONTROL ASSOCATION

155.    Respondent Dentexx/First Medica Infection Control Assoc. is located at 3704C Boren Dr., Greensboro, NC 27407. Dentexx/First Medica Infection Control Assoc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

## DYNAREX CORP.

156.    Respondent Dynarex Corp. is located at 10 Glenshaw St., Orangeburg, NY 10962. Respondent Dynarex Corp. is the parent corporation of subsidiary Tillotson Healthcare Corp. Dynarex Corp. and its subsidiary are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

157.    Respondent Dynarex Corp. has obtained from the United States Patent and Trademark Office approximately sixteen (16) trademark applications/registrations which include, *inter alia*: Registration No. 2860786 for "TRUE ADVANTAGE" when used for examination gloves, Registration No. 2185120 for "SAFE TOUCH" when used for medical examination gloves, and Registration No. 2825607 for "PRESERVE" when used for examination gloves with aloe vera.

158.    Subsidiary Tillotson Healthcare Corp. is located at 8025 South Willow Street, Manchester, NH 03103. Subsidiary Tillotson Healthcare Corp. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

159.    Subsidiary Tillotson Healthcare Corp. has obtained from the FDA clearance to market its nitrile gloves within the United States via five 510(k) premarket notifications:

K011497 (titled "Cymun-NBR Powder Free Blue Nitrile Examination Gloves"); K972009 (titled "Pure Advantage Nitrile Hypoallergenic Surgical Gloves (Prepowdered), Surgical");  K971945 (titled "Pure Advantage Powder Free Nitrile Hypoallergenic Surgical Glove"); K954573 (titled "Pure Advantage Powder Free Nitrile Hypoallergenic"); and K954574 (titled "Pure Advantage Nitrile Hypoallergenic Patient Examination Gloves").

160.     Subsidiary Tillotson Healthcare Corp. has obtained from the United States Patent and Trademark Office approximately twenty-eight (28) trademark applications/registrations which include, *inter alia*: Registration No. 2465184 for "SENSI GRIP" when used for examination gloves for medical, surgical or dental use; Registration No. 1961387 for "ULTRA CARE" when used for latex medical examination gloves; and Registration No. 2621727 for "ACCUTOUCH" when used for medical examination gloves.

## LIBERTY GLOVE AND SAFETY CO.

161.     Respondent Liberty Glove and Safety Co. is located at 433 Cheryl Lane City of Industry, CA 91789, and has an agent for service, Sonia Heh, at 21880 Buckskin Dr., Walnut, CA 91789.  Liberty Glove and Safety Co. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

162.     Respondent Liberty Glove and Safety Co. has obtained from the United States Patent and Trademark Office approximately twenty-three (23) trademark applications/registrations which include, *inter alia*: Registration No. 2871779 for "BIOSKIN" when used for nitrile gloves and Registration No. 2564652 for "DURASKIN" when used for nitrile gloves.

## MAGLA PRODUCTS LLC

163.    Respondent Magla Products LLC is located at 159 South St., PO Box 1934, Morristown, NJ 07960. Magla Products LLC is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

164.    Respondent Magla Products LLC has obtained from the United States Patent and Trademark Office approximately eighteen (18) trademark applications/registrations which include, *inter alia*: Registration No. 2897503 for "NYPLEX" when used for medical gloves, Registration No. 2532498 for "HAND HELPERS" when used for protective gloves, and Registration No. 1221765 for "MAGLA" when used for latex gloves.

## PROTECTIVE INDUSTRIAL PRODUCTS, INC.

165.    Respondent Protective Industrial Products, Inc. is located at Northeastern Industrial Park, Bldg 4, PO Box 19, Guilderland Center, NY 12085, and an agent for service Germaine Curtin, at 10715 Indian Village Dr., Alpharetta, GA 30022. Protective Industrial Products, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

166.    Respondent Protective Industrial Products, Inc. has obtained from the United States Patent and Trademark Office approximately twenty-five (25) trademark applications/registrations which include, *inter alia*: Registration No. 2810366 for "PIP" when used for gloves, Registration No. 3187071 for "G-TEK" when used for protective gloves, Registration No. 2810365 for "AMBI-DEX" when used for gloves, and Registration No. 2734123 for "CLEANTEAM" when used for nitrile gloves.

46

## QRP, INC. D/B/A QRP GLOVES, INC.

167.    Respondent QRP, Inc. d/b/a QRP Gloves, Inc. is located at P.O. Box 28802, Tucson, AZ 85726 and has a registered agent, Daniel J. Quigley, at 2730 E. Broadway #160, Tucson, AZ 85716.  Respondent QRP, Inc. d/b/a QRP Gloves, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

168.    Respondent QRP, Inc. d/b/a QRP Gloves, Inc. has obtained from the United States Patent and Trademark Office nine trademark registrations: Registration No. 3205338 for "QUALATRILESENS! THE 'NUDE GLOVE'" when used for protective gloves, Registration No. 3200971 for "QRP GLOVES" when used for protective gloves, Registration No. 2549523 for "QUALAKOTE" when used for protective gloves, Registration No. 2425771 for "QUALATEX" when used for protective gloves, Registration No. 2428883 for "QUALATRILE" when used for protective gloves, Registration No. 2532593 for "QUALATHANE" when used for protective gloves, Registration No. 2025680 for "QRP" when used for protective goods, Registration No. 1749928 for "BIOTEK" when used for protective gloves, and Registration No. 1356400 for "POLYTUFF" when used for gloves.

## TRONEX INTERNATIONAL INC.

169.    Respondent Tronex International Inc. is located at One Tronex Centre, 3 Luger Rd., Denville, NJ 07834.  Tronex International Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

170.    Respondent Tronex International Inc. has obtained from the United States Patent and Trademark Office approximately fifteen (15) trademark applications/registrations which

include, *inter alia*: Registration No. 2612826 for "AIR TOUCH" when used for disposable gloves; Registration No. 1669283 for "TRONEX" when used for disposable gloves; and Registration No. 1884798 for "SERVICE TO MANKIND ENERGY INTENSITY FOCUS" when used for disposable gloves.

### WEST CHESTER HOLDINGS, INC.

171.    Respondent West Chester Holdings, Inc. is located at 100 Corridor Park Drive, Monrowe, Ohio, 45050. West Chester Holdings, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

172.    Respondent West Chester Holdings, Inc. has obtained from the United States Patent and Trademark Office approximately twenty-two (22) trademark applications/registrations which include, *inter alia*: Registration No. 2506379 for "WEST CHESTER" when used for protective gloves, Registration No. 1729023 for "POSIGRIP" when used for protective gloves for industrial use, and Registration No. 2990128 for "GLOVES ON THE GO" when used for disposable gloves.

## III.    THE TECHNOLOGY AND PRODUCTS AT ISSUE

173.    The hand gloves at issue are specially made from nitrile butadiene latex rubber elastomeric material formulations as described and claimed in Tillotson's valid and enforceable '616 patent.

174.    The patented nitrile gloves are substantially impermeable to water vapor and liquid water, and have a relatively high tensile strength of at least 1500 psi.  The nitrile gloves are useful for medical, industrial, and security use.

175.    Before the invention embodied in Tillotson's '616 patent, latex gloves made from a variety of elastomers had been in use in various applications. In the industrial community, relatively thick latex gloves were used in hazardous situations to protect the hands of workers. In the medical community relatively thin latex gloves made from natural rubber were often used.

176.    The relatively thick industrial gloves, made from a variety of elastomers, were not designed to be stretched to fit on a worker's hands. Rather, those gloves were hand specific (right hand glove and left hand glove) and were made to fit loosely on the hand.

177.    The relatively thin medical gloves made from natural rubber were designed to fit closely to the hand so that the grip and feel of the hand was maintained. Those natural rubber medical gloves were undersized and were stretched to fit tightly to the hand of medical personnel.

178.    As a result of being stretched to fit tightly on the hand of medical personnel, the natural rubber gloves squeezed the hand and applied pressure to the wearer's hands. During use of the natural rubber latex glove, the pressure applied by the glove was not appreciably relieved until the wearer removed the glove.

179.    The pressure applied by natural rubber latex medical gloves caused discomfort for the wearer and a numbness and fatigue in the hands that could lead to a loss of sensitivity in the hand.

180.    The invention of Tillotson's '616 patent provides an improved thin latex glove which is made from a nitrile butadiene latex elastomer formulation. The glove may be stretched to fit closely about the hand of a wearer but then relaxes within about six minutes after being donned by a wearer to substantially reduce the pressure exerted on the hand. As a result, any numbness or fatigue in the hand is reduced and discomfort for the glove wearer is reduced. The

glove of the invention described and claimed in the '616 patent is more comfortable to wear, especially over long periods of time.

181.    The nitrile glove as described and claimed in the '616 patent is substantially impermeable to water vapor and liquid water, has a relatively high tensile strength of at least about 1500 psi, and has elastic properties such that when the glove is stretched to fit about a wearer's hand it conforms closely to the configuration of the hand and exerts an initial pressure on the hand. Thereafter, while still fitting closely to the hand, the glove relaxes within about six minutes after the glove is stretched to fit about the hand so that the glove exerts on the hand a reduced pressure which is less than about 50% of the initial pressure.

182.    Due to the sensitive and often dangerous work undertaken by latex glove wearers in the medical, industrial, and security industries, there is a strong public policy favoring the creation and protection of technology in these fields of endeavor—such as Tillotson's patented nitrile latex glove technology. The creation and protection of such technology should not be undercut by the importation and sale of unauthorized nitrile latex gloves that utilize Tillotson's patented technology to thereby compete unfairly with Tillotson.

## IV.    THE PATENT AT ISSUE AND NON-TECHNICAL DESCRIPTION OF THE PATENT

183.    Pursuant to Commission Rule 210.12(c), the Complaint includes a certified copy of the '616 patent, submitted as **Exhibit 1**. A certified copy of the U.S. Patent and Trademark Office file history, as well as three (3) additional copies of the file history and applicable pages of each technical reference mentioned in the file histories, are also submitted with this Complaint as **Appendices B and C**, respectively.

184.    Tillotson owns, by assignment, all right, title, and interest in and to the '616 patent. Certified copies of the assignment of the '616 patent from the inventors to Tillotson are attached as **Exhibit 2**.

A.    **Identification of the '616 patent and Asserted Claims**

185.    United States Letters Patent No. Re. 35,616, entitled "Elastomeric Covering Material and Hand Glove Made Therewith," was reissued on September 30, 1997. The '616 patent expires on May 11, 2010 and is based on United States reissue patent application No. 556,080, filed on November 13, 1995. The '616 patent is a reissue of U.S. Patent No. 5,014,362 which was issued on May 14, 1991.

186.    The '616 patent has twenty-four (24) claims, three of which were deleted during the prosecution of the reissue patent application. A claim chart showing use of claims 1, 17, 18, and 19 of the '616 patent by Tillotson's products is attached as **Exhibit 3**.

B.    **Non-Technical Description of the '616 patent**

187.    The '616 patent claims are directed to, *inter alia*, a closely fitting latex glove of nitrile rubber having an initial shape of a hand. The glove is impermeable to water, has a tensile strength of at least about 1500 psi, and is capable of being stretched to fit on the hand of a wearer as the glove is donned.

188.    The glove is stretched to take the shape of a hand when the hand is inserted into the glove to fit snugly around the hand. After insertion of a hand, the glove exerts an initial pressure on the hand and then relaxes within a few minutes to substantially reduce the pressure on the hand while retaining a snug fit on the hand. The patented glove provides the benefits of a tight fitting latex glove while providing increased comfort to the wearer, protection from hazardous materials, avoidance of contact with natural rubber and resulting allergic reactions, and sensitivity in performing delicate tasks.

51

189.    The closely fitting glove of the '616 patent is distinguishable from prior art gloves in that within a short time (about 6 minutes), the glove relaxes so that the pressure on the wearer's hand is reduced to less than about 50 percent of the initial pressure encountered as the glove is stretched to fit on the hand of the wearer, while still retaining the close-fitting shape of the wearer's hand.

**C.    Foreign Counterparts to the Asserted Patent**

190.    One European patent application (Patent Application No. 91250029.5; Publication No. EP0456333) corresponding to the '616 patent was filed on February 5, 1991.  Examination of that application was requested on February 18, 1992.  The European patent was granted on May 13, 1998.  The annuities for the European patent application were last paid on February 11, 1998 whereupon the patent entered the regional phase and annuity payments continued in the designated countries.  The European patent was validated during the regional phase in the United Kingdom (GB-0456333), Belgium (BE-0456333), France (FR-0456333), Germany (DE-69129381.3), Spain (ES-91250029.5), and Italy (IT-0456333).  Annuities for these six regional patents were last paid on February 5, 2007.  No other foreign counterpart applications corresponding to the '616 Patent have been filed, withdrawn, abandoned or rejected.

**D.    Licenses**

191.    The '616 patent is the subject of 15 license agreements which cover 22 licensees.  A list of licensees is attached in **Exhibit 5**.  Copies of Tillotson's license agreements are attached in **Confidential Appendix A.**

**V.    UNLAWFUL AND UNFAIR ACTS OF PROPOSED RESPONDENTS -- INFRINGEMENT OF THE '616 PATENT**

192.    Upon information and belief, Respondents manufacture, import, use, offer for sale, and/or sell after importation nitrile gloves that infringe at least claim 1, 17, 18, and 19 of the

'616 patent. Tillotson has obtained and tested numerous nitrile gloves from Respondents and their subsidiaries and affiliates, and has found with regard to each nitrile glove described in section VI infringement of at least one of the claims described and claimed in the '616 patent. See **Exhibit 6**. A claim chart depicting Respondents' infringement of at least claims 1, 17, 18, and 19 is attached at **Exhibit 4**.

## VI.    INSTANCES OF UNFAIR IMPORTATION AND SALE

193. With regard to the Respondents, Tillotson alleges upon information and belief the following specific instances as representative of unlawful importation and sale of infringing nitrile glove products. Where Tillotson identifies specific instances of obtaining nitrile gloves and the packaging of said gloves, Tillotson has in its possession proof of purchase and packaging available for inspection.

### TOP GLOVE CORPORATION BHD.

194. Respondent Top Glove Corp. Bhd., through its subsidiaries, is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

195. Subsidiary Top Glove Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation[5] which show Top Glove Sdn. Bhd. as a

---

[5] Zepol Corporation, along with other companies such as Piers (Port Import Export Reporting Service) and Manifest Journal, obtain U.S. Customs shipping data from bills of lading legally collected under the Freedom of Information Act. Each day, Zepol collects and analyzes
*(cont'd)*

Malaysian shipper for numerous consignees in the United States, including:

   (a)    511 Foodservice Ltd.;

   (b)    Abel Unlimited, Inc.;

   (c)    American Healthcare Products, Inc.;

   (d)    Ammex Corp.;

   (e)    Asian Dynamics Group Inc.;

   (f)    Bay Medical Co., Inc.;

   (g)    Boss Manufacturing Co., Inc;

   (h)    Respondent Cypress Medical Products LLC;

   (i)    Respondent Dentexx/First Medical Infection Control Associates, Inc.;

   (j)    Essential Cares;

   (k)    Foodhandler Inc.;

   (l)    Goldmax Industries, Inc.;

   (m)    Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove (USA) Inc.;

   (n)    H & L International, Inc.;

   (o)    Handgards, Inc.;

   (p)    Impact Products, LLC;

   (q)    IMS, Inc.;

   (r)    Innovative Healthcare Corp.;

   (s)    International Sourcing Co., Inc.;

   (t)    LDF Industries, Inc.;

---

approximately 30,000 ocean bills of lading, representing U.S. waterborne import activity with over 200 countries around the world.  After collecting and analyzing these bills of lading, Zepol—through its subscription-based TradeIQ™ user interface—provides users complete access to current and historical data encompassing tens of millions of bills of lading.  The data accessible from TradeIQ™ date back to January 1, 2003.

(u)     Lowrie & Company Medical Resource, Inc.;

(v)     North Safety Products, Inc.;

(w)    Northern Safety Co., Inc.;

(x)     Respondent Protective Industrial Products, Inc.;

(y)     Richmond Packaging LLC;

(z)     SAS Safety Corp.;

(aa)    Seattle Glove, Inc.;

(bb)    Sentry Medical Products, Inc.;

(cc)    SyrVet Inc.;

(dd)    Respondent Top Glove Corp. Bhd.'s Subsidiary TG Medical (USA) Inc.;

(ee)    The Safety Zone, LLC;

(ff)     Tradex International, Inc.;

(gg)    Respondent Tronex International, Inc.; and

(hh)    Respondent West Chester Holdings, Inc.

196.    Tillotson obtained and evaluated nitrile gloves manufactured by Top Glove Sdn. Bhd. Specifically, Tillotson obtained from a salesman "NS FlexShield Disposable Nitrile Glove, Low Powder" brand nitrile gloves, lot number 03220050563, nitrile gloves from Top Glove Sdn. Bhd.'s United States consignee, Northern Safety Company, Inc. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Northern Safety Company, Inc. only obtains gloves from one manufacturer—Top Glove Sdn. Bhd. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

197.    In addition, Tillotson purchased and evaluated nitrile gloves manufactured by Top Glove Sdn. Bhd. Specifically, Tillotson purchased "Dexi-Task Nitrile Powdered Examination Gloves" brand nitrile gloves, lot number 32202034, from Top Glove Sdn. Bhd.'s United States

consignee, North Safety Products. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, North Safety Products only obtains gloves from one Malaysian manufacturer—Top Glove Sdn. Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

198. Subsidiary TG Medical Sdn Bhd. has manufactured nitrile gloves and imported those nitrile gloves into the United States. Specifically, Tillotson has obtained data from Zepol Corporation which show TG Medical Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

      (a)    Boyd Medical & Safety Supplies, Inc.;

      (b)    Respondent Cypress Medical Products LLC;

      (c)    Foodhandler Inc.;

      (d)    Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove (USA) Inc.;

      (e)    Impact Products, LLC;

      (f)    International Sourcing Co., Inc.;

      (g)    Lowrie & Company Medical Resource, Inc.;

      (h)    Mexpo International, Inc.;

      (i)    Richmond Packaging LLC;

      (j)    Respondent Top Glove Corp. Bhd.'s Subsidiary TG Medical (USA) Inc.;

      (k)    The Safety Zone, LLC; and

      (l)    Respondent Tronex International, Inc.

199. Tillotson purchased and evaluated nitrile gloves manufactured by TG Medical Sdn. Bhd. Specifically, Tillotson purchased from an online supplier "Hand-Tek Disposable Powder-Free Nitrile Gloves" brand nitrile gloves, lot number 0932017086. These gloves are distributed by TG Medical Sdn. Bhd.'s United States consignee, Boyd Medical & Safety

Supplies, Inc.    The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Boyd Medical & Safety Supplies, Inc. only obtains gloves from one Malaysian manufacturer—TG Medical Sdn. Bhd.    Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

200.    Subsidiary Great Glove Sdn. Bhd. has manufactured nitrile gloves and imported those nitrile gloves into the United States.    Specifically, Tillotson has obtained data from Zepol Corporation which show Great Glove Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    Band-it Rubber Co.;

    (b)    Respondent Cypress Medical Products LLC;

    (c)    Foodhandler Inc.;

    (d)    Goldmax Industries, Inc.;

    (e)    Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove (USA) Inc.;

    (f)    H & L International, Inc.;

    (g)    Handgards, Inc.;

    (h)    International Sourcing Co., Inc.;

    (i)    Lowrie & Company Medical Resource, Inc.;

    (j)    Mexpo International, Inc.;

    (k)    Respondent Protective Industrial Products, Inc.;

    (l)    Richmond Packaging LLC;

    (m)    Seattle Glove, Inc.;

    (n)    SyrVet Inc.;

    (o)    Respondent Top Glove Corp. Bhd.'s Subsidiary TG Medical (USA) Inc.;

    (p)    The Safety Zone, LLC;

(q)     Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Medical;

(r)     Respondent Tronex International, Inc.; and

(s)     Respondent West Chester Holdings, Inc.;

201.    Tillotson purchased and evaluated nitrile gloves manufactured by Great Glove Sdn. Bhd.  Specifically, Tillotson purchased from an online supplier "Nitri-Cor Silver Nitrile Disposable Gloves" brand nitrile gloves, lot number 03220291253.  These gloves are distributed by Great Glove Sdn. Bhd.'s United States consignee, International Sourcing Co.  The glove dispenser containing these gloves reads "Made in Malaysia."  According to Zepol data, the only gloves International Sourcing Co. obtains from Malaysia come from Respondent Top Glove Corp. Bhd.'s subsidiaries, and Great Glove Sdn. Bhd. represents the most shipments.  Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

202.    Subsidiary Medi-Flex Limited d/b/a Flexitech Sdn. Bhd. has manufactured nitrile gloves and imported those nitrile gloves into the United States.  Specifically, Tillotson has obtained data from Zepol Corporation which show Flexitech Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

(a)     AmerCare, Inc.;

(b)     Best Tex International Inc.;

(c)     Carmichael International Service;

(d)     Colonial Surgical Supply, Inc.;

(e)     HSI Gloves, Inc.;

(f)     Metron Technology Corp.;

(g)     Oak Technical, LLC;

(h)     Perfect Fit Glove Co., LLC;

(i)      PM Gloves, Inc.;

(j)      Respondent Protective Industrial Products, Inc.;

(k)      Respondent QRP, Inc. d/b/a QRP Gloves, Inc.;

(l)      Sentry Medical Products, Inc.;

(m)     TechNiGlove International, Inc.;

(n)      TNT Enterprise, Inc.; and

(o)      Respondent Tronex International, Inc.

203.    Tillotson purchased and evaluated nitrile gloves manufactured by Medi-Flex
Limited d/b/a Flexitech Sdn. Bhd.  Specifically, Tillotson purchased "Oaktec White Nitrile
Gloves Powder Free" brand nitrile gloves, lot number 130NWF6110523M, batch number
1105NWFM024DD and "Oaktec Blue Nitrile Gloves Powder Free" brand nitrile gloves, lot
number 224NBT3110523L, both from Flexitech Sdn. Bhd.'s United States consignee, Oak
Technical, LLC.  Both glove dispensers containing these gloves read "Made in Malaysia."
According to Zepol data, Oak Technical, LLC only obtains gloves from one Malaysian
manufacturer—Flexitech Sdn. Bhd.  Those nitrile gloves were then evaluated and found to
infringe at least claims 1, 17, 18, and 19 of the '616 patent.

204.    In addition, Tillotson purchased and evaluated nitrile gloves manufactured by
Flexitech Sdn. Bhd.  Specifically, Tillotson purchased "Elastex Powder Free Nitrile Exam
Gloves" brand nitrile gloves, lot number 25R0619105, and "Criterion Powder-Free Nitrile
Examination Gloves" brand nitrile gloves, lot number 023-M6NF 056, both from an online
supplier headquartered in the Unites States.  Both glove dispensers containing these gloves read
"Made in Malaysia."  According to Zepol data, that online supplier headquartered in the United
States only obtains gloves from one Malaysian manufacturer—Flexitech Sdn. Bhd.  Those nitrile

gloves were then evaluated and found to infringe claims 1, 17, and 18 and claims 1, 17, 18, and 19, respectively, of the '616 patent.

## ANSELL LTD.

205.    Respondent Ansell Ltd., through its subsidiaries, has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

206.    Subsidiary Ansell (Thailand) Ltd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.    Specifically, Tillotson has obtained data from Zepol Corporation which show Subsidiary Ansell (Thailand) Ltd. as a Thailand shipper for Respondent Ansell Ltd.'s United States subsidiary Ansell Protective Products, Inc.

207.    Tillotson purchased and evaluated nitrile gloves manufactured for and distributed by Subsidiary Ansell Healthcare Products, LLC.    Specifically, Tillotson purchased from an online supplier "Micro-Touch Smooth Nitrile," lot number 05080004FL, style number 6034104. The dispenser containing these gloves uses Respondent Ansell Ltd.'s "MICRO-TOUCH" trademark and reads "Made in Malaysia."    Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

208.    Tillotson purchased and evaluated nitrile gloves manufactured for and distributed by Subsidiary Ansell Protective Products, Inc. d/b/a Ansell Occupational Healthcare. Specifically, Tillotson purchased from an online supplier "TNT Blue Disposable Nitrile Gloves," lot number 05121429AU, style number 92-675.    The dispenser containing these gloves uses

Respondent Ansell Ltd.'s "TNT" trademark and reads "Made in Malaysia." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## BEIJING HUATENG RUBBER PLASTIC

209.    Respondent Beijing Huateng Rubber Plastic is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Beijing Huateng Rubber Plastic as a Chinese shipper for United States consignee North Safety Products.

210.    Tillotson purchased and evaluated nitrile gloves manufactured by Beijing Huateng Rubber Plastic. Specifically, Tillotson purchased from an online supplier "ChemSoft CE Nitrile Powder-Free Gloves" brand nitrile gloves, lot number 20060117. These gloves are distributed by Beijing Huateng Rubber Plastic's United States consignee, North Safety Products. The glove dispenser containing these gloves reads "Made in China." According to Zepol data, North Safety Products only obtains gloves from one Chinese manufacturer—Beijing Huateng Rubber Plastic. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## GLOVCO (M) SDN. BHD.

211.    Respondent Glovco is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Glovco as a Malaysian shipper for numerous consignees in the United States, including:

      (a)      Crosstex International, Inc.;

(b)     Respondent Dash Medical Gloves, Inc.;

(c)     Firstline LLC; and

(d)     SS White Burs, Inc.

212.    Tillotson purchased and evaluated nitrile gloves manufactured by Glovco. Specifically, Tillotson purchased from an online supplier "Crosstex Left and Right Fitted Nitrile Gloves Powder Free" brand nitrile gloves, lot number 18051012.  These gloves are distributed by Glovco's United States consignee, Crosstex International, Inc.  The glove dispenser containing these gloves reads "Made in Malaysia."  According to Zepol data, Crosstex International, Inc. only obtains gloves from one Malaysian manufacturer—Glovco.  Those nitrile gloves were evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### HARTALEGA HOLDINGS BHD.

213.    Respondent Hartalega Holdings Bhd., through its subsidiaries, has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

214.    Subsidiary Hartalega Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Hartalega Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

(a)     Audra Inc.;

(b)     Bio-Flex International, Inc.;

(c)     Respondent Dash Medical Gloves, Inc.;

(d)     Dermatec Direct;

(e)    Foodhandler Inc.;

(f)    Hourglass Industries, Inc.;

(g)    Innovative Healthcare Corp.;

(h)    Intermed Gloves;

(i)    Medline Industries, Inc.;

(j)    Midavol Protective Products;

(k)    Respondent Hartalega Holdings Bhd.'s Subsidiary Pharmatex USA, Inc.;

(l)    Respondent QRP, Inc. d/b/a QRP Gloves, Inc.; and

(m)    Richmond Packaging LLC.

215.    Tillotson purchased and evaluated nitrile gloves manufactured by Hartalega Sdn. Bhd. Specifically, Tillotson purchased from an online supplier "Bio-Flex Nitrile Powder-Free Examination Gloves" brand nitrile gloves, lot number 0603030170, item number BNT1085. The packaging of these nitrile gloves indicates that they were manufactured by Hartalega in Malaysia. Those gloves were distributed by Hartalega Sdn. Bhd.'s United States consignee, Bio-Flex International, Inc. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Bio-Flex International, Inc. only obtains gloves from one Malaysian manufacturer—Hartalega Sdn. Bhd. Those nitrile gloves were evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

216.    Furthermore, Tillotson obtained and evaluated additional nitrile gloves manufactured by Hartalega Sdn. Bhd. Specifically, Tillotson obtained from a Georgia dental office "Hand-Pro NXgen Nitrile Powder Free Non-Sterile Nitrile Examination Gloves" brand nitrile gloves, lot number 233R05K005. Those gloves were distributed by Hartalega Sdn. Bhd.'s United States consignee, HourGlass Industries, Inc. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, HourGlass Industries, Inc. only obtains

gloves from one Malaysian manufacturer—Hartalega Sdn. Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

217.    Moreover, Tillotson obtained and evaluated additional nitrile gloves manufactured by Hartalega Sdn. Bhd. Specifically, Tillotson obtained from a Georgia dental office "Pharmatex Nitrile Powder Free" brand nitrile gloves, style number NTR22MM, lot number 0602090278. Those gloves were distributed by Hartalega Sdn. Bhd.'s United States subsidiary, Pharmatex USA, Inc. According to Hartalega Holdings Bhd.'s website, Pharmatex is its international brand. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Pharmatex USA, Inc. only obtains gloves from one Malaysian manufacturer—Hartalega Sdn. Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### IDEAL HEALTHCARE GROUP CO. LTD.

218.    Respondent Ideal Healthcare Group Co. Ltd. and its affiliates are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

219.    Respondent Ideal Healthcare Group Co. Ltd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Ideal Healthcare Group Co. Ltd. as a Chinese shipper for numerous consignees in the United States, including:

(a)    Abco Safety;

(b)    AmerCare, Inc.;

(c)    Chemsafe International Inc.;

(d)    Chemtech International, LLC;

(e)    Respondent Cypress Medical Products LLC;

(f)    Global Glove and Safety Manufacturing, LLC;

(g)    Innovative Healthcare Corp.; and

(h)    SyrVet Inc.

220.    Affiliate Ideal Medical Industries Co., Ltd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Affiliate Ideal Medical Industries Co., Ltd. as a Chinese shipper for Global Glove.

221.    Tillotson obtained and evaluated nitrile gloves manufactured by Respondent Ideal Healthcare Group Co. Ltd. and its affiliates.  Specifically, Tillotson obtained from a glove sales representative "Powder Free Nitrile Gloves," no lot number, style number 705PF.  These gloves are distributed by Respondent Ideal Healthcare Group Co. Ltd. and its affiliate Ideal Healthcare Medical Industries Co., Ltd.'s United States consignee, Global Glove & Safety Manufacturing. The glove dispenser containing these gloves reads "Made in China."  According to Zepol data, Global Glove & Safety Manufacturing only obtains gloves from one Chinese manufacturer—Ideal Healthcare Group Co. Ltd.  Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## JDA (TIANJIN) PLASTIC RUBBER CO. LTD.

222.    Respondent JDA and its affiliates are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

223.    Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent JDA as a Chinese shipper for numerous consignees in the United States, including:

    (a)    Agio Group Inc.;

    (b)    Asia Dynamics Inc.;

    (c)    Atlantis Plastics, Inc.;

    (d)    Respondent Basic Medical Industries Inc.;

    (e)    Central Association for the Blind, Inc.;

    (f)    Respondent Dash Medical Gloves, Inc.;

    (g)    Respondent Delta Medical Systems, Inc.;

    (h)    Respondent JDA (Tianjin) Plastic Rubber Co. Ltd.'s Affiliate Durasafe, Inc.;

    (i)    IMS, Inc.;

    (j)    Innovative Healthcare Corporation;

    (k)    JXJ Labs Inc.

    (l)    Respondent Magla Products LLC;

    (m)    Medgluv Inc.;

    (n)    Norpak Inc.;

    (o)    PDQ Trading Co., Inc.;

    (p)    PSS/World Medical, Inc.;

    (q)    Preventive Care, Inc.;

    (r)    Product Club, Inc.;

    (s)        Quantum Labs Inc.;

    (t)        Rampart International, Inc.;

    (u)        RTS Supply; and

    (v)        Respondent JDA (Tianjin) Plastic Rubber Co. Ltd.'s Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc.

224. Tillotson purchased and evaluated nitrile gloves manufactured by Respondent JDA. Specifically, Tillotson purchased from an online supplier "Select Medical Products Powder Free Nitrile Non-Sterile Medical Exam Gloves" brand nitrile gloves, lot number 111005AS. These gloves are distributed by JDA's United States consignee, PSS World Medical, Inc. The glove dispenser containing these gloves reads "Made in China." According to Zepol data, PSS World Medical, Inc. only obtains gloves from one Chinese manufacturer—JDA. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

225. Furthermore, Tillotson purchased and evaluated additional nitrile gloves manufactured by Respondent JDA. Specifically, Tillotson purchased "SureCare Powder Free Sure-Flex Nitrile Exam Gloves" brand nitrile gloves, lot number LQ2006 from JDA's United States consignee, IMS, Inc. The glove dispenser containing these gloves reads "Made in China." According to Zepol data, IMS, Inc. only obtains gloves from one Chinese manufacturer—JDA. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

226. Furthermore, Tillotson purchased and evaluated additional nitrile gloves manufactured by Respondent JDA. Specifically, Tillotson purchased from a retailer "Stanley Nitrile Disposable Gloves" brand nitrile gloves, no lot number. These gloves are distributed by JDA's United States consignee, Magla Products, Inc. The glove dispenser containing these

gloves reads "Made in China." According to Zepol data, Magla Products, Inc. only obtains gloves from one Chinese manufacturer—JDA. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

227.    Furthermore, Tillotson purchased and evaluated additional nitrile gloves manufactured by Respondent JDA and its affiliate Durasafe, Inc. Specifically, Tillotson purchased from an online supplier "Life Guard Nitrile Exam Gloves," brand nitrile gloves, lot number J1EJ, style number 6304. The dispenser containing these gloves uses Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc.'s "Life Guard" trademark and reads "Made in China for Southern Pacific Coast Corporation." According to Zepol data, Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. only obtains gloves from one Chinese manufacturer—JDA and its affiliate at the same address, Durasafe, Inc. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### KOSSAN RUBBER INDUSTRIES BHD.

228.    Respondent Kossan Rubber Industries Bhd. and its subsidiaries is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Kossan Rubber Industries Bhd. is a Malaysian shipper to United States consignee Cypress Medical Products Limited for nitrile gloves described and claimed in the '616 patent.

229.    Subsidiary Kossan Latex Industries (M) Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the

'616 patent.    Specifically, Tillotson has obtained data from Zepol Corporation which show Kossan Latex Industries (M) Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

(a)    AmerCare, Inc.;

(b)    Continental Lab Products;

(c)    Respondent Cypress Medical Products LLC;

(d)    Respondent Dynarex Corp.;

(e)    Econ Disposable Supplies, Inc.;

(f)    Kemco Supply of Washington Inc.;

(g)    Respondent Kossan Rubber Industries Bhd.'s Subsidiary Kossan Gloves, Inc. d/b/a Sintex.

(h)    Lowrie & Co., Inc. d/b/a Medical Resource Inc.;

(i)    Respondent Magla Products LLC;

(j)    Metro-Pacifica, LLC;

(k)    Omni International, LLC;

(l)    Pro-Stat Inc.; and

(m)    Shepard Medical Products, Inc.

230.    Subsidiary Perusahaan Getah Asas Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Perusahaan Getah Asas Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

(a)    Action Team Medical;

(b)    Aero-Med, Ltd.;

(c)    AmerCare, Inc.;

(d)     Ancin Inc.;

(e)     Respondent Ansell Ltd.'s Subsidiary Ansell Canada Inc.;

(f)     Respondent Ansell Ltd.'s Subsidiary Ansell Healthcare Products LLC;

(g)     A.R. Medicom Inc.;

(h)     Bowers Medical Supply Co.;

(i)     Coast Scientific Inc.;

(j)     Continental Lab Products;

(k)     Respondent Dynarex Corp.;

(l)     Econ Disposable Supplies, Inc.;

(m)     Genuine Glove;

(n)     Glove Center;

(o)     Glove USA, Inc.;

(p)     Golden Pacific Healthcare Products, Inc.;

(q)     Kemco Supply of Washington Inc.;

(r)     Respondent Kossan Rubber Industries Bhd.'s Subsidiary Kossan Gloves, Inc. d/b/a Sintex;

(s)     Lowrie & Co., Inc. d/b/a Medical Resource Inc.;

(t)     Medco Supply Co.;

(u)     Medical Safety Supply;

(v)     Metro-Pacifica LLC;

(w)     Respondent Kossan Rubber Industries Bhd.'s Subsidiary Normandin Pacific Holdings Corp. d/b/a Pacifica;

(x)     Omni International, LLC;

(y)     Pro-Stat Inc.;

(z)     Respondent QRP, Inc. d/b/a QRP Gloves, Inc.;

(aa)    Shepard Medical Product Inc.;

(bb)    Universal X-Ray Company of Canada; and

(cc)    Respondent West Chester Holdings, Inc.

231.    Subsidiary Wear Safe (M) Sdn. Bhd., is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.    Specifically, Tillotson has obtained data from Zepol Corporation which show Wear Safe (M) Sdn. Bhd. as a Malaysian shipper for United States consignee Econ Disposable Supplies, Inc.

232.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Kossan Rubber Industries Bhd. and its subsidiaries.    Specifically, Tillotson purchased "Saf-Care Powder Free Nitrile Exam Gloves" brand nitrile gloves, lot number 01076216 from Respondent Kossan Rubber Industries Bhd.'s United States consignee, Econ Disposable Supplies, Inc.    The glove dispenser containing these gloves reads "Made in Malaysia."    According to Zepol data, Econ Disposable Supplies, Inc. only obtains gloves from one Malaysian manufacturer— Kossan Rubber Industries Bhd.    Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

233.    In addition, Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Kossan Rubber Industries Bhd.    Specifically, Tillotson purchased from an online supplier "Powder-Free NitriSoft Non-Latex Nitrile Exam Gloves" brand nitrile gloves, lot number 04036204.    These gloves are distributed by Respondent Kossan Rubber Industries Bhd.'s United States subsidiary, Normandin Pacific Holdings Corp. d/b/a Pacifica.    The glove dispenser containing these gloves reads "Made in Malaysia."    According to Zepol data, Normandin Pacific Holdings Corp. d/b/a Pacifica only obtains gloves from one Malaysian manufacturer— Kossan

Rubber Industries Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### LAGLOVE (M) SDN. BHD.

234. Respondent Laglove is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Laglove as a Malaysian shipper for numerous consignees in the United States, including:

(a)    Brightness Corp.;

(b)    CT International;

(c)    Digitcare Corp.; and

(d)    Firstline LLC.

235. Tillotson purchased and evaluated nitrile gloves manufactured by Laglove. Specifically, Tillotson purchased from an online supplier "Defender T by Digitcare Powder Free Nitrile Examination Gloves" brand nitrile gloves, lot number 4F30 212L, item number 6515-01-521-7505. According to Malaysiamanufacturers.com, "Defender" is a Laglove brand name. These gloves are distributed by Laglove's United States consignee, Digitcare Corp. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Digitcare Corp. only obtains gloves from one Malaysian manufacturer—Laglove. Those nitrile gloves were then evaluated and found to infringe at least claims 1 and 19 of the '616 patent.

236. In addition, Tillotson purchased and evaluated nitrile gloves manufactured by Laglove. Specifically, Tillotson purchased from an online supplier "FrontLine FL9-3 by Digitcare Powder-Free Nitrile Examination Gloves" brand nitrile gloves, lot number 6K06 104P, batch number K010206. These gloves are distributed by Laglove's United States consignee,

Digitcare Corp.   The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Digitcare Corp. only obtains gloves from one Malaysian manufacturer—Laglove.  Those nitrile gloves were then evaluated and found to infringe at least claims 1 and 19 of the '616 patent.

## PT MEDISAFE TECHNOLOGIES

237.   Respondent PT Medisafe Technologies and its affiliates are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

238.   Respondent PT Medisafe Technologies has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent PT Medisafe Technologies as an Indonesian shipper for numerous consignees in the United States, including:

      (a)    Akers Industries, Inc.;

      (b)    Clinical Supply Co.;

      (c)    Respondent Cypress Medical Products LLC;

      (d)    Global Imports USA;

      (e)    Sterigard; and

      (f)    Respondent West Chester Holdings, Inc.

239.   Tillotson purchased and evaluated nitrile gloves manufactured by Respondent PT Medisafe Technologies and its affiliates.   Specifically, Tillotson purchased from an online supplier "syntrile pf blue next general gloves," brand nitrile gloves, lot number MSF 04-01.

These gloves are distributed by Respondent PT Medisafe Technologies' United States consignee Respondent Cypress Medical Products LLC. The dispenser containing these gloves uses Respondent Cypress Medical Products LLC's "SYNTRILE" trademark and reads "Product of Indonesia." According to Zepol data, Cypress Medical Products LLC only obtains gloves from one Indonesian manufacturer—PT Medisafe Technologies. Those gloves were then evaluated and found to infringe claims 1, 17, 18, and 19 of the '616 patent.

## PT SHAMROCK MANUFACTURING CORPORATION

240. Respondent PT Shamrock Manufacturing Corporation and its subsidiaries has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent PT Shamrock Manufacturing Corporation as an Indonesian shipper for Respondent PT Shamrock Manufacturing Corporation's United States subsidiary Shamrock Manufacturing Company, Inc.

241. Subsidiary PT Maja Agung Latexindo has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Subsidiary PT Maja Agung Latexindo as an Indonesian shipper for Respondent PT Shamrock Manufacturing Corporation's United States subsidiary Shamrock Manufacturing Company, Inc.

242. Subsidiary PT Haloni Jane has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has

obtained data from Zepol Corporation which show Subsidiary PT Haloni Jane as an Indonesian shipper for numerous consignees in the United States, including:

    (a)     Respondent Basic Medical Industries Inc.;

    (b)     Inter Orient Services;

    (c)     Respondent Liberty Glove & Safety Co.;

    (d)     Respondent PT Shamrock Manufacturing Corporation's Subsidiary Shamrock Manufacturing Company, Inc.;

    (e)     Respondent PT Shamrock Manufacturing Corporation's Subsidiary Shamrock Marketing Company, Inc.; and

    (f)     Solid Wing Trading Corp.

243.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent PT Shamrock Manufacturing Corporation.  Specifically, Tillotson purchased from an online supplier "Shamrock Nitrile Examination Gloves," lot number 51290204.  These gloves are distributed by Respondent PT Shamrock Manufacturing Corporation's United States subsidiary Shamrock Manufacturing Company, Inc.  The glove dispenser containing these gloves reads "Made in Indonesia."  According to Zepol data, Shamrock Manufacturing Company, Inc. only obtains gloves from one Indonesian manufacturer— PT Shamrock Manufacturing Corporation.  Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## RIVERSTONE RESOURCES SDN. BHD.

244.    Respondent Riverstone Resources Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent

Riverstone Resources Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

     (a)     Fisher Scientific Company LLC;

     (b)     Hagemeyer North America;

     (c)     Jabil Global Services;

     (d)     Sierra Scientific, Inc. d/b/a Value-tek; and

     (e)     The Cameron and Barkeley Co.

245.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Riverstone Resources Sdn. Bhd. Specifically, Tillotson purchased "Value-Tek Nitrile 9.5" brand nitrile gloves, lot number 311006, item number VTGNPFX95, from Respondent Riverstone Resources Sdn. Bhd.'s United States consignee Sierra Scientific, Inc. d/b/a Value-Tek. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Sierra Scientific, Inc. d/b/a Value-Tek only obtains gloves from one Malaysian manufacturer—Riverstone Resources Sdn. Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

246.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Riverstone Resources Sdn. Bhd. Specifically, Tillotson purchased "Vallen Powder Free Nitrile Gloves" brand nitrile gloves, lot number 224NBT2070611XL39814 MY, item number VLN4PFXL, from Respondent Riverstone Resources Sdn. Bhd.'s United States consignee Hagemeyer North America. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Hagemeyer North America only obtains gloves from one Malaysian manufacturer—Riverstone Resources Sdn. Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## SEAL POLYMER INDUSTRIES BHD.

247.    Respondent Seal Polymer Industries Bhd., through its subsidiary, is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

248.    Subsidiary Seal Polymer Industries Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Seal Polymer Industries Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    AmerCare, Inc.;

    (b)    Respondent Ansell Ltd.'s Subsidiary Ansell Healthcare Products LLC;

    (c)    Respondent Cypress Medical Products LLC;

    (d)    Mayer Laboratories Inc.;

    (e)    Med Express Inc.;

    (f)    Medgluv Inc.;

    (g)    Mexpo International, Inc.;

    (h)    Mydent International Corp.;

    (i)    Pacewell USA Inc.;

    (j)    Preventive Care Inc.;

    (k)    Select Medical Supply Inc.;

    (l)    Strata Medical Inc.; and

    (m)    The Safety Zone, LLC.

249.    Tillotson purchased and evaluated nitrile gloves manufactured by Seal Polymer Industries Sdn. Bhd.. Specifically, Tillotson purchased "Digitex NLX Nitrile Non-Latex Exam Gloves" brand nitrile gloves, lot number 6W01015 from Seal Polymer Industries Sdn. Bhd.'s United States consignee, Mayer Laboratories Inc. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Mayer Laboratories Inc. only obtains gloves from one Malaysian manufacturer—Seal Polymer Industries Sdn. Bhd. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## SMART GLOVE HOLDINGS SDN. BHD.

250.    Respondent Smart Glove Holdings Sdn. Bhd., through its subsidiaries, is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

251.    Subsidiary Smart Glove Corporation Sdn. Bhd. has manufactured nitrile gloves and imported those nitrile gloves into the United States. Specifically, Tillotson has obtained data from Zepol Corporation which show Smart Glove Corporation Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    Expeditors International of Washington.

    (b)    HSI Gloves, Inc.; and

    (c)    Maytex Corp.;

252.    Subsidiary PT Smart Glove Indonesia has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

Specifically, Tillotson has obtained data from Zepol Corporation which show PT Smart Glove Indonesia as an Indonesian shipper for United States consignee Maytex Corporation.

253.    Tillotson purchased and evaluated nitrile gloves manufactured by Subsidiary PT Smart Glove Indonesia. Specifically, Tillotson purchased from an online supplier "Upperhand Powder Free Nitrile Examination Gloves" brand nitrile gloves, lot number 08R05C005, item number 5850. These gloves are distributed by PT Smart Glove Indonesia's United States consignee, Maytex Corporation. The glove dispenser containing these gloves reads "Made in Indonesia." According to Zepol data, Maytex Corporation only obtains gloves from one Indonesian manufacturer— PT Smart Glove Indonesia. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

254.    Affiliate Sri Johani Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Affiliate Sri Johani Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

(a)    Alpine Gloves, Inc.; and

(b)    Respondent QRP, Inc. d/b/a QRP Gloves, Inc.

### SUPERMAX CORPORATION BHD.

255.    Respondent Supermax Corporation Bhd., through its subsidiaries, is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or

use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.[6]

256.    Subsidiary Supermax Latex Products Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Supermax Latex Products Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

        (a)     Respondent Cypress Medical Products LLC;

        (b)     Genuine Glove;

        (c)     Interworld Network Int'l, Inc.;

        (d)     Plak Smacker, Inc.;

        (e)     Saf-T-Gard International, Inc.; and

        (f)     William A. McGinty Company.

257.    Subsidiary APL Products Sdn. Bhd., is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show APL Products Sdn. Bhd. as a Malaysian shipper for United States consignee Greenball Corporation.

258.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Supermax Corporation Bhd. and its subsidiaries.    Specifically, Tillotson purchased from an

---

[6]  While Tillotson is not formally alleging a copyright violation at this time, Subsidiary Asia Pacific Latex Sdn. Bhd. has infringed Tillotson's copyrights in four photographs created by Tillotson and used on its website by reproducing those photographs on the Asia Pacific Latex Sdn. Bhd. website, www.apl.com.my.

online supplier "Aurelia Protégé Nitrile Powder Free Blue Examination Gloves" brand nitrile gloves, lot number S4140028, and "Aurelia 110 Micro-Textured Soft Blue Nitrile Medical Examination Gloves, Powder Free" brand nitrile gloves, lot number S3630019. These gloves are distributed by Respondent Supermax Corporation Bhd.'s United States subsidiary, Supermax, Inc. d/b/a Aurelia Gloves. Both glove dispensers containing these gloves read "Made in Malaysia." According to Zepol data, Supermax, Inc. d/b/a Aurelia Gloves only obtains gloves from one Malaysian manufacturer—Supermax Corporation Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 and at least claims 1 and 19, respectively, of the '616 patent.

## YEE LEE CORPORATION BHD.

259.    Respondent Yee Lee Corporation Bhd., through its subsidiaries, is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

260.    Subsidiary Cranberry (M) Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Subsidiary Cranberry (M) Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

(a)    Almedic;

(b)    Ancin Inc.;

(c)    McCordick Glove & Safety Inc.;

(d)    Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.;

     (e)     Prosemedic S.A.;

     (f)     Superior Glove Works Ltd..

261.    Tillotson purchased and evaluated nitrile gloves manufactured and distributed by subsidiary Cranberry (M) Sdn. Bhd. d/b/a Cranberry USA, Inc. Specifically, Tillotson purchased from an online supplier "Cranberry Contour Powder Free Nitrile Exam Gloves," lot number 0240405974, item number 3119. The dispenser containing these gloves uses Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.'s "CRANBERRY" trademark and reads "Made in Malaysia." According to Zepol data, Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. only obtains gloves from one Malaysian manufacturer—Cranberry (M) Sdn. Bhd. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

262.    In addition, Tillotson purchased and evaluated nitrile gloves manufactured and distributed by subsidiary Cranberry (M) Sdn. Bhd. d/b/a Cranberry USA, Inc. Specifically, Tillotson purchased from an online supplier "Cranberry Xlim Powder Free Nitrile Exam Gloves," lot number 0248905247. The dispenser containing these gloves uses Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.'s "CRANBERRY" trademark and reads "Made in Malaysia." According to Zepol data, Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. only obtains gloves from one Malaysian manufacturer—Cranberry (M) Sdn. Bhd. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

263.    Furthermore, Tillotson purchased and evaluated additional nitrile gloves manufactured and distributed by subsidiary Cranberry (M) Sdn. Bhd. d/b/a Cranberry USA, Inc. Specifically, Tillotson purchased from an online supplier "Cranberry NSure Powder Free Nitrile

Medical Examination Gloves," lot number 0191903041.  The dispenser containing these gloves uses Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.'s "CRANBERRY" trademark and reads "Made in Malaysia."  According to Zepol data, Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. only obtains gloves from one Malaysian manufacturer—Cranberry (M) Sdn. Bhd.  Those gloves were then evaluated and found to infringe at least claims 1 and 19 of the '616 patent.

### YTY HOLDINGS SDN. BHD.

264.    Respondent YTY Holdings Sdn. Bhd., through its subsidiaries and affiliates, has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

265.    Subsidiary YTY Industry Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Subsidiary YTY Industry Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

     (a)    Respondent Adenna, Inc.;

     (b)    Respondent Cypress Medical Products LLC; and

     (c)    Medtexx Partners Inc.

266.    Subsidiary YTY Industry (Manjung) Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Subsidiary YTY

Industry Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

      (a)     Respondent Adenna, Inc.;

      (b)     Respondent Cypress Medical Products LLC;

      (c)     Designer Care Co., Ltd.;

      (d)     Innovative Healthcare Corporation;

      (e)     Life Science Products;

      (f)     Lifetime Glove Co., Inc.;

      (g)     Med-express Inc.

      (h)     Medline Industries, Inc.;

      (i)     Medtexx Partners Inc.;

      (j)     Mydent International;

      (k)     Pac-kem Value Medical Supply;

      (l)     Preventative Care, Inc.;

      (m)     Primary Products;

      (n)     Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro 2 Solutions Inc.; and

      (o)     Select Medical Products.

267.    Affiliate Green Prospect Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Affiliate Green Prospect Sdn. Bhd. as a Malaysian shipper for United States consignee Respondent Adenna, Inc.

268.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent YTY Holdings Sdn. Bhd.  Specifically, Tillotson purchased from an online supplier "Adenna

Nitrile Powder Free Exam Gloves," lot number 002-M6NF 016NT.  These gloves are distributed by Respondent YTY Holdings Sdn. Bhd.'s United States consignee, Adenna, Inc.  The glove dispenser containing these gloves reads "Made in Malaysia."  According to Zepol data, Adenna, Inc. only obtains gloves from one Malaysian manufacturer—YTY Holdings Sdn. Bhd.  Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## ADENNA, INC.

269.    Respondent Adenna, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Adenna, Inc. as a United States consignee for the following manufacturers, including:

(a)    Respondent YTY Holdings' Affiliate Green Prospect Sdn. Bhd.;

(b)    Respondent YTY Holdings Sdn. Bhd.'s Subsidiary YTY Industry Sdn. Bhd.; and

(c)    Respondent YTY Holdings Sdn. Bhd.'s Subsidiary YTY Industry (Manjung) Sdn. Bhd.

270.    Affiliate Nitritex, Ltd. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Affiliate Nitritex, Ltd. as a United States consignee for Sri Lanka manufacturer Uti Pership (PVT) Ltd.

271.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent YTY Holdings Sdn. Bhd. and distributed by Respondent Adenna, Inc.  Specifically, Tillotson

purchased from an online supplier "Adenna Nitrile Powder Free Exam Gloves," lot number 002-M6NF 016NT. The glove dispenser containing these gloves reads "Made in Malaysia." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### BASIC MEDICAL INDUSTRIES INC.

272.    Respondent Basic Medical Industries Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Basic Medical Industries Inc. as a United States consignee for the following manufacturers, including:

(a)    Hongye Plastic Products Co. Ltd.;

(b)    Intco Industrial Co. Ltd.; and

(c)    Respondent JDA (Tianjin) Plastic Rubber Co., Ltd.

273.    Tillotson purchased and evaluated nitrile gloves distributed by Respondent Basic Medical Industries Inc. Specifically, Tillotson purchased from an online supplier "SynGuard Nitrile Examination Gloves," brand nitrile gloves, lot number 0603-206117. The glove dispenser containing these gloves reads "Made in China." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### CYPRESS MEDICAL PRODUCTS LLC

274.    Respondent Cypress Medical Products LLC is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol

Corporation which show Respondent Cypress Medical Products LLC as a United States consignee for the following manufacturers, including:

    (a)    Respondent Ideal Healthcare Group Co. Ltd.;

    (b)    Respondent PT Medisafe Technologies;

    (c)    Respondent Seal Polymer Industries Bhd.'s Subsidiary Seal Polymer Industries Sdn. Bhd.;

    (d)    Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove Sdn. Bhd.;

    (e)    Respondent Top Glove Corp. Bhd.'s Subsidiary TG Medical Sdn. Bhd.; and

    (f)    Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Sdn. Bhd.;

275.   Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Pt. Medisafe Technologies and distributed by Respondent Cypress Medical Products LLC. Specifically, Tillotson purchased from an online supplier "syntrile pf blue next general gloves," brand nitrile gloves, lot number MSF 04-01.   The dispenser containing these gloves uses Respondent Cypress Medical Products LLC's "SYNTRILE" trademark and reads "Product of Indonesia." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## DARBY GROUP COMPANIES, INC.

276.   Respondent Darby Group Companies, Inc. and its subsidiaries are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.   Specifically, Tillotson has visited the following websites owned and managed by Respondent Darby Group Companies: www.islanddental.com and www.darbydental.com.   At least the following gloves were offered for sale:

(a)    Aurelia 110 Soft Nitrile PF Exam Gloves as manufactured and imported by Respondent SuperMax Corporation Bhd.;

(b)    Aurelia Protege Nitrile Blue PF Exam Gloves as manufactured and imported by Respondent SuperMax Corporation Bhd.;

(c)    Contour PF Nitrile Exam Gloves as manufactured and imported by Respondent Yee Lee Corporation Bhd.;

(d)    Contour Plus PF Nitrile Exam Gloves as manufactured and imported by Respondent Yee Lee Corporation Bhd.;

(e)    Micro-Touch PF Nitrile Gloves as manufactured and imported by Respondent Ansell Ltd.;

(f)    Micro-Touch Nitrile Powder-Free Synthetic Medical Exam Gloves as manufactured and imported by Respondent Ansell Ltd.;

(g)    Nitrile PF with Aloe Gloves as imported by Respondent Dash Medical Gloves, Inc.;

(h)    Synthetic Powder-Free Gloves as imported by Respondent Dash Medical Gloves, Inc.;

(i)    Vitalgard PF Nitrile Gloves as imported by Respondent Dash Medical Gloves, Inc.; and

(j)    Xlim Nitrile Powder Free Exam Gloves as manufactured and imported by Respondent Yee Lee Corporation Bhd.;

277.    Tillotson purchased and evaluated nitrile gloves manufactured and imported by Respondent Ansell Ltd.  Those gloves were then evaluated and found to infringe the '616 patent.

278.    Tillotson purchased and evaluated nitrile gloves manufactured and imported by Respondent SuperMax Corporation Bhd.  Those gloves were then evaluated and found to infringe the '616 patent.

279.    Tillotson purchased and evaluated nitrile gloves manufactured and imported by Respondent Yee Lee Corporation Bhd.  Those gloves were then evaluated and found to infringe the '616 patent.

280.    Tillotson purchased and evaluated nitrile gloves imported by Respondent Dash Medical Gloves, Inc. Those gloves were then evaluated and found to infringe the '616 patent.

## DASH MEDICAL GLOVES, INC.

281.    Respondent Dash Medical Gloves, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Dash Medical Gloves Inc. as a United States consignee for the following manufacturers, including:

(a)    Respondent Glovco (M) Sdn. Bhd.

(b)    Respondent Hartalega Holdings Bhd.'s Subsidiary Hartalega Sdn. Bhd.; and

(c)    Respondent JDA (Tianjin) Plastic Rubber Co., Ltd.;

282.    Tillotson obtained and evaluated nitrile gloves by Respondent Dash Medical Gloves, Inc. Specifically, Tillotson obtained from a Georgia dentist's office "Dash VitalGard Nitrile PF," brand nitrile gloves, no lot number. The dispenser containing these gloves uses Respondent Dash Medical Gloves, Inc.'s "VITALGARD" trademark and reads "Made in China." Those gloves were then evaluated and found to infringe at least claims 1 and 19 of the '616 patent.

## DELTA MEDICAL SYSTEMS, INC. D/B/A THE DELTA GROUP

283.    Respondent Delta Medical Systems, Inc. d/b/a The Delta Group and its affiliate are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

284.    Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Delta Medical Systems, Inc. as a United States consignee for Chinese manufacturer Respondent JDA (Tianjin) Plastic Rubber Co., Ltd.

285.    Tillotson obtained and evaluated nitrile gloves distributed by Respondent Delta Medical Systems, Inc. d/b/a The Delta Group and its affiliate.  Specifically, Tillotson obtained from a Georgia dentist's office "Nitrex Powder Free Nitrile Exam Gloves," brand nitrile gloves, lot number DYSH15315-4.   The dispenser containing these gloves uses Respondent Delta Medical Systems, Inc. d/b/a The Delta Group and its affiliates' "NITREX" trademark and reads "Made in China."  Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## DENTEXX/FIRST MEDICA INFECTION CONTROL ASSOCIATION

286.    Respondent Dentexx/First Medica Infection Control Association is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Dentexx/First Medica Infection Control Association as a United States consignee for Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Sdn. Bhd.

287.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Sdn. Bhd. and distributed by Respondent Dentexx/First Medica Infection Control Association.  Specifically, Tillotson purchased from an online supplier "Dentexx Nitrile Powder Free," brand nitrile gloves, lot number 422360321, reorder number Den 3500 PF.  The glove dispenser containing these gloves reads "Made in

Malaysia." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## DYNAREX CORP.

288. Respondent Dynarex Corp. and its affiliate are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Dynarex Corp. as a United States consignee for the following manufacturers, including:

    (a)    Respondent Kossan Rubber Industries Bhd.'s Subsidiary Perusahaan Getah Asas Sdn. Bhd.;

    (b)    Ningbo Tianshun Rubber Products Co.; and

    (c)    Shijazhuang Tillotson Healthcare Products Co. Ltd.

289. Tillotson purchased and evaluated nitrile gloves distributed by Respondent Dynarex Corp. Specifically, Tillotson purchased from an online supplier "Safe-Touch Powder-Free Nitrile Examination Gloves," brand nitrile gloves, lot number 18235. The dispenser containing these gloves uses Respondent Dynarex Corp.'s "SAFE TOUCH" trademark and reads "Made in China." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## LIBERTY GLOVE AND SAFETY CO.

290. Respondent Liberty Glove and Safety Co. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Liberty Glove and Safety Co. as a United States consignee for the following manufacturers, including:

     (a)      Hongye Plastic Products Co. Ltd.;

     (b)      Sheen Moore Enterprises Co. Ltd.; and

     (c)      Shijazhuang Eversharp Plastic Products Co. Ltd.

291.     Tillotson purchased and evaluated nitrile gloves distributed by Respondent Liberty Glove and Safety Co.   Specifically, Tillotson purchased from an online supplier "DuraSkin Pre-Powdered Nitrile Disposable Gloves," brand nitrile gloves, lot number 122004. The dispenser containing these gloves uses Respondent Liberty Glove and Safety Co.'s "DURASKIN" trademark and reads "Made in Taiwan." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## MAGLA PRODUCTS LLC

292.     Respondent Magla Products LLC is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Magla Products LLC as a United States consignee for the following manufacturers, including:

     (a)      Respondent Kossan Rubber Industries Bhd.'s Subsidiary Kossan Latex Industries (M) Sdn. Bhd.; and

     (b)      Respondent JDA (Tianjin) Plastic Rubber Co., Ltd.

293.     Tillotson purchased and evaluated nitrile gloves manufactured by Respondent JDA (Tianjin) Plastic Rubber Co., Ltd. and distributed by Respondent Magla Products LLC. Specifically, Tillotson purchased from a retailer "Stanley Nitrile Disposable Gloves," brand nitrile gloves, no lot number.  The glove dispenser containing these gloves reads "Made in China." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## PROTECTIVE INDUSTRIAL PRODUCTS, INC.

294.    Respondent Protective Industrial Products, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.   Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Protective Industrial Products, Inc. as a United States consignee for the following manufacturers, including:

  (a)    Bright Way Holdings Sdn. Bhd.;

  (b)    Cross Pacific Enterprise Co. Ltd.;

  (c)    Li An Safety Products Corp.

  (d)    Shanghai Champion Plastic Products Co., Ltd.;

  (e)    Shijiazhuang Hongxin Medical Products Co. Ltd.;

  (f)    Shanghai Knitwear Import & Export Co., Ltd.; and

  (g)    Respondent Top Glove Corp. Bhd.'s Subsidiary Medi-Flex Limited d/b/a Flexitech Sdn. Bhd.

295.    Tillotson purchased and evaluated nitrile gloves distributed by Respondent Protective Industrial Products, Inc.   Specifically, Tillotson purchased from an online supplier "Ambi-Dex Powder Free Disposable Nitrile Gloves," brand nitrile gloves, lot number 051011. The dispenser containing these gloves uses Respondent Protective Industrial Products, Inc.'s "AMBI-DEX" trademark and reads "Made in China."   Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## QRP, INC. D/B/A QRP GLOVES, INC.

296.    Respondent QRP, Inc. d/b/a QRP Gloves, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.   Specifically, Tillotson has obtained data from Zepol

Corporation which show Respondent QRP, Inc. d/b/a QRP Gloves, Inc. as a United States consignee for the following manufacturers, including:

(a)    Contract Latex Dippers Sdn. Bhd.

(b)    Respondent Hartalega Holdings Bhd.'s Subsidiary Hartalega Sdn. Bhd.;

(c)    Honyee Enterprise Co. Ltd.;

(d)    Respondent Kossan Rubber Industries Bhd.'s Subsidiary Perusahaan Getah Asas Sdn. Bhd.;

(e)    Respondent Smart Glove Holdings Sdn. Bhd.'s Subsidiary Sri Johani Sdn. Bhd.; and

(f)    Respondent Top Glove Corp. Bhd.'s Subsidiary Medi-Flex Limited d/b/a Flexitech Sdn. Bhd.

297.    Tillotson purchased and evaluated nitrile gloves distributed by Respondent QRP, Inc. d/b/a QRP Gloves, Inc.    Specifically, Tillotson purchased from an online supplier "Qualatrile XC White," brand nitrile gloves, lot number LF 030512.  The dispenser containing these gloves uses Respondent QRP, Inc. d/b/a QRP Gloves, Inc.'s "QUALATRILE" trademark and reads "Malaysia."  Those gloves were then evaluated and found to infringe at least claim 1 of the '616 patent.

## TRONEX INTERNATIONAL INC.

298.    Respondent Tronex International Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Tronex International Inc. as a United States consignee for the following manufacturers, including:

(a)    Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove Sdn. Bhd.;

(b)     Respondent Top Glove Corp. Bhd.'s Subsidiary Medi-Flex Limited d/b/a Flexitech Sdn. Bhd.;

(c)     Respondent Top Glove Corp. Bhd.'s Subsidiary TG Medical Sdn. Bhd.; and

(d)     Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Sdn. Bhd.

299.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Top Glove Corp. Bhd. and distributed by Respondent Tronex International Inc. Specifically, Tillotson purchased from an online supplier "Tronex Nitrile Powder Free Exam Gloves," brand nitrile gloves, lot number 224NBT2110513L, code number 9010-30. The dispenser containing these gloves uses Respondent Tronex International Inc.'s "TRONEX" and "SERVICE TO MANKIND ENERGY INTENSITY FOCUS" trademarks and reads "Made in Malaysia." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### WEST CHESTER HOLDINGS, INC.

300.    Respondent West Chester Holdings, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent West Chester Holdings, Inc. as a United States consignee for the following manufacturers, including:

(a)     Respondent Kossan Rubber Industries Bhd.'s Subsidiary Perusahaan Getah Asas Sdn. Bhd.;

(b)     Respondent PT Medisafe Technologies;

(c)     Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove Sdn. Bhd.; and

(d)     Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Sdn. Bhd.

301.    Tillotson obtained and evaluated nitrile gloves distributed by Respondent West Chester Holdings, Inc.    Specifically, Tillotson obtained from a glove sales representative "PosiShield Powdered Blue Nitrile Gloves," brand nitrile gloves, lot number 032257114, style number 2900.  The glove dispenser containing these gloves reads "Made in: Malaysia."  Those gloves were then evaluated and found to infringe at least claims 1, 17, and 18 of the '616 patent.

## VII.  HTS CLASIFICATION

302.    Tillotson believes that the nitrile gloves subject to this complaint are classifiable under the following headings and subheadings of the Harmonized Tariff Schedule ("HTS") of the United States:

| Product | HTS Nos. |
|---|---|
| Disposable Nitrile Medical Use Grade Gloves | 4015.19.0550 |
| Disposable Nitrile Industrial Use Grade Gloves | 4015.19.1010 |

## VIII.  RELATED LITIGATION

303.    The '616 patent has been the subject of 13 related litigations, 6 of which are still active.  These lawsuits include:

304.    On February 26, 1999, Tillotson filed a complaint against Safeskin in the United States District Court for the Northern District of Georgia (hereafter "N.D. Ga.") for infringement of the '616 patent.  <u>Tillotson Corporation d/b/a Best Manufacturing Company v. Safeskin Corporation, et. al.</u>, No. 4:99-cv-00054.  The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction.  This case was dismissed in view of the settlement on January 5, 2000.

305.    On August 27, 2002, Tillotson filed a complaint against Sempermed USA in the N.D. Ga. for infringement the '616 patent. <u>Tillotson Corp. v. Sempermed USA, Inc.</u>, No. 4:02-cv-00199.  The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction.  This case was dismissed in view of the settlement on April 16, 2004.

306.    On August 27, 2002, Tillotson filed a complaint against High Five Products, Inc., Medline Industries, Inc., and Shen-Wei (USA), Inc. in the N.D. Ga. for infringement of the '616 patent. <u>Tillotson Corporation d/b/a Best Manufacturing Company. v. High Five Products, et. al.</u>, No. 4:02-cv-00200.  Defendant High Five Products, Inc., entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction.  The case against defendant High Five Products, Inc. was dismissed in view of the settlement on January 9, 2004.  In addition, defendants Medline Industries, Inc., Shen-Wei (USA), Inc., and additional defendant Zhangjigang Dayu Rubber Products Co., Ltd., entered into Settlement Agreements in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting consent injunctions. The case against defendants Medline Industries, Inc., Shen-Wei (USA), Inc., and Zhangjigang Dayu Rubber Products Co., Ltd. was dismissed in view of the settlement on December 6, 2004.

307.    On November 7, 2002, Tillotson filed a compliant against Omni International, LCC, and Omnigrace (Thailand) Ltd. in the N.D. Ga. for infringement of the '616 patent. <u>Tillotson Corp. d/b/a Best Manufacturing Company v. Omni Intl, LLC and Omnigrace (Thailand) Ltd.</u>, No. 4:02-cv-00261-HLM.  Defendant Omni International, LCC entered into a

Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction. The case against defendant Omni International, LCC was dismissed in view of the settlement on May 27, 2004. Tillotson filed a motion for summary judgment against defendant Omnigrace (Thailand) Ltd. on March 3, 2005. Omnigrace (Thailand) Ltd. failed to respond to Tillotson's motion for summary judgment even after two court orders directing Omnigrace to do so. Omnigrace (Thailand) Ltd. also failed to respond to Tillotson's requests for admissions served on Omnigrace December 23, 2003. The court found that by failing to respond, Omnigrace (Thailand) Ltd. admitted Tillotson's requests for admissions, and therefore found Omnigrace (Thailand) Ltd. liable for infringing the '616 patent. The court entered a permanent injunction against Omnigrace (Thailand) Ltd. on April 12, 2006, and awarded substantial damages to Tillotson thereafter.

308.    On November 17, 2004, Tillotson filed a complaint against Ammex Corporation in the N.D. Ga. alleging infringement of the '616 patent. Tillotson Corporation d/b/a Best Manufacturing Company v. Ammex Corporation, No. 4:04-cv-00286. The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction. This case was dismissed in view of the settlement on June 14, 2005.

309.    On April 2, 2004, Tillotson filed a complaint against Microflex Corporation in the N.D. Ga. alleging infringement of the '616 patent. Tillotson Corp. v. Microflex Corp., No. 4:04-cv-00091. The matter was voluntarily refiled on four occasions while the parties negotiated a settlement. On June 24, 2005 the defendant entered into a license agreement, admitting to the validity of the '616 patent, and admitting to infringement of the '616 patent. The final action, Tillotson Corp. d/b/a Best Manufacturing Company v. Microflex Corp., No. 4:05-cv-00077, was

voluntarily dismissed by Tillotson effective July 18, 2005 in view of the license agreement between Tillotson and Microflex.

310.    On June 7, 2005, Tillotson filed a complaint against Shijiazhaung Hongray Plastic Products, Ltd., Gloveco, Inc., SAS Safety Corp., Permatex, Inc., AmerCare, Inc., Island Dental Co., Inc., and Darby Dental Supply Co. in the N.D. Ga. alleging infringement of the '616 patent. Tillotson Corporation d/b/a Best Manufacturing Company v. Shijiazhaung Hongray Plastic Products, Ltd., et. al., No. 4:05-cv-00118.  Defendants Shijiazhaung Hongray Plastic Products, Ltd., Gloveco, Inc., SAS Safety Corp., Permatex, Inc., and AmerCare, Inc., entered into Settlement Agreements in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting consent injunctions.  The case against defendants Shijiazhaung Hongray Plastic Products, Ltd. and Gloveco, Inc. was dismissed in view of the settlement on February 22, 2006; the case against SAS Safety Corp. was dismissed on June 6, 2006; the case against Permatex, Inc., was dismissed on March 24, 2006; and the case against AmerCare, Inc., was dismissed on May 18, 2006. The actions involving defendants Island Dental and Darby Dental Supply Co. (now, Darby Group Companies, Inc.) are currently the subject of on-going litigation involving the infringement of the '616 patent as alleged herein.

311.    On November 1, 2005, Tillotson filed a complaint against Top Glove Sdn. Bhd., TG Medical Sdn. Bhd., and TG Medical (USA), Inc. in the N.D. Ga. alleging infringement of the '616 patent.  The complaint was later amended to add Top Glove Corp. Bhd. as a defendant. Tillotson Corporation d/b/a Best Manufacturing Company v. Top Glove SDN. BHD, et. al., No. 4:05-cv-00232.  Defendant TG Medical (USA) answered June 9, 2006, and the other defendants have moved to dismiss for lack of personal jurisdiction.  Jurisdictional discovery is currently underway in this case.

312.    On November 7, 2005, Tillotson filed a complaint against West Chester Holdings Co. in the N.D. Ga. alleging infringement of the '616 patent.  <u>Tillotson Corporation d/b/a Best Manufacturing Company v. West Chester Holdings, Inc.</u>, No. 4:05-cv-00235.  The defendant has agreed to settle in this case, admitting to infringement of the '616 patent, and voluntarily agreeing to a consent injunction.  The settlement agreement is in the process of being executed.

313.    On July 12, 2006, Tillotson filed a complaint against Tradex International in the N.D. Ga. alleging infringement of the '616 patent.  <u>Tillotson Corporation v. Tradex International, Inc.</u>, No. 4:06-cv-00167.  The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction.  The case has not yet been dismissed.

314.    On July 12, 2006, Tillotson filed a complaint against The Safety Zone in the N.D. Ga. alleging infringement of the '616 patent.  <u>Tillotson Corporation d/b/a Best Manufacturing Company v. The Safety Zone</u>, No. 4:06-cv-00168.  The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction.  The case has not yet been dismissed.

315.    On July 12, 2006, Tillotson filed a complaint against Global Glove in the N.D. Ga. for infringement of the '616 patent.  <u>Tillotson Corporation d/b/a Best Manufacturing Company v. Global Glove</u>, No. 4:06-cv-00169.  The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction.  This case was dismissed in view of the settlement on February 26, 2007.

316.    On August 25, 2006, Ansell Healthcare Products LLC filed a complaint against Tillotson in the United States District Court for the District of Delaware, which alleges that Ansell does not infringe the '616 patent.    Ansell HealthCare Products LLC v. Tillotson Corporation, No. 1:06-cv-00527.  Currently, the case is in discovery.

317.    On February 20, 2007, Ansell Protective Products Inc. filed a complaint against Tillotson in the United States District Court for the District of Delaware, which alleges that Ansell does not infringe the '616 patent.    Ansell Protective Products Inc. v. Tillotson Corporation, No. 1:07-cv-93.  Discovery has not yet begun in this case.

## IX.    DOMESTIC INDUSTRY RELATING TO THE '616 PATENT

318.    Tillotson has an existing domestic industry in the United States as defined under Section 337(a)(3).  Tillotson has made significant investment in plant and equipment in the United States, employs a significant amount of labor and capital, and invests substantially in the exploitation of the '616 patented technology through manufacturing, research, development, licensing, engineering, production, product development, testing, and quality control.

### (1)    Significant Investment in Plant and Equipment

319.    Tillotson produces nitrile gloves that exploit the '616 patent at facilities located in Fayette, Alabama.  As set forth in the domestic industry declaration, the Fayette facility is dedicated to production of the patented nitrile glove.  See **Confidential Exhibit 7**. Tillotson previously had other production facilities which were dedicated to such production, in Moss Point, Mississippi; Fall River, Massachusetts; and Johnson City, Tennessee, but such facilities were forced to close in the last few years due to importation of the unfairly traded nitrile glove products.

### (2)    Significant Employment of Labor or Capital

320.    Tillotson employs significant labor and capital in connection with the '616 patent. The number of Tillotson employees at the Fayette facility involved in the manufacture of nitrile gloves that exploit the '616 patent is set forth in the domestic industry declaration at **Confidential Exhibit 7**. These employees work twelve hour shifts three days a week. The plant itself operates seven days a week, 350-355 days a year. The number of gloves produced by the plant which are covered by the '616 patent is set forth in **Confidential Exhibit 7**.

321.    Tillotson had a significantly larger number of employees at its other plants engaged in the manufacture of such gloves until those plants were forced to close due to imports of the unfairly traded nitrile glove products.

322.    Tillotson also has employees involved in licensing the '616 patent. These employees devote considerable amounts of time to negotiating licensing agreements, maintaining licenses, and enforcing license agreements. See **Confidential Exhibit 7**.

323.    Tillotson has additional employees engaged in research and development activities in the United States related to the patented nitrile glove technology.

324.    Tillotson has made significant investments of capital in the United States to develop and exploit the technology covered by the '616 patent including significant investments in the Fayette, Alabama plant and other plants. These investments are set forth in **Confidential Exhibit 7**.

### (3)    Substantial Investment in Exploitation of the '616 Patent

325.    Tillotson has an extensive licensing program and invests a significant amount of time and money to negotiate and enforce license agreements. Tillotson has filed lawsuits in an

attempt to protect the patented technology, and has invested heavily in patent litigation. Tillotson currently has 15 license agreements consisting of 22 licensees for its nitrile gloves.

326.    As set forth in the domestic industry declaration at **Confidential Exhibit 7**, Tillotson has invested a substantial amount of time and money for research and development in the United States to develop the technology claimed in the '616 patent.

327.    Tillotson has invested significantly in the technology described and claimed in the '616 patent, including product development, manufacturing technology, manufacturing machines, product marketing, compliance testing, customer support, and applications engineering. See **Confidential Exhibit 7**.

## X.    GENERAL EXCLUSION ORDER

328.    There is a widespread pattern of violation of 19 U.S.C. § 1337, and it is difficult to identify all the sources of infringing nitrile glove products.

329.    There is a widespread pattern of unauthorized use of the patented nitrile glove invention. A substantial number of entities worldwide manufacture infringing nitrile gloves and cause such goods to be imported into the United States. In this Complaint, Tillotson has identified those entities about which it has substantial evidence of importation of infringing nitrile gloves into the United States. On information and belief, other entities are capable of shifting, at minimum expense, a substantial amount of their production of hand gloves made with other types of elastomeric materials to hand gloves made with a nitrile butadiene elastomer formulation as described and claimed in the '616 patent for importation into the United States.

330.    Business conditions exist in the United Sates such that foreign manufacturers other than the named respondents may enter the market with infringing nitrile glove products.

On information and belief, Tillotson is aware that demand in the United States for such nitrile glove products has increased substantially over the last few years and is continuing to increase.

331.    There is essentially a world-wide supply of raw materials, for nitrile glove manufacturers, made by multi-national chemical companies.    In addition, labor costs are a significant part of the overall cost of production of a nitrile glove, and labor costs in the markets from which the infringing products are largely derived (China, Malaysia, Thailand , among others) are much lower than in the United States.    As a result, there is a significant likelihood that more infringers will enter this market if a General Exclusion Order is not entered.

332.    Entry into the market for nitrile gloves is relatively easy due, in part, to the ease of manufacturing infringing nitrile glove products.    There are a large number of manufacturers in Asia who have the capacity to convert existing manufacturing facilities to the manufacture of infringing nitrile gloves. The cost to do so, particularly for those companies that already have rubber product manufacturing capability, is not high.    The cost of entry, even with respect to building new facilities is not high, compared to the very large demand for infringing nitrile gloves.    On information and belief, the startup costs for manufacturing substantial quantities of infringing nitrile gloves is relatively modest.

333.    Marketing and distribution networks for nitrile gloves are available to foreign manufacturers.    Many large distributors exist in the United States who can and already do handle infringing nitrile glove products. Distributors that are buying product from Tillotson and from its licensed manufacturers are solicited regularly to buy competing, infringing non-licensed nitrile glove products from non-licensed manufacturers.

334.    In addition, infringing nitrile glove products, including those of respondents, are regularly offered for sale and sold via the Internet.    In addition to respondents' websites,

infringing nitrile gloves are offered for sale and sold via the websites of distributors and retailers of specialty health-care and industrial products.

335.     There are already a large number of known respondent/manufacturers and these respondents can readily change importers.  In the case of respondent importers, they can readily change foreign suppliers.  Because of the importation activity of the known respondents, as well as the activity of those infringers not readily identifiable, and because the identification of many of such infringers is difficult, if not impossible, to determine, a General Exclusion Order is necessary to protect Tillotson's patent rights.

## XI.    RELIEF

WHEREFORE, by reason of the foregoing, Complainant requests that the United States International Trade Commission:

A.     Institute an immediate investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to Respondents' violations of Section 337 based on the importation into the United States, use within the United States, offer for sale within the United States, and/or sale within the United States after importation of nitrile gloves that infringe at least claims 1, 17, 18, and 19 of United States Patent No. RE 35,616;

B.     Schedule and conduct a hearing on permanent relief pursuant to 19 U.S.C. § 1337(d) and (f) of the Tariff Act of 1930, as amended;

C.     Issue a permanent General Exclusion Order pursuant to 19 U.S.C. § 1337(d), excluding from entry into the United States nitrile gloves as described and claimed in United States Patent No. RE 35,616;

D.     Issue a permanent Limited Exclusion Order specifically directed to each named Respondent and its affiliates, pursuant to 19 U.S.C. § 1337(d), excluding from entry into the United States nitrile gloves as described and claimed in United States Patent No. RE 35,616;

E.     Issue a permanent cease and desist order pursuant to 19 U.S.C. § 1337(f), prohibiting each Respondent and its related companies from engaging in the importation, the use, the offering for sale, the sale after importation, or otherwise transferring within the United States, nitrile gloves as described and claimed in United States Patent No. RE 35,616; and

F.     Issue such other and further relief as the Commission deems just and proper under the law, based upon the facts determined by the investigation and the authority of the Commission.

Respectfully submitted,

Gilbert B. Kaplan, Esquire
Jeffrey M. Telep, Esquire
Taryn L. Koball, Esquire
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC  20006-4706
 (202) 737-0500

Counsel for Complainant
TILLOTSON CORPORATION

OF COUNSEL:

Anthony M. Askew, Esquire
Katrina M. Quicker, Esquire
Jason M. Pass, Esquire
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia  30309
(404) 572-4600

## VERIFICATION OF TILLOTSON CORPORATION

I, Rick Tillotson, for and on behalf of Tillotson Corporation *d/b/a* Best Manufacutring Company ("Tillotson"), declare as follows:

1.    I am duly authorized to execute this verification on behalf of Tillotson;

2.    I have read Tillotson's VERIFIED COMPLAINT UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED, and am familiar with the allegations and statements contained therein;

3.    To the best of my knowledge, information, and belief, formed after inquiry reasonable under the circumstances, the allegations and statements made in the Complaint are well-grounded in fact and are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and

4.    The Complaint is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase the cost of the investigation.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed this 25th day of May, 2007.

Respectfully submitted,

*Rick Tillotson*

Rick Tillotson

Tillotson Corporation

107

# EXHIBIT 2

USITC 001 (rev. 04/07)
Page 1

# U.S. International Trade Commission
## Action Jacket Approval Record

| 1. Control No. | OUII-07-021 | 2. Date to Chairman | June 21, 2007 | 3. Due date/code | Code 1 |
|---|---|---|---|---|---|

**4. Subject:** Recommendation Regarding Whether a Section 337 Investigation Should Be Instituted Concerning Certain Nitrile Gloves (Docket No. 2548)

*337-TA-608*

| 5. Signature of initiator | 6. Initiating Office |
|---|---|
| | OUII |

7. Circulation: _____    Chairman or Circulating Official:    Date 6/21/07
   Recirculation: _____    Date: _____

8. Commissioner Action (shown by initials)

| Commissioner | Approved | Disapproved | Not Participating/Recused | Date |
|---|---|---|---|---|
| **Commissioner Pinkert** | DAP/den | | | 6/25/07 |
| **Commissioner Williamson** | IAW/sw | | | 6/25/07 |
| **Commissioner Lane** | CRL/ojb | | | 6-26-07 |
| **Commissioner Okun** | DTO/(PO) | | | 6-26-07 |
| **Vice Chairman Aranoff** | SLA/MD | | | 6-26-07 |
| **Chairman Pearson** | DRP/Js | | | 6/26/07 |

9. Nature of Commission Action    Date 6/26/07
✓ Approved    ___ Disapproved    ___ Other    Js    Initials

Comments: correct typo

Notes:
1. A Commissioner wishing to make a comment available to the public in conjunction with this Approval Record should file a memorandum containing the comment with the Secretary.
2. If a Commissioner changes his or her vote during the jacket's circulation, the Chairman will circulate a new Approval Record, and mark the prior Approval Record as "Privileged."
3. Predecisional communications should be entered only on page 2.
4. If the Chairman is not the Circulating Official, indicate the name of the Official in block 7; show circulation by initials and date.

# EXHIBIT 3

# KING & SPALDING

Stephen M. Schaetzel
Direct Dial: (404) 572 2531
Direct Fax: (404) 572 5135
sschaetzel@kslaw.com

July 10, 2007

Thomas B. Kenworthy, Esq.                   VIA ELECTRONIC MAIL
Morgan, Lewis & Bockius LLP                  AND POSTAL DELIVERY
1701 Market Street
Philadelphia, PA 19103

     Re:     **Tillotson v. Ansell Ltd. et. al.**, Civil Action No. 4:07-CV-110-RLV,
               **Northern District of Georgia**
               **Our File: 13681-112009**

               **Ansell Healthcare v. Tillotson**, Civil Action No. 06-527-JJF,
               **District of Delaware**
               **Our File: 13681-112001**

Dear Tom:

     This letter confirms our agreement regarding dismissal of the remaining Ansell entities from the pending Northern District of Georgia suit, Civil Action No. 4:07-CV-110-RLV (the "Recent Georgia Suit"), matters related thereto and the motion to enjoin pursuit of that action (as to certain Ansell parties) pending in Delaware, Civil Action No. 06-527- JJF.

     In exchange for Tillotson Corporation's dismissal without prejudice of all remaining Ansell entities from the Recent Georgia Suit, Ansell Healthcare Products LLC agrees to withdraw the pending motion in Delaware, and all originally named Ansell entities in the Recent Georgia Suit agree not to file any motions in the Recent Georgia Suit and not to initiate any declaratory judgment proceeding (in Delaware or elsewhere) regarding the '616 Patent. In addition, should Tillotson Corporation elect to amend the Counterclaims in Civil Action No. 06-527-JJF to add infringement claims against Ansell (Thailand) Ltd. and Ansell Lanka (Pvt.) Ltd., Ansell Healthcare Products LLC consents to such an amendment and Ansell (Thailand) Ltd. and Ansell Lanka (Pvt.) Ltd. agree not to assert any defense of lack of *in personam* jurisdiction.

     With the foregoing understanding, Tillotson will file the attached dismissal by the close of business today. Your consideration in this regard is appreciated.

     Regards,

     *Stephen M. Schaetzel*

     Stephen M. Schaetzel

SMS:TMS
Enclosure
ATL_IMANAGE-4617652 v1

# EXHIBIT 4

**Pass, Jason**

| | |
|---|---|
| **From:** | tkenworthy@morganlewis.com |
| **Sent:** | Thursday, July 12, 2007 11:52 AM |
| **To:** | Horwitz, Richard L. |
| **Cc:** | Moore, David E.; jblumenfeld@mnat.com; Pass, Jason; Dorsney, Kenneth L.; Schaetzel, Steve; MNoreika@MNAT.com; dmarston@morganlewis.com |
| **Subject:** | Re: DE Litigation |

We do not agree to a stay.  Indeed, we intend to ask Judge Farnan for leave to file a
motion for summary judgment of invalidity now.


 Thomas B. Kenworthy
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5702
(215) 963-5001 (fax)




```
            "Horwitz, Richard
            L."
            <rhorwitz@Pottera                                    To
            nderson.com>              tkenworthy@morganlewis.com,
                                      jblumenfeld@mnat.com
            07/12/2007 11:32                                     cc
            AM                        "Schaetzel, Steve"
                                      <SSchaetzel@KSLAW.com>,
                                      JPass@KSlaw.com, "Moore, David E."
                                      <dmoore@potteranderson.com>,
                                      "Dorsney, Kenneth L."
                                      <kdorsney@Potteranderson.com>
                                                            Subject
                                      DE Litigation
```




Tom - We understand that you and Steve Schaetzel have discussed staying the Ansell
Healthcare and Ansell Protective Products cases pending the outcome of the ITC
investigation.  We also understand that you are unwilling to agree to such a stay.  Unless
we hear from you otherwise by 5:00 p.m.
today, we intend to file a motion to stay with the Court.


Rich

Richard L. Horwitz
Potter Anderson & Corroon LLP
Hercules Plaza

1313 N. Market Street
P.O. Box 951
Wilmington, DE 19801
(302) 984-6027 (Phone)
(302) 658-1192 (Fax)
rhorwitz@potteranderson.com
_____

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we
inform you that any U.S. federal tax advice contained in this communication (including any
attachments) is not intended or written to be used, and cannot be used, for the purpose of
(a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or
recommending to another party any transaction or matter addressed herein.


This electronic mail transmission may contain confidential or proprietary information
intended only for the person(s) named.  Any use, distribution, copying or disclosure by
another person is strictly prohibited.




DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above.
This message may be an attorney-client communication and as such privileged and
confidential.  If you are not an intended recipient, you may not review, copy or
distribute this message. If you have received this communication in error, please notify
us immediately by e-mail and delete the original message.

# EXHIBIT 5

UNITED STATES INTERNATIONAL TRADE COMMISSION

Washington, D.C.

In the Matter of

CERTAIN NITRILE GLOVES

Inv. No. 337-TA-608

### ORDER NO. 2:  NOTICE OF GROUND RULES AND TARGET DATE AND ORDER SETTING DATE FOR SUBMISSION OF DISCOVERY STATEMENTS

(July 6, 2007)

Pursuant to Commission Rule 210.51(a), a target date for completion of the investigation in the above-captioned matter must be set. Upon a review of the Complaint and the Notice of Investigation, the Administrative Law Judge has determined that a target date of fourteen months from publication of the Notice of Investigation in the Federal Register (*see* 72 Fed. Reg. 37052, July 6, 2007) is appropriate. Accordingly, a target date of September 8, 2008[1] is set for this investigation.

In order that the proceeding in this matter may begin expeditiously, the parties are directed to submit a discovery statement, in regards to the full investigation, on or before August 10, 2007, which includes the following (the discovery statement need not be filed with Office of the Secretary of the Commission):

1. A description of information and evidence that each party intends to submit to prove its own case.

2. A description of specific information and evidence that each party will be seeking from other parties and third persons.

---

[1] September 6, 2008 falls on a Saturday.

3. A description of information and evidence each party believes can be obtained only by deposition, interrogatory, subpoena, or request for admissions.

4. A proposed procedural schedule that includes dates for each of the events set forth in Ground Rule 2. Based on the target date for this investigation, and taking into consideration the undersigned's scheduling of other cases, along with courtroom availability, the undersigned anticipates a hearing date to start on February 25, 2008. The parties shall take these dates into consideration when proposing their procedural schedule.

The proposed schedule includes dates for three settlement meetings (which will not include the Administrative Law Judge) at a time, date, and location of the parties' choosing for the exploration of settlement, by persons of requisite authority, of some or all of the issues in the case. Unless the parties obtain the permission of the Administrative Law Judge, for good cause shown, the settlement meetings should not occur by video-conferencing or by teleconferencing. The first one of these dates should be relatively early in the investigation, the second should be approximately midway through the period for discovery, while the last should be set for the period between the close of discovery and before the commencement of the hearing. The parties should also include dates in the proposed schedule for filing the joint settlement conference reports.

The parties should make intensive good faith efforts to agree to a procedural schedule. It is expected that in most instances the parties should be able to submit a joint proposal on this matter.

**SO ORDERED.**

Charles E. Bullock
Administrative Law Judge

-2-

# EXHIBIT 6

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

|  |  |
|---|---|
| In the Matter of )<br>)<br>CERTAIN NITRILE GLOVES )<br>)<br>) | Investigation No.<br>337-TA-608 |

### TILLOTSON CORPORATION'S FIRST SET OF INTERROGATORIES
### TO RESPONDENT ANSELL LTD.

Pursuant to 19 C.F.R. § 210.29, Complainant Tillotson Corporation requests that Respondent Ansell Ltd., within ten (10) days, or the time specified by the Ground Rules if different, after the service hereof, answer separately and fully, in writing and under oath, the interrogatories contained herein. The following definitions and instructions apply.

### DEFINITIONS

As used herein:

1.    "Ansell," "you," "your," "yours," or "Respondent" means Respondent Ansell Ltd., and all U.S. and foreign predecessors, successors, subsidiaries, divisions, parents, and affiliates thereof (past or present); U.S. and foreign joint ventures and other legal entities that are wholly or partially owned or controlled by Ansell, either directly or indirectly; and all past or present directors, principals, officers, owners, employees, agents, representatives, consultants, attorneys, and others acting for or purporting to act on behalf of these same entities. These terms include any businesses or companies which are owned in whole or in part by the same parent or owner which owns Ansell (whether such parent owns Ansell in whole or in part). "Ansell," "you," "your," "yours," or "Respondent" also specifically includes Ansell (AMBI) Sdn. Bhd.; Ansell (Thailand) Ltd.; Ansell Lanka (Pvt.), Ltd.; Ansell Medical Sdn. Bhd.; Ansell N.P. Sdn. Bhd.; Ansell Shah Alam Sdn. Bhd.; J.K. Ansell, Ltd.; Ansell Canada Inc.; Ansell Protective

Products, Inc.; Ansell Healthcare Products, LLC; and Ansell Services, Inc.

      2.     "Tillotson Corporation," "Tillotson," or "Complainant" means Complainant Tillotson Corporation and its wholly owned operating company, Best Manufacturing Company, and all other past or present directors, principals, officers, owners, employees, agents, representatives, consultants, attorneys, and others acting for or purporting to act on behalf of either Tillotson Corporation or Best Manufacturing Company.

      3.     "Nitrile Hand Glove" means close fitting, disposable, unsupported nitrile gloves.

      4.     "All" means any and all, and "any" likewise means any and all, unless the context requires otherwise.

      5.     "All documents" means every document, as defined above, that is known to you and every such document that can be located or discovered by reasonably diligent efforts.

      6.     "And" and "or" shall be construed both conjunctively and disjunctively and the singular shall be deemed to also refer to the plural and vice versa.

      7.     "Communication" means all discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, e-mails, notes, memoranda, telegrams, teletype, telex, telecopy, computer linkup, advertisements, transmission, or other forms of information exchanged, whether oral, electronic, or written.

      8.     "Date" means the day, month, and year, if ascertainable, or if not, the best available approximation of such day, month, and year (including any relationship to other events).

      9.     "Describe in detail" means to state and describe, with specificity, each and every fact, circumstance, incident, act, omission, event, date, and/or legal contention relating to the matters inquired of in said interrogatory.

      10.     "Distribute" means the act of marketing or selling a product to an end customer. "Distributor" means an entity that markets or sells a product to the end customer.

      11.     "Document" or "Documents" includes all types of records of information in the possession, custody, or control of Respondent, or known to Respondent, whether printed,

recorded, stored, reproduced by any process, written or produced by hand, and whether or not claimed to be privileged, the subject of work product immunity, or exempt from production for any reason, and includes, in addition to the original or original copy, copies of whatever kind which contain any alteration, marking, or omission, or which are in any other way not identical with the original or with the original copy, more specifically including, but not limited to, papers, notes, accounts, books, advertisements, logs, catalogs, manuals, publications, correspondence, cablegrams, mailgrams, telegrams, memoranda, electronic mail (e-mail), voice mail, facsimile transmissions, letters, documents, communications, including inter office and intraoffice communications, reports, studies, analyses, pamphlets, calculations, projections, contracts, charts, plans and specifications, drawings, sketches, surveys, agreements, working papers, business records, minutes of board of directors meetings and committee meetings, account records, ledger records, notebooks, laboratory notes, laboratory notebooks, vouchers, bank checks, cashiers' checks, receipt of cashiers' checks, purchase orders, invoices, bills of lading, canceled checks, check stubs, bills, receipts, invoices, desk calendars, time sheets, appointment books, telephone bills, diaries, diary entries and notes, minutes, transcriptions or sound recordings of any type of personal or telephone conversations or of negotiations, meetings or conferences or events similar to the foregoing, telecopy transmission letters, graphical or tabular data developed during testing or analysis, maintenance records for testing or analysis equipment, invention disclosure records, photographs, floppy disk recorded information, volatile or nonvolatile random access or read only memory, hard disk information, CD ROM information, office notes, pleadings, briefs, microfiche, and all other papers, writings, recordings or physical object or things containing information which is in your possession, custody, or control or the possession, custody, or control of any director, officer, employee, servant, or agent of yours or your attorneys. "Document" or "Documents" shall also include the files in which said document or documents are maintained.

12.    "Each" shall be construed to include the word "every." "Every" shall be construed to include the word "each."

13.    "Identify" when used in conjunction with a communication means to state its date and place, the person(s) who participated in it, were present during any part of it, or have knowledge about it, and the substance of the communication.

14.    "Identify" when used in conjunction with a corporation, proprietorship, partnership, joint venture, association, firm, or entity recognized in law means to state its full name, present or last known address, telephone number, and place of incorporation or formation.

15.    "Identify" when used in conjunction with a document or other thing means to specify the document or thing in sufficient detail to permit Complainant to locate said document or thing, such as to state the date, title (if any), each author, each recipient, type of document (i.e., publication, letter, memorandum, book, telegram, chart, etc.) or some other means of identifying it, and its present location or custodian.

16.    "Identify" when used in conjunction with an event, means to provide the date of the event, the location of the event and the names and addresses of the individuals involved in the event.

17.    "Identify" when used in conjunction with an individual means to provide the full name, current or last known residential address, and telephone number of the person, and current or last known employer, employer address, position title, and relationship of the individual to any party herein, if any, and the inclusive dates thereof.

18.    "Identify" when used in conjunction with a Nitrile Hand Glove, means to state the glove's product designation (e.g., style, model, proprietary name, established name, product classification number, and catalog number).

19.    "Import" and "Imported" means the act of bringing a product into the United States that is not made in the United States. "Importer" means an entity that brings products into the United States from another country.

20.    "Infringe" and "Infringement" refer to direct infringement, contributory infringement, inducement to infringe, literal infringement, and/or infringement by the doctrine of equivalents.

4

21.    "Manufacture" means all steps or processes undertaken to create a product before delivery of the product to the end customer. "Manufacturer" means an entity who makes the product delivered to the end customer.

22.    "Patent-in-Suit" or the "'616 Patent" or the "'362 Patent" means U.S. Patent No. Re. 35,616 and U.S. Patent No. 5,014,362, respectively.

23.    "Person" means any natural person, corporation, proprietorship, partnership, joint venture, association, firm, or entity recognized in law, and shall include the owners, officers, directors, agents, trustees, parents, subsidiaries, affiliates, assigns, predecessors, and successors of such "person."

24.    "Pertaining to," "pertain to," "relating to," or "relate to" mean constituting, consisting of, relating to, referring to, evidencing, supporting, contradicting, reflecting, or resulting from the matter specified.

25.    "Prior Art" means designs, products, publications, patents, information, or knowledge, including that which would be obvious in light of any of the preceding, that qualifies as, encompasses, or constitutes prior art within the meaning of 35 U.S.C. §§ 102 and/or 103.

26.    "Thing" has the broadest meaning allowable under Federal Rule of Civil Procedure 34 and means any tangible object other than a document including without limitation objects of every kind and nature, as well as prototypes, models, or physical specimens thereof.

27.    "Third Party" or "Third Parties" mean anyone other than the named Respondents.

28.    Masculine pronouns do not connote any particular gender but are to be taken to mean masculine, feminine, or neuter gender, as the case may be.

## INSTRUCTIONS

1.    This First Set of Interrogatories shall be deemed to seek answers as of the date of service thereof and to the full extent of the Commission's Rules of Practice and Procedure. These interrogatories are of a continuing nature and you are required to file and serve supplemental responses promptly if you obtain further or different information after the date of your initial answer and before this investigation is completed.

2.      These interrogatories seek all information that is known to you, your representatives, agents, employees, investigators, consultants, and unless otherwise privileged, their counsel.

3.      If possible, supply all annual data requested on a calendar basis.  However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates.  When information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year (*e.g.*, January 1, 2000 through [month] [day], 2000) is covered by such information.

4.      If any interrogatory requests information from you and your company, the response should be broken down for each of your related companies (*e.g.*, affiliates, subsidiaries, joint ventures, divisions, etc.).

5.      If information is not readily available from your records in exactly the form requested, furnish carefully prepared estimates, designated as such and provide an explanation of the method used to provide any such estimate.

6.      In the event Respondent withholds any information on the basis that it is privileged, subject to work product immunity, or otherwise excludable from discovery, Respondent is requested to describe in a manner that will enable Tillotson to assess the applicability of the asserted privilege:  (a) a brief description of the nature and subject matter; (b) the date the information was acquired or came into existence; and (c) the name and title of the individual(s) who generated, provided, and received the information.

7.      If any interrogatory is objected to as overly broad or unduly burdensome, answer those portions of the interrogatory which are unobjectionable and specifically identify the respect in which the request is allegedly overly broad or burdensome, respectively.

8.      All questions regarding the meaning or interpretation of these interrogatories should be directed to the undersigned counsel.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all Nitrile Hand Gloves Manufactured or sold by or on behalf of Respondent (regardless of whether Respondent takes ownership or possession of such products) that have been Imported by any means into the United States.

**INTERROGATORY NO. 2:**

For each Nitrile Hand Glove identified in response to Interrogatory No. 1, state whether it has been Manufactured by Respondent or any other Person(s), or by Respondent in combination with any other Person(s), and, if so, state the full name and address of each Manufacturer including all Manufacturers expected to Manufacture such Nitrile Hand Gloves in the future.

**INTERROGATORY NO. 3:**

Describe in detail the nature of any current or past relationships between Respondent and any Person(s) named in response to Interrogatory No. 2.

**INTERROGATORY NO. 4:**

Describe in detail the formula, including the quantity of each component in such formula, for every current and past formulation for each Nitrile Hand Glove identified in response to Interrogatory No. 1.

**INTERROGATORY NO. 5:**

For each Nitrile Hand Glove identified in response to Interrogatory No. 1, Identify all Persons who are familiar with manufacturing and/or production activities related to each such Nitrile Hand Glove.

**INTERROGATORY NO. 6:**

For each Nitrile Hand Glove identified in response to Interrogatory No. 1, Identify the three Persons most familiar with the design, development, modification, or creation of the formulas for the chemical composition of each Nitrile Hand Glove.

**INTERROGATORY NO. 7:**

For each Nitrile Hand Glove identified in response to Interrogatory No. 1, Identify the location where research, design, development, modification, or testing for such Nitrile Hand Glove takes or has taken place, and state what research, design, development, modification, or testing takes or has taken place at each such location for each such Nitrile Hand Glove.

**INTERROGATORY NO. 8:**

For each Nitrile Hand Glove identified in response to Interrogatory No. 1, state whether it has been Imported into the United States by Respondent or any other Person(s), or by Respondent in combination with any other Person(s), and, if so, Identify including the Importer of record, the exporter, the customs broker, the consignee, and the port of entry into the United States for each such importation of Nitrile Hand Gloves.

**INTERROGATORY NO. 9:**

For each importation identified in response to Interrogatory No. 8, provide the value and quantity of in Nitrile Hand Gloves in each such importation and provide all HTS numbers used to Import such Nitrile Hand Gloves.

**INTERROGATORY NO. 10:**

Describe in detail the nature of any current or past relationships between Respondent and any Person(s) named in response to Interrogatory No. 8.

**INTERROGATORY NO. 11:**

For each Nitrile Hand Glove identified in response to Interrogatory No. 1, Identify the geographic region(s) in which you market such Nitrile Hand Glove, the location of each marketing officer or Distributor, and the Person(s) in charge of marketing the Nitrile Hand Gloves in each location.

**INTERROGATORY NO. 12:**

To the extent not provided in response to previous Interrogatories, Identify all sales representatives, Manufacturers' representatives, dealers, customs agents, shipping agents, licensees, and second source Manufacturers for the Nitrile Hand Glove identified in response to Interrogatory No. 1.

**INTERROGATORY NO. 13:**

For each Nitrile Hand Glove identified in response to Interrogatory No. 1, state the quarterly revenue and unit quantity of Respondent's production of each such Nitrile Hand Glove from its inception through the present, and, for each such quarter, indicate the amount of such revenue and number of such units derived from Imports into and/or sales in the United States.

**INTERROGATORY NO. 14:**

For each Nitrile Hand Glove identified in response to Interrogatory No. 1, state the volume of sales in units sold and revenues from those sales, by purchaser, on a monthly basis, from the Date of first sale through the present, and, for each such quarter, indicate the amount of such revenue and number of such units derived from Imports into and/or sales in the United States.

**INTERROGATORY NO. 15:**

State whether you have any arrangements, including, but not limited to, agreements or contracts, which permit use or sale of any Nitrile Hand Glove identified in response to Interrogatory No. 1 under the label of a customer or Third Party.

**INTERROGATORY NO. 16:**

If you answer to Interrogatory No. 15 is "Yes," Identify all Documents that relate to such arrangements, Identify the parties involved in all such arrangements, state the nature of the arrangements, and Identify the Nitrile Hand Gloves covered by such arrangements.

**INTERROGATORY NO. 17:**

In the event that you have discontinued the Manufacture, use, and/or sale in the United States or abroad of any Nitrile Hand Glove identified in response to Interrogatory No. 1, state the reasons for such discontinuation, the Date of each such decision to discontinue, the identity of each Person(s) involved in such decision, and the Date of discontinuation.

**INTERROGATORY NO. 18:**

Describe in detail all indemnity arrangements or relationships, or offers to enter into an indemnity arrangement or relationship, between Respondent and any other Person concerning any allegations or charges of infringement of the Patent-in-Suit, or any other patent.

**INTERROGATORY NO. 19:**

If you contend that any Nitrile Hand Glove identified in response to Interrogatory No. 1 does not Infringe claims 1, 17, 18, or 19 of the '616 Patent, state the complete factual and legal basis for such contention, and in responding to this interrogatory, provide a claim chart that either acknowledges or denies whether each element or limitation of each such claim of the '616 Patent is found within each Nitrile Hand Glove. For each element or limitation of claims 1, 17,

18, or 19 of the '616 Patent that you contend is not found within each Nitrile Hand Glove, explain the basis for such contention, including why the supposed missing claim element or limitation is not satisfied under the doctrine of equivalents.

## INTERROGATORY NO. 20:

If you contend that claims 1, 17, 18, or 19 of the '616 Patent are invalid, state the complete factual and legal basis for such contention, and:

    a)    Identify all Prior Art you assert invalidates or renders unenforceable such claims of the '616 Patent;

    b)    for each item of Prior Art Identified, state whether you assert the Prior Art anticipates such claims of the '616 Patent or renders them obvious;

    c)    if you assert that a combination of Prior Art renders a claim obvious, Identify each such combination and explain the reasoning for such combination;

    d)    provide a claim chart Identifying specifically where in each alleged item of Prior Art each element of each claim is purportedly found;

    e)    Identify any asserted grounds of invalidity based on any provision of 35 U.S.C. § 112; and

    f)    Identify all Persons with knowledge of any of the facts stated in response to subparts a) through e) above.

## INTERROGATORY NO. 21:

Identify each study or evaluation that was made by or on behalf of Respondent concerning the Infringement, non-infringement, validity, invalidity, enforceability, unenforceability, and/or scope of the Patent-in-Suit.

**INTERROGATORY NO. 22:**

State the factual and legal bases upon which you will rely to rebut Complainant's allegation that Respondent Infringed the Patent-in-Suit.  In responding to this interrogatory, Identify each and every opinion of counsel which you have obtained related in any way to the Patent-in-Suit, whether written or oral.

**INTERROGATORY NO. 23:**

Identify any analysis conducted by or at the request of Respondent of any Nitrile Hand Glove manufactured, sold for import in the United States, or imported into the United States by Respondent including, but not limited to, the Date or Dates the analysis(es) was (were) requested; the results of the analysis(es) with respect to thickness, tensile strength, elongation, modulus, and relaxation; the identity of the Person(s) conducting the analysis(es); the Date(s) conducted; and to whom the results were communicated.

**INTERROGATORY NO. 24:**

Identify when and how (including all events and circumstances) you first became aware of the Patent-in-Suit, and state what action, if any, you took upon learning of the Patent-in-Suit.

**INTERROGATORY NO. 25:**

Describe any consideration, plan, or attempt by you or others acting on your behalf to alter the Nitrile Hand Glove(s) to avoid Infringement or potential Infringement of the Patent-in-Suit, such as by designing around the Patent-in-Suit, and identify the Person(s) knowledgeable of and/or involved in such consideration, plan or attempt, and Identify all Documents which refer or relate to such consideration, plan, or attempt.

**INTERROGATORY NO. 26:**

Identify the circumstances by which you first became aware of any Tillotson Nitrile Hand Glove, including, but not limited to, the Date of such first awareness and the source of information leading to such first awareness.

**INTERROGATORY NO. 27:**

Identify any analysis conducted by or at the request of Respondent of any Tillotson Nitrile Hand Glove, including, but not limited to, the Date or Dates the analysis(es) was (were) requested; the results of the analysis(es) with respect to thickness, tensile strength, elongation, modulus, and relaxation; the identity of the Person(s) conducting the analysis(es); the Date(s) conducted; and to whom the results were communicated.

**INTERROGATORY NO. 28:**

If you contend that no domestic industry exists with respect to the Nitrile Hand Gloves protected by the patent-in-suit, state the complete factual and legal basis for such contention.

**INTERROGATORY NO. 29:**

Identify all Persons related in any way to Respondent.   Include all predecessors, successors, subsidiaries, divisions, parents, and affiliates thereof (past or present); joint ventures and other legal entities that are wholly or partially owned or controlled by Respondent, either directly or indirectly; and all past or present directors, principals, officers, owners, employees, agents, representatives, consultants, attorneys, and others acting for or on behalf of these same entities.  These terms include any businesses or companies which are owned in whole or in part by the same parent or owner which owns Respondent (whether such parent owns Respondent in whole or in part).

13

**INTERROGATORY NO. 30:**

Identify each Person who has served or is serving as an officer, director, or manager of Respondent (including the managers having responsibility for marketing, sales, product development, technology and/or research and development) during the past six years, and, for each such Person, state the title(s) or position(s) held by such Person, the time periods during which such Person held such position(s), and a description of the responsibilities of such Person to that position.

**INTERROGATORY NO. 31:**

Identify all Persons who were consulted or who provided information in connection with the preparation of your answers to the foregoing interrogatories, and for each such Person, state the interrogatory or interrogatories in connection with which he or she provided information or was consulted.

THIS 6th day of July, 2007.

Gilbert B. Kaplan
Jeffrey M. Telep
Taryn L. Koball
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC  20006-4706
(202) 737-0500

Anthony B. Askew
Katrina M. Quicker
Jason M. Pass
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia  30309
(404) 572-4600

Counsel for Complainant
TILLOTSON CORPORATION

United States International Trade Commission
Investigation No. 337-TA-608
In the Matter of Certain Nitrile Gloves

## CERTIFICATE OF SERVICE

The undersigned certifies that, on July 6, 2007, he caused the foregoing **TILLOTSON CORPORATION FIRST SET OF INTERROGATORIES** to be served to Respondent **Ansell Ltd.**, and upon the following parties (one copy) as indicated below:

## VIA OVERNIGHT MAIL*:

**Top Glove Corporation***
Bhd., Lot 4969,
Jalan Teratai, Batu 6,
Off Jalan Meru
41050 Klang, Selangor D.E., Malaysia

**Beijeng Huateng Rubber Plastic***
Ciqu Industrial Zone
Tongzhou District
Beijing, China 101111

**Laglove (M) ***
Sdn. Bhd., Lot 478
Jalan Simpang Balak, Off B, 43000
Kajang
Selangor, Malaysia

**Supermax Corporation ***
Bhd., Lot 38, Putra Industrial Park, Bukit Rahman
Putra 47000 Sungai Buloh
Selangor, D.E., Malaysia

**Smart Glove Holdings ***
Sdn. Bhd., Lot 6487, Batu 5 3/4
Sementajln Kapar, 42100
Klang, Selangor D.E., Malaysia

**YTY Holdings ***
Sdn. Bhd.Lot 2935B, Kg Batu 9
Kebun Baru, Jalan Masjid
42500 Telok Panglima Garang, Kuala Langat
Selangor D.E., Malaysia

**Ansell Ltd.***
3/678 Victoria Street
Richmond, Victoria 3121 Australia

**PT Medisafe Technologies***
JL. Batang Kuis, GG Tambak Rejo/PSR IX
Desa Buntu Bedimbar, Tanjung Morawa,
Medan, Sumatera Utar, Indonesia

**Glovco (M)***
Sdn. Bhd., Lot 760,
Jalan Kuang Bulan
Taman Kepong Industrial Estate
Kuala Lampur., Malaysia

**JDA (Tianjin) Plastic Rubber Co. Ltd.***
No. 17 Hai Bin No. 7 Rd
Tianjin Port Free Trade Zone
Tianjin, China 300456

**Kossan Rubber Industries ***
Bhd., Lot 16632, Batu 5 1/4
Jalan Meru, 41050
Klang, Selangor D.E., Malaysia

**Seal Polymer Industries ***
Bhd. Lot 72706, Jalan Lahat, Kawasan
Perindustrian Buki Merah
31500 Lahat
Perak, Malaysia

**PT Shamrock Manufacturing Corporation ***
Jalan Pemuda No. 11
Medan- 20151 North Sumatra – Indonesia

**Yee Lee Corporation ***
Bhd., Lot 85 Jalan Portland
Tasek Industrial Estates
31400 Ipoh Perak Darul Ridzuan, Malaysia

**Ideal Healthcare Group Co. Ltd. ***
Bldg. 18, No. 1
South Section of Huacheng (W) Road
Ningbo, China 31500

**Riverstone Resources***
Sdn. Bhd., Lot 21909, No. 5, Lorong Helang
Hindik, Kepong Baru Industrial Estate,
52100 Kuala Lumpur, Malaysia

**Adenna, Inc.**
12216 McCann Drive
Santa Fe Springs, CA 90670

**Protective Industrial Products, Inc.**
Northeastern Industrial Park
Bldg 4 PO Box 19
Guilderland Center, NY 12085

**Tronex International, Inc.**
One Tronex Centre
3 Luger Rd
Denville, NJ 07834

**Darby Group Companies, Inc.**
300 Jericho Quadrangle
Jericho, NY 11753

**QRP, Inc. d/b/a QRP Gloves, Inc.**
c/o Daniel J. Quigley
2730 E. Broadway #160
Tucson, AZ 85716

**Dynarex Corp.**
10 Glenshaw St.
Orangeburg, NY 10962

**Delta Medical Systems, Inc. d/b/a The Delta Group,**
6865 Shiloh Road East, Suite 400
Alpharetta, GA 30202

Vu Q. Biu, Esq.
**Office of Unfair Import Investigations**
**U.S. International Trade Commission**
500 E Street, S.W.
Suite 401
Washington, D.C. 20436

**Magla Products LLC**
120 N. 3rd Street
Albemarle, NC 28001-4902

**Cypress Medical Products LLC ("Cypress")**
1202 South Rt. 31
McHenry, IL 60050

**Basic Medical Industries, Inc.**
12390 East End Ave
Chino, CA 91710

**Dash Medical Gloves, Inc.**
1018 South 54th St.
Franklin, WI 53132

**Liberty Glove and Safety Co.**
433 Cheryl Lane
City of Industry, CA 91789

**Dentexx/First Medica Infection Control Assoc.**
3704C Boren Dr.
Greensboro, NC 27407

**Hartalegal Holdings Bhd.***
Lot. 9 Jalan Kuang Bulan
Taman Kepong Industrial Estate
52100 Kuala Lumpar, Malaysia

**West Chester Holdings, Inc.**
100 Corridor Park Drive
Monroe, OH 45050

Dated: July 6, 2007

*[signature]*
Jeffrey M. Telep
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006-4706
(202) 737-0500

*Parties identified with an asterisk will be served via UPS Worldwide Express

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| TILLOTSON CORPORATION, d/b/a BEST MANUFACTURING COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 4:05-CV-118-RLV |
| SHIJIAZHAUNG HONGRAY PLASTIC PRODUCTS LTD.; GLOVECO, INC. SAS SAFETY CORP.; PERMATEX, INC.; AMERCARE, INC.; ISLAND DENTAL CO., INC.; and DARBY GROUP COMPANIES, INC., | ) ) ) ) ) ) ) | |
| Defendants and Third-Party Plaintiffs, | ) ) ) ) | |
| v. | ) ) ) | |
| ANSELL HEALTHCARE PRODUCTS LLC, CARDINAL HEALTH 200, INC., MYDENT INTERNATIONAL CORP., KNK MEDICAL DENTAL SPECIALTIES, LTD., AND SUPERMAX INCORPORATED CORP., | ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) ) ) | |

## DEFENDANTS' UNOPPOSED MOTION TO STAY PROCEEDINGS AND MEMORANDUM IN SUPPORT THEREOF

Defendants Island Dental Co., Inc. ("Island") and Darby Group Companies,

Inc. ("Darby Group") (collectively "Defendants") hereby move the Court, pursuant

to 28 U.S.C. § 1659, for an Order staying all proceedings in this matter in their

entirety until the determination of the United States International Trade

Commission ("ITC") becomes final. Plaintiff Tillotson Corporation d/b/a Best

Manufacturing Company ("Tillotson") has agreed and has represented to counsel

for Defendants that Tillotson does not and will not oppose this Motion.

A stay is necessary pursuant to 28 U.S.C. § 1659 to protect the interests of

Defendants and to preserve judicial resources. Defendants hereby demonstrate to

the Court the following:

1.    Section 1659(a) provides:

> In a civil action involving parties that are also parties to a
> proceeding before the United States International Trade
> Commission under section 337 of the Tariff Act of 1930,
> at the request of a party to the civil action that is also a
> respondent in the proceeding before the Commission, the
> district court shall stay, until the determination of the
> Commission becomes final, proceedings in the civil
> action with respect to any that involves the same issues
> involved in the proceeding before the Commission, but
> only if such request is made within ... 30 days after the
> party is named as a respondent in the proceeding before
> the Commission ... .

2.    On May 30, 2006, pursuant to Section 337 of the Tariff Act of 1930

(19 U.S.C. § 1337), Tillotson requested that the ITC initiate an investigation

regarding alleged infringement of certain nitrile gloves and the validity of United

States Patent No. Re 35,616 (the "'616 Patent"), both of which are the subject

matter of this action. In the ITC, Tillotson is seeking a general exclusion order

excluding from entry into the United States all nitrile gloves that are imported into

the United States, sold for importation within the United States, and/or sold within

the United States after importation that utilize, without Tillotson's authorization,

the invention claimed in one or more of the claims of the '616 Patent. (ITC

Complaint, a true and correct copy of which is attached hereto as Ex. A, ¶ 7.)

3.     On or about June 28, 2007, the ITC initiated an investigation into the

sale of certain nitrile glove products, as requested by Tillotson (the "ITC

Proceeding"). The ITC published a notice of its initiation of an investigation on or

about June 28, 2007. A true and correct copy of this ITC Notice is attached hereto

as Exhibit B.

4.     Darby Group is named as a respondent in the ITC Proceeding. (ITC

Notice.) Additionally, in the ITC Proceeding, Tillotson seeks a general exclusion

order with respect to both Darby Group and Island as a subsidiary of Darby Group

allegedly importing or offering for sale and/or use after importation certain nitrile

gloves of which Tillotson complains. (ITC Complaint ¶¶ 144, 146, 148, 276.)

5.     The ITC proceeding involves issues identical to those in this action.

6. This Unopposed Motion is timely filed pursuant to 28 U.S.C. § 1659.

7. Therefore, pursuant to 28 U.S.C. § 1659, both Darby Group and Island are entitled to a mandatory stay of the instant action in its entirety pending final resolution of the ITC proceeding.

WHEREFORE, Defendants respectfully request that the Court grant this Unopposed Motion and order all matters in this action stayed until the determination of the ITC becomes final. A proposed Order granting this Unopposed Motion is attached hereto as Exhibit C.

Respectfully submitted this 3rd day of July 2007.

WARGO & FRENCH LLP

/s/   Shanon J. McGinnis
Michael S. French
  Georgia Bar No. 141632
Jeanine L. Gibbs
  Georgia Bar No. 292590
Shanon J. McGinnis
  Georgia Bar No. 387598
Sarah-Nell Walsh
  Georgia Bar No. 141240
1170 Peachtree Street N.E.
Suite 2020
Atlanta, GA 30309
(404) 853-1500
(404) 853-1501 (fax)
*mfrench@wargofrench.com*
*jgibbs@wargofrench.com*
*smcginnis@wargofrench.com*
*swalsh@wargofrench.com*

Of Counsel:

Richard P. Romeo
Salon, Marrow, Dyckman, Newman &
Broudy, LLP
292 Madison Avenue, 6th Floor
New York, New York 10017
(212) 661-7100
*RRomeo@salonmarrow.com*

*Counsel for Defendants*
*Darby Group Companies, Inc. and*
*Island Dental Co., Inc.*

## CERTIFICATE OF COMPLIANCE: L.R. 7.1(D)

I hereby certify, in accordance with Local Rule 7.1(D), that the foregoing

memorandum has been prepared using 14 point Times New Roman font.

This 3rd day of July 2007.

  /s/  Shanon J. McGinnis
Shanon J. McGinnis
 Georgia Bar No. 387598
WARGO & FRENCH LLP
1170 Peachtree St., N.E., Suite 2020
Atlanta, GA 30309
(404) 853-1500
(404) 853-1501 (fax)
smcginnis@wargofrench.com

## CERTIFICATE OF SERVICE

This certifies that I have this day electronically filed the foregoing

**Defendants' Unopposed Motion to Stay Proceedings and Memorandum in**

**Support Thereof** with the Clerk of Court using the CM/ECF System, which will

automatically send e-mail notification of such to the following attorneys of record:

Anthony B. Askew
Stephen M. Schaetzel
Katrina M. Quicker
Jason Mitchell Pass
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA  30309

Richard B. North, Jr.
Nelson Mullins Riley & Scarborough
999 Peachtree Street, N.E.
First Union Plaza, Suite 1400
Atlanta, GA 30309-3964

Wayne Dale McGrew, III
Spencer Bomar
Tonya Marie Forbes Stokes
Carlock Copeland Semler & Stair
P.O. Box 56887
285 Peachtree Center Avenue, N.E.
Atlanta, GA 30343-0887

Kenneth I. Sokolov
Fine & Block
2060 Mt. Paran Road, NW
106 Paran Place
Atlanta, GA 30327-2935

Robert M. Mitchell
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Cally Schickler
Rosenberg & Fortuna, LLP
666 Old Country Road, Suite 810
Garden City, NY 11530

Michael T. Taylor
Siana, Bellwoar & McAndrew, LLP
941 Pottstown Pike, Suite 200
Chester Springs, PA 19425

I hereby certify that I have mailed by United States Postal Service the same

document to the following persons:

Thomas B. Kenworthy
David W. Marston, Jr.
Rebecca J. Hillyer
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

David I. Rosenberg
Rosenberg & Fortuna, LLP
666 Old Country Road, Suite 810
Garden City, NY 11530

This 3rd day of July 2007.

/s/ Shanon J. McGinnis

589342_2

# EXHIBIT 8

FILED IN CHAMBERS
U.S.D.C. Rome

JUL 06 2007

JAMES N. HATTEN, Clerk
By: _____
                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| TILLOTSON CORPORATION, d/b/a BEST MANUFACTURING COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 4:05-CV-118-RLV |
| SHIJIAZHAUNG HONGRAY PLASTIC PRODUCTS LTD.; GLOVECO, INC. SAS SAFETY CORP.; PERMATEX, INC.; AMERCARE, INC.; ISLAND DENTAL CO., INC.; and DARBY GROUP COMPANIES, INC., | ) ) ) ) ) ) ) ) | |
| Defendants and Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ANSELL HEALTHCARE PRODUCTS LLC, CARDINAL HEALTH 200, INC., MYDENT INTERNATIONAL CORP., KNK MEDICAL DENTAL SPECIALTIES, LTD., AND SUPERMAX INCORPORATED CORP., | ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) ) ) | |

## **ORDER GRANTING UNOPPOSED MOTION TO STAY**

This matter having come before the Court on the Defendants' Unopposed

Motion to Stay Proceedings, and the Court having read and considered the same,

and for good cause shown, IT IS HEREBY ORDERED that all matters, issues, and

proceedings in this action before this Court shall be stayed until the determination

of the United States International Trade Commission in the proceeding styled *In*

*the Matter of Certain Nitrile Gloves*, Inv. No. 337-TA-608 becomes final.

IT IS SO ORDERED, this 6th day of July , 2007.

Robert L. Vining, Jr.
United States District Court Judge

589406_1

# EXHIBIT 9

FILED IN CHAMBERS
U.S.D.C. Rome

JUL 11 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

TILLOTSON CORPORATION, d/b/a
BEST MANUFACTURING COMPANY,

       Plaintiff,

    v.

TOP GLOVE SDN. BHD.; TG
MEDICAL SDN. BHD.; TG MEDICAL
(USA), INC.; and TOP GLOVE
CORP. BHD.,

       Defendants.

CIVIL ACTION

NO. 4:05-CV-0232-RLV

O R D E R

Pending before the court is an unopposed Motion to Stay the Proceedings Pursuant to 28 U.S.C. § 1659 [Doc. No. 168]. The plaintiffs have initiated a related action before the United States International Trade Commission against Top Glove Corp. and other entities not a party in this matter. The defendants have timely moved this court to stay this case pending final disposition of the action before the International Trade Commission.

Pursuant to 28 U.S.C. § 1659(a), the action against Top Glove Corp. is hereby stayed. In the interest of judicial economy, and because this case involves the same issues as in the ITC action, the action against Top Glove Corp.'s subsidiaries, Top Glove Sdn. Bhd., TG Medical Sdn. Bhd., and TG Medical (USA) Inc., is also stayed. The defendants are directed to notify this court within

thirty days of the final disposition of the ITC proceedings as to
the outcome of that matter and the effect upon this case.

SO ORDERED, this _11TH_ day of July, 2007.

ROBERT L. VINING, JR.
Senior United States District Judge