## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527-JJF |
| | ) | |
| TILLOTSON CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ANSELL PROTECTIVE PRODUCTS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-93-JJF |
| | ) | |
| TILLOTSON CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## DEFENDANT TILLOTSON CORPORATION'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION TO STAY PROCEEDINGS PENDING THE
## OUTCOME OF THE INTERNATIONAL TRADE COMMISSION'S INVESTIGATION

Of-Counsel:

Anthony B. Askew
Steve M. Schaetzel
Katrina M. Quicker
Jason M. Pass
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
(404) 572-4600

Dated:  July 30, 2007
809955 / 30675

Richard L. Horwitz (#2246)
Kenneth L. Dorsney (#3726)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE  19899
(302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

*Attorneys for Defendant*
*Tillotson Corporation*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ i

INTRODUCTION ............................................................................................................... 1

ARGUMENT IN REPLY .................................................................................................... 1

    A.    The Court Should Stay The Delaware Actions Because Judicial Economy
          Is Best Achieved In The True Manufacturer's Suit: Tillotson's ITC Action. ......... 1

          1.    The Ansell Plaintiffs Have Conceded That The Manufacturer's Suit
                Is Entitled To Preference. ........................................................................... 1

          2.    After Appeals, The ITC's Decision Will Ultimately Be Binding On
                Tillotson ....................................................................................................... 3

          3.    A Stay Will Not Require Duplicative Depositions Or Other
                Duplicative Discovery. ................................................................................ 3

          4.    Ansell HC And Ansell PP Oversimplify Flexsys Americas, LP v.
                Kumho Tire, U.S.A. Inc. ............................................................................. 6

    B.    Ansell HC and Ansell PP's Proposed Summary Judgment Motion Is
          Premature, Unfounded, And Its Timing Is Contrived ............................................ 8

          1.    Ansell HC and Ansell PP Have Not Articulated Why They Must
                Bring Their Invalidity Challenges In Delaware Now. ................................ 8

          2.    Ansell HC and Ansell PP's Validity Challenge Is Unfounded And
                Does Not Serve As A Proper Basis For Denying Tillotson's Motion
                To Stay. ...................................................................................................... 11

    C.    Contrary To Ansell HC and Ansell PP's Assertions, Tillotson Has
          Consistently Sought To Judiciously And Economically Adjudicate
          Its Patent Rights Against A Multitude Of Infringers. ........................................... 12

    D.    Ansell HC's And Ansell PP's Desire To Proceed With The Instant
          Declaratory Judgment Action Is Outweighed By Other Considerations,
          Including Congressional Intent. ........................................................................... 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Alloc, Inc. v. Normand Lifton Co.*,
    No. 1:03cv4419, 2007 U.S. Dist. LEXIS 52293 (S.D.N.Y. July 18, 2007) ..............................3

*Amgen, Inc. v. F. Hoffman-Laroche, Ltd.*,
    456 F. Supp. 2d 267 (D. Mass. 2006) .................................................................................3

*Enzo Life Sciences, Inc. v. Digene Corp.*,
    270 F. Supp. 2d 484 (D. Del. 2003)..................................................................................8, 9

*Flexsys Americas, LP v. Kumho Tire, U.S.A. Inc.*,
    No. 5:05 CV 156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) .......................................6, 8

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993)...........................................................................................1

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*,
    C.A. No. 04-1337-KAJ, C.A. No. 04-1338-KAJ, C.A. No. 04-1536-KAJ,
    2005 WL 2465898 (D. Del. May 18, 2005)........................................................................14

*Iljin USA v. NTN Corp.*,
    No. 06-10145, 2006 WL 568351 (E.D. Mich. Mar. 7, 2006) ..................................................4

*In re Princo Corp.*,
    478 F.3d 1345 (Fed. Cir. 2007)........................................................................................14

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989).........................................................................................1

*Nidec Corp. v. Victor Co. of Japan, Ltd.*,
    No. C 05-0686 SBA, 2006 WL 734410...............................................................................9

*Sealed Air Corp. v. U.S. Intern. Trade Commission*,
    645 F.2d 976 (C.C.P.A. 1981) .................................................................................... 12-13

*Tegic Communications Corp. v. Board of Regents of Univ. of Texas Sys.*,
    458 F.3d 1335 (Fed. Cir. 2003).........................................................................................1

*Tillotson Corp. v. Shijiazhaung Hongray Plastic Products, Ltd.*,
    Civil Action No. 4:05-CV-0118-RLV, 2007 WL 1247121 (N.D. Ga. Apr. 30, 2007)..............1

## STATUTES, RULES & REGULATIONS

28 U.S.C. § 1659.................................................................................................................5, 14

28 U.S.C. §1659(b) ..........................................................................................................6

Fed. R. Civ. P. 15(a) .......................................................................................................8

Fed. R. Civ. P. 16(b) .......................................................................................................9

U.S. ITC Rule 210.5(c) ...................................................................................................5

**OTHER AUTHORITIES**

Duvall, McCabe, Bateman, Unfair Competition and the ITC (2006 ed.) ........................5

## INTRODUCTION

Defendant Tillotson Corporation ("Tillotson") submits this reply to Plaintiff Ansell Healthcare Products LLC's ("Ansell HC") and Plaintiff Ansell Protective Products Inc.'s ("Ansell PP's") opposition to Tillotson's motion to stay.

## ARGUMENT IN REPLY

**A.    The Court Should Stay The Delaware Actions Because Judicial Economy Is Best Achieved In The True Manufacturer's Suit: Tillotson's ITC Action.**

### 1.    The Ansell Plaintiffs Have Conceded That The Manufacturer's Suit Is Entitled To Preference.

Caselaw provides that a true manufacturer's suit should take priority over a mere customer suit. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993); *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989); *see also Tillotson Corp. v. Shijiazhaung Hongray Plastic Products, Ltd.*, Civil Action No. 4:05-CV-0118-RLV, 2007 WL 1247121, at *1-2 (N.D. Ga. Apr. 30, 2007) (discussing the first-to-file rule and the "customer suit" exception). As the Federal Circuit has explained, the "guiding principles" underlying the so-called "customer suit exception cases are efficiency and judicial economy." *Tegic Communications Corp. v. Board of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2003) (citing *Kahn*, 889 F.2d at 1081).

Here, the customer suit is the instant Delaware suit, whereas the true manufacturer's suit is at the ITC. *See* Tillotson's Opening Brf, Ansell HC D.I. 91, pp. 8-11; *see generally Tillotson Corporation*, 2007 WL 1247121 (concluding that Ansell HC is not a manufacturer). By virtue of its suit against Ansell Ltd. and 31 other respondents at the ITC, Tillotson has effectively sued 11

of Ansell Ltd.'s subsidiaries, including Ansell HC and Ansell PP.[1]  *See* Declaration of Katrina

M. Quicker ("Quicker Dec."), ¶¶ 3-8, Exhibit 1 hereto.  Tillotson has sued at the ITC the true

manufacturers of the subject nitrile gloves, such as the *Micro-Touch* glove (distributed by Ansell

HC) and the *TNT Blue Disposable Nitrile Gloves* (distributed by Ansell PP).  *See* Exhibit 1 to

D.I. 91, ¶¶ 28-41, 205-208.  Through its suit against Ansell Ltd. at the ITC, Tillotson has also

effectively sued Ansell (Thailand) Ltd., the manufacturer of the *TNT Blue Disposable Nitrile*

*Gloves*.  *Id.* ¶ 30, 208.  The ITC Complaint also names the manufacturers of Ansell HC's *Micro-*

*Touch* gloves: respondent Seal Polymer Industries Bhd. ("Seal Polymer") and Perusahaan Getah

Asas Sdn. Bhd. ("Perusahaan Getah").  *Id.* ¶ 230, 248; *see* D.I. 91, p. 4 (citing D.I. 80, at Exhibit

G) (Perusahaan Getah Asas Sdn. Bhd. is a subsidiary of respondent Kossan Rubber Industries

Bhd.).

　　Ansell HC, after misrepresenting itself as a manufacturer to contest Tillotson's transfer

motion, acknowledged and embraced the notion that preference should be given to a

manufacturer's suit (over a customer's suit).  Ansell HC and Ansell PP cannot now disavow that

preference simply because the misrepresentation has been exposed or because the manufacturer's

---

[1] When Tillotson initially submitted its Complaint to the ITC's Office of Unfair Import Investigation (the "OUII"), that Complaint named over 100 respondents. *See* Quicker Dec., ¶¶ 3-8. Because such a large number of respondents would be difficult to manage, the OUII requested that Tillotson narrow its complaint to roughly 25 respondents. After discussions with the OUII, Tillotson understood that naming parent corporations necessarily involves the subsidiaries of those parents in the ITC action. By naming parent corporations of initially named respondents, Tillotson narrowed the list of respondents to 31. *Id.* With 31 respondents, Tillotson's ITC Complaint still is among the largest complaints ever filed at the ITC. Tillotson named Ansell Ltd. as a respondent and, therefore, effectively sued Ansell HC and Ansell PP at the ITC. It was not necessary to name them as respondents and Tillotson did not file its motion for leave at the ITC. *Id.* Nevertheless, if this Court deems that naming Ansell HC and Ansell PP as respondents is necessary for purposes of Tillotson's requested stay, Tillotson is prepared to seek leave to amend its Complaint to do so. *Id.*

suit is before the ITC. For all the reasons Ansell HC previously argued, the manufacturer's suit before the ITC takes preference and this case should be stayed.

**2.    After Appeals, The ITC's Decision Will Ultimately Be Binding On Tillotson.**

Ansell HC and Ansell PP ignore the ultimate consequences of litigation at the ITC. As a practical matter, any decision regarding infringement at the ITC will in effect—after appeal to the Federal Circuit—be binding on Tillotson and Ansell. For example, if the ITC finds that Seal Polymer's *Micro-Touch* glove infringes, Ansell will be hard pressed to argue non-infringement of that same glove in the face of an affirming Federal Circuit decision. Conversely, if the Federal Circuit overturns the ITC's decision of infringement, then Tillotson will be hard pressed to maintain its claims of infringement regarding that same glove in Delaware or other jurisdictions. *Amgen, Inc. v. F. Hoffman-Laroche, Ltd.*, 456 F. Supp. 2d 267, 276 (D. Mass. 2006) (noting that, while an ITC decision may be permissive, a district court is "bound by Federal Circuit rulings on appeal from Trade Commission decisions"); *cf. Alloc, Inc. v. Normand Lifton Co.*, No. 1:03cv4419, 2007 U.S. Dist. LEXIS 52293, at *29 (S.D.N.Y. July 18, 2007) ("a district court should afford Federal Circuit claim interpretation on appeal from the ITC a strong presumption of correctness, and deviate only where the party advancing an alternative interpretation provides compelling reasons to do so").

**3.    A Stay Will Not Require Duplicative Depositions Or Other Duplicative Discovery.**

Ansell HP and Ansell PP assert that granting a stay of this Court's declaratory judgment action pending a final determination in the ITC's investigation of *Certain Nitrile Gloves* would require duplicative depositions. *See* D.I. 96, p. 7. Plaintiffs are mistaken. First, as Plaintiffs acknowledge, all depositions could be "double captioned" for use in both proceedings. *Id.*, n.3. Also, in the course of double-captioned depositions, nothing precludes the party taking the

deposition from inquiring as to discrete topics relevant in one forum but not the other—e.g., damages (being relevant to the District Court Action) and the exclusion order remedy (being relevant to the ITC proceeding).

In any event, even if it was necessary to take additional discovery as to damages at some later date once the stay was lifted, that additional discovery would be dwarfed by the volume of discovery regarding claim construction, infringement, validity, and enforceability that can be taken earlier in the ITC proceeding, and would not need to be duplicated in the instant proceeding. Indeed, while several depositions will occur on these topics, Tillotson presently expects to take only two damages depositions in the Delaware litigation, if necessary: a 30(b)(6) damages deposition and a damages expert deposition. *See* Quicker Dec., ¶ 9. Resolving these damages issues will not require a host of duplicative depositions on a "myriad" of damages issues as Ansell HC and Ansell PP argue. D.I. 96, p. 7. "Indisputably, it would conserve judicial resources to allow the ITC investigation to at least narrow the issues before this case proceeds, with the added benefit of potentially avoiding conflicting decisions." *Iljin USA v. NTN Corp.*, No. 06-10145, 2006 WL 568351, at *2 (E.D. Mich. Mar. 7, 2006).

Ansell HP and Ansell PP further argue that "if depositions involving confidential subjects were taken only in the ITC proceeding, the Protective Order in the ITC would preclude the use of the depositions in this Court." D.I. 96, p. 7. Plaintiffs again are mistaken. Parties to ITC section 337 proceedings may seek modification, as necessary, of an ALJ's protective order to permit the use of confidential business information ("CBI") obtained in the Commission proceeding in parallel district court proceedings under judicial protective order, without losing its confidential status under the ITC's protective order. *See, e.g., Personal Computers With Memory Management Information Stored in External Memory and Related Materials*, Inv. No. 337-TA-

352, Order 25 (June 6, 1994) (Judge Harris) (pointing out that the parties consented to the proposed modification of the APO, and that parties are always free to disclose their own CBI to whomever they wish);[2] *see also Certain Condensers, Parts Thereof and Products Containing Same, Including Air Conditioners for Automobiles*, Inv. No. 337-TA-334 (Opinion of ALJ Saxon), 1992 ITC LEXIS 21 (January 23, 1992) ("Protective orders issued by administrative law judges do not all have to be the same; they can be drafted to accommodate the needs of the parties"). Thus, although the Protective Order issued by Judge Bullock expressly provides for the transmittal of confidential information to a district court in a parallel judicial proceeding only in the context of Commission Rule 210.5(c) (which pertains to the transmission of information following the lifting of a stay pursuant to 28 U.S.C. § 1659),[3] the litigants may move to amend the protective order to permit the use of CBI in parallel district court proceedings at any time. In fact, to the extent the parties overlap, no modification may be necessary. *Certain Doxorubicin and Preparations Containing Same*, Inv. No. 337-TA-300 (Commission Order and Memorandum Opinion) 1991 ITC LEXIS 453 at **12-13 (June 3, 1991).

---

[2] Discussed in DUVALL, MCCABE, BATEMAN, UNFAIR COMPETITION AND THE ITC, (2006 ed.) pp. 120-121.

[3] *Compare Certain Buffer Systems and Components Thereof Used in Container Processing Lines*, Inv. No. 337-TA-609, Order No. 2 (Protective Order) (Judge Luckern) (July 3, 2007) at ¶ 5 ("Confidential business information obtained in the Commission proceeding may be used with the consent of the supplier in a parallel district court proceeding under a protective order issued by the district court without losing its confidential status under the protective order in this proceeding as long as the information is not made public in the district court proceeding or by someone who obtains the information from that source or by anyone else."), *available at* http://edisweb.usitc.gov/edismirror/337-609/Violation/277328/324612/f72/89020a.pdf; *see also Certain Phenylene Sulfide Polymers and Polymer Compounds, and Products Containing Same*, Inv. No. 337-TA-296, Order No. 4 (May 15, 1989), 1989 ITC LEXIS 427 at *5 n. 3 ("Provisions which resulted in allowing cross-use of information in a concurrent district court action and a section 337 investigation have previously been incorporated in protective orders in section 337 investigations.").

The ITC's trial date is February 25, 2008. Discovery in the instant proceeding will not conclude until at least late May/early June 2008. Discovery at the ITC, and the entire ITC record, will be available to this Court.[4] This will serve to avoid duplicative discovery, conserve judicial resources, and allow the ITC's "manufacturer's suit" to take precedence over the instant case which may fairly be characterized as a "customer suit."

Finally, through discovery at the ITC, Ansell HC and Ansell PP—through Ansell Ltd.—are already seeking to address the same issues presented in Delaware. Ansell Ltd. and its subsidiaries will be represented by the same attorneys representing Ansell HC and Ansell PP in Delaware: Thomas Kenworthy, David Marston, and Rebecca Hillyer. *See* Ansell Ltd.'s Notice of Appearance, Exhibit 2 hereto. Ansell Ltd. has answered the Complaint and served discovery requests on Tillotson, including Requests for Admissions, Interrogatories, and Document Requests. The discovery served to date by Ansell Ltd. at the ITC comprises the same discovery that Ansell HC and Ansell PP have served in Delaware. *See, e.g.,* Ansell Ltd.'s 1st Rogs. to Tillotson (at the ITC), Exhibit 3 hereto; Ansell HC's 1st Rogs. to Tillotson (Delaware), Exhibit 4, hereto; Ansell PP's 1st Rogs. to Tillotson (Delaware), Exhibit 5 hereto. If the Court chooses not to stay the Delaware action, such duplicative discovery will continue in both forums.

### 4.    Ansell HC And Ansell PP Oversimplify *Flexsys Americas, LP v. Kumho Tire, U.S.A. Inc.*

In asserting that *Flexsys Americas, LP v. Kumho Tire, U.S.A. Inc.*, No. 5:05 CV 156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) is inapposite and unpersuasive, Ansell oversimplifies the *Flexys* facts. In *Flexsys,* the plaintiff-patentee ("Flexsys") brought a patent

---

[4] *See* 28 U.S.C. §1659(b) ("… after dissolution of a stay… the record of the proceeding before the United States International Trade Commission shall be transmitted to the district court and *shall be admissible in the civil action, subject to such protective order as the district court determines necessary*….") (emphasis added).

infringement action in district court against the following five defendants: Kumho USA, Kumho Korea, KKPC, Sovereign, and Sinorgchem. *Id.* at *1. In particular, the district court complaint alleged that the defendants infringed four patents. *Id.* Shortly after filing its district court action, Flexsys brought an ITC action alleging infringement of three of the four patents at issue in the district court action against three of the five district court defendants: KKPC, Sovereign, and Sinorgchem. *Id.*

Once the ITC instituted its formal investigation, the five district court defendants requested a stay of the district court litigation. *Id.* Flexsys opposed the defendants' motion to stay on that grounds that (1) all of the defendants were not named in the ITC action and therefore not entitled to a stay; (2) none of the defendants were entitled to stay the litigation with respect to the patent that was not at issue in the ITC action; and (3) the scope of the ITC case is narrower than the district court case because the ITC cannot award damages or issue an injunction. *Id.* at *1-2.

The *Flexsys* Court granted the mandatory stay with respect to the three patents asserted against the three defendants named in the ITC action. *Id.* at *2. In discussing its discretionary powers to grant a stay of the litigation with respect to the patent not at issue in the ITC action, the Court emphasized the interest of judicial economy: "[T]he Court finds that a temporary stay will result in a tremendous savings of judicial time and resources." *Id.* at *3-4. Expressly, the Court commented, "the court finds that requiring defendants to litigate both this case and the ITC action at the same time will result in prejudice. . . . [R]equiring this case to proceed only with respect to [the one patent] would create an undue burden on defendants." *Id.* at *3. By granting a stay, the Court concluded that it would "benefit tremendously from a narrowing of the complex

issues in the case" and that "it is more than likely that after the ITC ruling, the parties in the case will have fewer issues for the court to resolve." *Id.* at *3.

With respect to staying the district court case as to the two defendants not named at the ITC, the *Flexsys* Court remarked, "allowing this case to proceed against only these two defendants makes little sense." *Id.* at *4. Explaining its reasoning, the Court noted that the ITC case was brought against the three defendants that manufactured the product employing the infringing process, while the remaining two defendants not named in the ITC action merely imported the products from the defendant-manufacturers. *Id.*  In fact, the *Flexsys* Court classified the defendant-manufacturers as the "primary infringers." *Id.*

Like *Flexsys*, in determining infringement of the '616 Patent, discovery will be required from the primary infringers—the manufacturers of the nitrile gloves.  The importers of those gloves, namely Ansell HC and Ansell PP, will not have the documents generated in the production of those gloves.  Because several of the '616 Patent claims require formulation information, discovery from the primary infringer manufacturers will be necessary.  Tillotson's ITC complaint is against such manufacturers, including each manufacturer of the accused Ansell HC and Ansell PP gloves: Perusahaan Getah Asas Sdn. Bhd.; Seal Polymer Industries Sdn. Bhd.; and Ansell (Thailand) Ltd.  Accordingly, staying both proceedings will eliminate the need for duplicative discovery and the possibility of inconsistent results, and will result in a "tremendous savings of judicial time and resources." *Id.* at * 4.

**B.    Ansell HC and Ansell PP's Proposed Summary Judgment Motion Is Premature, Unfounded, And Its Timing Is Contrived.**

**1.    Ansell HC and Ansell PP Have Not Articulated Why They Must Bring Their Invalidity Challenges In Delaware Now.**

Under Rule 15(a), leave to amend a pleading is generally freely given.  Fed. R. Civ. P. 15(a); *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 487 (D. Del. 2003).  But

when a party seeks to modify a Scheduling Order, the stricter "good cause" standard of Rule 16(b) is also implicated. Fed. R. Civ. P. 16(b); *Enzo Life Sciences, Inc.*, 270 F. Supp. 2d at 487.

Here, the Scheduling Orders do not permit the filing of a dispositive motion until either June or August 2008 without leave of the Court. *See* Ansell HC D.I. 50; Ansell PP[5] D.I.'s 12, 13. Thus, by seeking to file its proposed summary judgment motion before the dates set forth in the Scheduling Orders, Ansell HC and Ansell PP are—in effect—seeking to "modify" their Scheduling Orders in violation of Rule 16(b)'s literal language. *See* Fed. R. Civ. P. 16(b) ("A schedule shall not be *modified* except upon a showing of good cause . . . ."); *cf. Nidec Corp. v. Victor Co. of Japan, Ltd.*, No. C 05-0686 SBA, 2006 WL 734410, at * 1 (N.D. Cal. Mar. 17, 2006) (denying a summary judgment motion requiring claim construction as premature because it was brought in advance of the parties' scheduled claim construction proceedings). But nowhere does Ansell HC or Ansell PP articulate why, under the current schedules, they must file their proposed summary judgment motion now, much less provide any good cause to do so. At a minimum, if this Court denies Tillotson's motion to stay, it should require Ansell HC and Ansell PP to demonstrate—through proper briefing—why they are entitled to file their motion for summary judgment now. The Ansell Plaintiffs attempt to avoid showing good cause and to circumvent proper procedure for amending the Scheduling Orders by simply submitting a proposed order that grants leave to file a motion for summary judgment out of time. Indeed, Ansell HC and Ansell PP seek to file their summary judgment motion now even though no depositions have occurred, Ansell HC and Ansell PP have refused to provide Tillotson with certain legitimate discovery, and no claim construction proceedings have begun.

---

[5] At this early stage of the proceedings in the Ansell PP case, the Court has not entered a Scheduling Order as to Tillotson and Ansell PP. Nevertheless, the parties have agreed to the timing of dispositive motions and have submitted their requests to the Court. Ansell PP D.I.'s 12, 13.

In reality, the impetus for Ansell HC and Ansell PP's summary judgment request appears to be Tillotson's requested stay. Tillotson first learned that Ansell HC and Ansell PP were planning to seek leave to file their proposed summary judgment motion on July 12, the same day Tillotson filed the instant motion to stay. *See* Exhibit 4 to D.I. 91. Specifically, when Tillotson informed counsel for Ansell HC and Ansell PP that it was filing its motion to stay, counsel for Ansell HC and Ansell PP replied on July 12: "We do not agree to a stay. Indeed, we intend to ask Judge Farnan for leave to file a motion for summary judgment of invalidity now." *Id.* Ansell HC and Ansell PP then improperly attempted to bring their hasty motion for leave in their opposition papers, far outside the Court's summary judgment briefing window. Tillotson did not request that the Court stay this action because of Ansell HC and Ansell PP's threatened summary judgment motion as Ansell HC and Ansell PP suggest. Rather, the opposite appears to be the case here—that Ansell HC and Ansell PP attempted to bring their summary judgment request now without filing a proper motion in response to Tillotson's motion to stay.

In contrast to the parties' Delaware Scheduling Orders, the schedule at the ITC permits Ansell HC and Ansell PP—through Ansell Ltd.—to file summary resolution motions at any time without leave or good cause. *See* Quicker Dec., ¶ 10. Tillotson's requested stay thus does not "undercut" Ansell HC or Ansell PP's ability to adjudicate the validity of the '616 Patent now at the ITC. In fact, Ansell HC and Ansell PP could have already filed such a motion. *Id.* Like any ITC decision on infringement, a decision of invalidity at the ITC that is ultimately affirmed at the Federal Circuit would—in effect—be binding on Tillotson.

Finally, Tillotson has not flatly refused to be bound by any decision at the ITC in this Court as Ansell intimates. *See* D.I. 96, p. 8. To the contrary, Tillotson has explained to Ansell HC and Ansell PP that such an agreement should be mutual among the parties, i.e., Tillotson

would certainly consider being bound at the ITC if Ansell HC and Ansell PP were also willing to be bound by any such decision. Indeed, because the true manufacturers of the gloves at issue here are present at the ITC and because the ITC action will be concluded in advance of this action, Tillotson believes that the ITC is the best forum to resolve Ansell HC and Ansell PP's dispute with Tillotson at this time.[6]

### 2.    Ansell HC and Ansell PP's Validity Challenge Is Unfounded And Does Not Serve As A Proper Basis For Denying Tillotson's Motion To Stay.

No amendments to the '616 Patent broadened any claim of the original patent. The reissue declaration is in no way defective. Nonetheless, Ansell HC and Ansell PP have made certain misrepresentations about the prosecution of the '616 Patent. By way of example, Ansell HC and Ansell PP assert that Tillotson did not identify whether the use of the term "predetermined" was error. But, under the lead heading of Tillotson's supplemental reissue declaration titled "**The Errors**," the declaration identifies this error and states, *inter alia*, that the "term 'predetermined' has been replaced with the term 'initial' in amended claim 1 to more clearly define the glove of claim 1 in accordance with p. 11 line 22 of the applicant's description." *See* Quicker Dec., ¶ 11. If necessary, Tillotson will show through proper summary judgment briefing—either in this Court or at the ITC—that Ansell HC and Ansell PP's validity challenges are unfounded. By no means are these validity challenges "legally unassailable" as Ansell HC and Ansell PP contend.

---

[6] Tillotson's beliefs in this regard have nothing to do with the competency of this Court or that of the ITC. Ansell HC and Ansell PP's speculative statements to the contrary on page 10, lines 11-14 of its answering brief do not warrant further comment from Tillotson.

**C.    Contrary To Ansell HC and Ansell PP's Assertions, Tillotson Has Consistently Sought To Judiciously And Economically Adjudicate Its Patent Rights Against A Multitude Of Infringers.**

Today, Tillotson is the only known U.S.-based manufacturer of nitrile gloves. *See* Quicker Dec., ¶ 12. All infringing gloves currently distributed in the United States by entities other than Tillotson are manufactured abroad, predominantly in Asia. *Id.* ¶ 13. Before competitors' infringement, Tillotson's business was growing. *Id.* ¶ 14. At one point, Tillotson had four manufacturing facilities in the United States producing. *Id.* ¶ 15. But pervasive infringement has resulted in Tillotson closing three of its four factories. *Id.* ¶ 16.

Although Ansell HC and Ansell PP attempt to cast a cloud over Tillotson's prior litigation motives, their arguments are short on substance and long on conjecture. The reality is that Tillotson has filed legitimate lawsuits against numerous foreign manufacturers and others in an attempt to stop infringement of its patent. *Id.* ¶ 17. With regard to certain Asian manufacturers Tillotson has sued, Tillotson has spent several months, if not several years, overcoming personal jurisdiction challenges. *Id.*; *Tillotson v. High Five Prods, et al.*, 4:02-CV-0200 HLM; *Tillotson v. Omni Int'l, UC, et al.*, 4:02-CV-0261 HLM; *Tillotson v. Top Glove Sdn. Bhd., et al.* 4:05-CV-0232 RLV. And as the number of infringers has rapidly expanded over the past few years, Tillotson—now a shadow of its former self—has struggled to conserve its resources yet defend its patent rights. The notion that Tillotson has had no concern for judicial economy or a comprehensive resolution is misguided.

Tillotson's efforts have culminated in a comprehensive complaint at the ITC against as many infringers as it could identify. *See* Exhibit 1 to D.I. 91. At the ITC, these many infringers must now account for their infringing activities in a *single* forum where, importantly, personal jurisdiction is irrelevant. *Sealed Air Corp. v. U.S. Intern. Trade Commission*, 645 F.2d 976, 986

(C.C.P.A. 1981). And as a consequence of the ITC's investigation, judicial economy has already been conserved. For example, several entities involved in Tillotson's ITC action—which Tillotson would have had to otherwise sue in a District Court—have indicated their willingness to enter into a license agreement with Tillotson. As for Tillotson's active District Court actions, all of the parties except for Ansell HC and Ansell PP have stayed their litigations with Tillotson. *See* D.I. 91, p. 7. In doing so, each of these parties argued that the issues raised at the ITC will be identical to those in their respective District Court cases. *Id.*; Top Glove Mot. to Stay, Exhibit 6 hereto.

Finally, Tillotson has not tried to "avoid" litigation in this Court. Instead, consistent with Tillotson's efforts to efficiently enforce its patent rights, Tillotson initially moved to transfer the Ansell HC case to the first-filed Georgia suit involving the same patent and same *Micro Touch* glove sold by Ansell HC. D.I. 10-13. As set forth in Tillotson's motion-to-stay papers, however, Ansell HC defeated this motion by misrepresenting that it was a manufacturer of the subject gloves. Nowhere do Ansell HC or Ansell PP's opposition papers address this misrepresentation. Similarly, Tillotson did not "conjure up" a suit against the Ansell entities in Georgia to avoid this forum. Rather, the ITC does not address damages. Tillotson's corresponding Georgia suit lodges and preserves Tillotson's damages claims against the more than 200 entities involved in the ITC. In response to Ansell HC and Ansell PP's request—and only after certain foreign Ansell entities agreed to consent to personal jurisdiction and to not bring any declaratory judgment actions—did Tillotson agree to dismiss these Ansell entities from the Georgia suit without prejudice. *See* July 6 Correspondence Between Kenworthy and Schaetzel, Exhibit 7 hereto. The allegations by Ansell HC and Ansell PP that the Georgia suit somehow served as a basis for avoiding this forum is presumptuous at best.

13

**D.    Ansell HC's And Ansell PP's Desire To Proceed With The Instant Declaratory Judgment Action Is Outweighed By Other Considerations, Including Congressional Intent.**

The Ansell Plaintiffs contend that granting a stay of this case would be inconsistent with the Congressional intent in enacting 28 U.S.C. § 1659, which gives respondents in an ITC investigation the prerogative to stay parallel district court proceedings. D.I. 96, at 10-11. Yet the very purpose of section 1659 is to "prevent separate proceedings on the same issues occurring at the same time." *In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007). Moreover, Plaintiffs have failed to demonstrate that they will suffer any prejudice by reason of a stay of this case. *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, C.A. No. 04-1337-KAJ, C.A. No. 04-1338-KAJ, C.A. No. 04-1536-KAJ, 2005 WL 2465898, *2 (D. Del. May 18, 2005) (in exercising its discretion whether to stay proceedings, a court shall consider whether the stay will simplify issues at trial, whether the stay will unduly prejudice or disadvantage the non-moving party, whether discovery is completed, and whether a trial date has been set).

Here, as discussed above, a stay would avoid duplicative discovery. Second, given the ITC's accelerated schedule for discovery and trial, that discovery would be available to this Court before the discovery cut-off date in this case. Third, the trial at the ITC would serve to narrow and define the issues presented by the parties, and avail this court of the Commission's special expertise in patent infringement actions. The ITC is perfectly capable of resolving questions of fact and patent law.[7] Further, even if decisions of the ITC do not have *res judicata* effect in U.S. District Court, the ITC's proceeding will compel the parties to focus their arguments as to infringement, validity, and enforceability, which will serve to guide this Court in

---

[7] The International Trade Commission has significant expertise in adjudicating claims of patent infringement. Since 2002, the ITC has adjudicated 125 cases involving allegations of patent infringement. The Honorable Charles Bullock has handled 34, or one-fourth, of those cases, and none has been reversed on appeal at the U.S. Court of Appeals for the Federal Circuit.

its assessment of Ansell's claims. Fourth, discovery in the section 337 investigation may be had of the manufacturers of the nitrile gloves that Ansell HP and Ansell PP supply to their customers. Fifth, the ITC record is admissible in this Court. All these factors outweigh Plaintiffs' interest in opposing the stay.

## CONCLUSION

For the foregoing reasons, it is in the best interest of judicial economy, justice, and all parties that the present action be stayed pending the outcome of the ITC action.

POTTER ANDERSON & CORROON LLP

Of-Counsel:

Anthony B. Askew
Steve M. Schaetzel
Katrina M. Quicker
Jason M. Pass
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
(404) 572-4600

Dated: July 30, 2007
809955 / 30675

By:  */s/ Kenneth L. Dorsney*
Richard L. Horwitz (#2246)
Kenneth L. Dorsney (#3726)
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE  19899
(302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

*Attorneys for Defendant*
*Tillotson Corporation*

15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Kenneth L. Dorsney, hereby certify that on July 30, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

I further certify that on July 30, 2007, I have Electronically Mailed the document to the following person(s):

Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801
jblumenfeld@mnat.com
mnoreika@mnat.com

Thomas B. Kenworthy
David W. Martson Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
tkenworthy@morganlewis.com
dmarston@morganlewis.com

/s/ Kenneth L. Dorsney
Richard L. Horwitz
Kenneth L. Dorsney
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

753118 / 30675

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-527-JJF |
| | ) | |
| TILLOTSON CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ANSELL PROTECTIVE PRODUCTS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-93-JJF |
| | ) | |
| TILLOTSON CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF KATRINA M. QUICKER IN SUPPORT OF
DEFENDANT TILLOTSON CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION TO STAY PROCEEDINGS PENDING THE
OUTCOME OF THE INTERNATIONAL TRADE COMMISSION'S INVESTIGATION**

I, Katrina M. Quicker, declare:

1.    I am an attorney in the law firm of King & Spalding LLP, representing Defendant Tillotson Corp. ("Tillotson").

2.    I submit this declaration in support of *Defendant Tillotson Corporation's Reply in Support of Its Motion to Stay Proceedings Pending the Outcome of the International Trade Commission's Investigation.*

3.    Tillotson initially submitted its Section 337 Complaint (the "Original Complaint") to the International Trade Commission's ("ITC") Office of Unfair Import Investigations ("OUII") on March 26, 2007.

DECLARATION OF KATRINA M. QUICKER                                                                    EXHIBIT 1

4. Tillotson's Original Complaint listed approximately 120 Respondents.

5. The OUII determined that the large number of proposed respondents would render the case unmanageable, and therefore requested that Tillotson limit the number of respondents to approximately 25.

6. Tillotson discussed with OUII how to narrow the number of respondents to such a small number. Tillotson understood from the OUII that naming the parent company as a respondent (rather than each of the subsidiaries as a respondent) was the easiest way to avoid the large number of respondents. By naming the parent company, the subsidiaries of the parent would necessarily be involved in the ITC action.

7. Complying with OUII's request, Tillotson submitted its Section 337 Complaint on May 30, 2007, naming only 31 Respondents ("ITC Complaint"). With respect to each of the Respondents, the ITC Complaint details additional companies that are affiliated or subsidiaries of each Respondent.

8. Consistent with the approach that the parent company necessarily involves the subsidiaries of the parent, in the ITC Complaint's claim for relief, Tillotson specifically requests that:

> D. Issue a permanent Limited Exclusion Order specifically directed to each named Respondent *and its affiliates*, pursuant to 19 U.S.C. § 1337(d), excluding from entry into the United States nitrile gloves as described and claimed in United States Patent No. RE 35,616;
>
> E. Issue a permanent cease and desist order pursuant to 19 U.S.C. § 1337(f), prohibiting each Respondent *and its related companies*[.]

9. Tillotson anticipates taking only two damage depositions in the Delaware litigations: a Rule 30(b)(6) deposition and a damages expert deposition.

10. In contrast to the parties' Delaware Scheduling Orders, the schedule at the ITC permits Ansell HC and Ansell PP—through Ansell Ltd.—to file summary resolution motions at

any time without leave or good cause. In fact, Ansell HC and Ansell PP—through Ansell Ltd.— could have already filed such a motion. Like any ITC decision on infringement, a decision of invalidity at the ITC that is ultimately affirmed at the Federal Circuit would—in effect—be binding on Tillotson.

11.    In the Tillotson Supplemental Reissue Declaration, under the lead heading titled "The Errors," the declaration states, *inter alia*, that the "term 'predetermined' has been replaced with the term 'initial' in amended claim 1 to more clearly define the glove of claim 1 in accordance with p. 11 line 22 of the applicant's description."

12.    Today, Tillotson is the only known U.S.-based manufacturer of nitrile gloves.

13.    The infringing nitrile gloves currently distributed in the United States are manufactured overseas, predominately in Asia.

14.    Before competitors' infringement, Tillotson's nitrile glove business was growing.

15.    At one point, Tillotson had four manufacturing facilities producing nitrile gloves.

16.    Because of the increase in Asian-imported infringing nitrile gloves, Tillotson was forced to close its Moss Point, Mississippi plant in July 2000; its Johnson City, Tennessee plant in November 2002; and its Fall River, Massachusetts plant in December 2003.

17.    Tillotson has previously sued foreign manufacturers in the Northern District of Georgia for patent infringement. Each manufacturer sued raised personal jurisdiction motions. Tillotson spent several months, sometimes years, litigating those motions.

I declare under penalty of perjury that the foregoing is true and correct.


Date: July 30, 2007                                          */Katrina M. Quicker/*
                                                             Katrina M. Quicker

# EXHIBIT 2

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Thomas B. Kenworthy**
215.963.5702
tkenworthy@morganlewis.com

July 19, 2007

**BY HAND DELIVERY**

The Honorable Marilyn R. Abbott                    **Inv. No. 337-TA-608**
Secretary
U.S. International Trade Commission
500 E Street, S.W., Room 112
Washington, DC 20436

Re:    **In the Matter of Certain Nitrile Gloves**

Dear Secretary Abbott:

On behalf of Respondent, Ansell Ltd., I have enclosed for filing a Notice Of Appearance and Letters of Acknowledgement of the Protective Order in which counsel agree to be bound by the terms of the Protective Order (Order No. 1) issued by Administrative Law Judge Charles E. Bullock in the above-referenced investigation on July 6, 2007.

Copies of these submissions are being served on the Administrative Law Judge and all counsel of record in accordance with the attached certificates of service.

Please contact the undersigned if you have any questions pertaining to this submission.

Respectfully submitted,

Thomas B. Kenworthy
Counsel for Ansell Ltd.

TBK:bas

Enclosures

Philadelphia  Washington  New York  Los Angeles  San Francisco  Miami  Pittsburgh  Princeton  Chicago  Minneapolis
Palo Alto  Dallas  Houston  Harrisburg  Irvine  Boston  London  Paris  Brussels  Frankfurt  Beijing  Tokyo

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.
Before The Honorable Charles E. Bullock
Administrative Law Judge

In the Matter of:

**CERTAIN NITRILE GLOVES**

Investigation
No. 337-TA-608

## NOTICE OF APPEARANCE

Notice is hereby given, pursuant to Commission Rule of Practice and Procedure

201.11, (19 C.F.R. § 201.11), of the appearance of the following counsel for Respondent Ansell

Ltd.:

Thomas B. Kenworthy
David W. Marston Jr.
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963-5001

Respectfully submitted,

DATED:   July 19, 2007

Thomas B. Kenworthy
David W. Marston Jr.
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963-5001

Counsel for Respondent
Ansell Ltd.

# EXHIBIT 3

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.
Before The Honorable Charles E. Bullock
Administrative Law Judge

In the Matter of:

CERTAIN NITRILE GLOVES

Investigation
No. 337-TA-608

## RESPONDENT ANSELL LTD.'S FIRST SET OF
## INTERROGATORIES TO COMPLAINANT TILLOTSON CORPORATION

Pursuant to 19 C.F.R. § 210.29, Respondent Ansell Ltd. requests that within ten (10) days hereof, Complainant Tillotson Corporation answer separately and fully, in writing and under oath, the following interrogatories:

### INTERROGATORY NO. 1:

As to all terms of the asserted claims of U.S. Reissue Patent No. 35,616 ("the '616 patent") that Tillotson believes require construction, (a) set forth how Tillotson construes each such term in concluding that Ansell Ltd. infringes the '616 patent as alleged in the Complaint, and (b) identify with particularity the intrinsic and extrinsic evidence in support of each such construction.

### INTERROGATORY NO. 2:

Identify by product name and designation each glove made by or on behalf of Ansell Ltd. ("Accused Ansell Product") that you contend infringes the '616 patent.

**INTERROGATORY NO. 3:**

As to each asserted claim of the '616 patent and as to each Accused Ansell Product, set forth in detail, on a limitation-by-limitation basis, the facts upon which Tillotson bases its contention that the claim is infringed by Ansell Ltd. and whether literally or under the doctrine of equivalents.

**INTERROGATORY NO. 4:**

Identify all persons whom Tillotson may use to present evidence in this case under Rules 702, 703 or 705 of the Federal Rules of Evidence, and as to each state: (a) all opinions to be expressed and the basis and reasons therefore; and (b) the data or other information considered by the witness in forming the opinions.

**INTERROGATORY NO. 5:**

State the date on which Tillotson first became aware of close-fitting nitrile gloves allegedly manufactured by or on behalf of Ansell Ltd.

**INTERROGATORY NO. 6:**

Set forth all reasons that Tillotson did not assert a claim of infringement of the '616 patent against Ansell Ltd. prior to the filing of the Complaint in this proceeding.

**INTERROGATORY NO. 7:**

Identify, and provide the Bates numbers of all documents constituting or reflecting results or summaries of results of tests performed by or on behalf of Tillotson on any Accused Ansell Products.

- 2 -

**INTERROGATORY NO. 8:**

Identify, and provide the Bates numbers of all documents in Tillotson's possession, custody or control relating to all Accused Ansell Products.

**INTERROGATORY NO. 9:**

Identify by manufacturer, supplier and brand name all nitrile gloves presently sold or offered for sale in the United States that Tillotson believes fall within the scope of any claim of U.S. Reissue Patent No. 35,616, and, as to each, state whether it is licensed under the '616 patent.

**INTERROGATORY NO. 10:**

Identify, and provide the Bates numbers of all reports or other documents from licensees of the '616 patent that contain information as to the identity of gloves that either fall within the scope of the '616 patent or as to which a royalty is paid or to be paid under a license of the '616 patent.

**INTERROGATORY NO. 11:**

Set forth how Tillotson construes the term "predetermined," as that term was used in claim 1 of U.S. Patent No. 5,014,362.

**INTERROGATORY NO. 12:**

During the prosecution of the application for U.S. Patent No. Re. 35,616, was the term "predetermined" in claim 1 changed to "initial" to correct an error?

- 3 -

**INTERROGATORY NO. 13:**

Explain why Tillotson tested the SOLVEX® and DERMA-THIN™ gloves in late 1993 and early 1994 to evaluate their tensile and relaxation properties, and identify by name and address all persons with knowledge of such facts.

DATED:    July 20, 2007

Thomas B. Kenworthy
David W. Marston Jr.
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963-5001

Counsel for Respondent
Ansell Ltd.

## CERTIFICATE OF SERVICE

Investigation No. 337-TA-608

I hereby certify that on July 20, 2007 I caused copies of the foregoing discovery

to be served upon the following persons as indicated below:

### VIA HAND DELIVERY

Gilbert B. Kaplan, Esquire
Jeffery M. Telep, Esquire
Taryn L. Koball, Esquire
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006-4706

*Counsel for Complainant*
*Tillotson Corporation*

### VIA FIRST CLASS MAIL

Vu Q. Bui, Esquire
Office of Unfair Import Investigations
U.S. INTERNATIONAL TRADE
    COMMISSION
500 E Street, S.W., Room 401
Washington, DC 20436

Perry R. Clark, Esquire
KIRLAND & ELLIS LLP
555 California Street
San Francisco, California 94104-1501

*Counsel for Respondents*
*Top Glove Corporation BHD; Riverstone*
*Resources Sdn. Bhd.; Smart Glove Holdings*
*Sdn. Bhd.; Laglove (M) Sdn. Bhd.; Kossan*
*Rubber Industries Bhd., Ltd.; Hartalega*
*Holdings Bhd.; and YTY Holdings Sdn. Bhd.*

Merritt R. Blakeslee, Esquire
DEKIEFFER & HORGAN
729 Fifteenth Street, N.W., Suite 800
Washington, DC 20005

*Counsel for Respondent*
*Dynarex Corporation*


Rosa Jeong, Esquire
GREENBERG TRAURIG LLP
800 Connecticut Avenue, N.W., Suite 500
Washington, DC 20006

*Counsel for Respondent*
*Magla Products LLC*


Elizabeth Borland, Esquire
SMITH, GAMBRELL & RUSSELL LLP
Promenade II, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309

*Counsel for Respondent*
*Protective Industrial Products, Inc.*


Adenna, Inc.
12216 McCann Drive
Santa Fe Springs, California 90670


Basic Medical Industries, Inc.
12390 East End Avenue
Chino, California 91710


Cypress Medical Products LLC
1202 South Rt. 31
McHenry, Illinois 60050


Darby Group Companies, Inc.
300 Jericho Quadrangle
Jericho, New York 11753

- 2 -

Dash Medical Gloves, Inc.
1018 South 54th Street
Franklin, Wisconsin 53132

Delta Medical Systems, Inc.
d/b/a The Delta Group
6865 Shiloh Road East, Suite 400
Alpharetta, Georgia 30202

Dentexx/First Medica Infection Control Assoc.
3704 C Boren Drive
Greensboro, North Carolina 27407

Liberty Glove and Safety Co.
433 Cheryl Lane
City of Industry, California 91789

QRP, Inc. d/b/a QRP Gloves, Inc.
c/o Daniel J. Quigley
2730 E. Broadway, #160
Tucson, Arizona 85716

Tronex International, Inc.
One Tronex Centre
3 Luger Road
Denville, New Jersey 07834

West Chester Holdings, Inc.
100 Corridor Park Drive
Monroe, Ohio 45050

## VIA AIR MAIL

Beijeng Huateng Rubber Plastic
Ciqu Industrial Zone
Tongzhou District
Beijing, China 101111

- 3 -

Glovco (M)
Sdn. Bhd., Lot 760,
Jalan Kuang Bulan
Taman Kepong Industrial Estate
Kuala Lampur., Malaysia


Ideal Healthcare Group Co. Ltd.
Bldg. 18, No. 1
South Section of Huacheng (W) Road
Ningbo, China  31500


JDA (Tianjin) Plastic Rubber Co. Ltd.
No. 17 Hai Bin No. 7 Rd
Tianjin Port Free Trade Zone
Tianjin, China  300456


PT Medisafe Technologies
JL. Batang Kuis, GG Tambak Rejo/PSR IX
Desa Buntu Bedimbar, Tanjung Morawa,
Medan, Sumatera Utar, Indonesia


PT Shamrock Manufacturing Corporation
Jalan Pemuda No. 11
Medan- 20151 North Sumatra – Indonesia


Seal Polymer Industries
Bhd. Lot 72706, Jalan Lahat, Kawasan
Perindustrian Buki Merah
31500 Lahat
Perak, Malaysia


Supermax Corporation
Bhd., Lot 38, Putra Industrial Park, Bukit Rahman
Putra 47000 Sungai Buloh
Selangor, D.E., Malaysia

Yee Lee Corporation
Bhd., Lot 85 Jalan Portland
Tasek Industrial Estates
31400 Ipoh Perak Darul Ridzuan, Malaysia

DATED:   July 20, 2007

THOMAS B. KENWORTHY

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RECEIVED

OCT 23 2006

KING & SPALDING

| | |
|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 06-527 (JJF) |
| | ) |
| TILLOTSON CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF ANSELL HEALTHCARE PRODUCTS LLC'S
## FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff Ansell Healthcare Products LLC ("Ansell") propounds the following interrogatories to defendant Tillotson Corporation ("Tillotson") to be answered under oath within 30 days hereof:

**INTERROGATORY NO. 1:**

As to all terms of the asserted claims of the U.S. Reissue Patent No. 35,616 ("the '616 patent") that Tillotson believes require construction, (a) set forth how Tillotson construes each such term in concluding that Ansell infringes the '616 patent as alleged in the Counterclaim, and (b) identify with particularity the intrinsic and extrinsic evidence in support of each such construction.

**INTERROGATORY NO. 2:**

As to each asserted claim of the '616 patent and as to each accused Ansell product, set forth in detail, on a limitation-by-limitation basis, the facts upon which Tillotson bases its contention that the claim is infringed by Ansell and whether literally or under the doctrine of equivalents.

XC: ABA    SMS
      KMG
      JMP

**INTERROGATORY NO. 3:**

As to each asserted claim of the '616 patent, state the dates of conception and reduction to practice.

**INTERROGATORY NO. 4:**

As to each asserted claim of the '616 patent, (a) describe in detail the inventive contribution of each named inventor; (b) identify all persons with knowledge of facts relating to each named inventor's inventive contribution; and (c) identify all documents containing information relating to each named inventor's inventive contribution.

**INTERROGATORY NO. 5:**

State the date on which an embodiment of the '616 patent was first sold or offered for sale in the United States.

**INTERROGATORY NO. 6:**

Identify all persons whom Tillotson may use to present evidence in this case under Rules 702, 703 or 705 of the Federal Rules of Evidence, and as to each state:  (a) all opinions to be expressed and the basis and reasons therefor; and (b) the data or other information considered by the witness in forming the opinions.

**INTERROGATORY NO. 7:**

Set forth the nature of the damages sought in this action and all facts that support Tillotson's claims for such damages.

**INTERROGATORY NO. 8:**

State the date on which Tillotson first became aware of nitrile gloves manufactured by Ansell or its predecessors.

2

**INTERROGATORY NO. 9:**

Set forth all reasons that Tillotson did not assert a claim of infringement of the

'616 patent against Ansell prior to the filing of its counterclaim.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
mnoreika@mnat.com
(302) 658-9200
*Attorneys for Plaintiff*
*Ansell Healthcare Products LLC*

OF COUNSEL:

Thomas B. Kenworthy
David W. Marston, Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

October 20, 2006

3

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that copies of the foregoing were caused to be served this 20th day of October, 2006, upon the following in the manner indicated:

**BY HAND:**

Richard L. Horwitz
Kenneth L. Dorsney,
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19899

**BY FEDERAL EXPRESS:**

Anthony B. Askew
Katrina M. Quicker
King & Spalding
1180 Peachtree Street, NE
Atlanta, GA  30309

_____
Maryellen Noreika

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANSELL PROTECTIVE PRODUCTS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-93 (JJF) |
| TILLOTSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF ANSELL PROTECTIVE PRODUCTS INC.'S
## FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff Ansell Protective Products Inc. ("Ansell Protective Products") propounds the following interrogatories to defendant Tillotson Corporation ("Tillotson") to be answered under oath within 30 days hereof:

**INTERROGATORY NO. 1:**

As to all terms of the asserted claims of the U.S. Reissue Patent No. 35,616 ("the '616 patent") that Tillotson believes require construction, (a) set forth how Tillotson construes each such term in concluding that Ansell Protective Products infringes the '616 patent as alleged in the Counterclaim, and (b) identify with particularity the intrinsic and extrinsic evidence in support of each such construction.

**ANSWER:**

**INTERROGATORY NO. 2:**

As to each asserted claim of the '616 patent and as to each accused Ansell Protective Products product, set forth in detail, on a limitation-by-limitation basis, the facts upon

which Tillotson bases its contention that the claim is infringed by Ansell Protective Products and whether literally or under the doctrine of equivalents.

### ANSWER:

**INTERROGATORY NO. 3:**

As to each asserted claim of the '616 patent, state the dates of conception and reduction to practice.

### ANSWER:

**INTERROGATORY NO. 4:**

As to each asserted claim of the '616 patent, (a) describe in detail the inventive contribution and each named inventor; (b) identify all persons with knowledge of facts relating to each named inventor's inventive contribution; and (c) identify, and provide the litigation production numbers of, all documents containing information relating to each named inventor's inventive contribution.

### ANSWER:

**INTERROGATORY NO. 5:**

State the date on which an embodiment of the '616 patent was first sold or offered for sale in the United States.

### ANSWER:

**INTERROGATORY NO. 6:**

Identify all persons whom Tillotson may use to present evidence in this case under Rules 702, 703 or 705 of the Federal Rules of Evidence, and as to each state: (a) all

opinions to be expressed and the basis and reasons therefore; and (b) the data or other information considered by the witness in forming the opinions.

**ANSWER:**

**INTERROGATORY NO. 7:**

Set forth the nature of the damages sought in this action and all facts that support Tillotson's claims for such damages.

**ANSWER:**

**INTERROGATORY NO. 8:**

State the date on which Tillotson first became aware of nitrile gloves manufactured by Ansell Protective Products or its predecessors.

**ANSWER:**

**INTERROGATORY NO. 9:**

Set forth all reasons that Tillotson did not assert a claim of infringement of the '616 patent against Ansell Protective Products prior to the filing of its counterclaim.

**ANSWER:**

**INTERROGATORY NO. 10:**

Identify, and provide the litigation production numbers of, all documents containing information regarding the conception and reduction to practice of the subject matter claimed in the '616 patent.

**ANSWER:**

**INTERROGATORY NO. 11:**

Identify, and provide the litigation production numbers of, all documents containing information relating to the inventive contribution of Neil E. Tillotson and Luc G. DeBecker with respect to the asserted claims of the '616 patent.

**ANSWER:**

**INTERROGATORY NO. 12:**

Identify, and provide the litigation production numbers of, all documents relating to the prosecution of the '616 patent, U.S. Patent No. 5,014,362 ("the '362 patent") and all foreign counterpart patents or applications.

**ANSWER:**

**INTERROGATORY NO. 13:**

Identify, and provide the litigation production numbers of, all writings by Neil E. Tillotson, Luc G. DeBecker or Tillotson, whether or not published, relating or referring to the claimed invention of the '362 patent or the '616 patent.

**ANSWER:**

**INTERROGATORY NO. 14:**

Identify, and provide the litigation production numbers of, all documents reflecting the first public sale or use of the subject matter of the '362 patent or the '616 patent.

**ANSWER:**

**INTERROGATORY NO. 15:**

Identify, and provide the litigation production numbers of, all prior art relating to nitrile gloves known to Neil E. Tillotson, Luc G. DeBecker or Tillotson prior to September 30, 1997.

**ANSWER:**

**INTERROGATORY NO. 16:**

Identify, and provide the litigation production numbers of, all documents constituting or reflecting prior art searches conducted by or on behalf of Neil E. Tillotson, Luc G. DeBecker or Tillotson prior to September 30, 1997 relating to the subject matter of the '362 patent or the '616 patent.

**ANSWER:**

**INTERROGATORY NO. 17:**

Identify, and provide the litigation production numbers of, all documents containing or referring to a contention or suggestion by any person (including governmental bodies) that any claim of the '362 patent or the '616 patent, or any foreign counterpart thereof, is either not patentable, invalid or unenforceable.

**ANSWER:**

**INTERROGATORY NO. 18:**

Identify, and provide the litigation production numbers of, all documents reflecting or containing information regarding the comparison of any Ansell Protective Products glove with one or more claims of the '616 patent.

**ANSWER:**

5

**INTERROGATORY NO. 19:**

Identify, and provide the litigation production numbers of, all declarations and deposition transcripts of Tillotson witnesses (with exhibits) in any litigation involving the '616 patent or the related patents identified on the face of the '616 patent.

**ANSWER:**

**INTERROGATORY NO. 20:**

Identify, and provide the litigation production numbers of, all documents relating to the assignment of the '616 patent to Tillotson.

**ANSWER:**

**INTERROGATORY NO. 21:**

Identify, and provide the litigation production numbers of, all licenses (including covenants not to sue) and all offers to license the subject matter of the '616 patent.

**ANSWER:**

**INTERROGATORY NO. 22:**

Identify, and provide the litigation production numbers of, all submissions made to, and communications with, the U.S. Food & Drug Administration, regarding any product embodying the subject matter of the '362 patent or the '616 patent.

**ANSWER:**

6

**INTERROGATORY NO. 23:**

Identify, and provide the litigation production numbers of, all documents consti-tuting or reflecting results or summaries of results of tests performed by Tillotson on any nitrile gloves sold by Ansell Protective Products.

**ANSWER:**

**INTERROGATORY NO. 24:**

Identify all documents in Tillotson's possession, custody or control relating to nitrile gloves manufactured by Ansell Protective Products and/or its predecessors.

**ANSWER:**

**INTERROGATORY NO. 25:**

Identify by supplier and brand name all nitrile gloves presently sold or offered for sale in the United States that Tillotson believes fall within the scope of any claim of U.S. Reissue Patent No. 35,616 ("the '616 patent"), and, as to each, state (a) whether it is licensed under the '616 patent; and (b) whether it is marked with the '616 patent.

**ANSWER:**

**INTERROGATORY NO. 26:**

Identify, and provide the litigation production numbers of, all reports or other documents from licensees of the '616 patent that contain information as to the identity of gloves that either fall within the scope of the '616 patent or as to which a royalty is paid or to be paid under a license of the '616 patent.

**ANSWER:**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19899
jblumenfeld@mnat.com
mnoreika@mnat.com
(302) 658-9200
  *Attorneys for Plaintiff*
  *Ansell Protective Products Inc.*

OF COUNSEL:

Thomas B. Kenworthy
David W. Marston Jr.
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

DATED:  May 18, 2007

8

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that copies of the foregoing were caused to

be served on May 18, 2007 upon the following in the manner indicated:

### BY E-MAIL and HAND DELIVERY

Richard L. Horwitz, Esquire
Kenneth L. Dorsney, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, Sixth Floor
1313 N. Market Street
Wilmington, DE 19801

### BY E-MAIL and FEDERAL EXPRESS

Stephen M. Schaetzel, Esquire
Jason M. Pass, Esquire
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA 30309

Maryellen Noreika (#3208)

# EXHIBIT 6

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

TILLOTSON CORPORATION,
d/b/a    BEST    MANUFACTURING
COMPANY

        Plaintiff,

                                     CIVIL ACTION FILE

v.

                                     NO. 4:05-cv-232 RLV

TOP GLOVE SDN. BHD.; TG MEDICAL
SDN. BHD.; TG MEDICAL (USA), INC., and
TOP GLOVE CORP. BHD.

        Defendants.

## UNOPPOSED MOTION FOR STAY OF PROCEEDINGS
## PURSUANT TO 28 U.S.C. § 1659

Defendants Top Glove Sdn. Bhd. ("TGSB"), TG Medical Sdn. Bhd. ("TG

Medical"), TG Medical (USA), Inc. ("TGUS"), and Top Glove Corp. Bhd. ("Top

Glove Corp.") (collectively "Defendants") hereby move for an order staying the

instant proceedings pursuant to 28 U.S.C. § 1659 pending disposition of related

proceedings before the United States International Trade Commission ("U.S. ITC").

The instant motion is supported by the Memorandum in Support filed concurrently

herewith. A proposed Order granting this motion is attached hereto. Plaintiff does

not oppose this motion.

For the reasons set forth in this motion and its accompanying Memorandum of Law, Defendants respectfully request that the action be stayed against TGSB, TG Medical, TGUS, and Top Glove Corp. until disposition of the related proceedings before the U.S. ITC.

Respectfully submitted this 29th day of June 2007.

s / John P. Fry
John P. Fry
Georgia Bar No. 278705
Bryan G. Harrison
Georgia Bar No. 331750
Heather Champion Brady
Georgia Bar No. 143117
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
Phone: (404) 233-7000
Fax: (404) 365-9532
Email: JFry@mmmlaw.com
         BGH@mmmlaw.com
         HBrady@mmmlaw.com

**ATTORNEYS FOR DEFENDANTS**

1690861 v01

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | |
|---|---|
| TILLOTSON CORPORATION, d/b/a BEST MANUFACTURING COMPANY<br><br>    Plaintiff,<br><br>v.<br><br>TOP GLOVE SDN. BHD.; TG MEDICAL SDN. BHD.; TG MEDICAL (USA), INC.; and TOP GLOVE CORP. BHD.<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 4:05-cv-232 RLV |

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2007, a true and correct copy of the foregoing **UNOPPOSED MOTION FOR STAY OF PROCEEDINGS PURSUANT TO 28 U.S.C. § 1659** was caused to be filed electronically via CM/ECF in the United States District Court for the Northern District of Georgia, with notice of same being electronically served by the Court, as follows:

> Anthony B. Askew, Esq.
> Stephen M. Schaetzel, Esq.
> Katrina Marie Quicker, Esq.
> Jason M. Pass, Esq.
> KING & SPALDING LLP
> 1180 Peachtree Street, N.E.
> Atlanta, GA 30309-3521

1690861 v01

s / John P. Fry
_____

John P. Fry
Georgia Bar No. 278705
MORRIS, MANNING & MARTIN, L.L.P.
3433 Peachtree Road, N.E.
Atlanta, Georgia  30326
Phone:  404-233-7000
Email: JFry@mmmlaw.com

1690861 v01

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

TILLOTSON CORPORATION,
d/b/a    BEST    MANUFACTURING
COMPANY

        Plaintiff,

                                    CIVIL ACTION FILE

v.

                                    NO. 4:05-cv-232 RLV

TOP GLOVE SDN. BHD.; TG MEDICAL
SDN. BHD.; TG MEDICAL (USA), INC., and
TOP GLOVE CORP. BHD.

        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR STAY OF PROCEEDINGS PURSUANT TO 28 U.S.C. § 1659

Defendants Top Glove Sdn. Bhd. ("TGSB"), TG Medical Sdn. Bhd. ("TG Medical"), TG Medical (USA), Inc. ("TGUS"), and Top Glove Corp. Bhd. ("Top Glove Corp.") (collectively "Defendants") hereby move this honorable Court for an order staying the instant proceedings pursuant to 28 U.S.C. § 1659 inasmuch as Top Glove Corp. is named as a respondent in a title 19 U.S.C. § 1337 action made before the United States International Trade Commission titled: *In the Matter of Certain Nitrile Gloves* Inv. No. 337 – TA – 608.

The Amended Complaint in the instant matter was filed on or about March 21, 2006. On or about June 28, 2007, the United States International Trade

Commission ("ITC") initiated an investigation into the sale of nitrile glove products which allegedly infringe United States Patent No. Re. 35,616 ("the '616 Patent") owned by Plaintiff, Tillotson Corporation d/b/a Best Manufacturing Company. A copy of the notice of investigation dated June 28, 2007, is attached hereto as Exhibit A. The issues raised in the instant matter are identical to the ones involved in the ITC action. Furthermore, Plaintiff also seeks relief with respect to subsidiaries of Top Glove Corp. A copy of the Verified Complaint filed with the ITC is attached hereto as Exhibit B. As such, pursuant to 28 U.S.C. § 1659, a stay is necessary to protect the interests of all Defendants against inconsistent judicial rulings, and to preserve judicial resources.

## ARGUMENT AND CITATION OF AUTHORITY

28 U.S.C. § 1659 provides in pertinent part:

§ 1659. Stay of certain actions pending disposition of related proceedings before the United States International Trade Commission

(a) **Stay.** In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930 [19 USCS § 1337], at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, but only if such request is made within--

(1) 30 days after the party is named as a respondent in the proceeding before the Commission, or

J690865 v02

(2) 30 days after the district court action is filed,

whichever is later.

In the ITC proceeding, Plaintiff seeks, *inter alia*, "a general exclusion order excluding from entry into the United States all nitrile gloves that are imported into the United States, sold for importation within the United States, and/or sold within the United States after importation that utilize, without [Plaintiff's] authorization, the invention claimed in one or more of the claims of the '616 Patent." (Exhibit B, p. 2, ¶ 7.)  Plaintiff seeks this general exclusion order with respect to subsidiaries of Top Glove Corp., including, TGSB, TG Medical, and TGUS.  (Exhibit B, pp. 4–7, ¶¶ 15–18 & 25–26.)  The instant action, therefore, involves identical parties to those in the matter before the U.S. ITC under § 337 of the Tariff Act of 1930.

Moreover, this request is made by Defendants TGSB, TG Medical, TGUS, and Top Glove Corp. within 30 days after Top Glove Corp. was named as a respondent in the ITC proceeding titled, *In the Matter of Certain Nitrile Gloves* Inv. No. 337 – TA – 608, and therefore, is timely made.

Accordingly, pursuant to § 1659, Defendants respectfully submit that the Court must stay all further action in this matter pending final disposition of the proceedings before the U.S. ITC.

1690865 v02

## CONCLUSION

For the foregoing reasons, Defendants ask that its motion be granted by the

Court.

Respectfully submitted this 29th day of June 2007.

s / John P. Fry
John P. Fry
Georgia Bar No. 278705
Bryan G. Harrison
Georgia Bar No. 331750
Heather Champion Brady
Georgia Bar No. 143117
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
Phone: (404) 233-7000
Fax: (404) 365-9532
Email: JFry@mmmlaw.com
        BGH@mmmlaw.com
        HBrady@mmmlaw.com

**ATTORNEYS FOR DEFENDANTS**

1690865 v02

## CERTIFICATION

Pursuant to L.R. 7.1D, the undersigned counsel hereby certifies that the foregoing complies with the font and point selections approved by the Court in LR 5.1.

This 29th day of June 2007.

s / John P. Fry
John P. Fry
Georgia Bar No. 278705

MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia  30326
Telephone: 404-233-7000
Facsimile: 404-365-9523

1690865 v02

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | |
|---|---|
| TILLOTSON CORPORATION, d/b/a BEST MANUFACTURING COMPANY<br><br>　　　　Plaintiff,<br><br>v.<br><br>TOP GLOVE SDN. BHD.; TG MEDICAL SDN. BHD.; TG MEDICAL (USA), INC.; and TOP GLOVE CORP. BHD.<br><br>　　　　Defendants. | CIVIL ACTION FILE<br><br>NO. 4:05-cv-232 RLV |

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2007, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR STAY OF PROCEEDINGS PURSUANT TO 28 U.S.C. § 1659** was caused to be filed electronically via CM/ECF in the United States District Court for the Northern District of Georgia, with notice of same being electronically served by the Court, as follows:

> Anthony B. Askew, Esq.
> Stephen M. Schaetzel, Esq.
> Katrina Marie Quicker, Esq.
> Jason M. Pass, Esq.
> KING & SPALDING LLP
> 1180 Peachtree Street, N.E.
> Atlanta, GA 30309-3521

1690865 v02

s / John P. Fry
_____
John P. Fry
Georgia Bar No. 278705
MORRIS, MANNING & MARTIN, L.L.P.
3433 Peachtree Road, N.E.
Atlanta, Georgia  30326
Phone:  404-233-7000
Email: JFry@mmmlaw.com

1690865 v02

June 28, 2007
News Release 07-066
Inv. No. 337-TA-608
Contact: Peg O'Laughlin, 202-205-1819

# ITC INSTITUTES SECTION 337 INVESTIGATION ON CERTAIN NITRILE GLOVES

The U.S. International Trade Commission (ITC or Commission) has voted to institute an investigation of certain nitrile gloves. The products at issue in this investigation are nitrile rubber gloves for hand protection.

The investigation is based on a complaint filed by Tillotson Corporation d/b/a Best Manufacturing Company of Menlo, GA, on May 30, 2007. The complaint alleges violations of section 337 of the Tariff Act of 1930 in the importation into the United States of certain nitrile gloves that infringe a patent owned by Tillotson. The complainant requests that the ITC issue a permanent general exclusion order and permanent cease and desist orders.

The ITC has identified the following as respondents in this investigation:

    Top Glove Corporation Bhd. of Malaysia;
    Ansell Ltd. of Australia;
    Beijing Huateng Rubber Plastic of China;
    Glovco (M) Sdn. Bhd. of Malaysia;
    Ideal Healthcare Group Co. Ltd. of China;
    JDA (Tianjin) Plastic Rubber Co. Ltd. of China;
    Kossan Rubber Industries Bhd. of Malaysia;
    Laglove (M) Sgn. Bhd. of Malaysia;
    PT Medisafe Technologies of Indonesia;
    PT Shamrock Manufacturing Corporation of Indonesia;
    Riverstone Resources Sdn. Bhd. of Malaysia;
    Seal Polymer Industries Bhd. of Malaysia;
    Smart Glove Holdings Sdn. Bhd. of Malaysia;
    Supermax Corporation Bhd. of Malaysia;
    Yee Lee Corporation Bhd. of Malaysia;
    YTY Holdings Sdn. Bhd. of Malaysia;
    Adenna, Inc., of Sante Fe Springs, CA;
    Basic Medical Industries of Chino, CA;
    Cypress Medical Products, LLC (Cypress), of McHenry, IL;
    Darby Group Companies, Inc., of Jericho, NY;
    Dash Medical Gloves, Inc., of Franklin, WI;
    Delta Medical Systems, Inc. d/b/a The Delta Group, Alpharetta, GA;
    Dentexx/First Medica Infection Control Assoc. of Greensboro, NC;
    Dynarex Corp. of Orangeburg, NY;
    Liberty Glove and Safety Co. of City of Industry, CA;
    Magla Products LLC of Albemarle, NC;
    Protective Industrial Products, Inc., of Guilderland Center, NY;
    QRP, Inc. d/b/a/ QRP Gloves, Inc., of Tucson, AZ;
    Tronex International, Inc., of Denville, NJ; and
    West Chester Holdings, Inc., of Monroe, OH.

By instituting this investigation (337-TA-608), the ITC has not yet made any decision on the merits of the case. The case will be referred to the Honorable Charles E. Bullock, an ITC administrative law judge, who will schedule and hold an evidentiary hearing. Judge Bullock will make an initial determination as to whether there is a violation of section

337; that initial determination is subject to review by the Commission.

The ITC will make a final determination in the investigation at the earliest practicable time. Within 45 days after institution of the investigation, the ITC will set a target date for completing the investigation. ITC remedial orders in section 337 cases are effective when issued and become final 60 days after issuance unless disapproved for policy reasons by the U.S. Trade Representative within that 60-day period.

-- 30 --

# KING & SPALDING

King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006-4706
Phone: 202/737-0500
Fax: 202/626-3737
www.kslaw.com

Gilbert B. Kaplan
Direct Dial: 202-661-7981
gkaplan@kslaw.com

CBI **07-274**

DOCKET
NUMBER

**2548**

Office of the
Secretary
Int'l Trade Commission

May 29, 2007

**VIA HAND DELIVERY**

The Honorable Marilyn R. Abbott
Secretary
U.S. International Trade Commission
500 E Street, S.W., Room 112
Washington, D.C. 20436

**PUBLIC**
Confidential business information has been
deleted from pages 1-2 of Exhibit 7 and
Appendix A.

> **Re:    Inv. No. 337-TA-___, In the Matter of Certain Nitrile Gloves**

Dear Secretary Abbott:

Enclosed for filing on behalf of Tillotson Corporation *doing business as* Best
Manufacturing Company ("Tillotson"), please find the following documents in support of
Tillotson's request that the Commission commence an investigation pursuant to Section 337 of
the Tariff Act of 1930:

1. An original and twelve (12) copies of the verified Complaint (original and one (1)
   copy unbound, without tabs) and an original and six (6) copies of the accompanying
   exhibits, with the Confidential Exhibits segregated from the other material submitted.
   (19 C.F.R. §§ 201.6(c), 210.4(f)(3)(i), and 210.8(a));

2. Thirty-one (31) additional copies of both the Complaint and accompanying non-
   confidential exhibits for service upon each proposed respondent; thirty-one additional
   copies of the Confidential Exhibits for service upon respondents' counsel after
   appropriate notices of appearances and subscriptions to the protective order have been
   filled. (19 C.F.R. §§ 210.4(f)(3)(i), 210.8(a), and 210.11(a));

3. Four (4) additional copies of the Complaint and accompanying non-confidential
   exhibits for service upon the Chinese, Malaysian, Indonesian, and Australian
   embassies in Washington, D.C. (19 C.F.R. §§ 210.8(a) and 210.11(a)(1));

The Honorable Marilyn R. Abbott
May 29, 2007
Page 2

4. A certified copy of U.S. Patent No. Re. 35,616 ("the '616 patent"), with legible copies of the patent included in the original and all copies of the complaint as Exhibit 1. (19 C.F.R. § 210.12(a)(9)(i));

5. A certified copy of each assignment of U.S. Patent No. Re. 35,616, with legible copies of the assignment included in all copies of the complaint as Exhibit 2. (19 C.F.R. § 210.12(a)(9)(ii));

6. Four (4) copies each of Tillotson's license agreements as Confidential Appendix A (19 C.F.R. § 210.12(c));

7. One certified and three (3) copies of the prosecution histories of U.S. Patent No. Re. 35,616 as Appendix B. (19 C.F.R. § 210.12(c)(2));

8. Four (4) copies of each reference document mentioned in the prosecution history of the application leading to the issuance of U.S. Patent No. Re. 35,616 as Appendix C;

9. A letter and certification pursuant to 19 C.F.R. §§ 201.6(b) and 210.5(a) requesting confidential treatment.

Thank you for your attention in this matter. Please contact the undersigned if there are any questions pertaining to this submission.

Respectfully submitted,

*Gilbert B. Kaplan*

Gilbert B. Kaplan
Jeffery M. Telep
Taryn L. Koball
*Member of Virginia Bar only, practice directly supervised as required by D.C. Bar
Counsel for Tillotson Corporation

# KING & SPALDING

King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006-4706
Phone: 202/737-0500
Fax: 202/626-3737
www.kslaw.com

Gilbert B. Kaplan
Direct Dial: 202-661-7981
gkaplan@kslaw.com

May 30, 2007

## REQUEST FOR CONFIDENTIAL TREATMENT

**VIA HAND DELIVERY**

The Honorable Marilyn R. Abbott
Secretary
U.S. International Trade Commission
500 E Street, S.W., Room 112
Washington, D.C. 20436

**PUBLIC VERSION**
Confidential business information has been
deleted from pages 1-2 of Exhibit 7 and
Appendix A.

    Re:    **Inv. No. 337-TA-___, In the Matter of Certain Nitrile Gloves**

Dear Secretary Abbott:

    In accordance with the requirements of 19 C.F.R. § 201.6 concerning Confidential Business Information, Tillotson Corporation *doing business as* Best Manufacturing Corporation ("Tillotson"), hereby requests confidential treatment of the bracketed business information contained in Confidential Exhibit 7 and Confidential Appendix A.

    The information for which confidential treatment is sought is proprietary commercial and technical information, specifically:

1. Data reflecting Tillotson's expenditures in plant, equipment, labor, capital, and research and development in connection with its domestic industry; and

2. Tillotson's standard license agreement

    The business information described herein qualifies as confidential business information because substantially identical information is not available to the public and its disclosure would likely impair the Commission's ability to obtain information necessary to perform its statutory functions as well as cause substantial harm to the competitive position of the submitter. 19 C.F.R. §§ 201.6(a), (b)(3)(ii), (b)(3)(iii).

The Honorable Marilyn R. Abbott
May 30, 2007
Page 2

I certify that information substantially identical to the information for which we are requesting confidential treatment is not reasonably available to the public. 19 C.F.R. § 201.6(b)(3)(iii).

Thank you for your attention to this matter. Please contact undersigned if there are any questions pertaining to this submission.

Respectfully submitted,

Gilbert B. Kaplan
Jeffery M. Telep
Taryn L. Koball
Counsel for Tillotson Corporation

Subscribed and sworn to before me on this 30th day of May, 2007.

Notary Public
My Commission Expires September 30. 2010
City of Washington,
District of Columbia

EXHIBIT B- PAGE 4

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

|  |  |
|---|---|
| In the Matter of )<br><br>CERTAIN NITRILE GLOVES )<br> )<br> ) | Investigation No.<br>337-TA-___ |

## VERIFIED COMPLAINT UNDER SECTION 337
## OF THE TARIFF ACT OF 1930, AS AMENDED

**Complainant:**

Tillotson Corporation
*doing business as*
Best Manufacturing Company
579 Edison Street
Menlo, GA 30731
Telephone: (706) 862-2302

**Counsel for Complainant**

Gilbert B. Kaplan, Esq.
Jeffrey M. Telep, Esq.
Taryn L. Koball, Esq.
  *Member of Virginia Bar only, practice
  directly supervised as required by D.C. Bar
King & Spalding LLP
1700 Pennsylvania Ave, NW
Suite 200
Washington, DC 20006-4706
Telephone: (202) 737-0500
Fax: (202) 626-3737

Anthony B. Askew, Esq.
Katrina M. Quicker, Esq.
Jason M. Pass, Esq.
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Fax: (404) 572-5100

**Proposed Respondents:**
Top Glove Corporation Bhd., Lot 4969, Jalan
Teratai, Batu 6, Off Jalan Meru, 41050 Klang,
Selangor D.E., Malaysia;

Ansell Ltd., 3/678 Victoria Street, Richmond,
Victoria 3121 Australia;

Beijing Huateng Rubber Plastic, Ciqu
Industrial Zone, Tongzhou District, Beijing,
China 101111;

Glovco (M) Sdn. Bhd., Lot 760, Jalan Haji
Sirat, Off Jalan Meru Klang, 42100, Selangor
D.E., Malaysia;

Hartalega Holdings Bhd., Lot 9, Jalan Kuang
Bulan, Taman Kepong Industrial Estate, 52100
Kuala Lumpur, Malaysia;

Ideal Healthcare Group Co. Ltd., Bldg. 18, No.
1, South Section of Huacheng (W) Road,
Ningbo, China 31500;

JDA (Tianjin) Plastic Rubber Co. Ltd., No. 17
Hai Bin No. 7 Rd, Tianjin Port Free Trade
Zone, Tianjin, 300456, China;

Kossan Rubber Industries Bhd., Lot 16632,
Batu 5 1/4, Jalan Meru, 41050 Klang, Selangor
D.E., Malaysia;

Laglove (M) Sdn. Bhd., Lot 478, Jalan
Simpang Balak, Off B, 43000 Kajang
Selangor, Malaysia;

PT Medisafe Technologies, JL. Batang Kuis,
GG Tambak Rejo/PSR IX, Desa Buntu
Bedimbar, Tanjung Morawa, Medan, Sumatera
Utar, Indonesia;

PT Shamrock Manufacturing Corporation,
Jalan Pemuda No. 11, Medan- 20151 North
Sumatra, Indonesia;

Riverstone Resources Sdn. Bhd., Lot 21909,
No. 5, Lorong Helang Hindik, Kepong Baru
Industrial Estate, 52100 Kuala Lumpur,
Malaysia;

Seal Polymer Industries Bhd., Lot 72706, Jalan
Lahat, Kawasan Perindustrian Buki Merah,
31500 Lahat, Perak, Malaysia;

Smart Glove Holdings Sdn. Bhd., Lot 6487,
Batu 5 3/4, Sementajln Kapar, 42100 Klang,
Selangor D.E., Malaysia;

Supermax Corporation Bhd., Lot 38, Putra
Industrial Park, Bukit Rahman Putra, 47000
Sungai Buloh, Selangor D.E., Malaysia;

Yee Lee Corporation Bhd., Lot 85 Jalan
Portland, Tasek Industrial Estates, 31400 Ipoh
Perak Darul Ridzuan, Malaysia;

YTY Holdings Sdn. Bhd., Lot 2935B, Kg Batu
9 Kebun Baru, Jalan Masjid, 42500 Telok
Panglima Garang, Kuala Langat, Selangor
D.E., Malaysia;

Adenna, Inc., 12216 McCann Drive, Santa Fe
Springs, CA 90670;

Basic Medical Industries Inc.; 12390 East End
Ave., Chino, CA 91710;

Cypress Medical Products, LLC ("Cypress"),

1202 South Rt. 31, McHenry, IL 60050 (agent, Richard M. Horwood, 180 N. Lasalle St, Suite 3700, Chicago IL 60601;

Darby Group Companies, Inc., 300 Jericho Quadrangle, Jericho, NY, 11753;

Dash Medical Gloves, Inc., 1018 South 54th St., Franklin, WI 53132 (agent, Robert J Sullivan, at 1018 South 54th St., Franklin, WI 53132);

Delta Medical Systems, Inc. d/b/a The Delta Group, 6865 Shiloh Road East, Suite 400, Alpharetta, GA 30202;

Dentexx/First Medica Infection Control Assoc., 3704C Boren Dr., Greensboro, NC 27407;

Dynarex Corp., 10 Glenshaw St., Orangeburg, NY 10962;

Liberty Glove and Safety Co., 433 Cheryl Lane City of Industry, CA 91789 (agent for service, Sonia Heh, at 21880 Buckskin Dr., Walnut, CA 91789);

Magla Products LLC, 59 South St., PO Box 1934, Morristown, NJ 07960;

Protective Industrial Products, Inc., Northeastern Industrial Park, Bldg 4, PO Box 19, Guilderland Center, NY 12085 (agent for service Germaine Curtin, at 10715 Indian Village Dr., Alpharetta, GA 30022);

QRP, Inc. d/b/a QRP Gloves, Inc., P.O. Box 28802, Tucson, AZ 85726 (registered agent, Daniel J. Quigley, 2730 E. Broadway #160, Tucson, AZ 85716);

Tronex International, Inc., One Tronex Centre, 3 Luger Rd., Denville, NJ 07834; and

West Chester Holdings, Inc., 100 Corridor
Park Drive, Monrowe, Ohio, 45050

## TABLE OF CONTENTS

TABLE OF EXHIBITS ............................................................ v

I.   INTRODUCTION .......................................................... 1

II.  PARTIES ................................................................ 2

     A.   Complainant Tillotson Corporation ............................ 2

     B.   Proposed Respondents ......................................... 3

          Top Glove Corporation Bhd. .................................. 4

          Ansell Ltd. ................................................. 8

          Beijing Huateng Rubber Plastic ............................. 12

          Glovco (M) Sdn. Bhd. ....................................... 12

          Hartalega Holdings Bhd. .................................... 13

          Ideal Healthcare Group Co. Ltd. ............................ 14

          JDA (Tianjin) Plastic Rubber Co. Ltd. ...................... 15

          Kossan Rubber Industries Bhd. .............................. 17

          Laglove (M) Sdn. Bhd. ...................................... 20

          PT Medisafe Technologies ................................... 21

          PT Shamrock Manufacturing Corporation ...................... 22

          Riverstone Resources Sdn. Bhd. ............................. 25

          Seal Polymer Industries Bhd. ............................... 26

          Smart Glove Holdings Sdn. Bhd. ............................. 28

          Supermax Corporation Bhd. .................................. 31

          Yee Lee Corporation Bhd. ................................... 34

          YTY Holdings Sdn. Bhd. ..................................... 37

i

Adenna, Inc. ................................................................ 39

Basic Medical Industries, Inc. ........................................ 40

Cypress Medical Products, LLC ..................................... 40

Darby Group Companies, Inc. ........................................ 41

Dash Medical Gloves, Inc. ............................................. 42

Delta Medical Systems, Inc. ........................................... 43

Dentexx/ First Medica Infection Control Association ............... 44

Dynarex Corporation .................................................... 44

Liberty Glove and Safety Co. ......................................... 45

Magla Products, LLC .................................................... 46

Protective Industrial Products, Inc. .................................. 46

QRP, Inc. .................................................................. 47

Tronex International, Inc. .............................................. 47

West Chester Holdings, Inc. .......................................... 48

III.   TECHNOLOGY AND PRODUCTS AT ISSUE ............................... 48

IV.   PATENTS AT ISSUE AND NON-TECHNICAL DESCRIPTION OF THE
       PATENTS .............................................................. 50

       A.   Identification of the '616 Patent ............................ 51

       B.   Non-Technical Description of the '616 Patent ............... 51

       C.   Foreign Counterparts ......................................... 52

       D.   Licenses ....................................................... 52

V.    UNLAWFUL AND UNFAIR ACTS OF PROPOSED RESPONDENT -
       PATENT INFRINGEMENT .............................................. 52

VI.   INSTANCES OF UNFAIR IMPORTATION AND SALE .................... 53

ii

EXHIBIT B- PAGE 10

Top Glove Corporation Bhd. ............................................. 53

Ansell Ltd. ............................................................... 60

Beijing Huateng Rubber Plastic .......................................... 61

Glovco (M) Sdn. Bhd. .................................................... 61

Hartalega Holdings Bhd. ................................................. 64

Ideal Healthcare Group Co. Ltd. ......................................... 64

JDA (Tianjin) Plastic Rubber Co. Ltd. ................................... 66

Kossan Rubber Industries Bhd. ........................................... 68

Laglove (M) Sdn. Bhd. ................................................... 72

PT Medisafe Technologies ................................................ 73

PT Shamrock Manufacturing Corporation ................................... 74

Riverstone Resources Sdn. Bhd. .......................................... 75

Seal Polymer Industries Bhd. ............................................ 77

Smart Glove Holdings Sdn. Bhd. .......................................... 78

Supermax Corporation Bhd. ............................................... 79

Yee Lee Corporation Bhd. ................................................ 81

YTY Holdings Sdn. Bhd. .................................................. 83

Adenna, Inc. ............................................................ 85

Basic Medical Industries, Inc. .......................................... 86

Cypress Medical Products, LLC ........................................... 86

Darby Group Companies, Inc. ............................................. 87

Dash Medical Gloves, Inc. ............................................... 89

Delta Medical Systems, Inc. ............................................. 89

iii

Dentexx/ First Medica Infection Control Association ................. 89

Dynarex Corporation ...................................................... 91

Liberty Glove and Safety Co. ...........................................91

Magla Products, LLC ...................................................... 92

Protective Industrial Products, Inc. ..................................... 93

QRP, Inc. ...................................................................93

Tronex International, Inc. ................................................. 94

West Chester Holdings, Inc. ............................................. 95

VII.   HTS........................................................................ 96

VIII.  RELATED LITIGATION .............................................96

IX.    DOMESTIC INDUSTRY.............................................101

X.     GENERAL EXCLUSION ORDER .................................103

XI.    RELIEF ...................................................................105

iv

## EXHIBIT LIST

| Exhibit 1: | Public | Copy of U.S. Patent No. Re. 35,616 |
|---|---|---|
| Exhibit 2: | Public | Copy of Assignment of the U.S. Patent No. Re. 35,616 to Tillotson |
| Exhibit 3: | Public | Claims Chart Showing Use of U.S. Patent No. Re. 35,616 by Tillotson |
| Exhibit 4: | Public | Claims Chart Showing Infringement of Claims 1, 17, 18, and 19 of the '616 Patent by Respondents' Nitrile Gloves |
| Exhibit 5: | Public | Licensees of Tillotson's Nitrile Gloves |
| Exhibit 6: | Public | Declaration of Donald Groce |
| Exhibit 7: | Confidential | Declaration in Support of Domestic Industry |

## APPENDICES AND PHYSICAL SAMPLES

| App. A: | Confidential | License Agreements |
|---|---|---|
| App. B: | Public | Certified Copy of Prosecution History for U.S. Patent No. Re. 35,616 |
| App. C: | Public | Each reference document mentioned in the prosecution history of the application leading to the issuance of U.S. Patent Nos. Re. 35,616 |

v

## I.     INTRODUCTION

1.     Complainant Tillotson Corporation, d/b/a/ Best Manufacturing Company, ("Tillotson") files this complaint pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), and respectfully requests that the U.S. International Trade Commission ("ITC") commence an investigation into the unlawful importation into the United States, the sale for importation within the United States, and/or the sale within the United States after importation of certain nitrile gloves that utilize, without Tillotson's authorization, the invention claimed in Tillotson's valid United States patent.

2.     The proposed respondents are manufacturers, exporters, importers, distributors for importation and/or distributors after importation into the United States of nitrile gloves, (collectively "Respondents").

3.     Upon information and belief, Respondents manufacture, import into the United States, use within the United States, offer for sale within the United States, and/or sell after importation certain nitrile gloves that utilize, without Tillotson's authorization, the invention described and claimed in Tillotson's valid United States patent.

4.     Through the manufacture, importation, use, and/or sale of the accused nitrile gloves of the types described herein, respondents have infringed and are infringing United States Patent No. Re. 35,616 ("the '616 patent"), entitled "Elastomeric Covering Material and Hand Glove Made Therewith," owned by Tillotson.

5.     Respondents' activities regarding importation into the United States, offering for sale within the United States, using within the United States, or selling within the United States after importation of certain nitrile gloves manufactured abroad and utilizing the invention

1

described and claimed in the '616 patent are unlawful and constitute infringement of the valid and enforceable '616 patent in violation of Section 337.

6.      Tillotson's United States manufacturing and licensing operations qualify as an industry in the United States relating to articles protected by the '616 patent, within the meaning of 19 U.S.C. § 1337(a)(2).

7.      Tillotson seeks as permanent relief a general exclusion order excluding from entry into the United States all nitrile gloves that are imported into the United States, sold for importation within the United States, and/or sold within the United States after importation that utilize, without Tillotson's authorization, the invention claimed in one or more of the claims of the '616 patent. In the alternative, Tillotson seeks as permanent relief a limited exclusion order barring from entry into the United States all Respondents' nitrile gloves that utilize, without Tillotson's authorization, the invention claimed in one or more of the claims of the '616 patent. Tillotson also seeks a cease and desist order pursuant to 19 U.S.C. § 1337(f) prohibiting each Respondent and their related companies from engaging in the importation, use, offering for sale, the sale after importation of, or otherwise transferring within the United States, nitrile gloves made in accordance with the invention claimed in the '616 patent.

## II.   THE PARTIES

### A.   Complainant

8.      Complainant, Tillotson, is a privately held company with its corporate headquarters in Lexington, Massachusetts, and its manufacturing headquarters in Menlo, Georgia. For over fifty years, Tillotson has been an innovative leader in developing, manufacturing, and supplying hand protection to industrial, medical, and surgical professionals worldwide.

EXHIBIT B- PAGE 15

9.    Tillotson manufactures hand gloves according to the technology described and claimed in the '616 patent. The Tillotson hand gloves are made from a nitrile butadiene rubber formulation in accordance with the '616 patent. Those gloves are substantially impermeable to water, have a relatively high tensile strength, have thickness and elastic properties that permit them to be stretched to fit closely about the hand, conform to the shape of a hand when stretched to fit about the hand, and then relax after being stretched to fit closely about the hand so that the pressure exerted on the hand by the gloves is substantially reduced.

10.    Tillotson sells its patented nitrile gloves directly to customers and to distributors who in turn sell to customers such as health care providers, including dentists, physicians, nurses, and assistants; and health care institutions such as hospitals and medical clinics. Tillotson also sells its nitrile gloves to industrial customers such as security personnel, including law enforcement agency personnel, and others; communicable disease center personnel; precision component manufacturing personnel and other industrial personnel for which there is a risk of contamination of the manufactured component or a risk of exposure to conditions that require hand protection; and to customers who are concerned about an allergic reaction of workers or patients resulting from exposure to natural rubber hand gloves.

11.    Tillotson generates significant revenue from sales of products manufactured in accordance with the '616 patent. Tillotson's long-term financial success depends, in large part, on its ability to establish, maintain, and protect its proprietary technology through enforcement of its patent rights.

**B.    Proposed Respondents**

12.    Upon information and belief, proposed respondents are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the

3

'616 patent ("nitrile gloves"). Certain wholly-owned or majority-owned subsidiaries or affiliates of proposed respondents may also be involved in the manufacture, importation, sale for importation, offer for sale, sale and/or use after importation within the United States of nitrile gloves as described and claimed in the '616 patent. Tillotson may request that one or more of these entities be added as additional respondents to this investigation. The investigation may also reveal potential respondents who were previously unknown, whose gloves samples were unavailable to Tillotson for testing, or whose significance was hidden through the use of freight forwarding agents, confidential bills of lading, or otherwise. Tillotson may request that these entities be added as additional respondents.

13.    With regard to the Respondents, Tillotson alleges the following upon information and belief:

### TOP GLOVE CORPORATION BHD.

14.    Respondent Top Glove Corp. Bhd. is located at Lot 4969, Jalan Teratai, Batu 6, Off Jalan Meru, 41050 Klang, Selangor D.E., Malaysia. Respondent Top Glove Corp. Bhd. is the parent corporation of the following subsidiaries: Top Glove Sdn. Bhd., TG Medical Sdn. Bhd., Great Glove Sdn. Bhd., Medi-Flex Limited d/b/a Flexitech Sdn. Bhd., TG Medical (USA) Inc., and Great Glove (USA) Inc. Through its subsidiaries, Top Glove Corp. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

15.    Top Glove Sdn. Bhd. is a wholly-owned subsidiary of Respondent Top Glove Corp. Bhd. Top Glove Sdn. Bhd. is located at Lot 4968, Jalan Teratai, Batu 6, Off Jalan Meru, 41050 Klang, Selangor D.E., Malaysia. Top Glove Sdn. Bhd is engaged in the manufacture,

importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

16.     Top Glove Sdn. Bhd. has obtained from the United States Food and Drug Administration ("FDA") clearance to market its nitrile gloves within the United States via two 510(k)[1] premarket notifications: K983816 (titled "Nitrile Latex Powdered Examination Glove") and K983825 (titled "Nitrile Latex Powder Free Examination Glove"). Previously, Top Glove Sdn. Bhd.'s U.S. agent for service for the FDA was David Lim, Managing Director of TG Medical (USA) Inc. Top Glove Sdn. Bhd.'s present U.S. agent for service for the FDA is Quee Choo Chadwick, President, Great Glove (USA) Inc.

17.     TG Medical Sdn. Bhd. is a wholly-owned subsidiary of Respondent Top Glove Corp. Bhd. TG Medical Sdn. Bhd. is located at Lot 5091, Jalan Teratai, Batu 5, Off Jalan Meru, 41050 Klang, Selangor D. E., Malaysia. TG Medical Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

18.     TG Medical Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via three 510(k) premarket notifications: K992841 (titled "TG

---

[1] The FDA considers medical nitrile gloves Class I medical devices. As such, the FDA must "clear" a new or modified medical nitrile glove before such a glove may be legally marketed in the United States. *See generally* Guidance for Industry and FDA—Medical Glove Guidance Manual, *available at* http://www.fda.gov/cdrh/dsma/135.html#_Toc458914416.     New or modified medical nitrile gloves are cleared to market through the filing of a 510(k) Pre-Market Notification submission with the FDA.     The 510(k) Pre-Market Notification submission identifies characteristics of the new or modified medical device as compared to a medical device—with a similar use—that is already legally marketed in the United States. If the FDA determines that the new or modified device is "substantially equivalent" to a device already legally marketed in the United States, it will "clear" the new or modified device for marketing. *See id.*

Medical Powdered Nitrile Blue Examination Gloves"), K992360 (titled "TG Medical Powdered

Nitrile Examination Gloves"), and K990668 (titled "Powder Free Blue Nitrile Glove").

Previously, TG Medical Sdn. Bhd.'s U.S. agent for service for the FDA was Dorothy Ressel of

TG Medical (USA) Inc.  Presently, TG Medical Sdn. Bhd.'s U.S. agent for service for the FDA

is Quee Choo Chadwick, President, Great Glove (USA) Inc.

     19.    Great Glove Sdn. Bhd. is a wholly-owned subsidiary of Respondent Top Glove

Corp. Bhd.  Great Glove Sdn. Bhd. is located at the same address as TG Medical Sdn. Bhd.:

Lot 5091, Jalan Teratai, Batu 5, Off Jalan Meru, 41050 Klang, Selangor D. E., Malaysia.  Great

Glove Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale

after importation, sale and/or use after importation into the United States of nitrile gloves as

described and claimed in the '616 patent.

     20.    Great Glove Sdn. Bhd. has obtained from the FDA clearance to market its nitrile

gloves within the United States via two 510(k) premarket notifications: K052955 (titled "Nitrile

Blue Powdered Examination Gloves") and K052956 (titled "Nitrile Blue Powder Free

Examination Glove").  Presently, Great Glove Sdn. Bhd.'s U.S. agent for service for the FDA is

Quee Choo Chadwick, President, Great Glove (USA) Inc.

     21.    Medi-Flex Limited is a subsidiary of Respondent Top Glove Corp. Bhd. Medi-

Flex Limited has manufacturing facilities operating under the name of Flexitech Sdn. Bhd.,

located at Lot 5071, Jalan Teratai, Batu 5 1/2, Off Jalan Meru, 41050 Klang, Selangor D. E.,

Malaysia and Lot 124 & 126, Jln Lapan, Kompleks Olak Lempit, 42700, Banting, Selangor D.

E., Malaysia.  Medi-Flex Limited is engaged in the manufacture, importation, sale for

importation, offer for sale after importation, sale and/or use after importation into the United

States of nitrile gloves as described and claimed in the '616 patent.

22.    Under its Flexitech Sdn. Bhd. tradename, Medi-Flex Limited has obtained from the FDA clearance to market its nitrile gloves within the United States via three 510(k) premarket notifications: K994416 (titled "Polymer Coated Powder Free Nitrile Examination Glove"), K990495 (titled "Powder Free Nitrile Examination Gloves"), and K990499 (titled "Prepowdered Nitrile Examination Gloves").

23.    Bright Element Sdn. Bhd. is a subsidiary of Respondent Top Glove Corp. Bhd. Subsidiary Bright Element Sdn. Bhd. is located at No. 5, Jalan USJ 3B/2, Subang Jaya, 47610 Selangor D. E., Malaysia.  Subsidiary Bright Element Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

24.    Subsidiary Bright Element Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via two 510(k) premarket notifications: K063777 (titled "Able Nitrile Blue Powder Free Examination Glove") and K061074 (titled "Able Nitrile Blue Powdered Examination Glove").

25.    TG Medical (USA) Inc. is a wholly-owned subsidiary of Respondent Top Glove Corp. Bhd.  TG Medical (USA) Inc. is located at 165 North Aspan Ave., Azusa, CA 91702.  TG Medical (USA) Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

26.    TG Medical (USA) Inc. has obtained from the United States Patent and Trademark Office two trademark registrations: Registration No. 2560869 for "TOP GLOVE" when used for medical examination gloves and Registration No. 3009721 for "GREAT GLOVE" when used for medical examination gloves.

7

27.    Great Glove (USA) Inc. is a wholly-owned subsidiary of Respondent Top Glove Corp. Bhd. Great Glove (USA) Inc. is located at 1026 S. Marengo Ave, Number 5, Alhambra, CA 91803. Great Glove (USA) is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

### ANSELL LTD.

28.    Respondent Ansell Ltd. is located at 3/678 Victoria Street, Richmond, Victoria 3121 Australia. Respondent Ansell Ltd. is the parent corporation of the following subsidiaries: Ansell (AMBI) Sdn. Bhd.; Ansell (Thailand) Ltd.; Ansell Lanka (Pvt.), Ltd.; Ansell Medical Sdn. Bhd.; Ansell N.P. Sdn. Bhd.; Ansell Shah Alam Sdn. Bhd.; J.K. Ansell, Ltd.; Ansell Canada Inc.; Ansell Protective Products, Inc.; Ansell Healthcare Products, LLC; and Ansell Services, Inc. Through its subsidiaries, Ansell Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

29.    Subsidiary Ansell (AMBI) Sdn. Bhd. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell (AMBI) Sdn. Bhd. is located at Lot 8A Kulim Industrial Estate, 09000 Kulim, Kedah Darul Aman, Malaysia. Ansell (AMBI) Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

30.    Subsidiary Ansell (Thailand) Ltd. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell (Thailand) Ltd. is located at 110 Moo 4, Chalongkrung Road, Bankok, Thailand 10520. Ansell (Thailand) Ltd. is engaged in the manufacture, importation, sale for

8

importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

31.    Subsidiary Ansell Lanka (Pvt.), Ltd. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell Lanka (Pvt.), Ltd. is located at Biyagama Export Processing Zone, Biyagama, Sri Lanka. Ansell Lanka (Pvt.), Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

32.    Subsidiary Ansell Medical Sdn. Bhd. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell Medical Sdn. Bhd. is located at Lot 80, Air Keroh Industrial Estate, Malaka, Malaysia 75450. Ansell Medical Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

33.    Subsidiary Ansell N.P. Sdn. Bhd. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell N.P. Sdn. Bhd. is located at the same address as Subsidiary Ansell Medical Sdn. Bhd.: Lot 80, Air Keroh Industrial Estate, Malaka, Malaysia 75450. Ansell N.P. Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

34.    Subsidiary Ansell Shah Alam Sdn. Bhd. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell Shah Alam Sdn. Bhd. is located at Lot 16, Persiaran Perusahaan, Section 23, Shah Alam, Selangor D.E., Malaysia 40000. Ansell Shah Alam Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation,

9

sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

35.     Subsidiary J.K. Ansell Ltd. is a wholly-owned subsidiary of Respondent Ansell Ltd. J.K. Ansell Ltd. is located at Plot No. G-35&36, Midc Industrial Area, Walug, Aurangabad, Maharastra, India 431 136. J.K. Ansell Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

36.     Subsidiary Ansell Canada Inc. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell Canada Inc. is located 105 Rue Lauder Street, Cowansville, Quebec J2K 2K8 Canada. Ansell Canada Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

37.     Subsidiary Ansell Protective Products, Inc. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell Protective Products, Inc. is located 200 Schulz Drive, Red Bank, New Jersey 07701. Ansell Protective Products, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

38.     Subsidiary Ansell Healthcare Products, LLC is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell Healthcare Products, LLC is located at the same address as Subsidiary Ansell Protective Products, Inc.: 200 Schulz Drive, Red Bank, New Jersey 07701. Ansell Healthcare Products, LLC is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

10

39.  Subsidiary Ansell Healthcare Products, LLC. has obtained from the FDA clearance to market its nitrile gloves within the United States via five 510(k) premarket notifications: K042817 (titled "Micro-Touch Smooth Nitrile Powder-Free Blue Examination Gloves (Chemotherapy Use)"); K011593 (titled "Micro-Touch Nitrile Powder Free Synthetic Medical Examination Gloves"); K992768 (titled "Nitra-Touch Sterile Powder-Free Nitrile Medical Exam Gloves"); K982131 (titled "Nitra-Touch Powder-Free Nitrile Medical Examination Gloves"); and K965095 (titled "Nitra-Touch Powder-Free Nitrile Medical Examination Gloves").[2]

40.  Subsidiary Ansell Services, Inc. is a wholly-owned subsidiary of Respondent Ansell Ltd. Ansell Services, Inc. is located at the same address as Subsidiary Ansell Protective Products, Inc. and Subsidiary Ansell Healthcare Products, LLC: 200 Schulz Drive, Red Bank, New Jersey 07701. Ansell Services, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

41.  Respondent Ansell Ltd. and its subsidiaries have obtained from the United States Patent and Trademark Office approximately three-hundred fourteen (314) trademark applications/registrations which include, *inter alia*: Registration No. 2099153 for "TOUCH N TUFF" when used for protective gloves, Registration No. 2058103 for "TNT" when used for protective gloves, Registration No. 0761390 for "MICRO-TOUCH" when used for disposable gloves, and Registration No. 1886589 for "NITRA-TOUCH" when used for industrial gloves.

---

[2]  Three of these registrations are in the name of former Ansell Ltd. subsidiaries that were subsequently acquired by Ansell Healthcare Products, LLC and Ansell Protective Products, Inc.

### BEIJING HUATENG RUBBER PLASTIC

42.     Respondent Beijing Huateng Rubber Plastic ("Beijing Huateng") is located at Ciqu Industrial Zone, Tongzhou District, Beijing, China 101111. Respondent Beijing Huateng is affiliated with, *inter alia,* Beijing Chemical Industry Group Rubber & Plastic Products Factory; Beijing Reagent Latex Products Co., Ltd.; Beijing Latex Factory; and Beijing Rubber & Plastics Products Factory. All of these affiliates are located at the same address as Beijing Huateng. Beijing Huateng and these affiliates are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

### GLOVCO (M) SDN. BHD.

43.     Respondent Glovco (M) Sdn. Bhd. ("Glovco") is located at Lot 760, Jalan Haji Sirat, Off Jalan Meru Klang, 42100, Selangor D.E., Malaysia. Respondent Glovco is affiliated with Glovco Holding Sdn. Bhd. located at the same address as Glovco. Glovco has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

44.     Glovco has obtained from the FDA clearance to market its nitrile gloves within the United States via three 510(k) premarket notifications: K042898 (titled "Panthera N Powder Free Black Nitrile Gloves"), K021730 (titled "Glovco Brand Powder-Free Nitrile Examination Gloves"), and K021308 (titled "Glovco Powder-Free Nitrile Examination Gloves").

45.     Glovco has obtained from the United States Patent and Trademark Office one trademark registration: Registration No. 2570340 for "GLOVCO" when used for medical, surgical, and dental gloves.

12

### HARTALEGA HOLDINGS BHD.

46.    Respondent Hartalega Holdings Bhd. is located at Lot 9, Jalan Kuang Bulan, Taman Kepong Industrial Estate, 52100 Kuala Lumpur, Malaysia. Respondent Hartalega Holdings Bhd. is the parent corporation of the following subsidiaries: Hartalega Sdn. Bhd. and Pharmatex USA, Inc. Through its subsidiaries, Hartalega Holdings Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

47.    Hartalega Sdn. Bhd. is a wholly-owned subsidiary of Respondent Hartalega Holdings Bhd. Hartalega Sdn. Bhd. is located at the same address as its parent company: Lot 9, Jalan Kuang Bulan, Taman Kepong Industrial Estate, 52100 Kuala Lumpur, Malaysia. Hartalega Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

48.    Hartalega Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via eleven 510(k) premarket notifications: K062950 (titled "Powder Free Sterile Nitrile Surgical Gloves (Blue)"); K063046 (titled "Nitrile Powder Free Examination Gloves (Green)"); K052583 (titled "Blue Powder Free Nitrile Examination Gloves"); K051777 (titled "Nitrile Powder Free Examination Gloves (Blue)"); K051778 (titled "Nitrile Powdered Examination Gloves (Blue)"); K050214 (titled "Nitrile Powder Free Examination Gloves (White)"); K050215 (titled "Nitrile Powdered Examination Gloves (White)"); K041391 (titled "Freeform Blue Powder-Free Nitrile Examination Gloves"); K022671 (titled "Freeform Blue PowderFree Nitrile Examination Gloves"); K990283 (titled

"Blue PowderFree Nitrile Examination Gloves"); and K963804 (titled "Patient Examination Gloves: Nitrile Examination").

49.    Hartalega Sdn. Bhd. has also registered with the American Dental Association ("ADA") in order to market[3] the following nitrile gloves with the ADA's Seal of Acceptance: Elastik Powder Free Nitrile Examination Gloves and Elastic Powdered Nitrile Examination Gloves.

50.    Pharmatex USA, Inc. is a wholly-owned subsidiary of Respondent Hartalega Holdings Bhd.  Pharmatex USA, Inc. is located at 77530 Enfield Lane Bldg.1, Suite 203, Palm Desert, CA 92211, with an agent for service, Gregory Pak, at the same address.  Pharmatex USA, Inc. is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

51.    Pharmatex USA, Inc. has applied for a trademark registration with the United States Patent and Trademark Office for "PHARMATEX" Serial No. 78874867 when used for synthetic disposable gloves for medical and dental use.

### IDEAL HEALTHCARE GROUP CO. LTD.

52.    Respondent Ideal Healthcare Group Co. Ltd. is located at Bldg. 18, No. 1, South Section of Huacheng (W) Road, Ningbo, China 31500.  Respondent Ideal Healthcare Group Co. Ltd. is affiliated with Ideal Medical Industries, Co. Ltd. and Yujiang Ideal Medical Industries

---

[3] The American Dental Association allows certain manufacturers and distributors to market their products with the ADA's Seal of Acceptance.  The ADA Seal of Acceptance may not be used on or in connection with a product until after it has been granted the Seal of Acceptance by the Council on Scientific Affairs and only after a license agreement has been signed by the manufacturer or distributor of the accepted product.  Any manufacturer or distributor may submit its products to the Council to be evaluated and considered for the Seal of Acceptance.

Co., Ltd. Ideal Healthcare Group Co. Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

53.    Affiliate Ideal Medical Industries Co., Ltd. is located at Block 18, Baiyunshanzhuang, 1 # Huancheng W. Road, South End, Ningbo, China 315000. This appears to be the same address as Respondent Ideal Healthcare Group Co., Ltd. Ideal Medical Industries Co., Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

54.    Affiliate Yujiang Ideal Medical Industries Co., Ltd. is located at Economic & Tech Development, Zone G-4, Ningbo, Zhejiang Prov., China 315803. Ideal Medical Industries Co., Ltd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

## JDA (TIANJIN) PLASTIC RUBBER CO. LTD.

55.    Respondent JDA (Tianjin) Plastic Rubber Co., Ltd. ("JDA") is located at No. 17 Hai Bin No. 7 Rd, Tianjin Port Free Trade Zone, Tianjin, 300456, China. Respondent JDA is affiliated with, *inter alia,* Durasafe, Inc.; Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc.; United Delta, Inc.; and JDA International, Inc. JDA and its affiliates are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

15

56.    Respondent JDA has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K030529 (titled "Legend (Brand) Nitrile Powder-Free Patient Examination Gloves"). Respondent JDA's U.S. agent for service for the FDA is Norpak, Inc., 202 Fashion Lane, Suite 115, Tustin, CA 92780.

57.    Durasafe, Inc. is an affiliate of Respondent JDA. Durasafe has two addresses: one in China and one in California. Affiliate Durasafe, Inc.'s Chinese address is the same as Respondent JDA's address: No. 17 Hai Bin No. 7 Rd, Tianjin Port Free Trade Zone, Tianjin, 300456, China. Affiliate Durasafe, Inc.'s California address is 18400 San Jose Avenue, City of Industry, CA 91748. Affiliate Durasafe, Inc. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

58.    Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. is an affiliate of Respondent JDA. Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. is located at the same address as JDA Affiliate Durasafe, Inc.: 18400 San Jose Avenue, City of Industry, CA 91748. Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

59.    Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. has obtained from the United States Patent and Trademark Office two (2) trademark registrations: Registration No. 2503665 for "SANITEX" when used for disposable gloves and Registration No. 2017832 for "LIFE GUARD" when used for disposable gloves.

60.    United Delta, Inc. is an affiliate of Respondent JDA. United Delta, Inc. is located at 301 Brea Canyon Road, Walnut, CA 91789. Through its subsidiary—JDA International, Inc.— United Delta, Inc. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

61.    JDA International, Inc. is a subsidiary of United Delta, Inc. and an affiliate of Respondent JDA. JDA International, Inc. is located at the same address as its parent company: 301 Brea Canyon Road, Walnut, CA 91789. JDA International, Inc. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

62.    JDA International, Inc. has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K993247 (titled "Nitrile Powder Free Patient Examination Gloves").

## KOSSAN RUBBER INDUSTRIES BHD.

63.    Respondent Kossan Rubber Industries Bhd. is located at Lot 16632, Batu 5 1/4, Jalan Meru, 41050 Klang, Selangor D.E., Malaysia. Respondent Kossan Rubber Industries Bhd. is the parent corporation of the following subsidiaries: Kossan Latex Industries (M) Sdn. Bhd.; Perusahaan Getah Asas Sdn. Bhd.; Wear Safe (M) Sdn. Bhd., and Normandin Pacific Holdings Corp. The principal shareholder of Kossan Rubber Industries Bhd. is Kossan Holdings (M) Sdn. Bhd. Through its subsidiaries, Respondent Kossan Rubber Industries Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use

after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

64.    Kossan Latex Industries (M) Sdn. Bhd. is a wholly-owned subsidiary of Respondent Kossan Rubber Industries Bhd. Kossan Latex Industries (M) Sdn. Bhd. is located at the same address as its parent company: Lot 16632, Batu 5 1/4, Jalan Meru, 41050 Klang, Selangor D.E., Malaysia. Kossan Latex Industries (M) Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

65.    Subsidiary Kossan Latex Industries (M) Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via five 510(k) premarket notifications: K062764 (titled "Powder-Free Nitrile Examination Glove, White (Non-Colored) and Blue Colored, Tested for Use with Chemotherapy Drugs"); K060771 (titled "Powder-Free Nitrile Examination Glove, White (Non-Colored) and Blue Colored"); K024025 (titled "Powder-Free Nitrile Patient Examination Glove, Violet Color"); K992496 (titled "Powder-Free Nitrile Examination Glove, Blue or White (Non-Colored)"); and K992497 (titled "Powdered Nitrile Examination Glove, Blue or White (Non-Colored)").

66.    Subsidiary Perusahaan Getah Asas Sdn. Bhd. is a wholly-owned subsidiary of Respondent Kossan Rubber Industries Bhd. Perusahaan Getah Asas Sdn. Bhd. is located at Lot 754, Jalan Haji Sirat, Off Jalan Kapur, 42100 Klang, Selangor D.E., Malaysia. Perusahaan Getah Asas Sdn. Bhd is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

18

67.　Subsidiary Perusahaan Getah Asas Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via eleven 510(k) premarket notifications: K042805 (titled "Powder Free Nitrile Patient Examination Gloves, Blue Colored Non-Sterile"); K032374 (titled "Powder-Free Nitrile Patient Chemotherapy Examination Gloves, Blue or Green or Violet or White (Non-Colored)"); K031591 (titled "Powder-Free Nitrile Patient Examination Glove, White (Non-Colored), Blue and Green Color"); K030335 (titled "On-Line Powder-Free Nitrile Examination Glove, Violet Color"); K024184 (titled "Powder-Free Coated Nitrile Examination Glove, Blue Color"); K010719 (titled "Powder-Free Nitrile Patient Examination Glove, Purple Color"); K991511 (titled "Powdered Nitrile Examination Glove, White (Non-Colored)"); K984605 (titled "Powder-Free Nitrile Patient Examination Glove, White (Non-Colored)"); K984356 (titled "Nitrile Patient Examination Glove, Blue or Green"); K983729 (titled "Powder-Free Nitrile Patient Examination Glove"); and K982440 (titled "Nitrile Patient Examination Glove").

68.　Subsidiary Perusahaan Getah Asas Sdn. Bhd. has obtained from the United States Patent and Trademark Office two trademark registrations: Registration No. 2446804 for "NITRISOFT" when used for gloves for medical use and Registration No. 2502435 for "PURESHIELD" when used for gloves for medical use.

69.　Subsidiary Wear Safe (M) Sdn. Bhd. is a wholly-owned subsidiary of Respondent Kossan Rubber Industries Bhd.　Wear Safe (M) Sdn. Bhd. is located at Lot 1, Leboh Hishamuddin Satu, North Klang Straits Ind. Area, 42000 Klang, Selangor D.E., Malaysia. Wear Safe (M) Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

19

70.    Subsidiary Wear Safe (M) Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via three 510(k) premarket notifications: K062778 (titled "Sterile Powder-Free Nitrile Patient Examination Gloves, Blue Non-Sterile Powder-Free Nitrile Patient Examination Glove"); K992675 (titled "Patient Nitrile Examination Gloves (Powdered)"); and K992678 (titled "Patient Nitrile Examination Gloves Powder Free").

71.    Subsidiary Normandin Pacific Holdings Corp. d/b/a Pacifica is a majority-owned subsidiary of Respondent Kossan Rubber Industries Bhd.  Normandin Pacific Holdings Corp. d/b/a Pacifica is located at Post Office Box 2709, Torrance, CA 90509-2709, and has a distribution center at 16963 S. Central Avenue, Carson, CA 90746.  Normandin Pacific Holdings Corp. d/b/a Pacifica is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

72.    Subsidiary Kossan Gloves, Inc. d/b/a Sintex is a subsidiary of Respondent Kossan Rubber Industries Bhd.  Kossan Gloves, Inc. d/b/a Sintex is located at 16810 Baker Springs #219, Houston, TX 77084.  Kossan Gloves, Inc. d/b/a Sintex is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

### LAGLOVE (M) SDN. BHD.

73.    Respondent Laglove M Sdn. Bhd. ("Laglove") is located at Lot 478, Jalan Simpang Balak, Off B, 43000 Kajang Selangor, Malaysia.  Laglove is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

20

74.    Respondent Laglove has obtained from the FDA clearance to market its nitrile gloves within the United States via nine 510(k) premarket notifications: K042618 (titled "Laglove Brand Double Polymer Coated Nitrile Examination Gloves"); K010860 (titled "Laglove Brand Colored Powdered Free Nitrile Examination Gloves (Green/Purple)"); K010861 (titled "Laglove Brand Colored Powdered Nitrile Examination Gloves"); K991949 (titled "Laglove Brand Nitrile Surgical Glove-Sterile (Powdered)"); K991950 (titled "Laglove Brand Nitrile Surgical Glove-Sterile (Powder-Free)"); K990883 (titled "Laglove Brand Blue Colored Nitrile Examination Glove Powdered"); K990882 (titled "Laglove Brand Colored Nitrile Examination Gloves"); K990415 (titled "Laglove Brand Nitrile Examination Gloves (Lightly Powdered)"); and K990420 (titled "Laglove Brand Nitrile Examination Glove (Powder Free)"). Respondent Laglove's U.S. agent for service for the FDA is Respondent Digitcare Corp., 2999 Overland Avenue, Suite 209, Los Angeles, CA 90064.

## PT MEDISAFE TECHNOLOGIES

75.    Respondent PT Medisafe Technologies is located at JL. Batang Kuis, GG Tambak Rejo/PSR IX, Desa Buntu Bedimbar, Tanjung Morawa, Medan, Sumatera Utar, Indonesia. Respondent PT Medisafe Technologies is affiliated with Medisafe Technologies (USA) and Indorama Group Companies.    Respondent PT Medisafe Technologies is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

76.    Affiliate Medisafe Technologies (USA) is located at 155 Harbor Way, Ann Arbor, MI 48103. Affiliate Medisafe Technologies (USA) is engaged in the importation, sale for

21

importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

77.     Affiliate Indorama Group Companies is located at Graha Irama, 17th Floor, JL. HR Rasuna Said Blok X-1 Kav 1-2, Jakarta, 12950 Indonesia.  Affiliate Indorama Group Companies is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

## PT SHAMROCK MANUFACTURING CORPORATION

78.     Respondent PT Shamrock Manufacturing Corporation is located at Jalan Pemuda No. 11, Medan- 20151 North Sumatra, Indonesia.  Respondent PT Shamrock Manufacturing Corporation is the parent corporation of the following subsidiaries: PT Haloni Jane; PT Maja Agung Latexindo; Shamrock Manufacturing Company, Inc.; Shamrock Marketing Company, Inc.; Globe Shamrock, Inc.; and Glove Source, Inc.  Respondent PT Shamrock Manufacturing Corporation and its subsidiaries are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

79.     Respondent PT Shamrock Manufacturing Corporation has obtained from the FDA clearance to market its nitrile gloves within the United States via two 510(k) premarket notifications: K052382 (titled "Powder Free Nitrile Examination Gloves, Blue") and K030386 (titled "Powder Free Synthetic Nitrile Neoprene Examination Gloves Green Color).  Respondent PT Shamrock Manufacturing Corporation's U.S. agent for service for the FDA is Respondent PT Shamrock Manufacturing Corporation's subsidiary Shamrock Marketing Company, Inc.

22

80.    Subsidiary PT Haloni Jane is a wholly-owned subsidiary of Respondent PT Shamrock Manufacturing Corporation. PT Haloni Jane is located at JL. Raya Serang KM 13.8 Cikupa Tangerang, Indonesia. Subsidiary PT Haloni Jane is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Subsidiary PT Haloni Jane's U.S. agent for service for the FDA is Respondent PT Shamrock Manufacturing Corporation's subsidiary Shamrock Manufacturing Company, Inc.

81.    Subsidiary PT Maja Agung Latexindo is a wholly-owned subsidiary of Respondent PT Shamrock Manufacturing Corporation. PT Maja Agung Latexindo is located at JL. Utama No. 98 Pujimulyo, Sunggal 20352 Deli Serdang Sumatera Utara, Indonesia. Subsidiary PT Maja Agung Latexindo is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Subsidiary PT Maja Agung Latexindo's U.S. agent for service for the FDA is Respondent PT Shamrock Manufacturing Corporation's subsidiary Shamrock Manufacturing Company, Inc.

82.    Subsidiary Shamrock Manufacturing Company, Inc. is a wholly-owned subsidiary of Respondent PT Shamrock Manufacturing Corporation. Shamrock Manufacturing Company, Inc. is located at 5445 Daniels Street, Chino, CA 91710. Shamrock Manufacturing Company, Inc. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

23

83.    Subsidiary Shamrock Manufacturing Company, Inc. has obtained from the FDA

clearance to market its nitrile gloves within the United States via one 510(k) premarket

notification: K012786 (titled "Powder Free Nitrile Neoprene Examination Gloves (Purple)").

84.    Subsidiary Shamrock Manufacturing Company, Inc. has obtained from the United

States Patent and Trademark Office two trademark registrations: Registration No. 2355756 for

"SHAMROCK" when used for disposable latex gloves and Registration No. 2962047 for

"POLYSILK" when used for latex, vinyl, and nitrile gloves.

85.    Subsidiary Shamrock Marketing Company, Inc. is a wholly-owned subsidiary of

Respondent PT Shamrock Manufacturing Corporation.  Shamrock Marketing Company, Inc. is

located at the same address as Shamrock Manufacturing Company, Inc.: 5445 Daniels Street,

Chino, CA 91710.  Shamrock Marketing Company, Inc. is engaged in the importation, sale for

importation, offer for sale after importation, sale and/or use after importation into the United

States of nitrile gloves as described and claimed in the '616 patent.

86.    Subsidiary Globe Shamrock, Inc. is a wholly-owned subsidiary of Respondent PT

Shamrock Manufacturing Corporation.  Globe Shamrock, Inc. is located at 4930 Campbell Road,

Houston, TX 77041.  Globe Shamrock, Inc. is engaged in the importation, sale for importation,

offer for sale after importation, sale and/or use after importation into the United States of nitrile

gloves as described and claimed in the '616 patent.

87.    Subsidiary Globe Shamrock, Inc. has obtained from the United States Patent and

Trademark Office one trademark registration: Registration No. 2879107 for "PROTOS" when

used for latex sterile surgical and examination gloves.

88.    Subsidiary Glove Source, Inc. is a wholly-owned subsidiary of Respondent PT

Shamrock Manufacturing Corporation.  Glove Source, Inc. is located at 889 South Azusa Ave.,

24

City of Industry, CA 91748. Glove Source, Inc. is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

## RIVERSTONE RESOURCES SDN. BHD.

89.     Respondent Riverstone Resources Sdn. Bhd. is located at Lot 21909, No. 5, Lorong Helang Hindik, Kepong Baru Industrial Estate, 52100 Kuala Lumpur, Malaysia. Respondent Riverstone Resources Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

90.     Respondent Riverstone Resources Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via four 510(k) premarket notifications: K003233 (titled "RS Nitrilstat Medical Examination Gloves, Powdered (Non-Sterile) Blue"); K003232 (titled "RS Nitrilstat Medical Examination Gloves, Powder Free (Non-Sterile)"); K992558 (titled "Nitrile Patient Examination Gloves, Powdered, Non-Sterile"); and K990963 (titled "RS Nitrilstat Medical Examination Gloves, Powder Free (Non-Sterile)").

## SEAL POLYMER INDUSTRIES BHD.

91.     Respondent Seal Polymer Industries Bhd. is located at Lot 72706, Jalan Lahat, Kawasan Perindustrian Buki Merah, 31500 Lahat, Perak, Malaysia. Approximately 24% of Respondent Seal Polymer Industries Bhd.'s ownership is held by Respondent Supermax Corporation Bhd. Respondent Seal Polymer Industries Bhd. is the parent corporation of subsidiary Seal Polymer Industries Sdn. Bhd. Through its subsidiary, Respondent Seal Polymer Industries Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale

25

after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

92.     Subsidiary Seal Polymer Industries Sdn. Bhd. is a wholly-owned subsidiary of Respondent Seal Polymer Industries Bhd. Seal Polymer Industries Sdn. Bhd. is located at the same address as its parent company: Lot 72706, Jalan Lahat, Kawasan Perindustrian Buki Merah, 31500 Lahat, Perak, Malaysia. Subsidiary Seal Polymer Industries Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

93.     Subsidiary Seal Polymer Industries Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via six 510(k) premarket notifications: K042238 (titled "Cashmere Polymer Coated Powder Free Nitrile Examination Gloves (Blue, White, Violet, Pink, Green)"); K042101 (titled "Cashmere Powder Free Nitrile Examination Gloves"); K032077 (titled "Cashmere Non-Sterile, Powder Free Nitrile Examination Gloves (Violet)"); K020868 (titled "Cashmere Non-Sterile, Powder Free Nitrile Examination Gloves (White)"); K993133 (titled "Cashmere Non-Sterile, Powdered Nitrile Examination Gloves (Blue)"); and K993134 (titled "Cashmere Non-Sterile, Powder Free Nitrile Examination Gloves (Blue)"). Subsidiary Seal Polymer Industries Sdn. Bhd.'s U.S. agent for service for the FDA is Respondent Supermax Corporation Bhd.'s subsidiary Supermax, Inc. d/b/a Aurelia Gloves.

94.     Subsidiary Seal Polymer Industries Sdn. Bhd. has also registered with the ADA in order to market the following nitrile gloves with the ADA's Seal of Acceptance: Polyshield Powder Free Nitrile Exam Gloves, Diamond Shield Powder Free Nitrile Exam Gloves, Tru

Shield Powder Free Nitrile Exam Gloves, Tru Care Powder Free Nitrile Exam Gloves, Cashmere Powder Free Poly-Coated Nitrile Examination Gloves, Tru Care Powder Free Poly-Coated Nitrile Exam Gloves, and Tru Shield Powder Free Poly-Coated Nitrile Exam Gloves.

### SMART GLOVE HOLDINGS SDN. BHD.

95.    Respondent Smart Glove Holdings Sdn. Bhd. is located at Lot 6487, Batu 5 3/4, Sementajln Kapar, 42100 Klang, Selangor D.E., Malaysia.  Respondent Smart Glove Holdings Sdn. Bhd. is the parent corporation of the following subsidiaries: Smart Glove Corporation Sdn. Bhd. and PT Smart Glove Indonesia.  Respondent Smart Glove Holdings Sdn. Bhd. is also affiliated with the following entities: Besglove Medicare Sdn. Bhd.; Sri Johani Sdn. Bhd.; and GX Corporation Sdn. Bhd.  Through its subsidiaries and affiliates, Respondent Smart Glove Holdings Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

96.    Subsidiary Smart Glove Corporation Sdn. Bhd. is a wholly-owned subsidiary of Respondent Smart Glove Holdings Sdn. Bhd.  Smart Glove Corporation Sdn. Bhd. is located at the same address as its parent company: Lot 6487, Batu 5 3/4, Sementajln Kapar, 42100 Klang, Selangor D.E., Malaysia.  Subsidiary Smart Glove Corporation Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

97.    Subsidiary Smart Glove Corporation Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via thirteen 510(k) premarket notifications: K063627 (titled "Powder Free Nitrile Examination Gloves Tested For Use With

Chemotherapy (Blue)"); K061724 (titled "Powder Free Nitrile Examination Glove, Grape Scented, Blue and White Color"); K060726 (titled "Powder Free Nitrile Examination Glove, Coated with Cucumber with Glycerin, Blue Color"); K060724 (titled "Powder Free Nitrile Examination Glove, Black and Gray Color"); K050122 (titled "Powder Free Nitrile Examination Glove (Blue)"); K050598 (titled "Powder Free Nitrile Examination Gloves Tested For Use With Chemotherapy Drugs (Blue)"); K033683 (titled "Smart-Feel Powder Free Nitrile Examination Gloves Pink Color"); K022818 (titled "Multiple, Blue Powder Free Nitrile Examination Gloves with Peppermint Flavor"); K021013 (titled "Smart Glove Sterile Nitrile Examination Gloves Powder Free"); K012853 (titled "Smart Glove Sterile Nitrile Examination Gloves"); K012479 (titled "Sterile Nitrile Surgical Gloves (Powdered)"); K981349 (titled "Smart-Feel Powder Free Nitrile Examination Gloves (Natural, Blue, and Green Colored)"); and K974907 (titled "Nitrile Pre-Powdered Examination Gloves (Blue, Green, and Natural Colors)").

98.     Subsidiary Smart Glove Corporation Sdn. Bhd. has also registered with the ADA in order to market the following nitrile gloves with the ADA's Seal of Acceptance: Smart Glove Powder Free Nitrile Exam Glove (Blue, White).

99.     Subsidiary PT Smart Glove Indonesia is a wholly-owned subsidiary of Respondent Smart Glove Holdings Sdn. Bhd. PT Smart Glove Indonesia is located at JL, Raya Medan-Lubuk Pakam Km 19, Tanjong Morawa B, Tanjong Morawa, Deli Serdang, Sumatera Utara, Indonesia.   Subsidiary PT Smart Glove Indonesia is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

100.    Subsidiary PT Smart Glove Indonesia has obtained from the FDA clearance to market its nitrile gloves within the United States via five 510(k) premarket notifications:

28

K041848 (titled "Polymer Coated Powder Free Nitrile Examination Gloves, Green and White Color"); K040791 (titled "Polymer Coated, Powder Free, Nitrile Examination Gloves, Blue Color"); K030284 (titled "Powder Free Nitrile Examination Gloves (White, Blue, Purple)"); K030406 (titled "Nitrile Powder Free Examination Gloves With Peppermint Flavor"); and K022814 (titled "Multiple Nitrile Examination Gloves, Powdered with Purple, Blue, White Colors").

101.    Affiliate Besglove Medicare Sdn. Bhd. is an affiliate of Respondent Smart Glove Holdings Sdn. Bhd. Besglove Medicare Sdn. Bhd. is located at Lot 6 Block 6 Bangi Industrial Estate, Jalan P/2A, 43000 Bandar Baru Bangi, Selangor D.E., Malaysia. Besglove Medicare Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

102.    Affiliate Besglove Medicare Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via nine 510(k) premarket notifications: K981877 (titled "Nitrile Powder-Free Examination Gloves"); K981878 (titled "Powder-Free Nitrile Examination Gloves (Polymer Coated)"); K981879 (titled "Powdered Nitrile Examination Gloves"); K981673 (titled "Powder-Free Green Nitrile Examination Gloves"); K981674 (titled "Powdered Green Nitrile Examination Gloves"); K981675 (titled "Powder-Free Green Nitrile Examination Gloves (Polymer Coated)"); K980275 (titled "Powder-Free Blue Nitrile Examination Gloves (Polymer Coated)"); K980280 (titled "Powdered Nitrile Examination Gloves (Blue Colour)"); and K980285 (titled "Powder-Free Blue Nitrile Examination Gloves").

103. Affiliate Sri Johani Sdn. Bhd. is an affiliate of Respondent Smart Glove Holdings Sdn. Bhd. Sri Johani Sdn. Bhd. is located at Lot PT 7178 Balakong New Village, Seri Kembangang, 43300 Selangor D.E., Malaysia. Sri Johani Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

104. Affiliate Sri Johani Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via nine 510(k) premarket notifications: K981039 (titled "Powder-Free Green Nitrile Examination Gloves (Polymer Coated)"); K974886 (titled "Powdered Green Nitrile Examination Gloves"); K974887 (titled "Powder-Free Green Nitrile Examination Gloves"); K974183 (titled "Polymer Nitrile Examination Gloves (Blue Colour)"); K974185 (titled "Polymer Nitrile Examination Gloves"); K973903 (titled "Powder-Free Nitrile Examination Gloves (Blue Colour)"); K974182 (titled "Powdered Nitrile Examination Gloves (Blue Colour)"); K973058 (titled "Patient Nitrile Examination Gloves (Powder-Free)"); and K973059 (titled "Patient Nitrile Examination Gloves (Lightly-Powdered)").

105. Affiliate GX Corporation Sdn. Bhd. is an affiliate of Respondent Smart Glove Holdings Sdn. Bhd. GX Corporation Sdn. Bhd. is located at Lot 6487, Batu 5 3/4, Sementa, Jalan Kapar, Klang, 42100 Selangor D.E., Malaysia. GX Corporation Sdn. Bhd. appears to be located at the same address as Respondent Smart Glove Holdings Sdn. Bhd.'s subsidiary Smart Glove Corporation Sdn. Bhd. GX Corporation Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

30

106.    Affiliate GX Corporation Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via two 510(k) premarket notifications: K070097 (titled "Powder-Free Nitrile Examination Gloves, Peppermint Scented, Blue Color") and K070096 (titled "Powder Free Nitrile Examination Gloves, Blue, White, Pink, Black and Gray Color").

## SUPERMAX CORPORATION BHD.

107.    Respondent Supermax Corporation Bhd. is located at Lot 38, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia. Respondent Supermax Corporation Bhd. is the parent corporation of the following subsidiaries: Supermax Latex Products Sdn. Bhd., Supermax Sdn. Bhd., Supermax Glove Industries Sdn. Bhd., Supermax Glove Manufacturing Sdn. Bhd., APL Industries Bhd., Asia Pacific Latex Sdn. Bhd., APL Products Sdn. Bhd., and Supermax, Inc. d/b/a Aurelia Gloves.[4] Through its subsidiaries, Supermax Corporation Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

108.    Subsidiary Supermax Latex Products Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd. Supermax Latex Products Sdn. Bhd. is located at the same address as its parent company: Lot 38, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia. Supermax Latex Products Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use

---

[4] Respondent Supermax Corporation Bhd. is also affiliated with Respondent Seal Polymer Industries Bhd. and Respondent YTY Holdings Sdn. Bhd.'s subsidiary YTY Industry (Manjung) Sdn. Bhd., discussed *supra* and *infra*, respectively.

after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

109.    Subsidiary Supermax Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd. Supermax Sdn. Bhd. is located at Lot 42, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia. Supermax Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

110.    Subsidiary Supermax Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via three 510(k) premarket notifications: K013774 (titled "Chlorinated Powder Free Nitrile Medical Examination Gloves with Aloe Vera"); K993258 (titled "Supergloves, Powder Free Nitrile Examination Gloves"); and K980966 (titled "Supergloves Powdered Nitrile Examination Gloves").

111.    Subsidiary Supermax Glove Industries Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd. Supermax Glove Industries Sdn. Bhd. is located at the same address as the other Supermax Malaysian subsidiaries: Lot 42, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia. Supermax Glove Industries Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

112.    Subsidiary Supermax Glove Manufacturing Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd. Supermax Glove Manufacturing Sdn. Bhd. is located at the same address as the other Supermax Malaysian subsidiaries: Lot 42, Putra

32

Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia. Supermax Glove Manufacturing Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

113. Subsidiary Supermax Glove Manufacturing Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K024083 (titled "Green Powder Free Nitrile Medical Examination Gloves with Peppermint Flavor").

114. Subsidiary APL Industries Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd. APL Industries Bhd. is located at the same address as its parent company: Lot 38, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia. Through its subsidiaries, APL Industries Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

115. Subsidiary Asia Pacific Latex Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd.'s subsidiary APL Industries Bhd. Subsidiary Asia Pacific Latex Sdn. Bhd. is located at Lot 12, Medan Tasek, Tesak Industrial Estate, 31400 Ipoh Perak Darul Ridzuan, Malaysia. Through its subsidiaries, Asia Pacific Latex Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

33

116.     Subsidiary Asia Pacific Latex Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K982274 (titled "Nitrile Patient Examination Glove Powder Free").

117.     Subsidiary APL Products Sdn. Bhd. is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd.'s subsidiary APL Industries Bhd.'s subsidiary Asia Pacific Latex Sdn. Bhd.  Subsidiary APL Products Sdn. Bhd. is located at Lot 8961 and 8964, Batu 19, Jalan Beruas, 31400 Ayer Tawar, Perak, Malaysia.  APL Products Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

118.     Subsidiary Supermax, Inc. d/b/a Aurelia Gloves is a wholly-owned subsidiary of Respondent Supermax Corporation Bhd.  Subsidiary Supermax, Inc. d/b/a Aurelia Gloves is located at 2225 White Oak Circle, Aurora IL 60504.  Supermax, Inc. d/b/a Aurelia Gloves is engaged in the importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

### YEE LEE CORPORATION BHD.

119.     Respondent Yee Lee Corporation Bhd. is located at Lot 85 Jalan Portland, Tasek Industrial Estates, 31400 Ipoh Perak Darul Ridzuan, Malaysia.  Respondent Yee Lee Corporation Bhd. is the parent corporation of the following subsidiaries: Yee Lee Holdings Sdn. Bhd.; Cranberry (M) Sdn. Bhd.; Cranberry USA, Inc.; Multisafe Sdn. Bhd.; Malaytex Products Sdn. Bhd.; and Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.  Through its subsidiaries, Yee Lee Corporation Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale

34

after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

120.    Subsidiary Yee Lee Holdings Sdn. Bhd. is a wholly-owned subsidiary of Respondent Yee Lee Corporation Bhd. Yee Lee Holdings Sdn. Bhd. is located at the same address as its parent company: Lot 85 Jalan Portland, Tasek Industrial Estates, 31400 Ipoh Perak Darul Ridzuan, Malaysia. Yee Lee Holdings Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

121.    Subsidiary Cranberry (M) Sdn. Bhd. is a wholly-owned subsidiary of Respondent Yee Lee Corporation Bhd. Cranberry (M) Sdn. Bhd. is located at the same address as its parent company: Lot 85 Jalan Portland, Tasek Industrial Estates, 31400 Ipoh Perak Darul Ridzuan, Malaysia. Cranberry (M) Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

122.    Subsidiary Cranberry (M) Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K983334 (titled "Nitrile Powder Free Examination Gloves"). Subsidiary Cranberry (M) Sdn. Bhd.'s U.S. agent for service for the FDA is Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.

123.    In the United States, subsidiary Cranberry (M) Sdn. Bhd. does business as Cranberry USA Inc., which is located at 140 Dodd Court, American Canyon, CA 94503. Cranberry (M) Sdn. Bhd. d/b/a Cranberry USA Inc. is engaged in the importation, offer for sale

after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

124.    Subsidiary Mulitsafe Sdn. Bhd. is a wholly-owned subsidiary of Respondent Yee Lee Corporation Bhd.'s subsidiary Cranberry (M) Sdn. Bhd. Subsidiary Multisafe Sdn. Bhd. is located at Lot 764, Bidor Industrial Estate, 35500, Bidor, Perak Darul Ridzu, Malaysia. Subsidiary Mulitsafe Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

125.    Subsidiary Mulitsafe Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via two 510(k) premarket notifications: K001497 (titled "Mulitsafe Powdered Nitrile, Non-Sterile (Blue)") and K001619 (titled "Mulitsafe Powder-Free Nitrile, Non-Sterile Blue").

126.    Subsidiary Malaytex Products, Sdn. Bhd. is a wholly-owned subsidiary of Respondent Yee Lee Corporation Bhd. Malaytex Products, Sdn. Bhd. is located at Lots 67/8 Lorong Senawang 4/1, Senowang Industrial Area, Serem Ban, N. Sembilan, Malaysia 70450. Malyatex Products, Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

127.    Subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. is a wholly-owned subsidiary of Respondent Yee Lee Corporation Bhd. Subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. is located at 140 Dodd Court, American Canyon, CA 94503. Subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. is engaged in the importation, offer for sale after

importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

128.    Subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. has obtained from the United States Patent and Trademark Office three trademark registrations: Registration No. 1618614 for "CRANBERRY" when used for non-sterile disposable examination gloves, Registration No. 1902593 for "REDWOOD" when used for non-sterile disposable latex gloves, and Registration No. 1615579 for "MALAYTEX" when used for non-sterile disposable examination gloves.

## YTY HOLDINGS SDN. BHD.

129.    Respondent YTY Holdings Sdn. Bhd. is located at Lot 2935B, Kg Batu 9 Kebun Baru, Jalan Masjid, 42500 Telok Panglima Garang, Kuala Langat, Selangor D.E., Malaysia. Respondent YTY Holdings Sdn. Bhd. is the parent corporation of the following subsidiaries: YTY Industry Sdn. Bhd. and YTY Industry (Manjung) Sdn. Bhd. Respondent YTY Holdings is also affiliated with Indorama Group Companies and Green Prospect Sdn. Bhd. Through its subsidiaries and affiliates, Respondent YTY Holdings Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

130.    Subsidiary YTY Industry Sdn. Bhd. is a wholly-owned subsidiary of Respondent YTY Holdings Sdn. Bhd. YTY Industry Sdn. Bhd. is located at the same address as its parent company:   Lot 2935B, Kg Batu 9 Kebun Baru, Jalan Masjid, 42500 Telok Panglima Garang, Kuala Langat, Selangor D.E., Malaysia. Subsidiary YTY Industry Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use

after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

131.    Subsidiary YTY Industry Sdn. Bhd. has obtained from the United States Patent and Trademark Office one trademark registration: Registration No. 2931419 for "PU-RITY" when used for latex medical gloves.

132.    Subsidiary YTY Industry (Manjung) Sdn. Bhd. is a subsidiary of Respondent YTY Holdings Sdn. Bhd. Subsidiary YTY Industry (Manjung) Sdn. Bhd. is also partly owned by Respondent Supermax Corporation Bhd. Subsidiary YTY Industry (Manjung) Sdn. Bhd. is located at Lot 1422-1424, Batu 10 Lekir, 32020 Sitiawan, Perak Darul Ridzuan, Malaysia. Subsidiary YTY Industry (Manjung) Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

133.    Subsidiary YTY Industry (Manjung) Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via two 510(k) premarket notifications: K061553 (titled "Non-Sterile, Powder-Free Black Nitrile Examination Gloves") and K052502 (titled "Non-Sterile, Powder-Free Nitrile Blue & White Color, Examination Gloves").

134.    Affiliate Indorama Group Companies is located at Graha Irama, 17th Floor, JL. HR Rasuna Said Blok X-1 Kav 1-2, Jakarta, 12950 Indonesia. Affiliate Indorama Group Companies is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

38

135.  Affiliate Green Prospect Sdn Bhd. is located at Lot 14803 Kawasan Perinustrian, Kampung Acheh, 32000 Sitiawan, Lumut Perak, Malaysia.  Affiliate Green Prospect Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

136.  Affiliate Green Prospect Sdn. Bhd. has obtained from the FDA clearance to market its nitrile gloves within the United States via one 510(k) premarket notification: K031580 (titled "Non-Sterile, Powder-Free, Blue Color Nitrile Examination Gloves").

### ADENNA, INC.

137.  Respondent Adenna, Inc. is located at 12216 McCann Drive, Santa Fe Springs, CA 90670.  Respondent Adenna, Inc. is affiliated with Nitritex, Ltd.  Adenna, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

138.  Affiliate Nitritex, Ltd. is located at the same address as Respondent Adenna, Inc.: 12216 McCann Drive, Santa Fe Springs, CA 90670.  Nitritex, Ltd. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

139.  Respondent Adenna, Inc. has obtained from the United States Patent and Trademark Office approximately seventeen (17) trademark applications/registrations which include, *inter alia*: Registration No. 3066856 for "HANDY GUARD" when used for nitrile gloves and Registration No. 2974604 for "PRECISION" when used for disposable gloves.

140.   Respondent Adenna, Inc. has also registered with the ADA in order to market the following nitrile gloves with the ADA's Seal of Acceptance: Adenna Non-Sterile Nitrile Powder Free Exam Gloves.

## BASIC MEDICAL INDUSTRIES INC.

141.   Respondent Basic Medical Industries Inc. is located at 12390 East End Ave., Chino, CA 91710. Basic Medical Industries Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

## CYPRESS MEDICAL PRODUCTS LLC

142.   Respondent Cypress Medical Products LLC ("Cypress") is located at 1202 South Rt. 31, McHenry, IL 60050, and has an agent, Richard M. Horwood, at 180 N. Lasalle St, Suite 3700, Chicago IL 60601. Cypress is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

143.   Respondent Cypress has obtained from the United States Patent and Trademark Office approximately twenty-nine (29) trademark applications/registrations which include, *inter alia*: Registration No. 2523495 for "MC3" when used for disposable medical gloves, Registration No. 2429170 for "NEXT GENERATION GLOVES" when used for disposable medical gloves, Registration No. 2523418 for "TRILON" when used for disposable medical gloves, and Registration No. 2474832 for "SYNTRILE" when used for disposable medical gloves.

40

### DARBY GROUP COMPANIES, INC.

144.    Respondent Darby Group Companies, Inc. is located at 300 Jericho Quadrangle, Jericho, NY, 11753. Respondent Darby Group Companies, Inc. was the parent corporation of subsidiaries Island Dental Co., Inc. and Darby Dental Supply Co., Inc. Respondent Darby Group Companies, Inc. and its subsidiaries are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

145.    Respondent Darby Group Companies, Inc. has obtained from the United States Patent and Trademark Office approximately forty (40) trademark applications/registrations, twenty-nine (29) of which have been abandoned or cancelled. The remaining live registrations include, *inter alia*: Registration No. 3144989 for "DARBY DENTAL SUPPLY CO." when used for surgical gloves; Registration No. 3144988 for "DL DARBY DENTAL LAB SUPPLY CO." when used for mail order services featuring dental supplies; Registration No. 3132637 for "DL DARBY MEDICAL SUPPLY CO." when used for mail order services featuring pharmaceutical products; and Registration No. 1685952 for "PROTEC-TOP" when used for gloves.

146.    Subsidiary Island Dental Co., Inc. was dissolved in December 2006. While an active corporation, Subsidiary Island Dental Co., Inc. was located at the same address as its parent corporation: 300 Jericho Quadrangle, Jericho, NY, 11753. Subsidiary Island Dental Co., Inc. was engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

147.    Subsidiary Island Dental Co., Inc. had obtained from the United States Patent and Trademark Office approximately four (4) trademark applications/registrations, one of which has been abandoned. The other three registrations have all been assigned to a third party and include

Registration No. 3132635 for "I ISLAND DENTAL CO., INC." when used for mail order services featuring dental products; Registration No. 2395734 for "ISLAND DENTAL CO., INC." when used for distributorship services featuring dental products; and Registration No. 2381254 for "ISLAND DENTAL SUPPLY" when used for distributorships in the field of dental products.

148.    Subsidiary Darby Dental Supply Co., Inc. was dissolved in December 2006. While an active corporation, Subsidiary Darby Dental Supply Co., Inc. was located at the same address as its parent corporation: 300 Jericho Quadrangle, Jericho, NY, 11753.    Subsidiary Darby Dental Supply Co., Inc. was engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

149.    Subsidiary Darby Dental Supply Co., Inc. had obtained from the United States Patent and Trademark Office approximately eight (8) trademark applications/registrations, seven (7) of which have been abandoned or cancelled.    The only remaining live registration is Registration No. 2566165 for "DARBY SPENCER MEAD DENTAL COMPANY" when used for telephone order catalog services featuring dental medicine.

### DASH MEDICAL GLOVES, INC.

150.    Respondent Dash Medical Gloves, Inc. is located at 1018 South 54th St., Franklin, WI 53132 and has an agent, Robert J. Sullivan, at 1018 South 54th St., Franklin, WI 53132. Dash Medical Gloves, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

151.    Respondent Dash Medical Gloves, Inc. has obtained from the United States Patent and Trademark Office eight trademark applications/registrations which include, *inter alia*: Registration No. 3122063 for "HALO" when used for gloves, Registration No. 2037290 for "DASH" when used for disposable medical gloves, and Registration No. 2219641 for "VITAL GARD" when used for latex gloves.

## DELTA MEDICAL SYSTEMS, INC. D/B/A THE DELTA GROUP

152.    Respondent Delta Medical Systems, Inc. d/b/a The Delta Group is located at 6865 Shiloh Road East, Suite 400, Alpharetta, GA 30202.  Respondent Delta Medical Systems, Inc. d/b/a The Delta Group is also affiliated with Delta Medical Supply Group, Inc.  Delta Medical Systems, Inc. d/b/a The Delta Group and its affiliate are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

153.    Affiliate Delta Medical Supply Group, Inc. d/b/a The Delta Group is located at 436 West Gay Street, West Chester, PA 19380.  Affiliate Delta Medical Supply, Inc. d/b/a The Delta Group is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

154.    Respondent Delta Medical Systems, Inc. d/b/a The Delta Group has obtained from the United States Patent and Trademark Office approximately thirteen (13) trademark applications/registrations which include, *inter alia*: Registration No. 3021553 for "POLY-PREP" when used for medical gloves; Registration No. 2824774 for "DELTA" when used for medical gloves; and Registration No. 2824773 for "NITREX" when used for medical gloves.

### DENTEXX/FIRST MEDICA INFECTION CONTROL ASSOCATION

155.    Respondent Dentexx/First Medica Infection Control Assoc. is located at 3704C Boren Dr., Greensboro, NC 27407. Dentexx/First Medica Infection Control Assoc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

### DYNAREX CORP.

156.    Respondent Dynarex Corp. is located at 10 Glenshaw St., Orangeburg, NY 10962. Respondent Dynarex Corp. is the parent corporation of subsidiary Tillotson Healthcare Corp. Dynarex Corp. and its subsidiary are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

157.    Respondent Dynarex Corp. has obtained from the United States Patent and Trademark Office approximately sixteen (16) trademark applications/registrations which include, *inter alia*: Registration No. 2860786 for "TRUE ADVANTAGE" when used for examination gloves, Registration No. 2185120 for "SAFE TOUCH" when used for medical examination gloves, and Registration No. 2825607 for "PRESERVE" when used for examination gloves with aloe vera.

158.    Subsidiary Tillotson Healthcare Corp. is located at 8025 South Willow Street, Manchester, NH 03103. Subsidiary Tillotson Healthcare Corp. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

159.    Subsidiary Tillotson Healthcare Corp. has obtained from the FDA clearance to market its nitrile gloves within the United States via five 510(k) premarket notifications:

44

K011497 (titled "Cymun-NBR Powder Free Blue Nitrile Examination Gloves"); K972009 (titled "Pure Advantage Nitrile Hypoallergenic Surgical Gloves (Prepowdered), Surgical"); K971945 (titled "Pure Advantage Powder Free Nitrile Hypoallergenic Surgical Glove"); K954573 (titled "Pure Advantage Powder Free Nitrile Hypoallergenic"); and K954574 (titled "Pure Advantage Nitrile Hypoallergenic Patient Examination Gloves").

160.   Subsidiary Tillotson Healthcare Corp. has obtained from the United States Patent and Trademark Office approximately twenty-eight (28) trademark applications/registrations which include, *inter alia*: Registration No. 2465184 for "SENSI GRIP" when used for examination gloves for medical, surgical or dental use; Registration No. 1961387 for "ULTRA CARE" when used for latex medical examination gloves; and Registration No. 2621727 for "ACCUTOUCH" when used for medical examination gloves.

### LIBERTY GLOVE AND SAFETY CO.

161.   Respondent Liberty Glove and Safety Co. is located at 433 Cheryl Lane City of Industry, CA 91789, and has an agent for service, Sonia Heh, at 21880 Buckskin Dr., Walnut, CA 91789. Liberty Glove and Safety Co. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

162.   Respondent Liberty Glove and Safety Co. has obtained from the United States Patent and Trademark Office approximately twenty-three (23) trademark applications/registrations which include, *inter alia*: Registration No. 2871779 for "BIOSKIN" when used for nitrile gloves and Registration No. 2564652 for "DURASKIN" when used for nitrile gloves.

45

### MAGLA PRODUCTS LLC

163. Respondent Magla Products LLC is located at 159 South St., PO Box 1934, Morristown, NJ 07960. Magla Products LLC is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

164. Respondent Magla Products LLC has obtained from the United States Patent and Trademark Office approximately eighteen (18) trademark applications/registrations which include, *inter alia*: Registration No. 2897503 for "NYPLEX" when used for medical gloves, Registration No. 2532498 for "HAND HELPERS" when used for protective gloves, and Registration No. 1221765 for "MAGLA" when used for latex gloves.

### PROTECTIVE INDUSTRIAL PRODUCTS, INC.

165. Respondent Protective Industrial Products, Inc. is located at Northeastern Industrial Park, Bldg 4, PO Box 19, Guilderland Center, NY 12085, and an agent for service Germaine Curtin, at 10715 Indian Village Dr., Alpharetta, GA 30022. Protective Industrial Products, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

166. Respondent Protective Industrial Products, Inc. has obtained from the United States Patent and Trademark Office approximately twenty-five (25) trademark applications/registrations which include, *inter alia*: Registration No. 2810366 for "PIP" when used for gloves, Registration No. 3187071 for "G-TEK" when used for protective gloves, Registration No. 2810365 for "AMBI-DEX" when used for gloves, and Registration No. 2734123 for "CLEANTEAM" when used for nitrile gloves.

46

## QRP, INC. D/B/A GRP GLOVES, INC.

167.    Respondent QRP, Inc. d/b/a QRP Gloves, Inc. is located at P.O. Box 28802, Tucson, AZ 85726 and has a registered agent, Daniel J. Quigley, at 2730 E. Broadway #160, Tucson, AZ 85716. Respondent QRP, Inc. d/b/a QRP Gloves, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

168.    Respondent QRP, Inc. d/b/a QRP Gloves, Inc. has obtained from the United States Patent and Trademark Office nine trademark registrations: Registration No. 3205338 for "QUALATRILESENS! THE 'NUDE GLOVE'" when used for protective gloves, Registration No. 3200971 for "QRP GLOVES" when used for protective gloves, Registration No. 2549523 for "QUALAKOTE" when used for protective gloves, Registration No. 2425771 for "QUALATEX" when used for protective gloves, Registration No. 2428883 for "QUALATRILE" when used for protective gloves, Registration No. 2532593 for "QUALATHANE" when used for protective gloves, Registration No. 2025680 for "QRP" when used for protective goods, Registration No. 1749928 for "BIOTEK" when used for protective gloves, and Registration No. 1356400 for "POLYTUFF" when used for gloves.

## TRONEX INTERNATIONAL INC.

169.    Respondent Tronex International Inc. is located at One Tronex Centre, 3 Luger Rd., Denville, NJ 07834. Tronex International Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

170.    Respondent Tronex International Inc. has obtained from the United States Patent and Trademark Office approximately fifteen (15) trademark applications/registrations which

include, *inter alia*: Registration No. 2612826 for "AIR TOUCH" when used for disposable gloves; Registration No. 1669283 for "TRONEX" when used for disposable gloves; and Registration No. 1884798 for "SERVICE TO MANKIND ENERGY INTENSITY FOCUS" when used for disposable gloves.

### WEST CHESTER HOLDINGS, INC.

171. Respondent West Chester Holdings, Inc. is located at 100 Corridor Park Drive, Monrowe, Ohio, 45050. West Chester Holdings, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

172. Respondent West Chester Holdings, Inc. has obtained from the United States Patent and Trademark Office approximately twenty-two (22) trademark applications/registrations which include, *inter alia*: Registration No. 2506379 for "WEST CHESTER" when used for protective gloves, Registration No. 1729023 for "POSIGRIP" when used for protective gloves for industrial use, and Registration No. 2990128 for "GLOVES ON THE GO" when used for disposable gloves.

### III.    THE TECHNOLOGY AND PRODUCTS AT ISSUE

173. The hand gloves at issue are specially made from nitrile butadiene latex rubber elastomeric material formulations as described and claimed in Tillotson's valid and enforceable '616 patent.

174. The patented nitrile gloves are substantially impermeable to water vapor and liquid water, and have a relatively high tensile strength of at least 1500 psi. The nitrile gloves are useful for medical, industrial, and security use.

48

175.    Before the invention embodied in Tillotson's '616 patent, latex gloves made from a variety of elastomers had been in use in various applications. In the industrial community, relatively thick latex gloves were used in hazardous situations to protect the hands of workers. In the medical community relatively thin latex gloves made from natural rubber were often used.

176.    The relatively thick industrial gloves, made from a variety of elastomers, were not designed to be stretched to fit on a worker's hands. Rather, those gloves were hand specific (right hand glove and left hand glove) and were made to fit loosely on the hand.

177.    The relatively thin medical gloves made from natural rubber were designed to fit closely to the hand so that the grip and feel of the hand was maintained. Those natural rubber medical gloves were undersized and were stretched to fit tightly to the hand of medical personnel.

178.    As a result of being stretched to fit tightly on the hand of medical personnel, the natural rubber gloves squeezed the hand and applied pressure to the wearer's hands. During use of the natural rubber latex glove, the pressure applied by the glove was not appreciably relieved until the wearer removed the glove.

179.    The pressure applied by natural rubber latex medical gloves caused discomfort for the wearer and a numbness and fatigue in the hands that could lead to a loss of sensitivity in the hand.

180.    The invention of Tillotson's '616 patent provides an improved thin latex glove which is made from a nitrile butadiene latex elastomer formulation. The glove may be stretched to fit closely about the hand of a wearer but then relaxes within about six minutes after being donned by a wearer to substantially reduce the pressure exerted on the hand. As a result, any numbness or fatigue in the hand is reduced and discomfort for the glove wearer is reduced. The

glove of the invention described and claimed in the '616 patent is more comfortable to wear, especially over long periods of time.

181.    The nitrile glove as described and claimed in the '616 patent is substantially impermeable to water vapor and liquid water, has a relatively high tensile strength of at least about 1500 psi, and has elastic properties such that when the glove is stretched to fit about a wearer's hand it conforms closely to the configuration of the hand and exerts an initial pressure on the hand. Thereafter, while still fitting closely to the hand, the glove relaxes within about six minutes after the glove is stretched to fit about the hand so that the glove exerts on the hand a reduced pressure which is less than about 50% of the initial pressure.

182.    Due to the sensitive and often dangerous work undertaken by latex glove wearers in the medical, industrial, and security industries, there is a strong public policy favoring the creation and protection of technology in these fields of endeavor—such as Tillotson's patented nitrile latex glove technology. The creation and protection of such technology should not be undercut by the importation and sale of unauthorized nitrile latex gloves that utilize Tillotson's patented technology to thereby compete unfairly with Tillotson.

## IV.    THE PATENT AT ISSUE AND NON-TECHNICAL DESCRIPTION OF THE PATENT

183.    Pursuant to Commission Rule 210.12(c), the Complaint includes a certified copy of the '616 patent, submitted as **Exhibit 1**. A certified copy of the U.S. Patent and Trademark Office file history, as well as three (3) additional copies of the file history and applicable pages of each technical reference mentioned in the file histories, are also submitted with this Complaint as **Appendices B and C**, respectively.

50

184.    Tillotson owns, by assignment, all right, title, and interest in and to the '616 patent. Certified copies of the assignment of the '616 patent from the inventors to Tillotson are attached as **Exhibit 2**.

### A.    Identification of the '616 patent and Asserted Claims

185.    United States Letters Patent No. Re. 35,616, entitled "Elastomeric Covering Material and Hand Glove Made Therewith," was reissued on September 30, 1997. The '616 patent expires on May 11, 2010 and is based on United States reissue patent application No. 556,080, filed on November 13, 1995. The '616 patent is a reissue of U.S. Patent No. 5,014,362 which was issued on May 14, 1991.

186.    The '616 patent has twenty-four (24) claims, three of which were deleted during the prosecution of the reissue patent application. A claim chart showing use of claims 1, 17, 18, and 19 of the '616 patent by Tillotson's products is attached as **Exhibit 3**.

### B.    Non-Technical Description of the '616 patent

187.    The '616 patent claims are directed to, *inter alia*, a closely fitting latex glove of nitrile rubber having an initial shape of a hand. The glove is impermeable to water, has a tensile strength of at least about 1500 psi, and is capable of being stretched to fit on the hand of a wearer as the glove is donned.

188.    The glove is stretched to take the shape of a hand when the hand is inserted into the glove to fit snugly around the hand. After insertion of a hand, the glove exerts an initial pressure on the hand and then relaxes within a few minutes to substantially reduce the pressure on the hand while retaining a snug fit on the hand. The patented glove provides the benefits of a tight fitting latex glove while providing increased comfort to the wearer, protection from hazardous materials, avoidance of contact with natural rubber and resulting allergic reactions, and sensitivity in performing delicate tasks.

189.    The closely fitting glove of the '616 patent is distinguishable from prior art gloves in that within a short time (about 6 minutes), the glove relaxes so that the pressure on the wearer's hand is reduced to less than about 50 percent of the initial pressure encountered as the glove is stretched to fit on the hand of the wearer, while still retaining the close-fitting shape of the wearer's hand.

**C.    Foreign Counterparts to the Asserted Patent**

190.    One European patent application (Patent Application No. 91250029.5; Publication No. EP0456333) corresponding to the '616 patent was filed on February 5, 1991. Examination of that application was requested on February 18, 1992. The European patent was granted on May 13, 1998. The annuities for the European patent application were last paid on February 11, 1998 whereupon the patent entered the regional phase and annuity payments continued in the designated countries. The European patent was validated during the regional phase in the United Kingdom (GB-0456333), Belgium (BE-0456333), France (FR-0456333), Germany (DE-69129381.3), Spain (ES-91250029.5), and Italy (IT-0456333). Annuities for these six regional patents were last paid on February 5, 2007. No other foreign counterpart applications corresponding to the '616 Patent have been filed, withdrawn, abandoned or rejected.

**D.    Licenses**

191.    The '616 patent is the subject of 15 license agreements which cover 22 licensees. A list of licensees is attached in **Exhibit 5**. Copies of Tillotson's license agreements are attached in **Confidential Appendix A.**

**V.    UNLAWFUL AND UNFAIR ACTS OF PROPOSED RESPONDENTS –
INFRINGEMENT OF THE '616 PATENT**

192.    Upon information and belief, Respondents manufacture, import, use, offer for sale, and/or sell after importation nitrile gloves that infringe at least claim 1, 17, 18, and 19 of the

'616 patent. Tillotson has obtained and tested numerous nitrile gloves from Respondents and their subsidiaries and affiliates, and has found with regard to each nitrile glove described in section VI infringement of at least one of the claims described and claimed in the '616 patent. See **Exhibit 6**. A claim chart depicting Respondents' infringement of at least claims 1, 17, 18, and 19 is attached at **Exhibit 4**.

## VI.     INSTANCES OF UNFAIR IMPORTATION AND SALE

193.    With regard to the Respondents, Tillotson alleges upon information and belief the following specific instances as representative of unlawful importation and sale of infringing nitrile glove products. Where Tillotson identifies specific instances of obtaining nitrile gloves and the packaging of said gloves, Tillotson has in its possession proof of purchase and packaging available for inspection.

### TOP GLOVE CORPORATION BHD.

194.    Respondent Top Glove Corp. Bhd., through its subsidiaries, is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

195.    Subsidiary Top Glove Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation[5] which show Top Glove Sdn. Bhd. as a

---

[5] Zepol Corporation, along with other companies such as Piers (Port Import Export Reporting Service) and Manifest Journal, obtain U.S. Customs shipping data from bills of lading legally collected under the Freedom of Information Act. Each day, Zepol collects and analyzes *(cont'd)*

Malaysian shipper for numerous consignees in the United States, including:

    (a)    511 Foodservice Ltd.;

    (b)    Abel Unlimited, Inc.;

    (c)    American Healthcare Products, Inc.;

    (d)    Ammex Corp.;

    (e)    Asian Dynamics Group Inc.;

    (f)    Bay Medical Co., Inc.;

    (g)    Boss Manufacturing Co., Inc;

    (h)    Respondent Cypress Medical Products LLC;

    (i)    Respondent Dentexx/First Medical Infection Control Associates, Inc.;

    (j)    Essential Cares;

    (k)    Foodhandler Inc.;

    (l)    Goldmax Industries, Inc.;

    (m)    Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove (USA) Inc.;

    (n)    H & L International, Inc.;

    (o)    Handgards, Inc.;

    (p)    Impact Products, LLC;

    (q)    IMS, Inc.;

    (r)    Innovative Healthcare Corp.;

    (s)    International Sourcing Co., Inc.;

    (t)    LDF Industries, Inc.;

---

approximately 30,000 ocean bills of lading, representing U.S. waterborne import activity with over 200 countries around the world. After collecting and analyzing these bills of lading, Zepol—through its subscription-based TradeIQ™ user interface—provides users complete access to current and historical data encompassing tens of millions of bills of lading. The data accessible from TradeIQ™ date back to January 1, 2003.

(u)    Lowrie & Company Medical Resource, Inc.;

(v)    North Safety Products, Inc.;

(w)    Northern Safety Co., Inc.;

(x)    Respondent Protective Industrial Products, Inc.;

(y)    Richmond Packaging LLC;

(z)    SAS Safety Corp.;

(aa)   Seattle Glove, Inc.;

(bb)   Sentry Medical Products, Inc.;

(cc)   SyrVet Inc.;

(dd)   Respondent Top Glove Corp. Bhd.'s Subsidiary TG Medical (USA) Inc.;

(ee)   The Safety Zone, LLC;

(ff)   Tradex International, Inc.;

(gg)   Respondent Tronex International, Inc.; and

(hh)   Respondent West Chester Holdings, Inc.

196.   Tillotson obtained and evaluated nitrile gloves manufactured by Top Glove Sdn.

Bhd. Specifically, Tillotson obtained from a salesman "NS FlexShield Disposable Nitrile Glove,

Low Powder" brand nitrile gloves, lot number 03220050563, nitrile gloves from Top Glove Sdn.

Bhd.'s United States consignee, Northern Safety Company, Inc. The glove dispenser containing

these gloves reads "Made in Malaysia." According to Zepol data, Northern Safety Company,

Inc. only obtains gloves from one manufacturer—Top Glove Sdn. Bhd. Those gloves were then

evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

197.   In addition, Tillotson purchased and evaluated nitrile gloves manufactured by Top

Glove Sdn. Bhd. Specifically, Tillotson purchased "Dexi-Task Nitrile Powdered Examination

Gloves" brand nitrile gloves, lot number 32202034, from Top Glove Sdn. Bhd.'s United States

55

consignee, North Safety Products. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, North Safety Products only obtains gloves from one Malaysian manufacturer—Top Glove Sdn. Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

198.    Subsidiary TG Medical Sdn Bhd. has manufactured nitrile gloves and imported those nitrile gloves into the United States. Specifically, Tillotson has obtained data from Zepol Corporation which show TG Medical Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

(a)    Boyd Medical & Safety Supplies, Inc.;

(b)    Respondent Cypress Medical Products LLC;

(c)    Foodhandler Inc.;

(d)    Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove (USA) Inc.;

(e)    Impact Products, LLC;

(f)    International Sourcing Co., Inc.;

(g)    Lowrie & Company Medical Resource, Inc.;

(h)    Mexpo International, Inc.;

(i)    Richmond Packaging LLC;

(j)    Respondent Top Glove Corp. Bhd.'s Subsidiary TG Medical (USA) Inc.;

(k)    The Safety Zone, LLC; and

(l)    Respondent Tronex International, Inc.

199.    Tillotson purchased and evaluated nitrile gloves manufactured by TG Medical Sdn. Bhd. Specifically, Tillotson purchased from an online supplier "Hand-Tek Disposable Powder-Free Nitrile Gloves" brand nitrile gloves, lot number 0932017086. These gloves are distributed by TG Medical Sdn. Bhd.'s United States consignee, Boyd Medical & Safety

56

Supplies, Inc.   The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Boyd Medical & Safety Supplies, Inc. only obtains gloves from one Malaysian manufacturer—TG Medical Sdn. Bhd.   Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

200.   Subsidiary Great Glove Sdn. Bhd. has manufactured nitrile gloves and imported those nitrile gloves into the United States.   Specifically, Tillotson has obtained data from Zepol Corporation which show Great Glove Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

(a)    Band-it Rubber Co.;

(b)    Respondent Cypress Medical Products LLC;

(c)    Foodhandler Inc.;

(d)    Goldmax Industries, Inc.;

(e)    Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove (USA) Inc.;

(f)    H & L International, Inc.;

(g)    Handgards, Inc.;

(h)    International Sourcing Co., Inc.;

(i)    Lowrie & Company Medical Resource, Inc.;

(j)    Mexpo International, Inc.;

(k)    Respondent Protective Industrial Products, Inc.;

(l)    Richmond Packaging LLC;

(m)    Seattle Glove, Inc.;

(n)    SyrVet Inc.;

(o)    Respondent Top Glove Corp. Bhd.'s Subsidiary TG Medical (USA) Inc.;

(p)    The Safety Zone, LLC;

(q)     Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Medical;

(r)     Respondent Tronex International, Inc.; and

(s)     Respondent West Chester Holdings, Inc.;

201.     Tillotson purchased and evaluated nitrile gloves manufactured by Great Glove Sdn. Bhd. Specifically, Tillotson purchased from an online supplier "Nitri-Cor Silver Nitrile Disposable Gloves" brand nitrile gloves, lot number 03220291253. These gloves are distributed by Great Glove Sdn. Bhd.'s United States consignee, International Sourcing Co. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, the only gloves International Sourcing Co. obtains from Malaysia come from Respondent Top Glove Corp. Bhd.'s subsidiaries, and Great Glove Sdn. Bhd. represents the most shipments. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

202.     Subsidiary Medi-Flex Limited d/b/a Flexitech Sdn. Bhd. has manufactured nitrile gloves and imported those nitrile gloves into the United States. Specifically, Tillotson has obtained data from Zepol Corporation which show Flexitech Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

(a)     AmerCare, Inc.;

(b)     Best Tex International Inc.;

(c)     Carmichael International Service;

(d)     Colonial Surgical Supply, Inc.;

(e)     HSI Gloves, Inc.;

(f)     Metron Technology Corp.;

(g)     Oak Technical, LLC;

(h)     Perfect Fit Glove Co., LLC;

58

    (i)     PM Gloves, Inc.;

    (j)     Respondent Protective Industrial Products, Inc.;

    (k)    Respondent QRP, Inc. d/b/a QRP Gloves, Inc.;

    (l)     Sentry Medical Products, Inc.;

    (m)   TechNiGlove International, Inc.;

    (n)    TNT Enterprise, Inc.; and

    (o)    Respondent Tronex International, Inc.

203. . Tillotson purchased and evaluated nitrile gloves manufactured by Medi-Flex Limited d/b/a Flexitech Sdn. Bhd. Specifically, Tillotson purchased "Oaktec White Nitrile Gloves Powder Free" brand nitrile gloves, lot number 130NWF6110523M, batch number 1105NWFM024DD and "Oaktec Blue Nitrile Gloves Powder Free" brand nitrile gloves, lot number 224NBT3110523L, both from Flexitech Sdn. Bhd.'s United States consignee, Oak Technical, LLC. Both glove dispensers containing these gloves read "Made in Malaysia." According to Zepol data, Oak Technical, LLC only obtains gloves from one Malaysian manufacturer—Flexitech Sdn. Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

204. In addition, Tillotson purchased and evaluated nitrile gloves manufactured by Flexitech Sdn. Bhd. Specifically, Tillotson purchased "Elastex Powder Free Nitrile Exam Gloves" brand nitrile gloves, lot number 25R0619105, and "Criterion Powder-Free Nitrile Examination Gloves" brand nitrile gloves, lot number 023-M6NF 056, both from an online supplier headquartered in the Unites States. Both glove dispensers containing these gloves read "Made in Malaysia." According to Zepol data, that online supplier headquartered in the United States only obtains gloves from one Malaysian manufacturer—Flexitech Sdn. Bhd. Those nitrile

gloves were then evaluated and found to infringe claims 1, 17, and 18 and claims 1, 17, 18, and 19, respectively, of the '616 patent.

### ANSELL LTD.

205.    Respondent Ansell Ltd., through its subsidiaries, has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

206.    Subsidiary Ansell (Thailand) Ltd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Subsidiary Ansell (Thailand) Ltd. as a Thailand shipper for Respondent Ansell Ltd.'s United States subsidiary Ansell Protective Products, Inc.

207.    Tillotson purchased and evaluated nitrile gloves manufactured for and distributed by Subsidiary Ansell Healthcare Products, LLC. Specifically, Tillotson purchased from an online supplier "Micro-Touch Smooth Nitrile," lot number 05080004FL, style number 6034104. The dispenser containing these gloves uses Respondent Ansell Ltd.'s "MICRO-TOUCH" trademark and reads "Made in Malaysia." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

208.    Tillotson purchased and evaluated nitrile gloves manufactured for and distributed by Subsidiary Ansell Protective Products, Inc. d/b/a Ansell Occupational Healthcare. Specifically, Tillotson purchased from an online supplier "TNT Blue Disposable Nitrile Gloves," lot number 05121429AU, style number 92-675. The dispenser containing these gloves uses

Respondent Ansell Ltd.'s "TNT" trademark and reads "Made in Malaysia." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### BEIJING HUATENG RUBBER PLASTIC

209. Respondent Beijing Huateng Rubber Plastic is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Beijing Huateng Rubber Plastic as a Chinese shipper for United States consignee North Safety Products.

210. Tillotson purchased and evaluated nitrile gloves manufactured by Beijing Huateng Rubber Plastic. Specifically, Tillotson purchased from an online supplier "ChemSoft CE Nitrile Powder-Free Gloves" brand nitrile gloves, lot number 20060117. These gloves are distributed by Beijing Huateng Rubber Plastic's United States consignee, North Safety Products. The glove dispenser containing these gloves reads "Made in China." According to Zepol data, North Safety Products only obtains gloves from one Chinese manufacturer—Beijing Huateng Rubber Plastic. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### GLOVCO (M) SDN. BHD.

211. Respondent Glovco is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Glovco as a Malaysian shipper for numerous consignees in the United States, including:

   (a)   Crosstex International, Inc.;

(b)    Respondent Dash Medical Gloves, Inc.;

(c)    Firstline LLC; and.

(d)    SS White Burs, Inc.

212.    Tillotson purchased and evaluated nitrile gloves manufactured by Glovco. Specifically, Tillotson purchased from an online supplier "Crosstex Left and Right Fitted Nitrile Gloves Powder Free" brand nitrile gloves, lot number 18051012. These gloves are distributed by Glovco's United States consignee, Crosstex International, Inc. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Crosstex International, Inc. only obtains gloves from one Malaysian manufacturer—Glovco. Those nitrile gloves were evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### HARTALEGA HOLDINGS BHD.

213.    Respondent Hartalega Holdings Bhd., through its subsidiaries, has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

214.    Subsidiary Hartalega Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Hartalega Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

(a)    Audra Inc.;

(b)    Bio-Flex International, Inc.;

(c)    Respondent Dash Medical Gloves, Inc.;

(d)    Dermatec Direct;

(e)     Foodhandler Inc.;

(f)     Hourglass Industries, Inc.;

(g)     Innovative Healthcare Corp.;

(h)     Intermed Gloves;

(i)     Medline Industries, Inc.;

(j)     Midavol Protective Products;

(k)     Respondent Hartalega Holdings Bhd.'s Subsidiary Pharmatex USA, Inc.;

(l)     Respondent QRP, Inc. d/b/a QRP Gloves, Inc.; and

(m)     Richmond Packaging LLC.

215.    Tillotson purchased and evaluated nitrile gloves manufactured by Hartalega Sdn. Bhd. Specifically, Tillotson purchased from an online supplier "Bio-Flex Nitrile Powder-Free Examination Gloves" brand nitrile gloves, lot number 0603030170, item number BNT1085. The packaging of these nitrile gloves indicates that they were manufactured by Hartalega in Malaysia. Those gloves were distributed by Hartalega Sdn. Bhd.'s United States consignee, Bio-Flex International, Inc. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Bio-Flex International, Inc. only obtains gloves from one Malaysian manufacturer—Hartalega Sdn. Bhd. Those nitrile gloves were evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

216.    Furthermore, Tillotson obtained and evaluated additional nitrile gloves manufactured by Hartalega Sdn. Bhd. Specifically, Tillotson obtained from a Georgia dental office "Hand-Pro NXgen Nitrile Powder Free Non-Sterile Nitrile Examination Gloves" brand nitrile gloves, lot number 233R05K005. Those gloves were distributed by Hartalega Sdn. Bhd.'s United States consignee, HourGlass Industries, Inc. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, HourGlass Industries, Inc. only obtains

gloves from one Malaysian manufacturer—Hartalega Sdn. Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

217.    Moreover, Tillotson obtained and evaluated additional nitrile gloves manufactured by Hartalega Sdn. Bhd. Specifically, Tillotson obtained from a Georgia dental office "Pharmatex Nitrile Powder Free" brand nitrile gloves, style number NTR22MM, lot number 0602090278. Those gloves were distributed by Hartalega Sdn. Bhd.'s United States subsidiary, Pharmatex USA, Inc. According to Hartalega Holdings Bhd.'s website, Pharmatex is its international brand. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Pharmatex USA, Inc. only obtains gloves from one Malaysian manufacturer—Hartalega Sdn. Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### IDEAL HEALTHCARE GROUP CO. LTD.

218.    Respondent Ideal Healthcare Group Co. Ltd. and its affiliates are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

219.    Respondent Ideal Healthcare Group Co. Ltd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Ideal Healthcare Group Co. Ltd. as a Chinese shipper for numerous consignees in the United States, including:

(a)    Abco Safety;

64

    (b)    AmerCare, Inc.;

    (c)    Chemsafe International Inc.;

    (d)    Chemtech International, LLC;

    (e)    Respondent Cypress Medical Products LLC;

    (f)    Global Glove and Safety Manufacturing, LLC;

    (g)    Innovative Healthcare Corp.; and

    (h)    SyrVet Inc.

220.    Affiliate Ideal Medical Industries Co., Ltd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Affiliate Ideal Medical Industries Co., Ltd. as a Chinese shipper for Global Glove.

221.    Tillotson obtained and evaluated nitrile gloves manufactured by Respondent Ideal Healthcare Group Co. Ltd. and its affiliates. Specifically, Tillotson obtained from a glove sales representative "Powder Free Nitrile Gloves," no lot number, style number 705PF. These gloves are distributed by Respondent Ideal Healthcare Group Co. Ltd. and its affiliate Ideal Healthcare Medical Industries Co., Ltd.'s United States consignee, Global Glove & Safety Manufacturing. The glove dispenser containing these gloves reads "Made in China." According to Zepol data, Global Glove & Safety Manufacturing only obtains gloves from one Chinese manufacturer—Ideal Healthcare Group Co. Ltd. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### JDA (TIANJIN) PLASTIC RUBBER CO. LTD.

222.    Respondent JDA and its affiliates are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

223.    Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent JDA as a Chinese shipper for numerous consignees in the United States, including:

      (a)    Agio Group Inc.;

      (b)    Asia Dynamics Inc.;

      (c)    Atlantis Plastics, Inc.;

      (d)    Respondent Basic Medical Industries Inc.;

      (e)    Central Association for the Blind, Inc.;

      (f)    Respondent Dash Medical Gloves, Inc.;

      (g)    Respondent Delta Medical Systems, Inc.;

      (h)    Respondent JDA (Tianjin) Plastic Rubber Co. Ltd.'s Affiliate Durasafe, Inc.;

      (i)    IMS, Inc.;

      (j)    Innovative Healthcare Corporation;

      (k)    JXJ Labs Inc.

      (l)    Respondent Magla Products LLC;

      (m)    Medgluv Inc.;

      (n)    Norpak Inc.;

      (o)    PDQ Trading Co., Inc.;

      (p)    PSS/World Medical, Inc.;

      (q)    Preventive Care, Inc.;

      (r)    Product Club, Inc.;

(s)    Quantum Labs Inc.;

(t)    Rampart International, Inc.;

(u)    RTS Supply; and

(v)    Respondent JDA (Tianjin) Plastic Rubber Co. Ltd.'s Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc.

224.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent JDA. Specifically, Tillotson purchased from an online supplier "Select Medical Products Powder Free Nitrile Non-Sterile Medical Exam Gloves" brand nitrile gloves, lot number 111005AS. These gloves are distributed by JDA's United States consignee, PSS World Medical, Inc. The glove dispenser containing these gloves reads "Made in China." According to Zepol data, PSS World Medical, Inc. only obtains gloves from one Chinese manufacturer—JDA. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

225.    Furthermore, Tillotson purchased and evaluated additional nitrile gloves manufactured by Respondent JDA. Specifically, Tillotson purchased "SureCare Powder Free Sure-Flex Nitrile Exam Gloves" brand nitrile gloves, lot number LQ2006 from JDA's United States consignee, IMS, Inc. The glove dispenser containing these gloves reads "Made in China." According to Zepol data, IMS, Inc. only obtains gloves from one Chinese manufacturer—JDA. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

226.    Furthermore, Tillotson purchased and evaluated additional nitrile gloves manufactured by Respondent JDA. Specifically, Tillotson purchased from a retailer "Stanley Nitrile Disposable Gloves" brand nitrile gloves, no lot number. These gloves are distributed by JDA's United States consignee, Magla Products, Inc. The glove dispenser containing these

gloves reads "Made in China." According to Zepol data, Magla Products, Inc. only obtains gloves from one Chinese manufacturer—JDA. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

227. Furthermore, Tillotson purchased and evaluated additional nitrile gloves manufactured by Respondent JDA and its affiliate Durasafe, Inc. Specifically, Tillotson purchased from an online supplier "Life Guard Nitrile Exam Gloves," brand nitrile gloves, lot number J1EJ, style number 6304. The dispenser containing these gloves uses Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc.'s "Life Guard" trademark and reads "Made in China for Southern Pacific Coast Corporation." According to Zepol data, Affiliate Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. only obtains gloves from one Chinese manufacturer—JDA and its affiliate at the same address, Durasafe, Inc. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### KOSSAN RUBBER INDUSTRIES BHD.

228. Respondent Kossan Rubber Industries Bhd. and its subsidiaries is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Kossan Rubber Industries Bhd. is a Malaysian shipper to United States consignee Cypress Medical Products Limited for nitrile gloves described and claimed in the '616 patent.

229. Subsidiary Kossan Latex Industries (M) Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the

68

'616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Kossan Latex Industries (M) Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    AmerCare, Inc.;

    (b)    Continental Lab Products;

    (c)    Respondent Cypress Medical Products LLC;

    (d)    Respondent Dynarex Corp.;

    (e)    Econ Disposable Supplies, Inc.;

    (f)    Kemco Supply of Washington Inc.;

    (g)    Respondent Kossan Rubber Industries Bhd.'s Subsidiary Kossan Gloves, Inc. d/b/a Sintex.

    (h)    Lowrie & Co., Inc. d/b/a Medical Resource Inc.;

    (i)    Respondent Magla Products LLC;

    (j)    Metro-Pacifica, LLC;

    (k)    Omni International, LLC;

    (l)    Pro-Stat Inc.; and

    (m)    Shepard Medical Products, Inc.

    230.    Subsidiary Perusahaan Getah Asas Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Perusahaan Getah Asas Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    Action Team Medical;

    (b)    Aero-Med, Ltd.;

    (c)    AmerCare, Inc.;

(d)    Ancin Inc.;

(e)    Respondent Ansell Ltd.'s Subsidiary Ansell Canada Inc.;

(f)    Respondent Ansell Ltd.'s Subsidiary Ansell Healthcare Products LLC;

(g)    A.R. Medicom Inc.;

(h)    Bowers Medical Supply Co.;

(i)    Coast Scientific Inc.;

(j)    Continental Lab Products;

(k)    Respondent Dynarex Corp.;

(l)    Econ Disposable Supplies, Inc.;

(m)    Genuine Glove;

(n)    Glove Center;

(o)    Glove USA, Inc.;

(p)    Golden Pacific Healthcare Products, Inc.;

(q)    Kemco Supply of Washington Inc.;

(r)    Respondent Kossan Rubber Industries Bhd.'s Subsidiary Kossan Gloves, Inc. d/b/a Sintex;

(s)    Lowrie & Co., Inc. d/b/a Medical Resource Inc.;

(t)    Medco Supply Co.;

(u)    Medical Safety Supply;

(v)    Metro-Pacifica LLC;

(w)    Respondent Kossan Rubber Industries Bhd.'s Subsidiary Normandin Pacific Holdings Corp. d/b/a Pacifica;

(x)    Omni International, LLC;

(y)    Pro-Stat Inc.;

(z)    Respondent QRP, Inc. d/b/a QRP Gloves, Inc.;

(aa)    Shepard Medical Product Inc.;

    (bb)    Universal X-Ray Company of Canada; and

    (cc)    Respondent West Chester Holdings, Inc.

231.    Subsidiary Wear Safe (M) Sdn. Bhd., is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Wear Safe (M) Sdn. Bhd. as a Malaysian shipper for United States consignee Econ Disposable Supplies, Inc.

232.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Kossan Rubber Industries Bhd. and its subsidiaries. Specifically, Tillotson purchased "Saf-Care Powder Free Nitrile Exam Gloves" brand nitrile gloves, lot number 01076216 from Respondent Kossan Rubber Industries Bhd.'s United States consignee, Econ Disposable Supplies, Inc. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Econ Disposable Supplies, Inc. only obtains gloves from one Malaysian manufacturer— Kossan Rubber Industries Bhd. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

233.    In addition, Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Kossan Rubber Industries Bhd. Specifically, Tillotson purchased from an online supplier "Powder-Free NitriSoft Non-Latex Nitrile Exam Gloves" brand nitrile gloves, lot number 04036204. These gloves are distributed by Respondent Kossan Rubber Industries Bhd.'s United States subsidiary, Normandin Pacific Holdings Corp. d/b/a Pacifica. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Normandin Pacific Holdings Corp. d/b/a Pacifica only obtains gloves from one Malaysian manufacturer— Kossan

Rubber Industries Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### LAGLOVE (M) SDN. BHD.

234. Respondent Laglove is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Laglove as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    Brightness Corp.;

    (b)    CT International;

    (c)    Digitcare Corp.; and

    (d)    Firstline LLC.

235. Tillotson purchased and evaluated nitrile gloves manufactured by Laglove. Specifically, Tillotson purchased from an online supplier "Defender T by Digitcare Powder Free Nitrile Examination Gloves" brand nitrile gloves, lot number 4F30 212L, item number 6515-01-521-7505. According to Malaysiamanufacturers.com, "Defender" is a Laglove brand name. These gloves are distributed by Laglove's United States consignee, Digitcare Corp. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Digitcare Corp. only obtains gloves from one Malaysian manufacturer—Laglove. Those nitrile gloves were then evaluated and found to infringe at least claims 1 and 19 of the '616 patent.

236. In addition, Tillotson purchased and evaluated nitrile gloves manufactured by Laglove. Specifically, Tillotson purchased from an online supplier "FrontLine FL9-3 by Digitcare Powder-Free Nitrile Examination Gloves" brand nitrile gloves, lot number 6K06 104P, batch number K010206. These gloves are distributed by Laglove's United States consignee,

Digitcare Corp. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Digitcare Corp. only obtains gloves from one Malaysian manufacturer—Laglove. Those nitrile gloves were then evaluated and found to infringe at least claims 1 and 19 of the '616 patent.

## PT MEDISAFE TECHNOLOGIES

237. Respondent PT Medisafe Technologies and its affiliates are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

238. Respondent PT Medisafe Technologies has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent PT Medisafe Technologies as an Indonesian shipper for numerous consignees in the United States, including:

      (a)    Akers Industries, Inc.;

      (b)    Clinical Supply Co.;

      (c)    Respondent Cypress Medical Products LLC;

      (d)    Global Imports USA;

      (e)    Sterigard; and

      (f)    Respondent West Chester Holdings, Inc.

239. Tillotson purchased and evaluated nitrile gloves manufactured by Respondent PT Medisafe Technologies and its affiliates. Specifically, Tillotson purchased from an online supplier "syntrile pf blue next general gloves," brand nitrile gloves, lot number MSF 04-01.

73

These gloves are distributed by Respondent PT Medisafe Technologies' United States consignee Respondent Cypress Medical Products LLC. The dispenser containing these gloves uses Respondent Cypress Medical Products LLC's "SYNTRILE" trademark and reads "Product of Indonesia." According to Zepol data, Cypress Medical Products LLC only obtains gloves from one Indonesian manufacturer—PT Medisafe Technologies. Those gloves were then evaluated and found to infringe claims 1, 17, 18, and 19 of the '616 patent.

## PT SHAMROCK MANUFACTURING CORPORATION

240.    Respondent PT Shamrock Manufacturing Corporation and its subsidiaries has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent PT Shamrock Manufacturing Corporation as an Indonesian shipper for Respondent PT Shamrock Manufacturing Corporation's United States subsidiary Shamrock Manufacturing Company, Inc.

241.    Subsidiary PT Maja Agung Latexindo has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Subsidiary PT Maja Agung Latexindo as an Indonesian shipper for Respondent PT Shamrock Manufacturing Corporation's United States subsidiary Shamrock Manufacturing Company, Inc.

242.    Subsidiary PT Haloni Jane has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has

obtained data from Zepol Corporation which show Subsidiary PT Haloni Jane as an Indonesian

shipper for numerous consignees in the United States, including:

    (a)    Respondent Basic Medical Industries Inc.;

    (b)    Inter Orient Services;

    (c)    Respondent Liberty Glove & Safety Co.;

    (d)    Respondent PT Shamrock Manufacturing Corporation's Subsidiary Shamrock Manufacturing Company, Inc.;

    (e)    Respondent PT Shamrock Manufacturing Corporation's Subsidiary Shamrock Marketing Company, Inc.; and

    (f)    Solid Wing Trading Corp.

243.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent PT

Shamrock Manufacturing Corporation. Specifically, Tillotson purchased from an online supplier

"Shamrock Nitrile Examination Gloves," lot number 51290204. These gloves are distributed by

Respondent PT Shamrock Manufacturing Corporation's United States subsidiary Shamrock

Manufacturing Company, Inc. The glove dispenser containing these gloves reads "Made in

Indonesia." According to Zepol data, Shamrock Manufacturing Company, Inc. only obtains

gloves from one Indonesian manufacturer— PT Shamrock Manufacturing Corporation. Those

gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the

'616 patent.

## RIVERSTONE RESOURCES SDN. BHD.

244.    Respondent Riverstone Resources Sdn. Bhd. is engaged in the manufacture,

importation, sale for importation, offer for sale after importation, sale and/or use after

importation into the United States of nitrile gloves as described and claimed in the '616 patent.

Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent

Riverstone Resources Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    Fisher Scientific Company LLC;

    (b)    Hagemeyer North America;

    (c)    Jabil Global Services;

    (d)    Sierra Scientific, Inc. d/b/a Value-tek; and

    (e)    The Cameron and Barkeley Co.

245.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Riverstone Resources Sdn. Bhd. Specifically, Tillotson purchased "Value-Tek Nitrile 9.5" brand nitrile gloves, lot number 311006, item number VTGNPFX95, from Respondent Riverstone Resources Sdn. Bhd.'s United States consignee Sierra Scientific, Inc. d/b/a Value-Tek. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Sierra Scientific, Inc. d/b/a Value-Tek only obtains gloves from one Malaysian manufacturer—Riverstone Resources Sdn. Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

246.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Riverstone Resources Sdn. Bhd. Specifically, Tillotson purchased "Vallen Powder Free Nitrile Gloves" brand nitrile gloves, lot number 224NBT2070611XL39814 MY, item number VLN4PFXL, from Respondent Riverstone Resources Sdn. Bhd.'s United States consignee Hagemeyer North America. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Hagemeyer North America only obtains gloves from one Malaysian manufacturer—Riverstone Resources Sdn. Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### SEAL POLYMER INDUSTRIES BHD.

247. Respondent Seal Polymer Industries Bhd., through its subsidiary, is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

248. Subsidiary Seal Polymer Industries Sdn. Bhd. is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Seal Polymer Industries Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    AmerCare, Inc.;

    (b)    Respondent Ansell Ltd.'s Subsidiary Ansell Healthcare Products LLC;

    (c)    Respondent Cypress Medical Products LLC;

    (d)    Mayer Laboratories Inc.;

    (e)    Med Express Inc.;

    (f)    Medgluv Inc.;

    (g)    Mexpo International, Inc.;

    (h)    Mydent International Corp.;

    (i)    Pacewell USA Inc.;

    (j)    Preventive Care Inc.;

    (k)    Select Medical Supply Inc.;

    (l)    Strata Medical Inc.; and

    (m)    The Safety Zone, LLC.

249.    Tillotson purchased and evaluated nitrile gloves manufactured by Seal Polymer Industries Sdn. Bhd.. Specifically, Tillotson purchased "Digitex NLX Nitrile Non-Latex Exam Gloves" brand nitrile gloves, lot number 6W01015 from Seal Polymer Industries Sdn. Bhd.'s United States consignee, Mayer Laboratories Inc. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Mayer Laboratories Inc. only obtains gloves from one Malaysian manufacturer—Seal Polymer Industries Sdn. Bhd. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### SMART GLOVE HOLDINGS SDN. BHD.

250.    Respondent Smart Glove Holdings Sdn. Bhd., through its subsidiaries, is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

251.    Subsidiary Smart Glove Corporation Sdn. Bhd. has manufactured nitrile gloves and imported those nitrile gloves into the United States. Specifically, Tillotson has obtained data from Zepol Corporation which show Smart Glove Corporation Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    Expeditors International of Washington.

    (b)    HSI Gloves, Inc.; and

    (c)    Maytex Corp.;

252.    Subsidiary PT Smart Glove Indonesia has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

Specifically, Tillotson has obtained data from Zepol Corporation which show PT Smart Glove Indonesia as an Indonesian shipper for United States consignee Maytex Corporation.

253.    Tillotson purchased and evaluated nitrile gloves manufactured by Subsidiary PT Smart Glove Indonesia.  Specifically, Tillotson purchased from an online supplier "Upperhand Powder Free Nitrile Examination Gloves" brand nitrile gloves, lot number 08R05C005, item number 5850.  These gloves are distributed by PT Smart Glove Indonesia's United States consignee, Maytex Corporation.  The glove dispenser containing these gloves reads "Made in Indonesia."  According to Zepol data, Maytex Corporation only obtains gloves from one Indonesian manufacturer— PT Smart Glove Indonesia.  Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

254.    Affiliate Sri Johani Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Affiliate Sri Johani Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    Alpine Gloves, Inc.; and

    (b)    Respondent QRP, Inc. d/b/a QRP Gloves, Inc.

### SUPERMAX CORPORATION BHD.

255.  Respondent Supermax Corporation Bhd., through its subsidiaries, is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or

79

use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.[6]

256.    Subsidiary Supermax Latex Products Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Supermax Latex Products Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    Respondent Cypress Medical Products LLC;

    (b)    Genuine Glove;

    (c)    Interworld Network Int'l, Inc.;

    (d)    Plak Smacker, Inc.;

    (e)    Saf-T-Gard International, Inc.; and

    (f)    William A. McGinty Company.

257.    Subsidiary APL Products Sdn. Bhd., is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show APL Products Sdn. Bhd. as a Malaysian shipper for United States consignee Greenball Corporation.

258.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Supermax Corporation Bhd. and its subsidiaries. Specifically, Tillotson purchased from an

---

[6] While Tillotson is not formally alleging a copyright violation at this time, Subsidiary Asia Pacific Latex Sdn. Bhd. has infringed Tillotson's copyrights in four photographs created by Tillotson and used on its website by reproducing those photographs on the Asia Pacific Latex Sdn. Bhd. website, www.apl.com.my.

80

online supplier "Aurelia Protégé Nitrile Powder Free Blue Examination Gloves" brand nitrile gloves, lot number S4140028, and "Aurelia 110 Micro-Textured Soft Blue Nitrile Medical Examination Gloves, Powder Free" brand nitrile gloves, lot number S3630019. These gloves are distributed by Respondent Supermax Corporation Bhd.'s United States subsidiary, Supermax, Inc. d/b/a Aurelia Gloves. Both glove dispensers containing these gloves read "Made in Malaysia." According to Zepol data, Supermax, Inc. d/b/a Aurelia Gloves only obtains gloves from one Malaysian manufacturer—Supermax Corporation Bhd. Those nitrile gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 and at least claims 1 and 19, respectively, of the '616 patent.

### YEE LEE CORPORATION BHD.

259.    Respondent Yee Lee Corporation Bhd., through its subsidiaries, is engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

260.    Subsidiary Cranberry (M) Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Subsidiary Cranberry (M) Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

(a)    Almedic;

(b)    Ancin Inc.;

(c)    McCordick Glove & Safety Inc.;

(d)    Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.;

(e)    Prosemedic S.A.;

(f)    Superior Glove Works Ltd..

261.    Tillotson purchased and evaluated nitrile gloves manufactured and distributed by subsidiary Cranberry (M) Sdn. Bhd. d/b/a Cranberry USA, Inc. Specifically, Tillotson purchased from an online supplier "Cranberry Contour Powder Free Nitrile Exam Gloves," lot number 0240405974, item number 3119. The dispenser containing these gloves uses Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.'s "CRANBERRY" trademark and reads "Made in Malaysia." According to Zepol data, Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. only obtains gloves from one Malaysian manufacturer—Cranberry (M) Sdn. Bhd. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

262.    In addition, Tillotson purchased and evaluated nitrile gloves manufactured and distributed by subsidiary Cranberry (M) Sdn. Bhd. d/b/a Cranberry USA, Inc. Specifically, Tillotson purchased from an online supplier "Cranberry Xlim Powder Free Nitrile Exam Gloves," lot number 0248905247. The dispenser containing these gloves uses Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.'s "CRANBERRY" trademark and reads "Made in Malaysia." According to Zepol data, Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. only obtains gloves from one Malaysian manufacturer—Cranberry (M) Sdn. Bhd. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

263.    Furthermore, Tillotson purchased and evaluated additional nitrile gloves manufactured and distributed by subsidiary Cranberry (M) Sdn. Bhd. d/b/a Cranberry USA, Inc. Specifically, Tillotson purchased from an online supplier "Cranberry NSure Powder Free Nitrile

Medical Examination Gloves," lot number 0191903041. The dispenser containing these gloves uses Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc.'s "CRANBERRY" trademark and reads "Made in Malaysia." According to Zepol data, Malaytex USA, Inc. d/b/a Pro2 Solutions, Inc. only obtains gloves from one Malaysian manufacturer—Cranberry (M) Sdn. Bhd. Those gloves were then evaluated and found to infringe at least claims 1 and 19 of the '616 patent.

### YTY HOLDINGS SDN. BHD.

264.    Respondent YTY Holdings Sdn. Bhd., through its subsidiaries and affiliates, has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

265.    Subsidiary YTY Industry Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Subsidiary YTY Industry Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

    (a)    Respondent Adenna, Inc.;

    (b)    Respondent Cypress Medical Products LLC; and

    (c)    Medtexx Partners Inc.

266.    Subsidiary YTY Industry (Manjung) Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Subsidiary YTY

83

Industry Sdn. Bhd. as a Malaysian shipper for numerous consignees in the United States, including:

  (a)    Respondent Adenna, Inc.;

  (b)    Respondent Cypress Medical Products LLC;

  (c)    Designer Care Co., Ltd.;

  (d)    Innovative Healthcare Corporation;

  (e)    Life Science Products;

  (f)    Lifetime Glove Co., Inc.;

  (g)    Med-express Inc.

  (h)    Medline Industries, Inc.;

  (i)    Medtexx Partners Inc.;

  (j)    Mydent International;

  (k)    Pac-kem Value Medical Supply;

  (l)    Preventative Care, Inc.;

  (m)    Primary Products;

  (n)    Respondent Yee Lee Corporation Bhd.'s subsidiary Malaytex USA, Inc. d/b/a Pro 2 Solutions Inc.; and

  (o)    Select Medical Products.

267.    Affiliate Green Prospect Sdn. Bhd. has engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Affiliate Green Prospect Sdn. Bhd. as a Malaysian shipper for United States consignee Respondent Adenna, Inc.

268.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent YTY Holdings Sdn. Bhd. Specifically, Tillotson purchased from an online supplier "Adenna

Nitrile Powder Free Exam Gloves," lot number 002-M6NF 016NT. These gloves are distributed by Respondent YTY Holdings Sdn. Bhd.'s United States consignee, Adenna, Inc. The glove dispenser containing these gloves reads "Made in Malaysia." According to Zepol data, Adenna, Inc. only obtains gloves from one Malaysian manufacturer—YTY Holdings Sdn. Bhd. Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### ADENNA, INC.

269.    Respondent Adenna, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Adenna, Inc. as a United States consignee for the following manufacturers, including:

(a)    Respondent YTY Holdings' Affiliate Green Prospect Sdn. Bhd.;

(b)    Respondent YTY Holdings Sdn. Bhd.'s Subsidiary YTY Industry Sdn. Bhd.; and

(c)    Respondent YTY Holdings Sdn. Bhd.'s Subsidiary YTY Industry (Manjung) Sdn. Bhd.

270.    Affiliate Nitritex, Ltd. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Affiliate Nitritex, Ltd. as a United States consignee for Sri Lanka manufacturer Uti Pership (PVT) Ltd.

271.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent YTY Holdings Sdn. Bhd. and distributed by Respondent Adenna, Inc. Specifically, Tillotson

85

purchased from an online supplier "Adenna Nitrile Powder Free Exam Gloves," lot number 002-M6NF 016NT. The glove dispenser containing these gloves reads "Made in Malaysia." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## BASIC MEDICAL INDUSTRIES INC.

272.    Respondent Basic Medical Industries Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Basic Medical Industries Inc. as a United States consignee for the following manufacturers, including:

(a)    Hongye Plastic Products Co. Ltd.;

(b)    Intco Industrial Co. Ltd.; and

(c)    Respondent JDA (Tianjin) Plastic Rubber Co., Ltd.

273.    Tillotson purchased and evaluated nitrile gloves distributed by Respondent Basic Medical Industries Inc. Specifically, Tillotson purchased from an online supplier "SynGuard Nitrile Examination Gloves," brand nitrile gloves, lot number 0603-206117. The glove dispenser containing these gloves reads "Made in China." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## CYPRESS MEDICAL PRODUCTS LLC

274.    Respondent Cypress Medical Products LLC is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol

Corporation which show Respondent Cypress Medical Products LLC as a United States consignee for the following manufacturers, including:

(a)    Respondent Ideal Healthcare Group Co. Ltd.;

(b)    Respondent PT Medisafe Technologies;

(c)    Respondent Seal Polymer Industries Bhd.'s Subsidiary Seal Polymer Industries Sdn. Bhd.;

(d)    Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove Sdn. Bhd.;

(e)    Respondent Top Glove Corp. Bhd.'s Subsidiary TG Medical Sdn. Bhd.; and

(f)    Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Sdn. Bhd.;

275.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Pt. Medisafe Technologies and distributed by Respondent Cypress Medical Products LLC. Specifically, Tillotson purchased from an online supplier "syntrile pf blue next general gloves," brand nitrile gloves, lot number MSF 04-01. The dispenser containing these gloves uses Respondent Cypress Medical Products LLC's "SYNTRILE" trademark and reads "Product of Indonesia." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## DARBY GROUP COMPANIES, INC.

276.    Respondent Darby Group Companies, Inc. and its subsidiaries are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has visited the following websites owned and managed by Respondent Darby Group Companies: www.islanddental.com and www.darbydental.com. At least the following gloves were offered for sale:

87

(a)     Aurelia 110 Soft Nitrile PF Exam Gloves as manufactured and imported by Respondent SuperMax Corporation Bhd.;

(b)     Aurelia Protege Nitrile Blue PF Exam Gloves as manufactured and imported by Respondent SuperMax Corporation Bhd.;

(c)     Contour PF Nitrile Exam Gloves as manufactured and imported by Respondent Yee Lee Corporation Bhd.;

(d)     Contour Plus PF Nitrile Exam Gloves as manufactured and imported by Respondent Yee Lee Corporation Bhd.;

(e)     Micro-Touch PF Nitrile Gloves as manufactured and imported by Respondent Ansell Ltd.;

(f)     Micro-Touch Nitrile Powder-Free Synthetic Medical Exam Gloves as manufactured and imported by Respondent Ansell Ltd.;

(g)     Nitrile PF with Aloe Gloves as imported by Respondent Dash Medical Gloves, Inc.;

(h)     Synthetic Powder-Free Gloves as imported by Respondent Dash Medical Gloves, Inc.;

(i)     Vitalgard PF Nitrile Gloves as imported by Respondent Dash Medical Gloves, Inc.; and

(j)     Xlim Nitrile Powder Free Exam Gloves as manufactured and imported by Respondent Yee Lee Corporation Bhd.;

277.   Tillotson purchased and evaluated nitrile gloves manufactured and imported by Respondent Ansell Ltd. Those gloves were then evaluated and found to infringe the '616 patent.

278.   Tillotson purchased and evaluated nitrile gloves manufactured and imported by Respondent SuperMax Corporation Bhd.  Those gloves were then evaluated and found to infringe the '616 patent.

279.   Tillotson purchased and evaluated nitrile gloves manufactured and imported by Respondent Yee Lee Corporation Bhd. Those gloves were then evaluated and found to infringe the '616 patent.

280.    Tillotson purchased and evaluated nitrile gloves imported by Respondent Dash Medical Gloves, Inc. Those gloves were then evaluated and found to infringe the '616 patent.

### DASH MEDICAL GLOVES, INC.

281.    Respondent Dash Medical Gloves, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Dash Medical Gloves Inc. as a United States consignee for the following manufacturers, including:

(a)    Respondent Glovco (M) Sdn. Bhd.

(b)    Respondent Hartalega Holdings Bhd.'s Subsidiary Hartalega Sdn. Bhd.; and

(c)    Respondent JDA (Tianjin) Plastic Rubber Co., Ltd.;

282.    Tillotson obtained and evaluated nitrile gloves by Respondent Dash Medical Gloves, Inc. Specifically, Tillotson obtained from a Georgia dentist's office "Dash VitalGard Nitrile PF," brand nitrile gloves, no lot number. The dispenser containing these gloves uses Respondent Dash Medical Gloves, Inc.'s "VITALGARD" trademark and reads "Made in China." Those gloves were then evaluated and found to infringe at least claims 1 and 19 of the '616 patent.

### DELTA MEDICAL SYSTEMS, INC. D/B/A THE DELTA GROUP

283.    Respondent Delta Medical Systems, Inc. d/b/a The Delta Group and its affiliate are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.

89

284.    Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Delta Medical Systems, Inc. as a United States consignee for Chinese manufacturer Respondent JDA (Tianjin) Plastic Rubber Co., Ltd.

285.    Tillotson obtained and evaluated nitrile gloves distributed by Respondent Delta Medical Systems, Inc. d/b/a The Delta Group and its affiliate. Specifically, Tillotson obtained from a Georgia dentist's office "Nitrex Powder Free Nitrile Exam Gloves," brand nitrile gloves, lot number DYSH15315-4. The dispenser containing these gloves uses Respondent Delta Medical Systems, Inc. d/b/a The Delta Group and its affiliates' "NITREX" trademark and reads "Made in China." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## DENTEXX/FIRST MEDICA INFECTION CONTROL ASSOCIATION

286.    Respondent Dentexx/First Medica Infection Control Association is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Dentexx/First Medica Infection Control Association as a United States consignee for Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Sdn. Bhd.

287.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Sdn. Bhd. and distributed by Respondent Dentexx/First Medica Infection Control Association. Specifically, Tillotson purchased from an online supplier "Dentexx Nitrile Powder Free," brand nitrile gloves, lot number 422360321, reorder number Den 3500 PF. The glove dispenser containing these gloves reads "Made in

Malaysia." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### DYNAREX CORP.

288.  Respondent Dynarex Corp. and its affiliate are engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Dynarex Corp. as a United States consignee for the following manufacturers, including:

   (a)    Respondent Kossan Rubber Industries Bhd.'s Subsidiary Perusahaan Getah Asas Sdn. Bhd.;

   (b)    Ningbo Tianshun Rubber Products Co.; and

   (c)    Shijazhuang Tillotson Healthcare Products Co. Ltd.

289.  Tillotson purchased and evaluated nitrile gloves distributed by Respondent Dynarex Corp.  Specifically, Tillotson purchased from an online supplier "Safe-Touch Powder-Free Nitrile Examination Gloves," brand nitrile gloves, lot number 18235.  The dispenser containing these gloves uses Respondent Dynarex Corp.'s "SAFE TOUCH" trademark and reads "Made in China." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### LIBERTY GLOVE AND SAFETY CO.

290.  Respondent Liberty Glove and Safety Co. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Liberty Glove and Safety Co. as a United States consignee for the following manufacturers, including:

(a)    Hongye Plastic Products Co. Ltd.;

(b)    Sheen Moore Enterprises Co. Ltd.; and

(c)    Shijazhuang Eversharp Plastic Products Co. Ltd.

291.    Tillotson purchased and evaluated nitrile gloves distributed by Respondent Liberty Glove and Safety Co. Specifically, Tillotson purchased from an online supplier "DuraSkin Pre-Powdered Nitrile Disposable Gloves," brand nitrile gloves, lot number 122004. The dispenser containing these gloves uses Respondent Liberty Glove and Safety Co.'s "DURASKIN" trademark and reads "Made in Taiwan." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### MAGLA PRODUCTS LLC

292.    Respondent Magla Products LLC is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Magla Products LLC as a United States consignee for the following manufacturers, including:

(a)    Respondent Kossan Rubber Industries Bhd.'s Subsidiary Kossan Latex Industries (M) Sdn. Bhd.; and

(b)    Respondent JDA (Tianjin) Plastic Rubber Co., Ltd.

293.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent JDA (Tianjin) Plastic Rubber Co., Ltd. and distributed by Respondent Magla Products LLC. Specifically, Tillotson purchased from a retailer "Stanley Nitrile Disposable Gloves," brand nitrile gloves, no lot number. The glove dispenser containing these gloves reads "Made in China." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

92

## PROTECTIVE INDUSTRIAL PRODUCTS, INC.

294. Respondent Protective Industrial Products, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Protective Industrial Products, Inc. as a United States consignee for the following manufacturers, including:

    (a)    Bright Way Holdings Sdn. Bhd.;

    (b)    Cross Pacific Enterprise Co. Ltd.;

    (c)    Li An Safety Products Corp.

    (d)    Shanghai Champion Plastic Products Co., Ltd.;

    (e)    Shijiazhuang Hongxin Medical Products Co. Ltd.;

    (f)    Shanghai Knitwear Import & Export Co., Ltd.; and

    (g)    Respondent Top Glove Corp. Bhd.'s Subsidiary Medi-Flex Limited d/b/a Flexitech Sdn. Bhd.

295. Tillotson purchased and evaluated nitrile gloves distributed by Respondent Protective Industrial Products, Inc. Specifically, Tillotson purchased from an online supplier "Ambi-Dex Powder Free Disposable Nitrile Gloves," brand nitrile gloves, lot number 051011. The dispenser containing these gloves uses Respondent Protective Industrial Products, Inc.'s "AMBI-DEX" trademark and reads "Made in China." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

## QRP, INC. D/B/A QRP GLOVES, INC.

296. Respondent QRP, Inc. d/b/a QRP Gloves, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol

93

Corporation which show Respondent QRP, Inc. d/b/a QRP Gloves, Inc. as a United States consignee for the following manufacturers, including:

> (a)    Contract Latex Dippers Sdn. Bhd.
>
> (b)    Respondent Hartalega Holdings Bhd.'s Subsidiary Hartalega Sdn. Bhd.;
>
> (c)    Honyee Enterprise Co. Ltd.;
>
> (d)    Respondent Kossan Rubber Industries Bhd.'s Subsidiary Perusahaan Getah Asas Sdn. Bhd.;
>
> (e)    Respondent Smart Glove Holdings Sdn. Bhd.'s Subsidiary Sri Johani Sdn. Bhd.; and
>
> (f)    Respondent Top Glove Corp. Bhd.'s Subsidiary Medi-Flex Limited d/b/a Flexitech Sdn. Bhd.

297.  Tillotson purchased and evaluated nitrile gloves distributed by Respondent QRP, Inc. d/b/a QRP Gloves, Inc.    Specifically, Tillotson purchased from an online supplier "Qualatrile XC White," brand nitrile gloves, lot number LF 030512. The dispenser containing these gloves uses Respondent QRP, Inc. d/b/a QRP Gloves, Inc.'s "QUALATRILE" trademark and reads "Malaysia." Those gloves were then evaluated and found to infringe at least claim 1 of the '616 patent.

### TRONEX INTERNATIONAL INC.

298.  Respondent Tronex International Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent.  Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent Tronex International Inc. as a United States consignee for the following manufacturers, including:

> (a)    Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove Sdn. Bhd.;

    (b)    Respondent Top Glove Corp. Bhd.'s Subsidiary Medi-Flex Limited d/b/a Flexitech Sdn. Bhd.;

    (c)    Respondent Top Glove Corp. Bhd.'s Subsidiary TG Medical Sdn. Bhd.; and

    (d)    Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Sdn. Bhd.

299.    Tillotson purchased and evaluated nitrile gloves manufactured by Respondent Top Glove Corp. Bhd. and distributed by Respondent Tronex International Inc. Specifically, Tillotson purchased from an online supplier "Tronex Nitrile Powder Free Exam Gloves," brand nitrile gloves, lot number 224NBT2110513L, code number 9010-30. The dispenser containing these gloves uses Respondent Tronex International Inc.'s "TRONEX" and "SERVICE TO MANKIND ENERGY INTENSITY FOCUS" trademarks and reads "Made in Malaysia." Those gloves were then evaluated and found to infringe at least claims 1, 17, 18, and 19 of the '616 patent.

### WEST CHESTER HOLDINGS, INC.

300.    Respondent West Chester Holdings, Inc. is engaged in the importation, offer for sale after importation, sale and/or use after importation into the United States of nitrile gloves as described and claimed in the '616 patent. Specifically, Tillotson has obtained data from Zepol Corporation which show Respondent West Chester Holdings, Inc. as a United States consignee for the following manufacturers, including:

    (a)    Respondent Kossan Rubber Industries Bhd.'s Subsidiary Perusahaan Getah Asas Sdn. Bhd.;

    (b)    Respondent PT Medisafe Technologies;

    (c)    Respondent Top Glove Corp. Bhd.'s Subsidiary Great Glove Sdn. Bhd.; and

    (d)    Respondent Top Glove Corp. Bhd.'s Subsidiary Top Glove Sdn. Bhd.

301.   Tillotson obtained and evaluated nitrile gloves distributed by Respondent West Chester Holdings, Inc.   Specifically, Tillotson obtained from a glove sales representative "PosiShield Powdered Blue Nitrile Gloves," brand nitrile gloves, lot number 032257114, style number 2900. The glove dispenser containing these gloves reads "Made in: Malaysia." Those gloves were then evaluated and found to infringe at least claims 1, 17, and 18 of the '616 patent.

## VII.   HTS CLASIFICATION

302.   Tillotson believes that the nitrile gloves subject to this complaint are classifiable under the following headings and subheadings of the Harmonized Tariff Schedule ("HTS") of the United States:

| Product | HTS Nos. |
|---|---|
| Disposable Nitrile Medical Use Grade Gloves | 4015.19.0550 |
| Disposable Nitrile Industrial Use Grade Gloves | 4015.19.1010 |

## VIII.   RELATED LITIGATION

303.   The '616 patent has been the subject of 13 related litigations, 6 of which are still active. These lawsuits include:

304.   On February 26, 1999, Tillotson filed a complaint against Safeskin in the United States District Court for the Northern District of Georgia (hereafter "N.D. Ga.") for infringement of the '616 patent.   Tillotson Corporation d/b/a Best Manufacturing Company v. Safeskin Corporation, et. al., No. 4:99-cv-00054. The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction. This case was dismissed in view of the settlement on January 5, 2000.

305.   On August 27, 2002, Tillotson filed a complaint against Sempermed USA in the N.D. Ga. for infringement the '616 patent. <u>Tillotson Corp. v. Sempermed USA, Inc.,</u> No. 4:02-cv-00199.  The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction. This case was dismissed in view of the settlement on April 16, 2004.

306.   On August 27, 2002, Tillotson filed a complaint against High Five Products, Inc., Medline Industries, Inc., and Shen-Wei (USA), Inc. in the N.D. Ga. for infringement of the '616 patent. <u>Tillotson Corporation d/b/a Best Manufacturing Company. v. High Five Products, et. al.,</u> No. 4:02-cv-00200.  Defendant High Five Products, Inc., entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction.  The case against defendant High Five Products, Inc. was dismissed in view of the settlement on January 9, 2004.  In addition, defendants Medline Industries, Inc., Shen-Wei (USA), Inc., and additional defendant Zhangjigang Dayu Rubber Products Co., Ltd., entered into Settlement Agreements in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting consent injunctions.  The case against defendants Medline Industries, Inc., Shen-Wei (USA), Inc., and Zhangjigang Dayu Rubber Products Co., Ltd. was dismissed in view of the settlement on December 6, 2004.

307.   On November 7, 2002, Tillotson filed a compliant against Omni International, LCC, and Omnigrace (Thailand) Ltd. in the N.D. Ga. for infringement of the '616 patent. <u>Tillotson Corp. d/b/a Best Manufacturing Company v. Omni Intl, LLC and Omnigrace (Thailand) Ltd.,</u> No. 4:02-cv-00261-HLM.  Defendant Omni International, LCC entered into a

Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction. The case against defendant Omni International, LCC was dismissed in view of the settlement on May 27, 2004. Tillotson filed a motion for summary judgment against defendant Omnigrace (Thailand) Ltd. on March 3, 2005. Omnigrace (Thailand) Ltd. failed to respond to Tillotson's motion for summary judgment even after two court orders directing Omnigrace to do so. Omnigrace (Thailand) Ltd. also failed to respond to Tillotson's requests for admissions served on Omnigrace December 23, 2003. The court found that by failing to respond, Omnigrace (Thailand) Ltd. admitted Tillotson's requests for admissions, and therefore found Omnigrace (Thailand) Ltd. liable for infringing the '616 patent. The court entered a permanent injunction against Omnigrace (Thailand) Ltd. on April 12, 2006, and awarded substantial damages to Tillotson thereafter.

308.    On November 17, 2004, Tillotson filed a complaint against Ammex Corporation in the N.D. Ga. alleging infringement of the '616 patent. Tillotson Corporation d/b/a Best Manufacturing Company v. Ammex Corporation, No. 4:04-cv-00286. The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction. This case was dismissed in view of the settlement on June 14, 2005.

309.    On April 2, 2004, Tillotson filed a complaint against Microflex Corporation in the N.D. Ga. alleging infringement of the '616 patent. Tillotson Corp. v. Microflex Corp., No. 4:04-cv-00091. The matter was voluntarily refiled on four occasions while the parties negotiated a settlement. On June 24, 2005 the defendant entered into a license agreement, admitting to the validity of the '616 patent, and admitting to infringement of the '616 patent. The final action, Tillotson Corp. d/b/a Best Manufacturing Company v. Microflex Corp., No. 4:05-cv-00077, was

voluntarily dismissed by Tillotson effective July 18, 2005 in view of the license agreement between Tillotson and Microflex.

310.    On June 7, 2005, Tillotson filed a complaint against Shijiazhaung Hongray Plastic Products, Ltd., Gloveco, Inc., SAS Safety Corp., Permatex, Inc., AmerCare, Inc., Island Dental Co., Inc., and Darby Dental Supply Co. in the N.D. Ga. alleging infringement of the '616 patent. Tillotson Corporation d/b/a Best Manufacturing Company v. Shijiazhaung Hongray Plastic Products, Ltd., et. al., No. 4:05-cv-00118. Defendants Shijiazhaung Hongray Plastic Products, Ltd., Gloveco, Inc., SAS Safety Corp., Permatex, Inc., and AmerCare, Inc., entered into Settlement Agreements in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting consent injunctions. The case against defendants Shijiazhaung Hongray Plastic Products, Ltd. and Gloveco, Inc. was dismissed in view of the settlement on February 22, 2006; the case against SAS Safety Corp. was dismissed on June 6, 2006; the case against Permatex, Inc., was dismissed on March 24, 2006; and the case against AmerCare, Inc., was dismissed on May 18, 2006. The actions involving defendants Island Dental and Darby Dental Supply Co. (now, Darby Group Companies, Inc.) are currently the subject of on-going litigation involving the infringement of the '616 patent as alleged herein.

311.    On November 1, 2005, Tillotson filed a complaint against Top Glove Sdn. Bhd., TG Medical Sdn. Bhd., and TG Medical (USA), Inc. in the N.D. Ga. alleging infringement of the '616 patent. The complaint was later amended to add Top Glove Corp. Bhd. as a defendant. Tillotson Corporation d/b/a Best Manufacturing Company v. Top Glove SDN. BHD, et. al., No. 4:05-cv-00232. Defendant TG Medical (USA) answered June 9, 2006, and the other defendants have moved to dismiss for lack of personal jurisdiction. Jurisdictional discovery is currently underway in this case.

312. On November 7, 2005, Tillotson filed a complaint against West Chester Holdings Co. in the N.D. Ga. alleging infringement of the '616 patent. <u>Tillotson Corporation d/b/a Best Manufacturing Company v. West Chester Holdings, Inc.</u>, No. 4:05-cv-00235. The defendant has agreed to settle in this case, admitting to infringement of the '616 patent, and voluntarily agreeing to a consent injunction. The settlement agreement is in the process of being executed.

313. On July 12, 2006, Tillotson filed a complaint against Tradex International in the N.D. Ga. alleging infringement of the '616 patent. <u>Tillotson Corporation v. Tradex International, Inc.</u>, No. 4:06-cv-00167. The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction. The case has not yet been dismissed.

314. On July 12, 2006, Tillotson filed a complaint against The Safety Zone in the N.D. Ga. alleging infringement of the '616 patent. <u>Tillotson Corporation d/b/a Best Manufacturing Company v. The Safety Zone</u>, No. 4:06-cv-00168. The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction. The case has not yet been dismissed.

315. On July 12, 2006, Tillotson filed a complaint against Global Glove in the N.D. Ga. for infringement of the '616 patent. <u>Tillotson Corporation d/b/a Best Manufacturing Company v. Global Glove</u>, No. 4:06-cv-00169. The defendant entered into a Settlement Agreement in this case, admitting to the validity of the '616 patent, admitting to infringement of the '616 patent, and voluntarily accepting a consent injunction. This case was dismissed in view of the settlement on February 26, 2007.

316.    On August 25, 2006, Ansell Healthcare Products LLC filed a complaint against Tillotson in the United States District Court for the District of Delaware, which alleges that Ansell does not infringe the '616 patent.    Ansell HealthCare Products LLC v. Tillotson Corporation, No. 1:06-cv-00527. Currently, the case is in discovery.

317.    On February 20, 2007, Ansell Protective Products Inc. filed a complaint against Tillotson in the United States District Court for the District of Delaware, which alleges that Ansell does not infringe the '616 patent.    Ansell Protective Products Inc. v. Tillotson Corporation, No. 1:07-cv-93. Discovery has not yet begun in this case.

IX.    DOMESTIC INDUSTRY RELATING TO THE '616 PATENT

318.    Tillotson has an existing domestic industry in the United States as defined under Section 337(a)(3).    Tillotson has made significant investment in plant and equipment in the United States, employs a significant amount of labor and capital, and invests substantially in the exploitation of the '616 patented technology through manufacturing, research, development, licensing, engineering, production, product development, testing, and quality control.

(1)    Significant Investment in Plant and Equipment

319.    Tillotson produces nitrile gloves that exploit the '616 patent at facilities located in Fayette, Alabama.    As set forth in the domestic industry declaration, the Fayette facility is dedicated to production of the patented nitrile glove.    See **Confidential Exhibit 7**. Tillotson previously had other production facilities which were dedicated to such production, in Moss Point, Mississippi; Fall River, Massachusetts; and Johnson City, Tennessee, but such facilities were forced to close in the last few years due to importation of the unfairly traded nitrile glove products.

### (2)    Significant Employment of Labor or Capital

320.    Tillotson employs significant labor and capital in connection with the '616 patent. The number of Tillotson employees at the Fayette facility involved in the manufacture of nitrile gloves that exploit the '616 patent is set forth in the domestic industry declaration at **Confidential Exhibit 7.** These employees work twelve hour shifts three days a week. The plant itself operates seven days a week, 350-355 days a year. The number of gloves produced by the plant which are covered by the '616 patent is set forth in **Confidential Exhibit 7.**

321.    Tillotson had a significantly larger number of employees at its other plants engaged in the manufacture of such gloves until those plants were forced to close due to imports of the unfairly traded nitrile glove products.

322.    Tillotson also has employees involved in licensing the '616 patent.    These employees devote considerable amounts of time to negotiating licensing agreements, maintaining licenses, and enforcing license agreements. See **Confidential Exhibit 7.**

323.    Tillotson has additional employees engaged in research and development activities in the United States related to the patented nitrile glove technology.

324.    Tillotson has made significant investments of capital in the United States to develop and exploit the technology covered by the '616 patent including significant investments in the Fayette, Alabama plant and other plants. These investments are set forth in **Confidential Exhibit 7.**

### (3)    Substantial Investment in Exploitation of the '616 Patent

325.    Tillotson has an extensive licensing program and invests a significant amount of time and money to negotiate and enforce license agreements. Tillotson has filed lawsuits in an

attempt to protect the patented technology, and has invested heavily in patent litigation. Tillotson currently has 15 license agreements consisting of 22 licensees for its nitrile gloves.

326.    As set forth in the domestic industry declaration at **Confidential Exhibit 7**, Tillotson has invested a substantial amount of time and money for research and development in the United States to develop the technology claimed in the '616 patent.

327.    Tillotson has invested significantly in the technology described and claimed in the '616 patent, including product development, manufacturing technology, manufacturing machines, product marketing, compliance testing, customer support, and applications engineering. See **Confidential Exhibit 7**.

## X.    GENERAL EXCLUSION ORDER

328.    There is a widespread pattern of violation of 19 U.S.C. § 1337, and it is difficult to identify all the sources of infringing nitrile glove products.

329.    There is a widespread pattern of unauthorized use of the patented nitrile glove invention. A substantial number of entities worldwide manufacture infringing nitrile gloves and cause such goods to be imported into the United States. In this Complaint, Tillotson has identified those entities about which it has substantial evidence of importation of infringing nitrile gloves into the United States. On information and belief, other entities are capable of shifting, at minimum expense, a substantial amount of their production of hand gloves made with other types of elastomeric materials to hand gloves made with a nitrile butadiene elastomer formulation as described and claimed in the '616 patent for importation into the United States.

330.    Business conditions exist in the United Sates such that foreign manufacturers other than the named respondents may enter the market with infringing nitrile glove products.

On information and belief, Tillotson is aware that demand in the United States for such nitrile glove products has increased substantially over the last few years and is continuing to increase.

331.    There is essentially a world-wide supply of raw materials, for nitrile glove manufacturers, made by multi-national chemical companies. In addition, labor costs are a significant part of the overall cost of production of a nitrile glove, and labor costs in the markets from which the infringing products are largely derived (China, Malaysia, Thailand , among others) are much lower than in the United States. As a result, there is a significant likelihood that more infringers will enter this market if a General Exclusion Order is not entered.

332.    Entry into the market for nitrile gloves is relatively easy due, in part, to the ease of manufacturing infringing nitrile glove products. There are a large number of manufacturers in Asia who have the capacity to convert existing manufacturing facilities to the manufacture of infringing nitrile gloves. The cost to do so, particularly for those companies that already have rubber product manufacturing capability, is not high. The cost of entry, even with respect to building new facilities is not high, compared to the very large demand for infringing nitrile gloves. On information and belief, the startup costs for manufacturing substantial quantities of infringing nitrile gloves is relatively modest.

333.    Marketing and distribution networks for nitrile gloves are available to foreign manufacturers. Many large distributors exist in the United States who can and already do handle infringing nitrile glove products. Distributors that are buying product from Tillotson and from its licensed manufacturers are solicited regularly to buy competing, infringing non-licensed nitrile glove products from non-licensed manufacturers.

334.    In addition, infringing nitrile glove products, including those of respondents, are regularly offered for sale and sold via the Internet. In addition to respondents' websites,

infringing nitrile gloves are offered for sale and sold via the websites of distributors and retailers of specialty health-care and industrial products.

335.    There are already a large number of known respondent/manufacturers and these respondents can readily change importers. In the case of respondent importers, they can readily change foreign suppliers. Because of the importation activity of the known respondents, as well as the activity of those infringers not readily identifiable, and because the identification of many of such infringers is difficult, if not impossible, to determine, a General Exclusion Order is necessary to protect Tillotson's patent rights.

XI.    RELIEF

WHEREFORE, by reason of the foregoing, Complainant requests that the United States International Trade Commission:

A.    Institute an immediate investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to Respondents' violations of Section 337 based on the importation into the United States, use within the United States, offer for sale within the United States, and/or sale within the United States after importation of nitrile gloves that infringe at least claims 1, 17, 18, and 19 of United States Patent No. RE 35,616;

B.    Schedule and conduct a hearing on permanent relief pursuant to 19 U.S.C. § 1337(d) and (f) of the Tariff Act of 1930, as amended;

C.    Issue a permanent General Exclusion Order pursuant to 19 U.S.C. § 1337(d), excluding from entry into the United States nitrile gloves as described and claimed in United States Patent No. RE 35,616;

D.     Issue a permanent Limited Exclusion Order specifically directed to each named Respondent and its affiliates, pursuant to 19 U.S.C. § 1337(d), excluding from entry into the United States nitrile gloves as described and claimed in United States Patent No. RE 35,616;

E.     Issue a permanent cease and desist order pursuant to 19 U.S.C. § 1337(f), prohibiting each Respondent and its related companies from engaging in the importation, the use, the offering for sale, the sale after importation, or otherwise transferring within the United States, nitrile gloves as described and claimed in United States Patent No. RE 35,616; and

F.     Issue such other and further relief as the Commission deems just and proper under the law, based upon the facts determined by the investigation and the authority of the Commission.

Respectfully submitted,

Gilbert B. Kaplan, Esquire
Jeffrey M. Telep, Esquire
Taryn L. Koball, Esquire
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006-4706
(202) 737-0500

Counsel for Complainant
TILLOTSON CORPORATION

OF COUNSEL:

Anthony M. Askew, Esquire
Katrina M. Quicker, Esquire
Jason M. Pass, Esquire
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
(404) 572-4600

106

## VERIFICATION OF TILLOTSON CORPORATION

I, Rick Tillotson, for and on behalf of Tillotson Corporation d/b/a Best Manufacutring Company ("Tillotson"), declare as follows:

1.     I am duly authorized to execute this verification on behalf of Tillotson;

2.     I have read Tillotson's VERIFIED COMPLAINT UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED, and am familiar with the allegations and statements contained therein;

3.     To the best of my knowledge, information, and belief, formed after inquiry reasonable under the circumstances, the allegations and statements made in the Complaint are well-grounded in fact and are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and

4.     The Complaint is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase the cost of the investigation.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed this 25th day of May, 2007.

Respectfully submitted,

*Rick Tillotson*

Rick Tillotson

Tillotson Corporation

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

TILLOTSON CORPORATION,
d/b/a    BEST    MANUFACTURING
COMPANY

        Plaintiff,

                          CIVIL ACTION FILE

v.

                          NO. 4:05-cv-232 RLV

TOP GLOVE SDN. BHD.; TG MEDICAL
SDN. BHD.; TG MEDICAL (USA), INC., and
TOP GLOVE CORP. BHD.

        Defendants.

## ORDER TO STAY OF PROCEEDINGS

      For good cause shown and since the motion is unopposed, pursuant to 28

U.S.C. § 1659, this action against Defendants Top Glove Sdn. Bhd., TG Medical Sdn.

Bhd., TG Medical (USA), Inc., and Top Glove Corp. Bhd. (collectively "Defendants")

is stayed until the related proceedings before the United States International Trade

Commission.

      IT IS HEREBY ORDERED, that Defendants Top Glove Sdn. Bhd., TG Medical

Sdn. Bhd., TG Medical (USA), Inc., and Top Glove Corp. Bhd.'s Motion for Stay of

Proceedings Pursuant to 28 U.S.C. § 1659 is GRANTED.

This \_\_\_\_ day of _____, 2007     _____

                                 ROBERT L. VINING, JR., JUDGE
                                 NORTHERN DISTRICT OF GEORGIA

1690901 v01

# EXHIBIT 7

**McKinney, Kristen**

| | |
|---|---|
| **From:** | tkenworthy@morganlewis.com |
| **Sent:** | Friday, July 6, 2007 5:15 PM |
| **To:** | Schaetzel, Steve |
| **Cc:** | dmarston@morganlewis.com; Pass, Jason; Dorsney, Kenneth L.; Quicker, Katrina; Horwitz, Richard L.; Askew, Tony |
| **Subject:** | Re: Ansell v Tillotson: Response to July 5 email |

Steve:

If by noon on Monday you dismiss without prejudice the claims in the new Georgia
action against all of the remaining Ansell entities, we will withdraw our motion for
injunction and for sanctions, and we will agree that none of these entities will
initiate a declaratory judgment action in Delaware or anywhere else regarding the
'616 patent.  Additionally, we would consent to the an amendment of the
counterclaims in Delaware to add claims of infringement  against Ansell (Thailand)
Ltd. and Ansell Lanka
(Pvt.) Ltd.and we would agree not to assert any defense of lack of in personam
jurisdiction.

Tom


Thomas B. Kenworthy
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5702
(215) 963-5001 (fax)



```
          "Schaetzel,
          Steve"
          <SSchaetzel@KSLAW                                        To
          .com>             tkenworthy@morganlewis.com
                                                                   cc
          07/06/2007 04:42  dmarston@morganlewis.com, "Horwitz,
          PM                Richard L."
                            <rhorwitz@Potteranderson.com>,
                            "Dorsney, Kenneth L."
                            <kdorsney@Potteranderson.com>,
                            "Askew, Tony" <TAskew@KSLAW.com>,
                            "Pass, Jason" <JPass@KSLAW.com>,
                            "Quicker, Katrina"
                            <KQuicker@KSLAW.com>
                                                              Subject
                            Ansell v Tillotson: Response to
                            July 5 email
```

1

Tom,

We acknowledge receipt of your July 5 email and offer the following.

Thank you for the Cybiotronics, Ltd v Golden Source Electronics, Ltd. case.
We have reviewed it and must again ask what distinction is Ansell asserting?  For
example, in that case, Defendant Smoothline sold the accused telephones in China
(FOB Hong Kong) to NAFT, an independent nonparty headquartered in New York.  Is it
Ansell's position that the various Ansell entities sell nitrile gloves to a U.S.
entity in such a manner that title changes off shore?  If that is the case, please
see MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F 3d. 1369
(Fed. Cir. 2005), which indicates that the fact that an article is delivered "free
on board" outside of the US does not mean that a "sale" has not occurred in the US.
Is it Ansell's position that these entities do not import at all?  If so, what
evidence can you provide in support of that position?  The volumes shipped at a
minimum support the inference that the party you evidently seek to declare a mere
shipper is also an importer.  We find the situation here to be much more like that
in Ensign-Bickford Co. v.
ICI Explosives USA Inc., 817 F. Supp. 1018 (D. Conn. 1993).

You state that the evidence we have offered to date does not suggest that three of
the Ansell entities are importers of nitrile gloves.  We are not certain to which
three you refer.  Please let us know.  For the time being, we presume you are
referring to Ansell (AMBI), Ansell NP and Ansell Ltd.
Even so, we do not agree with your position.  You have offered no explanation why or
how Ansell Ltd.'s name appears on a box of nitrile gloves in the U.S.  As to the
other two entities named here, you have offered no explanation for the volumes of
gloves being imported which, as stated in our brief, leads Tillotson to conclude
that the designation "rubber glove" is being used loosely to include nitrile gloves.

In view thereof, we cannot and do not agree to dismiss all Ansell parties from the
Recent Georgia Action.  However, as discussed, we do favor containing litigation to
the greatest extent possible.  To that end, Tillotson offers this compromise:
Tillotson will agree to dismiss Ansell (AMBI), Ansell NP and Ansell Ltd so long as
no Ansell entity not named in the Recent Georgia Suit will agree not to file a
declaratory judgment action in Delaware or elsewhere regarding the '616 Patent and
Ansell Healthcare withdraws the pending motion to enjoin pursuit of the Recent
Georgia Action (in Delaware).

Please let us know your position.

Steve Schaetzel

Stephen M. Schaetzel
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309-3521
main:   404.572.4600
direct:  404.572.2531

2

```
fax:      404.572.5134
email:   sschaetzel@kslaw.com
```

Confidentiality Notice
This message is being sent by or on behalf of a lawyer. It is intended exclusively
for the individual or entity to which it is addressed. This communication may
contain information that is proprietary, privileged or confidential or otherwise
legally exempt from disclosure. If you are not the named addressee, you are not
authorized to read, print, retain, copy or disseminate this message or any part of
it. If you have received this message in error, please notify the sender immediately
by e-mail and delete all copies of the message.

DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named
above. This message may be an attorney-client communication and as such privileged
and confidential.  If you are not an intended recipient, you may not review, copy or
distribute this message. If you have received this communication in error, please
notify us immediately by e-mail and delete the original message.